to be yet another attempt to bring a private treble damage antitrust action without meeting the *Walker Process* standards, and therefore fails as a matter of law.

### IV. Fournier's and Abbott's Litigation Conduct Has Not Caused Antitrust Injury to Plaintiffs.

A private plaintiff must show it has suffered antitrust injury to have standing to bring an antitrust claim. The Supreme Court has explained that "[p]laintiffs must prove *antitrust* injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful."[23] Therefore, unless the Plaintiffs can establish a direct link between the injury they allege – foreclosure from the market – and the anticompetitive conduct they allege, their antitrust claims must fail as a matter of law.

#### A. Teva's *Walker Process* Claim Fails to Allege Antitrust Injury.

Teva and Impax do not allege *Walker Process* claims with respect to the '726, '670, '405, or '552 patents. The only patent for which they allege that Fournier knowingly and willfully misrepresented facts to the PTO is the '881 patent.[24] Teva Counterclaims, ¶¶ 346-347; Impax Counterclaims, ¶¶ 1, 145, 151. Teva and Impax only make a narrow allegation that, in his June 2003 declaration in connection with the '881 patent, Mr. Reginault failed to disclose certain data contained in two documents. Teva Counterclaims, ¶¶ 117, 122. One of these documents was dated May 1997 – over six years before the '881 declaration. *Id.* at ¶ 117. The other document is undated and does not identify Mr. Reginault (or anyone else) as an addressee. *Id.* at ¶ 122.[25]

---

[23]   *See Brunswick Corp. v. Pueblo Bowl-O-Mat,* 429 U.S. 477, 489 (1977) (emphasis in original); *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990); *Brown Shoe Co. v. United States,* 370 U.S. 294, 320 (1962) (antitrust laws were enacted for "the protection of competition, not competitors.").

[24]   The complaints filed by the various direct and indirect purchasers do not allege independent *Walker Process* violations, presumably in recognition that they lack standing to make such a claim.

[25]   Distinguishing the *Walker Process* fraud standard from the lower standard for inequitable conduct, the *Nobelpharma* court stated that "for an omission such as a failure to cite a piece of prior art to support a finding of *Walker Process* fraud, the withholding of the reference must show evidence of

-26-

The party claiming a *Walker Process* violation must also prove the elements of a substantive antitrust violation, which includes antitrust injury. Teva cannot show antitrust injury because, even accepting as true all of their allegations of misconduct relating to the '881 patent, the combination of the '405 patent that this Court recognized as possibly being infringed and the operation of the Hatch-Waxman laws are what prevented Teva from lawfully selling a fenofibrate tablet product in the U.S. before March 2, 2005. Therefore, Teva cannot show it suffered antitrust injury as a result of Defendants' actions. *See Axis S.p.A. v. Micafil, Inc.*, 870 F.2d 1105 (6th Cir. 1989) (holding that, because the injury flowing from the alleged exclusionary conduct existed already through operation of the patent laws, the defendant's conduct could not be said to have caused the exclusion); *City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 265 (3d Cir. 1998) (holding that "any injury suffered by the [plaintiff] did not flow from the defendants' conduct, but, rather, from the realities of the regulated environment" in which the parties operated).[26]

In an attempt to answer this shortcoming in their pleadings, Plaintiffs advance the novel proposition that, because of the alleged fraud in obtaining the '881 patent, this taint should extend to *previously* obtained patents. Teva Counterclaims, ¶ 175. As a matter of law, misconduct that is subsequent to a particular patent application does not make that previously obtained patent unenforceable, even where the alleged misconduct occurred in connection with related patents. *See SSIH Equipment S.A. v. U.S. Int'l Trade Comm'n*, 718 F.2d 365, 378-79 (Fed. Cir. 1983) (rejecting "as a matter of law" the

---

fraudulent intent. *A mere failure to cite a reference to the PTO will not suffice.*" 143 F.3d at 1071 (emphasis added) (citation omitted). Plaintiffs' *Walker Process* claim is based on the mere failure to cite a reference to the PTO.

