# Morris, Nichols, Arsht & Tunnell

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware  19899-1347

302 658 9200
302 658 3989 Fax

Mary B. Graham
(302) 575-7287
mgraham@mnat.com

November 14, 2005

The Honorable Kent A. Jordan            **BY EFILING & HAND DELIVERY**
United States District Court
For the District of Delaware
844 King Street
Wilmington, DE  19801

      Re:    In re TriCor® Antitrust Litigations: C.A. Nos. 02-1512, 03-120,
            05-340 and 05-360 (KAJ)

Dear Judge Jordan:

      I write on behalf of Abbott Laboratories, Fournier Industrie et Santé, and Laboratoires Fournier S.A. in opposition to plaintiffs' demands for access to information concerning the specific details of Abbott's or Fournier's confidential future business plans regarding TriCor®.

      Plaintiffs' request should be considered in context.  Plaintiffs, which number almost twenty, include Teva and Impax, whose business model is to make identical copies of branded drugs as quickly as possible.  The competitive sensitivity of specific information about Abbott's or Fournier's on-going research into next generation products is even greater than is ordinarily the case between competitors.[1]  This is not a case where redactions mask a "smoking gun" about past conduct that is the true subject of plaintiffs' claims.  As plaintiffs themselves acknowledge, that Abbott or Fournier are developing new products is known.  It is the highly confidential details of the R&D, regulatory and commercial strategies of future products or "pipeline" products still in development (none of which have been approved by the FDA) that Abbott and Fournier have redacted.

      Plaintiffs' conclusory assertions that future plans are relevant either to their claims of an overall scheme or their request for injunctive relief do not withstand scrutiny.  Plaintiffs allege that Abbott's and Fournier's past conduct was anticompetitive.  Future conduct, especially future development plans so nebulous that FDA approval has not been obtained and has no guarantee of being obtained, has no legitimate place in this litigation.  The documents plaintiffs cite serve only to underscore that it is the general fact of the existence of these future plans that is arguably relevant to their "overall scheme" claim, and that general fact has been set out in documents produced to plaintiffs.  The fact that Abbott and Fournier are continuing to study the development of new products does not provide insight into plaintiffs' claims about the manner of past product introductions.  In addition, discovery as to the scope of an injunction is extraordinarily premature.  Plaintiffs fail to describe any circumstances that could conceivably warrant barring Abbott or

---

[1]  Abbott's and Fournier's redactions are not a knee-jerk unwillingness to allow discovery, but are instead  limited in number and calibrated to the numbers and identities of the recipients.  These concerns did not exist when Abbott and Fournier produced unredacted documents to the Federal Trade Commission under strict assurances of confidentiality.

The Honorable Kent A. Jordan
Page 2
November 14, 2005

Fournier from continuing to research new products and indications or prosecuting New Drug Applications with the FDA. Any potentially adverse impact on plaintiffs as a result of these research efforts could occur only in the future if new products are ever launched and depending on the manner of new product introduction or as a result of what plaintiffs falsely characterize as "market destruction" conduct, both of which are premature and speculative at this time.

The scope of permissible discovery under Rule 26(b), while broad, is not unbounded. Discovery should be denied where, as here, (a) the discovery sought is highly confidential, (b) disclosure would harm the producing party and (c) the discovery is irrelevant and unnecessary to the requesting party's case. *See American Standard v. Pfizer*, 828 F.2d 734, 740-44 (Fed. Cir. 1987).

A.   Abbott's and Fournier's Future Plans are Highly Confidential

The details of on-going development by Abbott or Fournier are highly proprietary. Courts have routinely viewed this kind of information, which includes such sensitive information as product formulas, marketing plans and market entry decisions, as confidential. *See American Standard*, 828 F.2d at 740 (collecting cases); *Serono Laboratories, Inc. v. Shalala*, 35 F. Supp. 2d 1, 2 (D.D.C. 1999) ("In a field as competitive and technical as the pharmaceutical industry, success or failure will turn in large measure on innovation and the members of the industry justifiably hoard their trade secrets as jealously as a miser hoards his gold.").

New product innovation (and the ability to keep such information confidential) is critical to the success of any pharmaceutical company. *See* Ex. A, Declaration of Michael A. Jones, ¶¶ 5-6; Ex. B., Declaration of Pierre Diebolt, ¶¶ 5-7. While general information concerning the type of products that the companies are researching is disclosed for the benefit of shareholders, the companies limit the detailed information that the plaintiffs are seeking to high-level executives and staff working on the TriCor® brand who have a need to know. *See* Jones Decl., ¶¶ 8-11; Diebolt Decl., ¶ 4.

To further demonstrate the sensitivity and irrelevance of the business and product plans sought by plaintiffs, under separate letter, Abbott and Fournier are submitting a few examples of the documents at issue for *in camera* review.

