# Morris, Nichols, Arsht & Tunnell LLP

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

302 658 9200
302 658 3989 Fax

**Mary B. Graham**
(302) 351-9287
mgraham@mnat.com

February 27, 2006

The Honorable Kent A. Jordan
United States District Court
844 King Street
Wilmington, DE 19801

**VIA HAND DELIVERY
AND ELECTRONIC FILING**

Re: *In re TriCor® Direct Purchaser Antitrust Litigation*
C.A. No. 05-340 (KAJ)

      Abbott and Fournier request that the Court compel the direct purchaser plaintiffs ("DPPs") to produce, for TriCor® and other fenofibrate products (and the generic equivalents), information regarding their transactional level sales, contracts, accounting information, and pricing and sales policies/strategies, (collectively, "downstream sales").[1] Specific document requests to the putative class and opt-out DPPs seek this information.[2]

      The DPPs have refused to provide any information concerning their downstream sales, asserting that because they seek damages based only upon an "overcharge" theory, such information is not relevant.[3] The DPPs are incorrect. The information is relevant to two important issues—class certification of the putative DPP class, and the alleged damages suffered by the indirect purchaser plaintiffs, a second putative class in this litigation.

### A. Downstream Sales Information Is Relevant to Class Certification

      Information regarding the DPPs' downstream sales is relevant to whether a class of DDPs may be certified at all. Under Fed. R. Civ. P. 23, a class should not be certified when the class representatives may have disparate interests from other members of the putative class.

      The putative class of DPPs includes both wholesalers and retailers of prescription drug products, who likely use varying formulas and strategies for determining pricing. The named plaintiffs are small regional wholesalers. These companies almost certainly use different pricing strategies than others within their putative class, companies that account for a far larger

---

[1] There are two groups of DPPs: (1) the putative class DPPs (C.A. No. 05-340) and (2) the opt-out DPPs (the Walgreen Plaintiffs (C.A. No. 05-404) and the Rite Aid Plaintiffs (C.A. No. 05-605)). This motion to compel is directed to both groups. Arguments in Section A relate to the putative class. Section B relates to both the putative class and the opt-outs.

[2] Abbott's and Fournier's Document Requests Nos. 5-7 and 10-22 to the putative class DPPs and Nos. 5, 7, 9, 12-15, and 23-25 to the opt-out DPPs. *See* Exhibits A and B (Rochester Drug Co-operative Inc.'s Responses and Walgreen Plaintiffs' Responses) for examples of the relevant document requests to the DPPs. Although some of the document requests seek information relating to "Other Lipid Products," we are not seeking the production of such information at this time through this motion to compel.

[3] *See, e.g.*, Ex. A, Response to Request Nos. 5-7 and 10-22.

The Honorable Kent A. Jordan
February 27, 2006
Page 2

portion of direct sales. In particular, the putative class includes the three major national wholesalers,[4] often referred to as the "Big Three," which account for approximately ninety percent of U.S. wholesale prescription drug distribution. The Big Three generally operate on a "cost-plus" basis, meaning customers pay the same percentage mark-up on all wholesale acquisition prices, whether buying a generic or brand-name product. Under this pricing strategy, the higher the acquisition cost, the higher the cost-plus price and resulting profits.

Because the acquisition price for brand-name products is generally higher – in some cases exponentially so – than for generics, the Big Three stand to *profit* from the absence of generic alternatives. Their position is therefore in diametric opposition to that of the named plaintiffs, who claim financial harm from the absence of a generic fenofibrate on the market. To challenge class certification, Abbott and Fournier need discovery on whether their contracts, pricing schemes and practices place plaintiffs in conflict with other direct purchasers who stood to gain from the absence of a generic alternative. *See Bieneman v. City of Chicago*, 864 F.2d 463, 465 (7th Cir. 1988) (refusing to certify a class where some class members would benefit from the challenged conduct and so "oppose[d class members] differently situated").

The Eleventh Circuit has addressed the very issue in this motion and ordered the named plaintiffs of a putative direct purchaser class to produce downstream sales information. In *Valley Drug v. Geneva Pharmaceuticals,* 350 F.3d 1181 (11th Cir. 2003), the court held that Abbott was entitled to "downstream discovery" to test whether some direct purchasers benefited from the absence of a generic alternative on the market. The court held that, because of differences in pricing strategies between the large national wholesalers and small regional companies, class certification was in doubt, and discovery of the named plaintiffs' downstream sales was warranted in connection with class certification. *Id.* at 1195 (requiring "the district court to permit 'downstream discovery' to determine whether a fundamental conflict exists among the class members").

