**ROSENTHAL, MONHAIT, GROSS & GODDESS, P. A.**
ATTORNEYS AT LAW
SUITE 1401, 919 MARKET STREET
P. O. BOX 1070
WILMINGTON, DELAWARE 19899-1070

JOSEPH A. ROSENTHAL
NORMAN M. MONHAIT
KEVIN GROSS
JEFFREY S. GODDESS
CARMELLA P. KEENER
EDWARD B. ROSENTHAL
JESSICA ZELDIN

TELEPHONE (302) 656-4433
FACSIMILE (302) 658-7567
E-MAIL RMGG@RMGGLAW.COM

March 2, 2006

The Hon. Kent A. Jordan
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801

RE: *In re Tricor Direct Purchaser Antitrust Litig.*, C.A. No. 05-340 (KAJ)

Dear Judge Jordan:

  This responds to the February 27 letter-brief ("LB") of Abbott and Fournier ("Defendants") (D.I. 90) in which Defendants seek an exemption from the rule against "downstream" discovery. Defendants' motion specifically requests voluminous documents and data from the named direct purchaser plaintiffs and the individual retailer plaintiffs (collectively, the "DPPs") relating to DPPs' *resales* of fenofibrate products, and the relative profitability of plaintiffs' downstream sales of these products. Defendants implicitly concede that *none of this information has any relevance whatsoever to the merits of the DPPs' lawsuits*. Defendants assert instead that "downstream" discovery is relevant to assess the adequacy of the named plaintiffs as class representatives. Defendants say they will use the discovery to perform some unexplained mathematical computations comparing the net economic effects of Defendants' conduct on the named plaintiffs to that of certain large absent class members – the "Big Three" national wholesalers. Defendants hope to perform unspecified profitability analyses as a means to evaluate indirectly what the Defendants believe is a core issue: whether the interests of the national wholesalers in pursuing overcharge damages in this case are aligned with those of the named plaintiffs. LB,1-2. Defendants' motion, thus, necessarily implicates highly voluminous and burdensome "downstream" discovery not only from the DPPs, but also from these large absent class members (and potentially others) as well.

  As detailed below, Defendants' request (a) has no basis in applicable law; (b) is unsupported by evidence of any kind; (c) is flatly contradicted by letters from each of the national wholesalers themselves, who expressly proclaim the absence of any conceivable conflict;[1] and (d) is grounded in erroneous assumptions about the drug distribution business. Defendants have not met their burden of demonstrating even the possibility of a cognizable class conflict, and thus the motion should be denied in its entirety.

---

[1] *See* letters by Mssrs. Long (Cardinal Health) (Ex. A), Huston (McKesson) (Ex. B), and Bizar (AmerisourceBergen) (Ex. C).

**I. "Downstream" Discovery Has Almost Universally Been Barred**: This is a case brought by entities who purchased Tricor directly from Defendants, seeking to recover overcharges under the federal antitrust laws. For important public policy reasons – including ensuring adequate antitrust deterrence and enforcement – the Supreme Court has held that a direct purchaser is entitled to recover the "full amount" of any overcharge. *E.g., Hanover Shoe v. United Shoe*, 392 U.S. 481 (1968). The "downstream" effects of the overcharge – including, for example, inquiry into direct purchasers' own sales and profits – have long been held to be *irrelevant as a matter of law. Id.* Moreover, due to the myriad of complications regarding tracing "downstream" effects, merely wading into this issue would weaken enforcement, undermining the very purposes of the antitrust laws. *Id.* at 494. Consequently, what matters in an overcharge case is the sale to the direct purchaser, not what occurs further "downstream" in the chain of distribution. *Bogosian v. Gulf Oil,* 561 F.2d 434, 455-56 (3d Cir.1977) (irrelevant to class certification that some class members may have gained net profits due to defendant's anticompetitive conduct, and thus "enormously complicated" proofs regarding "loss of profit" are unwarranted).[2]