[26] The Court can take judicial notice of the Memorandum Opinion it issued on May 6, 2005, addressing several motions filed by Teva. Among the motions being decided, this Court ruled that claim 6 of the '405 patent must be tried on the grounds that the Defendants' claim presented a genuine issue of material fact.

contention that a patent could be rendered unenforceable because of inequitable conduct that occurred in connection with three related but subsequently issued patents).

To the extent that the Plaintiffs were "injured" by not being able to sell a fenofibrate product in the U.S., this injury resulted from the normal and appropriate operation of law and therefore cannot constitute antitrust injury. Simply put, any loss to Teva is not the type that "flows from that which makes defendants' acts unlawful." *Brunswick*, 429 U.S. at 489. Moreover, Teva's decision not to produce and sell a fenofibrate tablet after receiving final FDA approval in May 2005 was purely its own business decision. Teva was not and is not prevented from launching a fenofibrate tablet as a result of any improper actions by Abbott and Fournier.

**B.     Impax's *Walker Process* Claims Fail to Allege Antitrust Injury.**

Impax also has not adequately pled antitrust injury. Not only has its product launch been delayed by the '405 patent, as is true of Teva, but Impax is still unable to lawfully launch 160 mg and 54 mg fenofibrate tablets by virtue of Teva's exclusivity.

Impax describes its antitrust injury as follows:

> But for Abbott and Fournier's conduct . . . Impax *could have* entered the market with 54 mg/160 mg fenofibrate tablets as generics to the similar TriCor formulation *on or about November 16, 2005* or at such other time when the FDA *could have* authorized Impax to enter the market by granting final approval to Impax's Tablet ANDA.

Impax Counterclaims, ¶ 130 (emphasis added). Because *Teva* obtained a 180-day exclusivity period that "will end on or about November 13, 2005," Impax cannot launch its product. Impax Counterclaims, ¶ 64. Accordingly, Impax's "injury" does not flow from the actions of Abbott or Fournier, and does not satisfy ordinary standing requirements, much less antitrust standing requirements.[27]

---

[27]    *See, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (discussing elements of traditional standing, including the requirement that the alleged injury be "actual or imminent, not conjectural or hypothetical") (internal quotations omitted).

-28-

  **C.** **The Remaining Plaintiffs Have Not Adequately Pled Antitrust Injury.**

As discussed above in Section III.B.3., the Direct and Indirect Plaintiffs do not have standing to assert a *Walker Process* claim. As to the "sham litigation" claims made by these Plaintiffs (as well as Teva and Impax), Plaintiffs must still plead antitrust injury. *Brunswick*, 429 U.S. at 489. For the same reasons that Teva and Impax have not adequately pled antitrust injury under *Walker Process*, all Plaintiffs have not satisfied this element of their sham litigation claims if the Court finds that the assertion of the '405 patent was not a sham.

 **V.** <u>**Plaintiffs' "Overall Scheme" Allegation Fails To State A Claim.**</u>

  Teva alleges that, even if no individual act undertaken by a Defendant was unlawful, Defendants can somehow be found liable under Section 2 of the Sherman Act on the basis of an "overall scheme" to violate the antitrust laws. This theory does not set out a cognizable monopolization claim. "The offense of monopoly under [Section 2] of the Sherman Act has two elements: (1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *U.S. v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966). To state a monopolization claim under the Sherman Act, a plaintiff must allege wrongful conduct. *See LePage's Inc. v. 3M*, 324 F.3d 141, 152 (3d Cir. 2003) (noting that "decades of Supreme Court precedent [have] evaluated a monopolist's liability under § 2 by examining its exclusionary, *i.e.*, predatory, conduct.").