B.   Disclosure of Abbott's and Fournier's Future Plans Would Cause Them Significant Harm

As Messrs. Jones and Diebolt describe in their declarations, even inadvertent disclosure of confidential future business plans would cause significant harm to Abbott and Fournier. *See* Jones Decl., ¶ 9; Diebolt Decl., ¶ 7. Moreover, unique circumstances in this case significantly increase the risk of such disclosure, even under a protective order limiting disclosure to outside counsel only.

First, as noted previously, two of the plaintiffs are direct competitors of Abbott. Each has obtained FDA approval to make generic versions of the prior two generations of TriCor® products, and Teva is asking this Court to grant it a compulsory license to Abbott's and Fournier's patents covering its current generation TriCor® products. Not only are Teva and Impax competitors of Abbott, they routinely engage in strategic alliances to market generic drugs. It is well established that "disclosure to a competitor is more harmful than disclosure to a noncompetitor," id. at 741, and that "[c]ompetitive disadvantage is a type of harm cognizable under Rule 26." *Zenith Radio Corp. v. Matushita Elec. Indus. Co.*, 529 F. Supp. 866, 890 (E.D. Pa. 1981); *Neill Corp. v. John Paul Mitchell Sys.*, Civ. A. No. 92-2157, 1995 WL 217480, at *5 (E.D. La. Apr. 12, 1995) (citation omitted) ("the denial of a discovery request for confidential information is particularly appropriate" when the disclosure is to a competitor). In this case, the potential harm is even greater as the generics' business model is simply to copy defendants' products.

The Honorable Kent A. Jordan
Page 3
November 14, 2005

  Second, the risk of inadvertent disclosure is particularly high given the number of outside counsel.[2] In a case such as this, "[t]he critical inquiry is whether the attorney[s] in question [are] in a position that creates a high risk of inadvertent disclosure of highly confidential information." *Commissariat A L'Energie v. Dell Computer Corp.*, No. Civ. A. 03-484-KAJ, 2004 WL 1196965, at *2 (D. Del. May 25, 2004) (internal quotation omitted). Here, approximately twenty-five law firms represent plaintiffs as outside counsel, with at least three representing Teva on an ongoing basis.

C. Abbott's and Fournier's Future Plans Are Irrelevant and Unnecessary to Plaintiffs' Actions

  Because plaintiffs seek the disclosure of highly sensitive and confidential information, they must demonstrate that Abbott's and Fournier's future plans are "relevant and necessary to the action." *Coca-Cola Bottling Co. of Shreveport v. Coca-Cola Co.*, 107 F.R.D. 288, 292-93 (D. Del. 1985) (citation omitted). In this case, plaintiffs can show neither.

  Information concerning Abbott's and Fournier's future plans is irrelevant to plaintiffs' claims. Here, the plaintiffs are asserting various antitrust and unfair competition claims based on allegations of misconduct by Abbott and Fournier surrounding introductions of new fenofibrate products in 2001 and 2004 and concurrent "market destruction" activities. There is no count in any of the Amended Complaints that concerns, either directly or indirectly, Abbott's and Fournier's future actions. Abbott's and Fournier's *future plans*, including drug pipeline development, have no bearing on the *past wrongs* alleged in these actions. In addition, because past conduct is the only conduct implicated by the claims in this case, plaintiffs cannot contend that this information is necessary for them to "to prepare [their] case[s] for trial." *Id.* at 293.

  Plaintiffs' argument that revealing planning and deliberations on new product efforts is relevant to their allegations of "motive, knowledge and intent in executing past conversions," "the anticompetitive effects" and a "continuous and ongoing pattern of anticompetitive conduct" does not stand up to analysis. Proprietary information on future product development is not relevant to supposed past motives or to the anticompetitive effects of precisely how existing products were commercially launched. One has nothing to do with the other. Attempting to link possible future products with existing products under the banner of "ongoing conduct" similarly fails. No harm can come to a competitor or to competition from research or planning on possible new products. Even under plaintiffs' expansive theory, the alleged harm only occurs when a new product is actually approved by the FDA and is introduced into the market.

              Respectfully,

              */s/ Mary B. Graham (#2256)*

              Mary B. Graham

cc: Clerk of Court (by hand) (with enclosures)
   (all record counsel)

---

[2] In the protective order plaintiffs propose, "Outside Attorneys' Eyes Only" includes (i) approximately 70 counsel of record, (ii) employees of those firms (a group of countless unidentified individuals), and (iii) experts or consultants and their staff. Thus, the "attorneys' eyes only" designation is a misnomer. In fact, plaintiffs propose that hundreds of individuals, many of whom would never be disclosed to Abbott or Fournier, be given access to Abbott's and Fournier's most valuable information. When dealing with such a large group of people, the likelihood of even an inadvertent disclosure is substantial. Moreover, after the information is disclosed, there is no way to "put the genie back in the bottle."