The Eleventh Circuit expressly rejected arguments that the production would be burdensome, particularly because the putative class representative had the burden of proving the appropriateness of class certification (*id.* at 1196):[5]

> [W]e do not believe that it is unduly burdensome to require the named representatives to bring forth evidence to the court that no fundamental conflict exists among the class members, especially in view of the fact that under Rule 23 it is the plaintiffs, as the moving party, who bear the burden of proving that class certification is appropriate because class actions are not an automatic entitlement under our rules of civil procedure.

In resisting our discovery, the DPPs have asserted to us that the Eleventh Circuit was incorrect and that, on remand, the district court did not find a realistic conflict within the class.[6] This argument misses the point. Regardless of how this Court ultimately rules on this

---

[4] Cardinal Health Inc., McKesson Corporation, and AmerisourceBergen Corporation.

[5] Given that the DPPs collectively have only produced roughly 900 pages to date, they can hardly be heard to complain about the burdensomeness of producing these highly relevant documents.

[6] The DPPs may also cite to a recent district court decision in this Circuit, *In re Pressure Sensitive Labelstock Antitrust Litigation*, 226 F.R.D. 492 (M.D.Pa. 2005), in opposition to this motion. That decision is irrelevant to the present case. The *Pressure Sensitive* court denied "downstream discovery" of a direct purchaser class in a non-pharmaceutical industry because there was no showing of conditions

The Honorable Kent A. Jordan
February 27, 2006
Page 3

question, it will be a point of dispute between plaintiffs and defendants and is therefore an appropriate subject for discovery. Moreover, *Valley Drug* has not been overturned. And while the district court noted its belief that the actual downstream discovery evidence showed an absence of fundamental conflict within the class, the defendants had the opportunity to obtain such discovery from the putative class representatives and to oppose class certification based on discovery. *See In re Terazosin Hydrochloride Antitrust Litigation*, 223 F.R.D. 666, 679 (S.D. Fla. 2004). Furthermore, on remand, the district court denied class certification because the putative direct purchaser class did not comply with the Eleventh Circuit's "clear mandate" to satisfy its burden of demonstrating "a homogenous class." *Id.* at 680.

By resisting our specific document requests on the fundamental issue of conflicts within the putative class, DPPs are acting as if they are entitled to a "rubber stamp" on class certification and as if they are not obligated to provide relevant discovery. The same types of potential conflicts mandating discovery in *Valley Drug* exist here, and the same ruling regarding "downstream discovery" is appropriate.

**B.    "Downstream Sales" Information Is Relevant to the Damages Alleged by the Putative Indirect Purchaser Class**

Information concerning the DPPs' downstream sales to "indirect purchasers" (*e.g.*, pharmacies, health insurance plans and individuals) – who constitute a related putative class in this litigation – is directly relevant to the damage claims of the indirect purchaser plaintiffs. This second putative class alleges that it was harmed by paying a higher price to the DPPs than they would have paid had a generic alternative been available.

To evaluate these damages claims, it is necessary for Abbott and Fournier to discover the differences in prices at which the DPPs would have sold generic fenofibrate products versus TriCor® and other branded fenofibrate products. The actual sales data indicating the prices that the DPPs charged for TriCor® and other fenofibrate drugs and the information showing the strategies used by the DPPs to set their prices for generic drugs will allow Abbott and Fournier to assess and rebut the indirect purchaser plaintiffs' damage theory.

While the DPPs and indirect purchasers are separate parties; they are linked in the pharmaceutical industry and this litigation. The documents we seek are directly relevant to the actions and uniquely in the possession of the DPPs. Moreover, the DPPs would be subject to non-party discovery even if the indirect purchaser action were the only pending action. Under these circumstances, the DPPs should be required to produce "downstream sales" information.

*    *    *

Abbott and Fournier respectfully request that this Court compel all of the DPPs to produce "downstream sales" information for TriCor® and other fenofibrate products.

Respectfully,

*/s/ Mary B. Graham (#2256)*

Mary B. Graham

---

making it probable that some large subset of the class had interests antagonistic to other class members. The court expressly distinguished the situation it was considering from *Valley Drug*, where the probability of conflict existed.

The Honorable Kent A. Jordan
February 27, 2006
Page 4


cc:     Clerk of the Court (via electronic filing)
        All Counsel of Record (via e-mail)