Because the fruits of downstream discovery have almost been uniformly been considered irrelevant, courts have repeatedly denied attempts to pursue it for any purpose, including class certification. *In re Vitamins*, 198 F.R.D. 296, 301 (D.D.C. 2000) (*"no court has ever allowed production of individualized downstream data"*); *In re Carbon Dioxide,* MDL 940, slip op. at 2 (M.D. Fla. Dec. 10, 1992) (plaintiffs' resale information "is not relevant to class certification") (Ex. D).[3] **Just last year, three courts in this Circuit denied downstream discovery, rejecting arguments nearly identical to those raised by Defendants here**: (1) *In re K-Dur*, No. 01-CV-1652, Order at ¶ 2 (D.N.J. Mar. 24, 2005) (Haneke, M.J.) (rejecting argument that downstream discovery from the named plaintiff and national wholesalers was relevant to class certification in a case, like this one, alleging improperly delayed generic entry) (Ex. G); (2) *Louisiana Wholesale Drug v. Becton Dickinson*, C.A. No. 05-CV-1602 (JLL) (D.N.J. Oct. 17, 2005) (Hedges, M.J.) (denying downstream discovery from named plaintiffs and national wholesalers) ("*Becton*") (Ex. H); and (3) *In re Pressure Sensitive Labelstock*, 226 F.R.D. 492, 498 (M.D. Pa. 2005) (denying discovery of "downstream data regarding Plaintiffs' sales to their customers" as more burdensome than beneficial; marginal relevance to class certification issues outweighed by burden).[4] In *Becton,* Judge Hedges explicitly rejected Defendants' main justifications for "downstream" discovery as "neither shared by this Court nor this circuit." *Becton* at 4.

---

[2] Courts have long held that the "net effects" analyses that Defendants say they want to conduct are *irrelevant to class conflicts and class certification. E.g., J.B.D.L. v. Wyeth-Ayerst,* 225 F.R.D. 208, 216 (S.D. Ohio 2003); *In re Buspirone,* 210 F.R.D. 43, 59-61 (S.D.N.Y. 2002) (same); *In re Visa Check,* 192 F.R.D. 68, 85 (E.D.N.Y. 2000) (defendant's argument that its illegal conduct benefitted some class members and thus would "create 'winners' and 'losers' . . . is immaterial"); *In re Relafen,* 218 F.R.D. 337, 344 (D. Mass. 2003).

[3] *In re Monosodium Glutamate,* MDL 00-1328 (D. Minn. Sept. 14, 2000) (denying downstream discovery due to "lack of relevance") (Ex. E); *Lumco Ind. v. Jeld-Wen,* No. 96-CV-2125 (E.D. Pa. May 16, 1997) (same) (Ex. F).

[4] Defendants say *Labelstock* is "irrelevant" because in *Labelstock*, the defendants had not met their burden of "showing . . . conditions making it probable that some large subset of the class had interests antagonistic to other class members." LB, 2-3, n. 6. As Plaintiffs show below, *Labelstock* is directly on point because Defendants here also failed to produce *any* evidence of class antagonism.

**II. *Valley Drug* Does Not Support "Downstream Discovery" Here:** Defendants' motion rests on a *single case*: *Valley Drug v. Geneva Pharm.*, 350 F.3d 1181 (11th Cir. 2003) (*remand*, 223 F.R.D. 666 (S.D. Fla. 2004)) – the *first case ever to sanction* downstream discovery. *See* 223 F.R.D. at 679 (downstream discovery is "novel"). Defendants argue, based on *Valley Drug,* that, unlike the named plaintiffs, the national wholesalers may have derived a "net economic benefit" from Defendants' anticompetitive conduct. Defendants then claim that "fact" is relevant to the "adequacy" of the named plaintiffs as class representatives under F.R.C.P. 23(a)(4). This argument assumes (wrongly, as shown below) that (a) the national wholesalers not only purportedly sell via percentage markup, but that they supposedly apply the same percentage markup to brand and (less expensive) generic drugs, and thus, (b) the national wholesalers supposedly make more money on brands than generics. As a result, Defendants claim that the national wholesalers have "benefitted" from Defendants' successful efforts to delay generic entry, and therefore are purportedly in "conflict" with the named plaintiffs, who are challenging Defendants' efforts to impede generic entry. Defendants' argument is wholly without merit.