  Moreover, Plaintiffs' conception of this alleged scheme hinges on the inclusion of lawful acts and conduct that are expressly immunized from challenge or authorized by law. Abbott's and Fournier's litigation is immunized First Amendment conduct under the *Noerr-Pennington* doctrine, and therefore, under Supreme Court precedent, cannot be considered part of an unlawful overall scheme. Indeed, in the *Pennington* decision itself the Court held that protected petitioning conduct cannot form the basis for antitrust liability "either standing alone or as part of a broader scheme." *United Mine Workers of*

*Am. v. Pennington*, 381 U.S. 657, 670 (1965). Courts have held that similarly broad protections from antitrust liability should apply to lawful conduct involving patents. *See SCM Corp. v. Xerox Corp.*, 645 F.2d 1195, 1206 (2d Cir. 1981) ("where a patent has been lawfully acquired, subsequent conduct permissible under the patent laws cannot trigger any liability under the antitrust laws."), *cert. denied*, 455 U.S. 1016 (1982); *see also In re Indep. Serv. Orgs. Antitrust Litig.*, 989 F. Supp. 1131, 1142 (D. Kan. 1997) (rejecting claimant's overall scheme argument on the grounds that "[c]onduct expressly authorized by one law or governmental agency cannot be simultaneously subject to antitrust scrutiny.").

When such lawful conduct is removed from the Plaintiffs' recitation of the supposed scheme, it becomes impossible to conclude that Plaintiffs have adequately pled the factual basis for a Section 2 violation. *See Coastal States Mktg, Inc. v. Hunt*, 694 F.2d 1358, 1371 n.42 (5th Cir. 1983) (observing that appellant could not assert an overall scheme claim because "there [was] no record evidence supporting the existence of any overall scheme to restrain trade *apart* from the [*Noerr*-protected] litigation and related conduct"). In short, after failing to identify specific instances of unlawful conduct, Plaintiffs cannot satisfy their burden under Section 2 of the Sherman Act simply by labeling a number of lawful acts an illegal scheme.

### VI. Plaintiffs' Allegations Of Tortious Interference Fail To State A Claim.

To state a claim for tortious interference with prospective business opportunities (whether phrased as "prospective economic advantage" or "valid business expectancy"), Plaintiffs must show "(a) the reasonable probability of a business opportunity, (b) the intentional interference by defendant with that opportunity, (c) proximate causation, and (d) damages, all of which must be considered in light of a defendant's privilege to compete or protect his business interests in a fair and lawful manner." *DeBonaventura v. Nationwide Mut. Ins. Co.*, 428 A.2d 1151, 1153 (Del. 1981).[28]

---

[28] Plaintiffs' tort claims and class allegations raise choice of law issues more appropriately addressed in the context of a class certification motion. For purposes of this motion, Defendants refer to

-30-

Teva and Impax allege Defendants' conduct amounted to tortious interference with their "prospective economic advantage" or "valid business expectancy" with unidentified customers and "various purchasers." Impax Counterclaims, ¶¶ 172-74; Teva Counterclaims, ¶¶ 361-68. However, Plaintiffs do not plead any facts that support such a theory of liability. Plaintiffs' prospective business opportunity must be concrete. Failure to allege specific actual or potential contracts requires dismissal of the claim. *See, e.g., Lucent Info. Mgmt. v. Lucent Techs.*, 5 F. Supp. 2d 238, 243 (D. Del. 1998) (granting summary judgment where plaintiff made "the broad claim that the participants are 'potential' customers, but [did] not cite any actual contract, or even contract discussions, with any of these parties"); *Kirkwood Kin Corp. v. Dunkin' Donuts, Inc.*, Civ. A. No. 94C-03-189, 1995 WL 411319, at *9 (Del. Super. Ct. June 30, 1995) (granting summary judgment where plaintiff failed to identify any "specific contract or potential business opportunity . . . a prerequisite for application of the tortious interference theories.") (attached as Exhibit 8). Plaintiffs have not pled a real or potential relationship with any identified third party, and therefore their vague tortious interference allegations are insufficient as a matter of law.

### VII. Plaintiffs Improperly Conflate Allegations Against Abbott and Fournier.

Throughout their complaints, Plaintiffs improperly conflate their allegations against Abbott and Fournier with respect to specific acts of wrongdoing. A thorough analysis of Plaintiffs' claims reveals pleading deficiencies with respect to certain claims levied against Abbott and Fournier which mandate dismissal as to one or the other party.