*First*, *Valley Drug* is directly contrary to clear law of this Circuit: no fundamental conflict under Rule 23(a)(4) can even conceivably exist where, as here, all class members are seeking to enforce the same legally cognizable rights. *E.g., Warfarin*, 391 F.3d at 532-33 (as long as the underlying *legal* claims are aligned, there is no cognizable class conflict); *Becton* at 4-5 (same); *In re Metropolitan Life*, 1999 WL 33957871, at *21 (W.D. Pa. Dec. 28, 1999) ("so long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes"); *Griffin v. Burns*, 570 F.2d 1065, 1073 (1st Cir. 1978). **Defendants do not challenge the fact that all DPPs have the *legal right* to recover the full amount of Defendants' overcharge, regardless of whether some obtained a "net" benefit from Defendants' conduct.**[5] Defendants' position, rather, is that some absent class members may not want to recover millions of dollars in overcharges in this case because, in Defendants' view, some may have benefitted from the challenged conduct. Under applicable law, however, where (as here) it is undisputed that all class members have *the right* to pursue overcharges, and where the named plaintiffs are seeking to effectuate that right, there can be no class conflict no matter what downstream discovery could possibly show.[6]

*Second*, the endlessly complicated "lost profits" computations that *Valley Drug* appeared to sanction could never logically trump, *even theoretically*, the fact that the **three national wholesalers have each expressly stated to this Court that there is no class conflict or antagonism.** Each of the three national wholesalers has written to this Court *expressly* stating that: (1) its interests in this suit are *aligned with* – and **not** antagonistic to – those of the named plaintiffs; (2) it wishes to

---

[5]*E.g., Valley Drug*, 350 F.3d at 1192 ("a direct purchaser . . . suffers cognizable antitrust injury . . . regardless of whether he actually profited from the defendants' conduct").

[6]The circumstances here are in sharp contrast *Bieneman v. City of Chicago*, 864 F.2d 463 (7th Cir. 1988) (LB, 2), where the *underlying legal claims* related, in part, to diminished value of property, and certain absent class members' land values went up (and thus had no *legal* claim). *Id*. at 465. Here, all of the class members' underlying legal claims are exactly aligned: all were overcharged due to Defendants' conduct, and all can potentially recover through this suit.

participate in this case going forward as a class member represented by the named plaintiffs; and (3) the named plaintiffs *can* adequately represent its interests in this litigation. *See* Exs. A, B, & C. The 11th Circuit in *Valley Drug* had no similar evidence in the record, and, as a result assumed (erroneously) that the national wholesalers might have had no interest in, or even opposed, the prosecution of that class action. 350 F.3d at 1193.

Thus, there is no possible justification for downstream discovery here: the direct evidence answers definitively the only relevant question, *i.e.*, whether the national wholesalers' interests would be served by prosecuting this suit. The overwhelming direct evidence of absence of conflict is bolstered by the fact that the national wholesalers, and virtually all other direct purchasers, have *repeatedly supported* these same named plaintiffs' prior suits challenging efforts to impede generic competition – *e.g.*, *Cardizem*, *Buspirone*, *Relafen*, *Remeron*, *Valley Drug/Terazosin*. The national wholesalers have collectively recovered **hundreds of millions of dollars** in overcharges from class actions that Defendants now improbably claim are against these wholesalers' interests.