---

Delaware law. To the extent recognized under Delaware law, tortious interference with "prospective economic advantage" is the same as the tortious interference with "prospective business opportunities" claim recognized by *DeBonaventura*. *See, e.g., Weiss v. Leewards Creative Crafts, Inc.*, Civ. A. No. 12384, 1993 WL 155493, at *4-5 & n.3 (Del. Ch. Apr. 29, 1993) (applying Illinois law to "prospective economic advantage" claim, but observing that, under Delaware law, *DeBonaventura* provides "substantially similar factors") (attached as Exhibit 7), *aff'd*, 633 A.2d 32 (Del. 1993).

-31-

A.   **Plaintiffs' Antitrust Claims Based on Inequitable Conduct or *Walker Process* Fraud Against Abbott Should Be Dismissed.**

Teva and Impax allege a *Walker Process* violation against Defendants in connection with the prosecution of the '881 patent. In addition, Teva, Impax and the other Plaintiffs base their Section 1 and 2 monopolization and "sham litigation" claims, in part, on inequitable conduct in connection with the '881 patent.

*Walker Process* fraud and inequitable conduct must be pled with particularity in order to survive a motion to dismiss. No plaintiff alleges that anyone at Abbott misled the PTO in connection with the prosecution of the '881 patent. Teva and the Indirect Purchasers (who simply incorporate Teva's allegations by reference) allege, in the most conclusory fashion, that Abbott was aware that the PTO was misled. Impax, perhaps unwilling to take Teva's unsubstantiated and conclusory leaps, alleges that in December 2004, Abbott became "aware" by virtue of Impax's allegations in its proposed Amended Answer. Absent an allegation that Abbott knowingly asserted a patent procured by fraud on the PTO, the *Walker Process* and sham litigation claims against Abbott are deficient.

      1.   **Teva's *Walker Process* Counterclaims Against Abbott Are Not Pled With Sufficient Particularity and Should Be Dismissed.**

*Walker Process* fraud is "a variant of common law fraud" and, as such, is subject to Rule 9(b). *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 375 F.3d 1341, 1358 (Fed. Cir. 2004), *cert. granted in part*, 125 S. Ct. 1396 (2005), *cert. denied in part*, 125 S. Ct. 1399 (2005). Teva has not complied with Rule 9(b) with respect to its allegations of *Walker Process* fraud against Abbott.

*Walker Process* fraud has two general requirements: (1) the patentee must have "obtained the patent by knowingly and willfully misrepresenting facts" to the PTO and (2) the patent infringement

plaintiff's "knowing assertion of a patent procured by fraud on the PTO." *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1068, 1071 (Fed. Cir. 1998) (citing *Walker Process*).[29]

In its pleadings, Teva alleges that Abbott and Fournier are guilty of a *Walker Process* violation in connection with the '881 patent. However, Teva ignores the axiom that it "cannot sue multiple defendants for fraud merely by alleging fraud with particularity as to one defendant." *Sandvik AB v. Advent Int'l Corp.*, 83 F. Supp. 2d 442, 448 (D. Del. 1999), *aff'd,* 220 F.3d 99 (3rd Cir. 2000); *In re Home Health Corp. of Am. Sec. Litig.*, No. 98-834, 1999 U.S. Dist. LEXIS 1230, at * 60 (E.D. Pa. Jan. 29, 1999) ("When the acts of multiple defendants are alleged to constitute fraud, plaintiffs must separately plead the allegedly fraudulent acts of each defendant to comply with Rule 9(b).") (attached as Exhibit 9).

A close reading of Teva's allegations reveals that Teva does not allege that Abbott misrepresented any facts to the PTO with respect to the '881 patent. Teva Counterclaims, ¶¶ 105-182. Teva's allegation against Abbott amounts to the following:[30]

> At all times relevant to these counterclaims, Fournier was aware of its inequitable conduct concerning the Stamm Patents. At all times relevant to these counterclaims, Abbott was aware of Fournier's inequitable conduct concerning the Stamm Patents.