The specific experience of *Valley Drug* on remand is highly instructive. The remand court – bound, unlike this Court, by *Valley Drug* itself – permitted a burdensome months-long foray into downstream effects (223 F.R.D. at 674), purportedly to try and determine whether pursuing that case was in the "interests" of the absent class members, including the national wholesalers. Data was produced at great expense. Experts scrutinized the data. A full hearing was held. And despite all this effort, in the end, neither the defendants (including Abbott), nor the district court, could even articulate *any* foreseeable conflict. *See* 223 F.R.D. at 678 ("Defendants cannot articulate any potential or actual conflict or antagonism"); *id.* at 679 ("the evidence indicates there is no class antagonism or conflict, much less a fundamental one"). While the remand court declined to recertify at that time solely due to its (erroneous) view that the 11th Circuit had imposed a unique requirement that classes must be "homogeneous . . . to avoid any potential *unforeseen* conflict" (223 F.R.D. at 680) (emphasis added), the view that a class may not be certified due to "potential unforeseen conflicts" is inapplicable in the Third Circuit, where a purported "conflict" must be concrete, not "unforeseen." *E.g.*, *In re Flat Glass*, 191 F.R.D. 472, 482 (W.D. Pa. 1999) (courts have "'rejected efforts . . . to defeat certification by raising the possibility of hypothetical conflicts or antagonisms among class members'").

**Third,** the national wholesalers – whose interests Defendants are purportedly seeking to "safeguard"[7]– do not need Defendants' help. These wholesalers – sophisticated businesses that know far better than Defendants do what is in their best interests[8] – will (along with all class members) be given the chance, after class certification, to decide whether to participate in this suit. If, after receiving due notice as provided by Rule 23, any class member believed the case was

---

[7] The only relevant issue with regard to class conflicts is protecting the due process rights of absent class members. *In re GMC Pick-Up Truck*, 55 F.3d 768, 796 (3d Cir. 1995).

[8] As the court in *Eggleston v. Chicago Journeymen*, 657 F.2d 890, 895 (7th Cir. 1981), wryly observed, the prospect of defendants seeking discovery to protect the interests of absent class members is "a bit like permitting a fox, although with a pious countenance, to take charge of the chicken house."

contrary to its interests, it could opt-out. *See Race Buick v. GM*, 1994 WL 868022, at * 4 (W.D. Pa. Oct. 11, 1994) ("To the extent that differences of opinion exist . . ., the Court is satisfied that the differences can be adequately addressed by the opt-out procedure[.]"); *Becton* at 5; Moore's *Fed. Prac.*§ 23.25[2][b] at 23-121; *Smilow v. Southwestern Bell Mobile Sys.*, 323 F.3d 32, 43 (1st Cir. 2003).

***Fourth***, Defendants' factual premise (drawn exclusively from dicta in *Valley Drug*, which had little in the record on this point) that the national wholesalers make more money selling brands than generics is not merely unsupported, it is *false*. As their vigorous participation in this and other similar suits implicitly reveals, the national wholesalers do *not* benefit from delayed generic entry as Defendants assume because, *inter alia*, and contrary to Defendants' unsupported assertions, **the national wholesalers' markups on generics are substantially higher than on brands**. *E.g.*, Fitch Ratings Report (Oct. 14, 2003), at 2-3 (wholesaler margins "are frequently three to five times greater on generics than on branded drugs, and the related profitability gains more than offset reduced revenues associated with lower-priced generics"); JP Morgan, 2003 Distribution Outlook at 13-17 ("We estimate that gross margin on the distribution of generic products [for the national wholesalers] is generally three to five times higher than branded drugs") (excerpts attached collectively as Ex. I).