Teva Counterclaims, ¶ 107. Also, Teva alleges in ¶ 123 that Fournier provided someone at Abbott with a technical report containing dissolution data that plaintiffs allege someone at Fournier should have

---

[29] Walker Process claims have additional specific requirements relating to issues such as antitrust standing, level of fraud required and other elements that are not at issue for this particular motion. *See generally, Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 375 F.3d 1341 (Fed. Cir. 2004); *Nobelpharma, supra.*

[30] In its amended counterclaims, Teva states:
> Fournier prosecuted each of the Stamm Patents in the PTO. In addition, Fournier communicated with Abbott concerning the prosecution of the Stamm Patents in the PTO. By way of example, Abbott's and Fournier's privilege log in the Tablet Lawsuits lists several written communications between Abbott and Fournier "regarding 670 patent application.

Teva Counterclaims, ¶ 106. Communications identified on a privilege log regarding the '670 patent provides no foundation for a claim involving the '881 patent.

-33-

disclosed to the PTO. Teva Counterclaims, ¶ 123. These allegations do not provide particularized support or even general support for alleging that Abbott participated in any alleged fraud with respect to the '881 patent. Accordingly, the first element of a *Walker Process* claim is simply not pled at all – let alone with the particularity required by Rule 9.

The second element is also not pled adequately. Despite having conducted substantial discovery, not once in its counterclaims does Teva provide any factual foundation for the general allegation that Abbott knew about Fournier's alleged fraud regarding the '881 patent. Alleging that someone at Abbott received a technical report hardly supports an assertion that this individual knew that material information was being withheld or even that this individual at Abbott had anything to do with patents. Teva has not provided Abbott with any notice as to how it supposedly knew of an alleged attempt to mislead the PTO. Notice is the very purpose of Rule 9(b). *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3rd Cir. 1997) (stating that Rule 9(b) "gives defendants notice of the claims against them").

While Rule 9(b) does allow "knowledge" to be generally averred, this Circuit does not allow "boilerplate and conclusory allegations" such as the ones made by Teva against Abbott. *Id.* at 1418. In the context of securities litigations, where, as here, knowledge may be in the control of the defendant, this Circuit has held that the general averment section of Rule 9(b) still requires plaintiffs to allege facts that show the court their basis for their allegations. *Id.* Teva's bald allegations do not even comply with this more lenient requirement. Accordingly, Teva has failed to adequately plead either element of a *Walker Process* claim against Abbott.

> 2. **Impax's *Walker Process* Counterclaims Should Be Dismissed Against Abbott Because They Fail to State a Claim and, in the Alternative, Because They Are Not Pled With Sufficient Particularity.**

Impax's *Walker Process* fraud counterclaims against Abbott suffer from the same infirmities as Teva's. There is no allegation that Abbott participated in an alleged attempt to mislead the PTO and there is no allegation Abbott knowingly asserted a patent procured by fraud on the PTO.

Like Teva, Impax makes no attempt to claim that anyone at Abbott participated in the alleged fraud. For this reason alone, Impax's *Walker Process* claim must be dismissed. As for the second element, Impax only pleads that "Abbott was on notice of Fournier's conduct in prosecuting the '881 patent since at least December 2004, after receiving a draft of Impax's Amended Answer . . . ." Impax Counterclaims, ¶ 107. Impax's notice to Abbott (the Amended Answer) came in December 2004, approximately one year after suit was filed. Being "aware of an allegation" made by a litigation opponent, which may be unsubstantiated, is not the same as "knowing" that an asserted patent was procured by fraud, as required by Nobelpharma. Impax's pleadings are insufficient as a matter of Federal Circuit law to state a claim under *Walker Process* against Abbott.