**III. Whatever Relevance Downstream Sales Data Has to the End-Payor Case (to which the DPPs are Non-Parties) Is Far Outweighed by the Burden of Producing It:** According to Defendants, they need downstream discovery to establish "the differences in prices at which the DPPs would have sold generic fenofibrate products versus TriCor and other branded fenofibrate products." LB, 3. This is meritless. ***First***, the named plaintiffs (wholesalers and one retailer proceeding on an assignment) and the national wholesalers are, with one exception, *wholesalers*, not retailers. But, the End Payors, who are *not* retailers, but consumers and third party payors (End Payor Plaintiffs' Consolidated Class Action Complaint ¶¶ 9, 99), *buy from retailers not wholesalers*, and thus, the sought information can tell Defendants little about the prices End Payors pay. ***Second***, as Defendants well know, there exist in this industry vastly superior and more comprehensive sources of data reflecting prices paid by the End Payors, namely data vendors such as IMS, which compile such information on a nationwide scale – data which Defendants already have or could easily obtain. ***Third***, no amount of downstream discovery will show Defendants the difference in the retail prices charged for branded versus generic TriCor because, as a result of Defendants' illegal scheme, no generic version of TriCor has been successfully launched. ***Fourth***, while the retailer plaintiffs are pharmacies and do sell to some members of the End Payor Class, the retailers are not parties to the End Payor cases. Thus, the limited relevance of their sales data is greatly outweighed by the burden of producing it. *Vitamins*, 198 F.R.D. at 301 ("the proposition that there are indirect purchasers in this case who may assert claims for damages other than direct overcharges is not sufficient to carry defendants' burden of showing that this information ought to be produced by the direct purchasers"); Fed. R. Civ. P. 45(c)(1). The retailer plaintiffs in total account for only about a third of the retail sales of prescriptions drugs in the U.S., and, as noted above, the data requested by Defendants will show only the sales and prices of *branded* TriCor. Production of this data will require enormous effort from archived systems and will be of virtually no use. For this and all of the foregoing reasons, Defendants' motion should be denied.

Respectfully,

Jessica Zeldin (Del. Bar No. 3558)

cc: All counsel of record on attached service list

## CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2006, I electronically filed the foregoing LETTER-BRIEF using CM/ECF, which will send notification of such filing to all registered participants, as follows:

Josy W. Ingersoll, Esquire
John W. Shaw, Esquire
Karen Keller, Esquire
Young Conaway Stargatt & Taylor
The Brandywine Building
1000 West Street, 17th Floor
P. O. Box 391
Wilmington, DE 19899-0391

Mary B. Graham, Esquire
Morris Nichols Arsht & Tunnell
1201 North Market Street
P. O. Box 1347
Wilmington, DE 19899

Frederick L. Cottrell, III, Esquire
Anne Shea Gaza, Esquire
Richards Layton & Finger
One Rodney Square
920 North King Street
Wilmington, DE 19801

Mary B. Matterer, Esquire
Morris James Hitchens & Williams
222 Delaware Avenue
10th Floor
P. O. Box 2306
Wilmington, DE 19899

Pamela S. Tikellis, Esquire
Robert J. Kriner, Jr., Esquire
A. Zachary Naylor, Esquire
Chimicles & Tikellis lLP
One Rodney Square
P. O. Box 1035
Wilmington, DE 19899

Jonathan L. Parshall, Esquire
Murphy Spadaro & Landon
1011 Centre Road
Suite 210
Wilmington, DE 19801

Elizabeth M. McGeever, Esquire
Prickett Jones Elliott, P.A.
1310 King Street
P. O. Box 1328
Wilmington, DE 19899

Michael I. Silverman, Esquire
Lynn A. Iannone, Esquire
Silverman & McDonald
1010 N. Bancroft Parkway #22
Wilmington, DE 19805

Patrick Francis Morris, Esquire
Morris & Morris
1105 North Market Street
Suite 803
Wilmington, DE 19801

I hereby certify that on March 2, 2006 I sent by electronic mail the foregoing document to the following non-registered participants:

REPRESENTING DIRECT PURCHASER CLASS
(C.A. No. 05-340):