A court may dismiss a claim if "it clearly appears that no relief can be granted under any set of facts that could be proved consistently with plaintiff's allegations." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). Even after "accept[ing] as true all allegations in the complaint," Impax's *Walker Process* fraud claims against Abbott fail as a matter of law because Impax does not allege that Abbott participated in the alleged fraud or that it knew of the alleged fraud before the PTO when it filed suit on the '881 patent. *Id.* Accordingly, Impax's *Walker Process* claim should also be dismissed.

### 3. The Antitrust Plaintiffs' Inequitable Conduct Allegations Against Abbott Should Be Dismissed.

As discussed earlier in this memorandum, Plaintiffs' attempt to premise antitrust claims based on inequitable conduct allegations involving the '881 patent is insufficient as a matter of law as against both Defendants. As to Abbott, these allegations suffer from another flaw. No Plaintiff has pled any facts to support an allegation that Abbott participated in the alleged inequitable conduct.

Inequitable conduct, like a *Walker Process* violation, must be pled with particularity in accordance with Rule 9(b). *See EMC Corp. v. Storage Tech. Corp.*, 921 F. Supp. 1261, 1263 (D. Del. 1996). None of the Plaintiffs meet this requirement with respect to Abbott.

Teva, Impax and the Indirect Purchasers do not even allege inequitable conduct against Abbott. The Direct Purchasers accuse Abbott and Fournier of inequitable conduct, but do not plead a single fact in support of their allegation that Abbott was involved in inequitable conduct with respect to the '881 patent. The Direct Purchasers' allegations, which are essentially carbon copies of one another, allege that "Defendants were guilty of inequitable conduct" but then go on to recite allegations that have nothing to do with Abbott. Consolidated Direct Purchaser Complaint, ¶¶ 129-146. Consequently, all portions of Plaintiffs' claims and counterclaims dependent on inequitable conduct should be dismissed pursuant to Rule 9(b) or stricken pursuant to Rule 12(f) with respect to Abbott.

*    *    *

Because Plaintiffs have failed to sufficiently plead what Abbott is alleged to have done with respect to *Walker Process* fraud and inequitable conduct, the portions of their antitrust claims dependent on these concepts should be dismissed or stricken with respect to Abbott.

### B. Plaintiffs' Antitrust Claims Based on Marketing Conduct Against Fournier Should Be Dismissed.

Plaintiffs make a number of allegations that Defendants' violated the antitrust laws through the sale and marketing of TriCor. Specifically, the marketing actions that Plaintiffs allege were

improper include (i) listing patents in the Orange Book, (ii) discontinuing the old TriCor formulations, and (iii) communicating with the NDDF service (collectively "Marketing Conduct"). *See, e.g.,* Teva Counterclaims, ¶¶ 60-61; Consolidated Direct Purchaser Complaint, ¶¶ 79-82, 85, 112; Walgreen Complaint, ¶¶ 51-52, 59, 113.

Plaintiffs acknowledge, as they must, that Fournier granted licenses to Abbott for the TriCor products. Consolidated Direct Purchaser Complaint, ¶ 46; Consolidated Indirect Purchaser Complaint, ¶ 49; Pacificare Complaint, ¶ 31; Walgreen Complaint, ¶ 41; CVS Complaint, ¶ 40; Teva Counterclaims, ¶ 43; Impax Counterclaims, ¶ 26. Plaintiffs make general conclusory allegations that all "Defendants" engaged in the Marketing Conduct. When not lumping the three Defendants together as an undifferentiated group in their pleadings, however, Plaintiffs only allege that Abbott – but not Fournier – directly engaged in the Marketing Conduct. *See, e.g.,* Impax Counterclaims, ¶¶ 26, 36, 39, 47, 58-59; Teva Counterclaims, ¶¶ 43, 64, 185. Plaintiffs do not allege facts that could fairly support an inference that Fournier actually engaged in the Marketing Conduct alleged by Plaintiffs to have been unlawful.