Bruce E. Gerstein
**bgerstein@garwingerstein.com**

Barry S. Taus
**btaus@garwingerstein.com**

Adam M. Steinfeld
**asteinfeld@garwingerstein.com**

Daniel Berger
**danberger@bm.net**

Eric L. Cramer
**ecramer@bm.net**

Peter Kohn
**pkohn@bm.net**

Neill W. Clark
**nclark@bm.net**

Linda P. Nussbaum
**lnussbaum@cmht.com**

Steig D. Olson
**solson@cmht.com**

David P. Germaine
**dgermaine@daarvanek.com**

Joseph Vanek
**jvanek@daarvanek.com**

|  |  |
|---|---|
|  | Stuart Des Roches<br>**stuart@odrlaw.com**<br><br>Andrew Kelly<br>**akelly@odrlaw.com**<br><br>Adelaida Ferchmin<br>**aferchmin@odrlaw.com**<br><br>David P. Smith<br>**dpsmith@psfllp.com**<br><br>Russell A. Chorush<br>**rchorush@hpcllp.com**<br><br>Michael F. Heim<br>**mheim@hpcllp.com** |
| REPRESENTING WALGREEN, ECKERD, KROGER, MAXI, CVS, RITE AID (C.A. No. 05-340): | Elizabeth M. McGeever<br>**emmcgeever@prickett.com**<br><br>Scott E. Perwin<br>**sperwin@kennynachwalter.com**<br><br>Joseph T. Lukens<br>**jlukens@hangley.com** |
| REPRESENTING PACIFICARE (C.A. No. 05-340): | Jonathan L. Parshall<br>**jonp@msllaw.com**<br><br>William Christopher Carmody<br>**bcarmody@susmangodfrey.com**<br><br>John Turner<br>**jturner@susmangodfrey.com**<br><br>Shawn Rabin<br>**srabin@susmangodfrey.com** |

|  |  |
|---|---|
|  | Justin Nelson<br>**jnelson@susmangodfrey.com**<br><br>Ken Zylstra<br>**kzylstra@sbclasslaw.com**<br><br>Lyle Stamps<br>**lstamps@sbclasslaw.com**<br><br>Steve Connolly<br>**sconnolly@sbclasslaw.com**<br><br>Casey Murphy<br>**cmurphy@sbclasslaw.com**<br><br>Mark Sandman<br>**mms@rawlingsandassociates.com**<br><br>Jeffrey Swann<br>**js5@rawlingsandassociates.com** |
| REPRESENTING IMPAX<br>LABORATORIES (C.A. No. 03-120) | Mary Matterer<br>**mmatterer@morrisjames.com**<br><br>John C. Vetter<br>**jvetter@kenyon.com**<br><br>Asim Bhansali<br>**abhansali@kvn.com** |
| REPRESENTING INDIRECT PARTY<br>PLAINTIFFS (C.A. No. 05-360): | Pamela S. Tikellis<br>Thomas M. Sobol<br>Patrick E. Cafferty<br>Jeffery L. Kodroff<br>Bernard J. Persky<br>Michael Gottsch<br>A. Zachary Naylor<br>Robert Davis<br>Brian Clobes<br>Michael Tarringer |

|  |  |
|---|---|
|  | Tim Fraser<br>David Nalven<br>Greg Matthews<br>Christopher McDonald<br>Kellie Safar<br>Ted Lieverman<br>Pat Howard<br>**tricor@chimicles.com**<br><br>Michael I. Silverman<br>mike@silverman-mcdonald.psemail.com<br><br>Lynn A. Iannone<br>lynn@silverman-mcdonald.psemail.com<br><br>Patrick Francis Morris<br>**pmorris@morrisandmorrislaw.com** |
| REPRESENTING TEVA<br>PHARMACEUTICALS (C.A. No. 02-1512): | Josy W. Ingersoll<br>Bruce M. Gagala<br>Karen E. Keller<br>Christopher T. Holding<br>Ken Cohen<br>Elaine Blais<br>**tricor@ycst.com** |
| REPRESENTING ABBOTT (ALL CASES): | Mary B. Graham<br>**tricor@mnat.com**<br><br>William F. Cavanaugh<br>**wfcavanaugh@pbwt.com**<br><br>Chad J. Peterman<br>**cjpeterman@pbwt.com** |

REPRESENTING FOURNIER (ALL CASES):	Frederick L. Cottrell, III
Anne Shea Gaza
Steven S. Sunshine
Matthew P. Hendrickson
Bradley J. Demuth
Maggie DiMoscato
Timothy C. Bickham
**tricor@rlf.com**

_____
Jeffrey S. Goddess (Del. Bar No. 630)
Jessica Zeldin (Del. Bar No. 3558)
Rosenthal, Monhait, Gross
 & Goddess, P.A.
Suite 1401, 919 Market Street
P. O. Box 1070
Wilmington, DE 19899-1070
(302) 656-4433
jgoddess@rmgglaw.com