Without these essential supporting facts, Plaintiffs' conclusory allegations that Fournier also engaged in the Marketing Conduct are insufficient. *See, e.g., Mountain View Pharm. v. Abbott Labs.*, 630 F.2d 1383, 1387-88 (10th Cir. 1980) (sustaining dismissal to extent "blanket" conspiracy allegation failed to identify the offending defendants but reversing where the complaint specifically identified a defendant in connection with particular wrongful conduct); *Sheffield v. Orius Corp.*, 211 F.R.D. 411, 415 (D. Or. 2002) ("The parties and the court should be able to determine [from the complaint] the injurious policy, the responsible defendant and the specific injury suffered by a plaintiff.") (emphasis added); *World Arrow Tourism Enters. v. Trans World Airlines, Inc.*, 582 F. Supp. 808, 810 (S.D.N.Y. 1984) (dismissing antitrust complaint where, once stripped of its conclusory conspiracy allegations, failed to

"even remotely support an inference that [the alleged co-conspirators] participated in [the alleged wrongful conduct] in any way . . . .").

Because Plaintiffs have failed to plead what Fournier is alleged to have done with respect to this Marketing Conduct, the portions of their antitrust claims dependent on this Marketing Conduct should be dismissed or stricken with respect to Fournier.

### VIII. The State Law Claims Should Be Dismissed.

Plaintiffs' various claims under state antitrust and consumer protection statutes should also be dismissed. The state antitrust laws under which certain Plaintiffs have brought claims generally follow the standards and precedents of the federal antitrust laws and should be dismissed for the same reasons. *See, e.g., Golan v. Pingel Enter.*, 310 F.3d 1360, 1369 (Fed. Cir. 2002) ("Sherman Act decisions are applicable to cases under the Cartwright Act."); *Orr v. BHR, Inc.*, 4 Fed. Appx. 647, 650 (10th Cir. 2001) (recognizing that the Missouri antitrust laws are to be interpreted and applied according to federal law); *Eon Labs., Inc. v. SmithKline Beecham Corp.*, 298 F. Supp. 2d 175, 183 (D. Mass. 2003) (recognizing role of federal antitrust law in interpreting Arizona's state antitrust laws).[31]

Furthermore, the state consumer protection laws under which certain Plaintiffs have brought claims generally require some level of consumer deception or fraud. Abbott and Fournier have developed and marketed TriCor products openly and Plaintiffs have failed to allege any factual basis of fraud or deception for these claims. *See, e.g., Plaum v. Jefferson Pilot Fin. Ins. Co.*, No. Civ.A.04-4597, 2004 WL 2980415, at *3 (E.D. Pa. Dec. 22, 2004) (to survive on the pleadings any claimant under Pennsylvania Unfair Trade Practices and Consumer Protection Law must properly plead the elements of common law fraud) (attached as Exhibit 10); *Travelers Indem. Co. of Ill. v. Hardwicke*, 339 F. Supp. 2d

---

[31] In addition, the Indirect Purchaser Class does not have standing to bring an action under the New Jersey Antitrust Act or the New Jersey Consumer Fraud Act. *Sickles v. Cabot Corp.*, 877 A.2d 267, 269 (N.J. Super. Ct. App. Div. 2005).

-38-

RLF1-2936194-1

1127, 1133 (D. Colo. 2004) (dismissing claim under the Colorado Consumer Protection Act for, *inter alia*, failure to "allege the required knowing false statements"); *Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 160-64 (Ill. 2002) (sustaining dismissal of claim under the Illinois Consumer Fraud and Deceptive Business Practices Act for failure to plead actual deception).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss Plaintiffs' complaints and counterclaims with prejudice.

*Attorneys for Abbott Laboratories:*

/s/ Mary B. Graham
Mary B. Graham (I.D. #2256)
mgraham@mnat.com
MORRIS, NICHOLS, ARSHT & TUNNELL
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200

*Of Counsel*:
William F. Cavanaugh, Jr.
Eugene M. Gelernter
Chad J. Peterman
Alexis A. Gander
PATTERSON, BELKNAP, WEBB TYLER LLP
1133 Avenue of the Americas
New York, NY 10036-6710
(212) 336-2000

Dated: October 19, 2005

*Attorneys for Fournier Industrie et Santé, and Laboratories Fournier S.A.:*

Frederick L. Cottrell, III (I.D. #2555)
Anne Shea Gaza (I.D. #4093)
cottrell@rlf.com
gaza@rlf.com
RICHARDS, LAYTON & FINGER
One Rodney Square
Wilmington, DE 19801
(302) 651-7700

*Of Counsel:*
Steven C. Sunshine
Matthew P. Hendrickson
Maria M. DiMoscato
Cadwalader, Wickersham & Taft LLP
1201 F Street, N.W.
Washington, D.C. 20004
(202) 862-2200

Timothy C. Bickham
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, DC 20036-1795
(202) 429-5517

## CERTIFICATE OF SERVICE

I hereby certify that on October 19, 2005, I caused to be served by hand delivery the foregoing document and electronically filed the same with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

Josy W. Ingersoll
John W. Shaw
Karen Keller
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391

Jeffrey S. Goddess
Rosenthal, Monhait, Gross & Goddess, P.A.
919 Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE 19899-1070
Tel. (302) 656-4433
Fax. (302) 658-7567

Jonathan L. Parshall
Murphy Spadaro & Landon
1011 Centre Road, Suite 210
Wilmington, DE 19801

Mary Matterer
Morris, James, Hitchens & Williams
222 Delaware Avenue, 10th Floor
Wilmington, DE 19801

Pamela S. Tikellis
Robert J. Kriner, Jr.
A. Zachary Naylor
Chimicles & Tikellis LLP
One Rodney Square
P.O. Box 1035
Wilmington, DE 19899

Elizabeth M. McGeever
Prickett Jones Elliott, P.A.
1310 King Street
Wilmington, DE 19801

I hereby certify that on October 19, 2005, I sent by facsimile the foregoing document to the following non-registered participants:

William Christopher Carmody
John W. Turner
Shawn J. Rabin
Susman Godfrey LLP
Suite 4100
901 Main Street
Dallas, TX 75202-3775

Scott E. Perwin
Kenny Nachwalter, P.A.
1100 Miami Center
201 South Biscayne Boulevard,
Miami, Florida 33131-4327

Bruce M. Gagala
M. Daniel Hefner
Leydig, Voit & Mayer, LTD
Two Prudential Plaza
Suite 4900
180 N. Stetson Avenue
Chicago, IL 60601-6780

Philip J. McCabe
Kenyon & Kenyon
333 West San Carlos Street
Suite 600
San Jose, CA 95110

RLF1-2921913-1

Bruce E. Gerstein
Barry Taus
Adam Steinfeld
Garwin Gerstein & Fisher LLP
1501 Broadway, Ste 1416
New York, NY 10036

Patrick E. Cafferty
Bryan L. Clobes
Miller Faucher and Cafferty LLP
One Logan Square
18th & Cherry Street
Suite 1700
Philadelphia, PA 19103

Jeffrey L. Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street
Suite 2500
Philadelphia, PA 19103

Bernard Persky
Goodkind Labaton Rudoff & Sucharow LLP
100 Park Avenue,
New York, NY 10017

Thomas M. Sobol
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA 02142
Ph. (617)482-3700
Fax (617) 482-3003

Kenneth A. Cohen
Elaine Herrmann Blais
Christopher T. Holding
Goodwin Procter LLP
Exchange Place
Boston MA 02109-2881

John C. Vetter
Kenyon & Kenyon
One Broadway
New York, NY 10004

C. Kyle Musgrove
Kenyon & Kenyon
1500 K Street N.W.
Suite 700
Washington, D.C. 20005

Mark A. Lemley
Asim Bhansali
Paula Blizzard
Keker & Van Nest LLP
710 Sansome Street
San Francisco, CA 94111

Joseph T. Lukens
Hangley Aronchick Segal & Pudlin
One Logan Square, 27th Floor
Philadelphia, PA 19103


_____
Anne Shea Gaza (#4093)
GAZA@rlf.com