# EXHIBIT G

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21087979 (D.D.C.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,District of Columbia.
ONCOLOGY & RADIATION ASSOCIATES, P.A.,
Plaintiff,
v.
BRISTOL-MYERS SQUIBB COMPANY and ABI,
Defendants.
No. Civ.A.1:01CV02313(EG.

May 13, 2003.

Cravath, Swaine & Moore, Evan R. Chesler, Richard
J. Stark, New York, New York, for Bristol-Myers
Squibb Company, pro se.
Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Linda P.
Nussbaum, New York, NY, Cohen, Milstein,
Hausfeld & Toll, P.L.L.C., Michael D. Hausfeld,
Washington, D.C., for Plaintiff and the Class.

*ORDER CONDITIONALLY CERTIFYING
SETTLEMENT CLASS, PRELIMINARILY
APPROVING PROPOSED SETTLEMENT, AND
AUTHORIZING NOTICE TO BE SENT TO THE
CLASS*

SULLIVAN, J.
*1 Upon review and consideration of the (i)
Stipulation of Settlement dated March 14, 2003,
executed on behalf of Plaintiff Oncology & Radiation
Associates, P.A. ("Plaintiff"), individually and as
representative of the proposed class (as defined
herein), and on behalf of Bristol-Myers Squibb
Company ("Bristol"), and the exhibits attached
thereto; and (ii) Stipulation of Settlement dated May
8, 2003, executed on behalf of Plaintiff Oncology &
Radiation Associates, P.A. ("Plaintiff") individually
and as representative of the proposed class (as
defined herein), and on behalf of American
BioScience, Inc. ("ABI") (collectively, the
"Settlement Agreements"), it is hereby ORDERED as
follows:

*PRELIMINARY APPROVAL OF SETTLEMENT
AND CONDITIONAL CERTIFICATION OF THE
SETTLEMENT CLASS*

1. This Court finds that it has jurisdiction over this
Action and each of the parties to the Settlement

Agreements.

2. The terms of the Settlement Agreements are
hereby preliminarily approved and discovery is
hereby stayed except to the extent discovery is
necessary with respect to opt outs and for purposes of
administering and consummating the Settlement
Agreements, subject to further consideration thereof
at the hearing on final settlement (the "Fairness
Hearing") provided for below. The Court finds that
the settlement encompassed by the Settlement
Agreements (the "Settlement") is sufficiently within
the range of reasonableness so that notice of the
Settlement should be given as provided in Paragraphs
6, 7 and 8 of this Order.

*CLASS CERTIFICATION*

3. Pursuant to Rule 23 of the Federal Rules of Civil
Procedure, the Court hereby conditionally finds that
the prerequisites for a class action have been met and
conditionally certifies the following class (the
"Class") for settlement purposes only:
All persons and entities in the United States who
purchased Taxol directly from Bristol or its
subsidiaries at any time from January 1, 1999,
through March 14, 2003. Excluded from the class are
defendants, their parents, subsidiaries and affiliates,
and government entities.

4. The Court further hereby conditionally finds that
Plaintiff is an adequate class representative for the
Class. If the Settlement Agreements are terminated or
are not consummated for any reason whatsoever, the
certification of the Class shall be void, and Plaintiff,
Bristol and ABI (the "Settling Entities") shall have
reserved all of their rights to propose or oppose any
and all class certification motions and to contest the
adequacy of Plaintiff as a representative of any
putative plaintiff class.

5. Cohen, Milstein, Hausfeld & Toll, P.L.L.C. is
appointed as lead counsel for the Class ("Lead
Counsel").

*NOTICE TO POTENTIAL CLASS MEMBERS*

6. Within 20 days after the date of entry of this Order,
Lead Counsel shall cause copies of the Notices of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Proposed Settlement and Settlement Hearing, substantially in the form attached as Exhibit A hereto, to be mailed by first class mail, postage prepaid, to all members of the Class, to the extent that they can be identified with reasonable diligence.

*2 7. Lead Counsel shall cause to be published a summary notice, which shall be substantially in the form attached as Exhibit B hereto ("Publication Notice") one day a week for two consecutive weeks in the Modern Healthcare Magazine and The Pink Sheet, as soon as practicable after Mail Notice, and in all events, at least 30 days prior to the Fairness Hearing.

8. Prior to the Fairness Hearing, Lead Counsel shall serve and file a sworn statement attesting to compliance with the provisions of Paragraphs 6 and 7 of this Order.

9. The foregoing notice provisions are hereby found to be the best means of providing notice under the circumstances and, when completed, shall constitute due and sufficient notice of the Settlement and the Fairness Hearing to all persons affected by and/or entitled to participate in the Settlement, in full compliance with the notice requirements of Rule 23 of the Federal Rules of Civil Procedure and due process.

### CLAIMS ADMINISTRATION

10. To effectuate the Settlement and Notice provisions, Lead Counsel has designated Complete Claim Solutions as the Settlement Administrator, which designation is hereby approved, to be responsible for: (a) establishing a P.O. Box and toll-free phone number (to be included in the Notices to the Class) for the purpose of communicating with Class members; (b) disseminating notices to the Class; (c) accepting and maintaining documents sent from Class members including opt-out forms, claim forms, and other documents relating to claims administration; and (d) administering claims for allocation of funds among Class members.

11. As described in the Notices to the Class, any Class member may opt out of the Class by mailing a completed Request for Exclusion to the Settlement Administrator within 45 days after the date on which Notice is mailed to the Class. Persons or entities that request exclusion from the Class will not be entitled to share the benefits of Settlement, nor be bound by any judgment, whether favorable or adverse.

12. Any potential member of the Class that does not properly and timely mail a Request for Exclusion as set forth in Paragraph 11 above shall be included in the Class and shall be bound by all the terms and provisions of the Settlement Agreement, whether or not such potential member of the Class shall have objected to the Settlement and whether or not such potential member of the Class makes a claim upon or participates in the Settlement.

### FEE PETITION, INCENTIVE AWARD, AND MOTIONS FOR FINAL APPROVAL AND APPROVAL OF PROPOSED PLAN OF ALLOCATION

13. On or before June 15, 2003, counsel for the Class shall file their application for attorneys' fees and expenses (the "Fee Petition"), an application for an incentive award for Plaintiff, a motion for final approval of the Settlement, and a motion for approval of their proposed plan of allocation of net settlement proceeds to the Class.

### THE FAIRNESS HEARING

14. A Fairness Hearing is hereby scheduled to be held on August 12, 2003 at 11:30 a.m. in Courtroom One before the undersigned to consider: (a) the fairness, reasonableness and adequacy of the Settlement; (b) the Fee Petition and application for an incentive award, and (c) whether to approve the proposed plan of allocation.

*3 15. Any member of the Class that has not filed a Request for Exclusion in the manner set forth above may appear at the Fairness Hearing in person or by counsel and may be heard, to the extent allowed by the Court, either in support of or in opposition to the fairness, reasonableness and adequacy of the Settlement, the Fee Petition and incentive award, or plan of allocation; provided, however, that no person shall be heard in opposition to the Settlement, the Fee Petition and incentive award, or plan of allocation, and no papers or briefs submitted by or on behalf of any such person shall be accepted or considered by the Court, unless on or before a date to be set in a subsequent order (but in no event less than thirty (30) days before the Fairness Hearing), such person: (a) files with the Clerk of the Court a notice of such person's intention to appear as well as a statement that indicates the basis for such person's opposition to the Settlement, the Fee Petition and incentive award,

Not Reported in F.Supp.2d                                                                                      Page 3
Not Reported in F.Supp.2d, 2003 WL 21087979 (D.D.C.)
(Cite as: Not Reported in F.Supp.2d)

or plan of allocation and any documentation in support of such opposition; and (b) serves copies of such notice, statement and documentation, as well as any other papers or briefs that such person files with the Court, either in person or by mail, upon Lead Counsel and counsel for Bristol and ABI.

16. The date and time of the Fairness Hearing shall be set forth in the Mail Notice and Publication Notice, but shall be subject to adjournment by the Court without further notice to the members of the Class other than that which may be posted at the Court and on the Court's website.

### OTHER PROVISIONS

17. Terms used in this Order that are defined in the Settlement Agreements are, unless otherwise defined herein, used in this Order as defined in the Settlement Agreements.

18. In the event the Settlements are terminated in accordance with the provisions of the Settlement Agreements, the Settlement and all proceedings had in connection therewith shall be null and void, except insofar as expressly provided to the contrary in the Settlement Agreements, and without prejudice to the *status quo ante* rights of Plaintiff, Bristol and ABI, and the members of the Class.

19. If the Settlements are terminated or ultimately not approved, the Court will modify any existing scheduling order to ensure that the Plaintiff and Defendants will have sufficient time to prepare for the resumption of litigation, including but not limited to the completion of discovery, preparation of expert reports, the filing of a summary judgment motion or motions, and preparation of trial.

### STIPULATION OF SETTLEMENT

This stipulation of settlement ("Settlement Agreement") is made and entered into as of this 14th day of March, 2003, between the named plaintiff in the above-captioned action (the "Action"), Oncology & Radiation Associates, P.A. ("Plaintiff"), individually and as representative of the proposed direct purchaser class in this Action, as defined in Section I.C below (the "Class"), and Bristol-Myers Squibb Company ("Bristol").

WHEREAS:

*4 A. Plaintiff commenced this Action on November 6, 2001, against Bristol and filed an amended complaint against Bristol and American BioScience Inc. ("ABI") on October 4, 2002 (the "Complaint");

B. Plaintiff brought this Action pursuant to the federal antitrust laws on behalf of itself and all non-governmental entities in the United States who purchased Taxol directly from Bristol since January 1, 1999, seeking treble damages and other relief as permitted by the federal antitrust laws;

C. Plaintiff alleges in the Complaint that Bristol (i) fraudulently obtained U.S. patent No. 5,641,803 (the " '803 patent") and U.S. patent No. 5,670,537 (the " '537 patent"), (ii) wrongfully listed the '803 patent and '537 patent in the Food and Drug Administration's ("FDA") Orange Book and (iii) commenced sham patent infringement litigation with respect to the '537 patent and '803 patent against manufacturers of generic substitutes of Taxol for the purpose of delaying entry into the market of generic substitutes of Taxol. As a result, Plaintiff alleges that it and the Class paid substantially more for Taxol than they would have paid in the absence of the allegedly wrongful conduct;

D. Plaintiff also alleges in the Complaint that Bristol conspired with ABI to wrongfully list U.S. patent No. 6,090,331 (the " '331 patent") in the Orange Book and to commence sham patent infringement litigation with respect to the '331 patent against manufacturers of generic substitutes of Taxol for the purpose of delaying entry into the market of generic substitutes of Taxol. As a result, Plaintiff alleges that it and the Class paid substantially more for Taxol than they would have paid in the absence of the allegedly wrongful conduct;

E. Since the filing of this Action, the Parties have engaged in extensive analysis of the pertinent facts. Plaintiff's counsel have conducted an extensive investigation relating to the claims and underlying events alleged in the Complaint, including (i) the analysis of documents produced in discovery and (ii) extensive legal research. Plaintiff's counsel have also retained and consulted with economists and other experts with respect to damages allegedly sustained by the Class as a result of the wrongful conduct alleged in the Complaint. As a result, Plaintiff's counsel are thoroughly familiar with issues of liability and damages with respect to the claims asserted in the Complaint;

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                      Page 4
Not Reported in F.Supp.2d, 2003 WL 21087979 (D.D.C.)
(Cite as: Not Reported in F.Supp.2d)

F. Bristol has denied, and continues to deny, that it committed any violation of law or any wrongdoing, and further denies it has any liability with respect to any claims asserted in the Complaint and denies any and all liability to Plaintiff and the Class;

G. Over the course of the Parties' extensive arm's-length negotiations, Plaintiff's counsel have concluded that the proposed settlement with Bristol embodied in this Settlement Agreement is fair, adequate and reasonable, and in the best interests of the Class. Among the factors considered in this Action are: (1) the sharply contested legal and factual issues involved in this Action as they relate to Bristol; (2) the risks attendant upon further prosecution of this Action; and (3) the substantial benefits to be received by the proposed Class pursuant to this Settlement Agreement;

**\*5** H. Bristol, likewise recognizing the costs and uncertainties attendant upon further litigation of the claims in this Action, and while continuing to deny vigorously Plaintiff's allegations and any liability with respect to any and all claims asserted in the Complaint, has concluded that it is desirable that all of the claims in this Action that have, or could have, been asserted against Bristol be compromised and settled. The resolution of the claims asserted in the Complaint will terminate the costly process of litigation and put to rest forever the controversy surrounding matters at issue in this Action as they relate to Bristol; and

I. It is the intention of the Parties that the proposed Settlement resolve all claims of the Class against Bristol that were, or could have been, asserted in this Action, or that relate to the subject matter of this Action.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among the Parties, through their undersigned counsel, subject to Court approval pursuant to Fed.R.Civ.P. 23(e), and to all of the terms and conditions set forth herein, as follows:

## I. DEFINITIONS

The following definitions shall apply throughout this Settlement Agreement:

A. "Bristol" means Bristol-Myers Squibb Company, a Delaware corporation with its principal place of business in New York, New York, and its divisions, subsidiaries, and affiliates.

B. "Bristol's Counsel" means Cravath, Swaine & Moore, Worldwide Plaza, 825 Eight Avenue, New York, New York 10019.

C. "Class" means the class to be certified for settlement purposes only pursuant to this Settlement Agreement, which shall include all non-governmental Persons that purchased Taxol directly from Bristol since January 1, 1999, through the date of this Settlement Agreement.

D. "Class Counsel" means the following law firms and attorneys:
Cohen, Milstein, Hausfeld & Toll, P.L.L.C.
Linda P. Nussbaum
Jacqueline E. Bryks
825 Third Avenue, 30th Floor
New York, N.Y. 10022
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
Cohen, Milstein, Hausfeld & Toll, P.L.L.C.
Michael D. Hausfeld
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, D.C. 20005-3934
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
Stearns Weaver Miller Weissler Alhadeff & Sitterson
Jay B. Shapiro
Museum Tower, Suite 2200
150 West Flagler Street
Miami, Florida 33130
Telephone: (305) 789-3200
Facsimile: (305) 789-3395
Lash & Goldberg LLP
Alan D. Lash
100 S.E. 2nd Street, Suite 1200
Miami, FL 33131
Telephone: (305) 347-4040
Facsimile: (305) 347-4050

E. "Complaint" means the original complaint in this Action and the amended complaint filed on or about October 4, 2002.

F. "Court" means the United States District Court for the District of Columbia.

G. "Direct Purchaser Settlement Fund Account" means an interest-bearing escrow account established by Lead Counsel and administered by the Settlement Administrator in accordance with both the Escrow

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21087979 (D.D.C.)
(Cite as: Not Reported in F.Supp.2d)

Agreement and this Settlement Agreement to hold funds to be distributed to the Settling Class Members in this Action.

**\*6** H. "Effective Date" means the date on which each and every one of the following conditions has been satisfied, unless one or more of such conditions is waived in writing by Bristol's Counsel or modified in a writing signed by Lead Counsel and Bristol's Counsel:

1. Execution of this Settlement Agreement by Lead Counsel and Bristol's Counsel;

2. Bristol has not availed itself of any right to terminate or withdraw from the Settlement Agreement.

3. Entry by the Court of a Preliminary Approval Order substantially in the form attached hereto as Exhibit A;

4. Expiration of the period within which Non-Settling Class Members must exercise their rights to be excluded from the Class;

5. Final approval by the Court of the Settlement, following entry of the Preliminary Approval Order and Notice to the proposed members of the Class and the Fairness Hearing as prescribed by Fed.R.Civ.P. 23;

6. Entry by the Court of the Final Order and Judgment substantially in the form attached hereto as Exhibit B; and

7. The Final Order and Judgment shall have become "Final," which shall be deemed to occur upon the expiration of the tenth day after the applicable time for appeals of the Final Order and Judgment (whether as of right or upon showing of excusable neglect or good cause) has expired without any appeal having been taken, or, if an appeal is taken, upon the expiration of the tenth day after such appeal has been dismissed prior to resolution by the Court or upon expiration of the tenth day after the Final Order and Judgment is finally affirmed by the appellate court with no possibility of subsequent appeal or other judicial review thereof. For purposes of this subsection, and "appeal" shall include, without limitation, any petition for a writ of certiorari that may be filed in connection with the approval or disapproval of this Settlement Agreement.

I. "Escrow Agreement" means the agreement

substantially in the form of Exhibit C hereto. The Escrow Agent, as defined in the Escrow Agreement shall be Sun Trust Bank, Inc. or another financial institution that the Parties mutually agree upon.

J. "Fairness Hearing" means the hearing scheduled by the Court pursuant to this Settlement Agreement to consider final approval of the Settlement and the entry of the Final Order and Judgment.

K. "Final Order and Judgment" means the Court's final, appealable order, which is substantially in the form attached hereto as Exhibit B and as more fully defined in Section IX.B below.

L. "Non-Settling Class Members" means each and every member of the Class who exercises its right to exclude itself from the Class pursuant to a proper written request for exclusion.

M. "Lead Counsel" means the following law firm and attorneys:
Cohen, Milstein, Hausfeld & Toll, P.L.L.C.
Linda P. Nussbaum
Jacqueline E. Bryks
825 Third Avenue, 30th Floor
New York, N.Y. 10022
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
**\*7** Cohen, Milstein, Hausfeld & Toll, P.L.L.C.
Michael D. Hausfeld
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, D.C. 20005-3934
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

N. "Notice" means the notice or notices of the proposed class action settlement and the Fairness Hearing that are to be (i) mailed to members of the Class, and (ii) published in a manner directed and approved by the Court pursuant to Section IX.A below.

O. "Parties" means the Plaintiffs, for themselves and on behalf of the Class, and Bristol.

P. "Person" means an individual, corporation, limited or general partnership, association, trust, joint venture, or any other non-governmental entity or organization, and its heirs, executors, successors, and assigns.

Q. "Preliminary Approval Order" means the Court's

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21087979 (D.D.C.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 6

order, substantially in the form attached hereto as Exhibit A, preliminarily approving the Settlement Agreement, as set forth in Section IX.A below.

R. "Released Claims" is defined in paragraph X.A.

S. "Releasees" means Bristol and its present and past, direct and indirect, parents, subsidiaries, divisions, partners and affiliates or other organizational units of any kind, any entity now or in the past controlled by, controlling or under common control with any of the foregoing, the past and present officers, directors, partners, shareholders, employees, agents, attorneys, representatives, beneficial owners, investment advisors, investment bankers, independent contractors, accountants, heirs, executors, trustees, administrators of each of the foregoing, and the predecessors, successors, and assigns of each of the foregoing. As used in this Paragraph, "affiliates" means entities controlling, controlled by or under common control with a Releasee.

T. "Settlement Administrator" means the Person that Lead Counsel and Bristol's Counsel shall mutually agree upon and shall seek to have approved by the Court to administer and/or monitor the Notice, mailing, publication, the Direct Purchaser Settlement Fund Account and such other administrative functions as may be specified.

U. "Settlement Agreement" means this Stipulation of Settlement.

V. "Settling Class Members" means Plaintiff and each and every member of the Class that does not exercise its right to exclude itself from the Class, pursuant to a proper written request for exclusion postmarked on or before the date to be set by the Court as required in the Notice, on its own behalf and on behalf of, and including, its respective present and former direct and indirect parents, subsidiaries, divisions, partners and affiliates, its respective present and former officers, directors, employees, managers, agents, attorneys and legal representatives, and the predecessors, successors, heirs, executors, trustees, administrators and assigns of each of the foregoing. As used in this Paragraph, "affiliates" means entities controlling, controlled by or under common control with a Settling Class Member.

**\*8** W. "Taxol" means the branded paclitaxel drug manufactured and sold by Bristol.

## II. CERTIFICATION OF CLASS FOR

### SETTLEMENT PURPOSES

A. *Sole Purpose.* Solely for the purposes of settlement, the Action shall be certified, upon approval of the Court, as a class action on behalf of the Class, pursuant to Fed.R.Civ.P. 23(b)(3).

B. *Class Definition.* The Class shall consist of all persons and entities in the United States who purchased Taxol directly from Bristol or its subsidiaries at any time from January 1, 1999, through the date of the Settlement Agreement. Excluded from the class are Bristol, its parents, subsidiaries and affiliates, and government entities.

C. *Class Representative.* Plaintiff, Oncology & Radiation Associates, P.A., shall act as representative of the Class; and

D. *Lead Counsel.* Cohen, Milstein, Hausfeld & Toll, P.L.L.C. shall act as Lead Counsel.

### III. CONSIDERATION TO THE SETTLING CLASS MEMBERS

A. *Consideration.* In full settlement and compromise of all Released Claims in this Action, and subject to the terms and conditions of this Settlement Agreement, Bristol has agreed to pay a total of 65 million dollars ($65,000,000) in settlement of this Action.

B. *Deposit Date.* In accordance with the foregoing, Bristol shall deposit 65 million dollars ($65,000,000) into the Direct Purchaser Settlement Fund Account by March 21, 2003.

### IV. DISTRIBUTION OF THE DIRECT PURCHASER SETTLEMENT FUND ACCOUNT

A. *Distribution.* As soon as practicable after the Effective Date, the money in the Direct Purchaser Settlement Fund Account shall be distributed to the Settling Class Members as ordered by the Court. Prior to the Effective Date, disbursements for the costs and expenses of Class notice, administration of the Direct Purchaser Settlement Fund Account, attorneys' fees and reasonable expenses awarded by the Court, and any incentive to the Plaintiff awarded by the Court, may be made from the Direct Purchaser Settlement Fund Account.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21087979 (D.D.C.)
(Cite as: Not Reported in F.Supp.2d)

## V. APPLICATION FOR ATTORNEYS' FEES

A. *Attorneys' Fees for Lead and Class Counsels.* Class Counsel intend to seek, solely from the Direct Purchaser Settlement Fund Account, attorneys' fees and reimbursement of reasonable costs and expenses incurred in the prosecution of this action in an amount up to 33 1/3% of the Settlement Fund (plus interest thereon). Bristol agrees to take no position with respect to the application by Class Counsel for the attorneys' fees and expense payments set forth above. Bristol agrees that any attorney fees and expenses awarded by the Court shall be disbursed only to Lead Counsel, Cohen, Milstein, Hausfeld & Toll, P.L.L.C., for allocation among the various Counsel which have participated in this litigation. Bristol agrees, subject to any order of the Court, that Lead Counsel will be paid approved attorneys' fees and expenses within five (5) business days after entry of the Court's order finally approving the settlement and awarding attorneys' fees and expenses. Disbursements of Class Counsel's attorneys' fees shall not be delayed by reason of any appeal of the final judgment. However, if a final judgment by the Court approving the settlement is reversed on appeal, Lead Counsel, Cohen, Milstein, Hausfeld & Toll, P.L.L.C., shall within five (5) business days after receiving written notice from counsel for Bristol, cause a refund to be made to the Direct Purchaser Settlement Fund Account in the amount of the disbursement paid to Lead Class Counsel, plus interest that would have accrued on that amount had it remained in the Settlement Fund. This paragraph is subject to the terms of a confidential letter agreement entered into between Lead Counsel and Bristol concerning the means of ensuring prompt repayment pursuant to the previous sentence.

**\*9** B. *Fees Not Condition of Settlement.* It is agreed that allowance or disallowance by the Court of any applications by Class Counsel for fees, costs, or expenses, including the fees of experts and consultants pursuant to paragraph IX, is not a condition to, and such allowance or disallowance, and any order or proceeding relating thereto, or any appeal from any such order, shall not operate to affect, terminate, cancel or delay, this Settlement Agreement or to affect, terminate, cancel or delay the finality of the Final Order and Judgment under paragraph VII.B. or any other provision in this Settlement Agreement. However, distribution of all or a portion of the money from the Direct Purchaser Settlement Fund Account may be delayed in the event of an appeal concerning the Court's award of attorneys' fees and/or expenses.

## VI. JURISDICTION OVER THE SETTLEMENT

A. *Exclusive Jurisdiction of the Court.* The Direct Purchaser Settlement Fund Account shall remain subject to the exclusive jurisdiction of the Court until the funds shall be distributed pursuant to this Settlement Agreement and further order(s) of this Court.

B. *Claims Based on Distributions.* Bristol and Bristol's Counsel shall have no responsibility or liability from any distributions from the Direct Purchaser Settlement Fund Account. No Settling Class Member shall have any claim against Bristol or Bristol's Counsel based on any distribution or failure to distribute from the Direct Purchaser Settlement Fund Account, including without limitation costs, fees and expenses. No Settling Class Member shall have any claim against Lead Counsel, Class Counsel, the Settlement Administrator or any agent designated by the Settlement Administrator, based on distributions made substantially in accordance with the Settlement Agreement and any orders of the Court. If the amounts received by Settling Class Members, or any part thereof, are construed to be income, it is their sole responsibility to pay taxes on the amount construed to be income, plus any penalties or interest, and to indemnify and hold harmless the Releasees from any claim or liability for such taxes, penalties or interest.

## VII. TERMINATION AND DISAPPROVAL

A. *Termination or Modification of the Settlement.* If, after notice of the settlement is sent to the Class, Class members with aggregate purchases exceeding a certain amount (as specified in a confidential letter agreement between the parties) exclude themselves from the Class, then Bristol may, under certain circumstances provided in the letter agreement, be entitled to terminate or modify this Settlement Agreement, provided however, that any such election must be made by Bristol in writing within 10 business days following the receipt of all exclusions from the Plaintiff. Plaintiff agrees to provide Bristol with all exclusions within three (3) business days of receipt.

B. *Disapproval.* If the Court does not enter the orders or judgments in substantially the form provided herein, or if the Court enters the orders or judgments substantially in the form provided herein and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 8
Not Reported in F.Supp.2d, 2003 WL 21087979 (D.D.C.)
(Cite as: Not Reported in F.Supp.2d)

appellate review is sought, and on such review such order or judgment is not affirmed or is materially modified, then this Settlement Agreement shall be terminated upon the election of Bristol or Plaintiff, by written notice to the other party within thirty (30) days from the date of the mailing of such ruling to such Parties. Such notice may be provided on behalf of the Parties by their respective Counsel.

**\*10** C. *Termination.* In the event that (1) this Settlement Agreement is terminated, or (2) the Effective Date does not occur for any reason: (a) this Settlement Agreement shall have no further force and effect; (b) the money in the Direct Purchaser Settlement Fund Account shall be returned to Bristol; and (c) this Action shall thereupon revert forthwith to its procedural and substantive status prior to the date of the execution hereof and shall proceed as if this Settlement Agreement and related orders had not been executed. The Parties will jointly move for the Court to vacate any order contemplated herein that shall have been entered, and the Action shall proceed as though the Class had never been certified. Notwithstanding the foregoing, the following provisions shall survive the termination of this Settlement Agreement: (a) Class notice and administrative costs shall be paid from the Direct Purchaser Settlement Fund Account, as described in paragraph IV.A., and shall be subtracted from the sum returned to Bristol; (b) Cohen, Milstein, Hausfeld & Toll, P.L.L.C. shall remain Lead Counsel, as described in paragraph I.M.; (c) and the Settlement Agreement shall not be used as evidence of a presumption, concession, admission, or indication in any action, proceeding, or arbitration, as described in paragraph XII.A.

### VIII. QUALIFIED SETTLEMENT FUND

A. *Qualified Settlement Fund.* The Parties agree that the Direct Purchaser Settlement Fund Account is intended to be Qualified Settlement Funds within the meaning of Treasury Regulation section 1 .468B-1, and that the Settlement Administrator within the meaning of Treasury Regulation section 1.468B-2(k)(3) of that Account shall be responsible for filing tax returns for the Direct Purchaser Settlement Fund Account and paying from the Direct Purchaser Settlement Fund Account any taxes owed with respect to same. The Parties agree to cooperate with each other and their attorneys or accountants by providing information to the extent reasonably necessary to enable such tax returns to be prepared and filed by the Settlement Administrator as may be

necessary, but the Parties shall in no event be liable for such tax, except to the extent of their interest in the Direct Purchaser Settlement Fund Account. In the event it is determined that the Direct Purchaser Settlement Fund Account is not a Qualified Settlement Fund within the meaning of Treasury Regulations section 1.468B-1, any tax liabilities associated with such a determination shall be satisfied solely from the Direct Purchaser Settlement Fund Account and Settling Class Members shall have no recourse against Bristol based upon any tax liabilities paid out of the Direct Purchaser Settlement Fund Account.

### IX. APPROVALS AND NOTICE TO THE CLASS

A. *Preliminary Approval Order.* As soon as practicable after execution of this Settlement Agreement, the Plaintiff shall apply to the Court for preliminary approval of this settlement. Bristol shall not oppose Plaintiff's application. The Plaintiff shall seek the entry of the Preliminary Approval Order substantially in the form attached hereto as Exhibit A:

**\*11** 1. Finding that the Court has jurisdiction over this action and all aspects of this settlement;

2. Preliminarily approving this Settlement Agreement, including a preliminary finding that its terms are fair, reasonable, adequate and in the best interests of the Class as a whole, and that its terms satisfy Federal Rule of Civil Procedure 23(e) and due process requirements;

3. Certifying the Class for purposes of settlement only, pursuant to Fed.R.Civ.P. 23(c);

4. Directing that within twenty (20) days after entry of the order preliminarily approving the settlement, Lead Counsel shall: (a) cause the Notice to be mailed to all Class members whose addresses can be reasonably ascertained and to each potential Class member that requests such Notice; and (b) cause the Summary Notice to be published in the manner directed by the Court; provided, however, that if notice is given in conjunction with a proposed settlement with ABI, the other defendant in this Action, the Parties may submit a revised Notice and Summary Notice to the Court for approval;

5. Determining, pursuant to Fed.R.Civ.P. 23(c)(2), that the giving of notice as provided herein will constitute the best notice practicable under the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21087979 (D.D.C.)
(Cite as: Not Reported in F.Supp.2d)

circumstances and due and sufficient notice of the hearing and rights of the members of the Class with respect thereto, to all persons entitled to such notice;

6. Scheduling a Fairness Hearing before the Court to determine the reasonableness, adequacy and fairness of this settlement, whether the Final Order and Judgment should be entered, and to consider the application by Class Counsel for attorneys' fees, costs, and disbursements (the "Fee Petition"); and to consider whether to approve the proposed plan of allocation;

7. Directing Lead Counsel to file an affidavit with the Court certifying that the Notice has been mailed to all members of the Class whose address can be reasonably ascertained and to all Class members who requested it, and that the Summary Notice has been published, as provided in the Preliminary Approval Order or any subsequent order;

8. Providing that any Settling Class Member who objects to the approval of this Settlement Agreement may appear at the Fairness Hearing and show cause why the Settlement Agreement should not be approved as fair, reasonable and adequate and why the Final Order and Judgment should not be entered, and further providing that any objections must be in writing, and must be both filed with the Court and copies delivered to Lead Class Counsel and Bristol's counsel in the manner set forth in the Preliminary Approval Order;

9. Providing that any member of the Class who does not wish to participate in or obtain the benefits of or be bound by the terms of the proposed settlement must send a written request for exclusion to the Settlement Administrator postmarked no later than forty-five (45) days after the date the Notice is mailed to the Class; and

10. Providing that, if this Settlement Agreement is terminated or ultimately not approved, the Court will modify any existing scheduling order to ensure that the Parties will have sufficient time to prepare for the resumption of litigation, including but not limited to the completion of discovery, preparation of expert reports, the filing of a summary judgment motion or motions, and preparation of trial.

**\*12** B. *Final Approval.* The Plaintiff shall apply to the Court, and Bristol shall not oppose the application, for the entry of the Final Order and Judgment, substantially in the form attached hereto as Exhibit B:

1. Approving the settlement and this Settlement Agreement and adjudging its terms to be fair, reasonable, adequate and in the best interests of the Class as a whole, adjudging its terms to satisfy Federal Rules of Civil Procedure 23(e) and due process requirements, directing consummation of its terms and provisions and retaining jurisdiction to effectuate the same;

2. Dismissing the Action on the merits, with prejudice and without costs, with such dismissal subject only to compliance by the Parties with the terms and conditions of this Settlement Agreement and any order of the Court with reference thereto;

3. Discharging and releasing the Releasees, and each of them, from the Released Claims;

4. Permanently barring and enjoining the institution, maintenance, prosecution or enforcement by the Plaintiff or any Settling Class Member, either directly or indirectly, representatively, derivatively or in any other capacity, of any other actions or claims that are discharged and released pursuant to this Settlement Agreement;

5. In the discretion of the Court, awarding attorneys' fees and expenses, and an incentive award to Plaintiff, to be paid exclusively out of the Direct Purchaser Settlement Fund Account;

6. Ordering the distribution of the money remaining in the Direct Purchaser Settlement Fund Accounts in the manner provided for herein and in the eventual allocation and distribution plan or as otherwise ordered by the Court;

7. Containing such other and further terms that are not materially inconsistent with the provisions of this Settlement Agreement as the Court may deem advisable;

8. Finding that the Court has jurisdiction over the Action and retaining exclusive jurisdiction over the Action until the Settlement Agreement has been consummated and each and every act agreed to be performed by the Parties hereto shall have been performed, and thereafter for all other purposes necessary to effectuate the terms of the Settlement Agreement;

9. Finding, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, that there is no just reason for delay and directing entry of the Final Order and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21087979 (D.D.C.)
(Cite as: Not Reported in F.Supp.2d)

Judgment as a final judgment that is immediately appealable; and

10. Directing that for a period of five years, the Clerk of the Court shall preserve a record of those potential members of the Class that have timely excluded themselves from the settlement and shall provide a certified copy of such records to Bristol at its own expense.

## X. RELEASE AND DISCHARGE OF CLAIMS

### A. *The Release.*

1. If the Settlement is approved by the Court, each Releasee shall be released and forever discharged from all manner of claims, demands, actions, suits, causes of action, damages whenever incurred, and liabilities of any nature whatsoever, including without limitation costs, expenses, fines, penalties and attorneys' fees, known or unknown, suspected or unsuspected, asserted or unasserted, in law or in equity, which the Settling Class Members, whether directly, representatively, derivatively, or in any other capacity, whether or not they object to the settlement and whether or not they make a claim on or participate in the Direct Purchaser Settlement Fund Account, ever had, now have or hereafter can, shall or may have, relating in any way to any conduct, act or failure to act, prior to the date of this Settlement Agreement, concerning the purchase, sale, or pricing of Taxol® or generic paclitaxel, or relating to any conduct, act or failure to act, alleged in the Complaint, including, without limitation, any such claims that have been asserted or could have been asserted based on the facts alleged in the Complaint against the Releasees. The claims covered by the foregoing release are referred to herein collectively as the "Released Claims."

*13 2. In addition, each Settling Class Member will expressly waive and release, upon the Settlement Agreement becoming final, any and all provisions, rights, benefits conferred by § 1542 of the California Civil Code, which reads:
Section 1542. *General Release; extent.* A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor;

and by any law of any state or territory of the United

States, or principle of common law, which is similar, comparable or equivalent to § 1542 of the California Civil Code. Each Settling Class Member may hereafter discover facts other than or different from those which he, she or it knows or believes to be true with respect to the claims which are the subject matter of this paragraph, but each Settling Class Member hereby expressly waives and fully, finally and forever settles and releases, upon this Settlement Agreement becoming final, any known or unknown, suspected or unsuspected, contingent or non-contingent claim with respect to the subject matter of the provisions of this paragraph whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

3. Each Settling Class Member also hereby expressly waives and fully, finally and forever settles and releases any and all claims it may have against Defendants under § 17200, *et seq*, of the California Business and Professions Code, which are expressly incorporated into this paragraph X.A. and the term "Released Claims".

4. Each Settling Class Member shall look solely to the Direct Purchaser Settlement Fund Account for settlement and satisfaction, as provided herein, of all Released Claims. Except as provided by order of the Court pursuant to this Settlement Agreement, no Settling Class Member shall have any interest in the Direct Purchaser Settlement Fund Account or any portion thereof.

5. Any disputes arising under or relating to the Settlement Agreement, including, but not limited to, the releases in the Settlement Agreement, will be resolved exclusively in the United States District Court for the District of Columbia.

B. *Covenant Not To Sue.* Each Settling Class Member hereby covenants and agrees that it shall not, hereafter, seek to establish liability against the Releasees based, in whole or in part, on any of the Released Claims. In the event that such Settling Class Members commence or continue any such action, the Releasees shall be entitled to seek an order from the Court enjoining the continuation of such action, and the Settling Class Members agree that they will not oppose the entry of such an order. In the event a party breaches the covenant not to sue as set forth in this paragraph, the breaching party shall be liable for all damages incurred by the other party, including without limitation compensatory damages as well as attorneys' fees and costs.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21087979 (D.D.C.)
(Cite as: Not Reported in F.Supp.2d)

Page 11

**\*14** C. *Effect of Releases.* This Settlement Agreement may be pleaded as a full and complete defense to any action, suit or other proceeding that has been or may be instituted, prosecuted or attempted with respect to any of the Released Claims and may be filed, offered and received into evidence and otherwise used for such defense. The Settling Class Members and Bristol agree that any such proceeding would cause irreparable injury to the Releasees and that the Court or any court of competent jurisdiction may enter an injunction restraining prosecution of such proceeding. The Settling Class Members and the Releasees further agree that this Settlement Agreement may be pleaded by the Releasees as necessary for the purpose of enforcing this Settlement Agreement.

## XI. IMPLEMENTATION AND SCHEDULING

A. *Notice to the Class.* On or before the date set by the Court in the Preliminary Approval Order or a subsequent order, Class Counsel shall cause a Summary Notice to be published, in the manner directed and approved by the Court, and shall cause the Notice to be mailed promptly to all Class members whose addresses can be reasonably ascertained and to all potential Class member who request a copy.

B. *Fairness Hearing.* The Fairness Hearing shall commence on a date to be determined by the Court in the Preliminary Approval Order or such later order as the Court may issue, and in such place as the Court shall determine therein. In connection with the Fairness Hearing, the Parties shall file such papers with the Court as their counsel or the Court determines to be necessary. At or before the Fairness Hearing, Lead Counsel shall file with the Court proof of mailing of the Notice and proof of publication of the Summary Notice.

C. *Cooperation Among The Parties.* The Parties and their counsel agree to cooperate in the prompt submission of this Settlement Agreement to the Court, to take all steps that may be required by the Court, and otherwise to use their best efforts to consummate this Settlement and to obtain the entry of the Final Order and Judgment. They shall not encourage, either directly or indirectly, any individual or entity to object to the fairness or reasonableness of the settlement, or to resist or delay in any manner the Court's approval of this Settlement Agreement and the settlement it reflects, or to

encourage any potential Settling Class Members to "opt out" of the proceedings.

D. *Entry of Final Order.* If, following the Fairness Hearing, the Court approves the Settlement, and the Settlement has not been terminated as set forth in Section VII above, counsel for the Parties shall jointly submit for entry by the Court at or promptly following the Fairness Hearing an agreed proposed Final Order and Judgment in substantially the form attached hereto as Exhibit B.

E. *Costs and Attorneys' Fees.* Except as otherwise provided herein, all Parties to this Settlement Agreement shall bear their own costs, expenses, and attorneys' fees in connection with this Action and the entry or enforcement of this Settlement Agreement.

**\*15** F. *Binding Effect.* The Settlement Agreement shall be binding on all members of the Class, except those who exercise their right to be excluded from the Class.

## XII. MISCELLANEOUS PROVISIONS

A. *No Admission of Liability.*

1. This Settlement Agreement and any Court order or proceeding related hereto is not a concession or admission, and shall not be used against any of the Releasees as an admission or evidence with respect to any claim of any wrongdoing, fault, or omission by any of them. Whether or not the settlement is finally approved, neither the Settlement Agreement, nor any document, statement, or proceeding related to this Settlement Agreement, nor any reports or accounts thereof, shall in any event be construed as, offered in evidence as, received in evidence as, and/or deemed to be, evidence of a presumption, concession, indication or admission by any of the Releasees of the truth of any fact alleged, or the validity of any claim which has been, could have been, or in the future might be asserted in any litigation, or of the deficiency of any defense which has been, could have been, or in the future might be asserted in any litigation, or of any liability, fault, or wrongdoing whatsoever, or that the Plaintiffs, the Class, the Settling Class Members, the Non-Settling Class Member or any of them has in fact suffered any damage.

2. Neither this Settlement Agreement, nor any of its provisions, nor any statement or document made or

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 12
Not Reported in F.Supp.2d, 2003 WL 21087979 (D.D.C.)
**(Cite as: Not Reported in F.Supp.2d)**

filed in connection herewith, shall be filed, offered, received in evidence or otherwise used in any action or proceeding or in any arbitration, except (a) in connection with the Parties' application for approval of this Settlement Agreement and all proceedings incident thereto, including request for attorneys' fees, costs and disbursements and compensation to Plaintiffs; (b) in defense of any claim brought against it by Settling Class Members that in any way relates to the Released Claims; and (c) to enforce this Settlement Agreement.

B. *Return of Documents.* Plaintiff, Settling Class Members, and Class Counsel shall not voluntarily provide work product, expert or consultant analyses, IMS data, or any other documents collected during their investigations of, or the pendency of this Action, to any Non-Settling Class Member or to any other Person, and shall prohibit, to the extent permissible, the experts and consultants previously retained by them in connection with the Action from accepting an engagement in any action based on the same subject matter as the Action.

C. *Notice To Counsel.* Any and all notices, requests, consents, directives, or communications by any Party intended for any other Party shall be in writing and shall, unless expressly provided otherwise herein, be given personally, by express courier, or by postage prepaid mail, or by facsimile transmission followed by postage prepaid mail, and shall be addressed as follows:

To Plaintiff or the Class:
Cohen, Milstein, Hausfeld & Toll, P.L.L.C.
**\*16** Linda P. Nussbaum
825 Third Avenue, 30th Floor
New York, New York 10022
Fax: (212) 838-7745


To Bristol:
Cravath, Swaine & Moore
Evan R. Chesler
Worldwide Plaza
825 Eight Avenue
New York, New York 10019
Fax: (212) 474-3700

Any one of the Parties may, from time to time, change the address to which such notices, requests, consents, directives, or communications are to be mailed, by giving the other Parties' prior written notice of the changed address, in the manner herein above provided, ten (10) calendar days before the change is effective.

D. *Sole and Entire Agreement; Modifications.*

1. This Settlement Agreement and the attachments hereto constitute the sole and entire agreement among the Parties hereto with respect to the subject matter hereof, and no representations, warranties, inducements, promises, or agreements, oral or otherwise not embodied or incorporated herein have been made concerning or in connection with this Settlement Agreement or its exhibits. Any and all prior discussions, negotiations, agreements, commitments, and understandings relating thereto are hereby superseded and merged herein.

2. The provisions of this Settlement Agreement (including time periods specified herein) may be modified by written agreement of all of the Parties with the consent of the Court without further notice to the Class unless the Court requires that notice be sent. The terms or provisions of this Settlement Agreement may not be changed, waived, modified, or varied in any manner whatsoever unless in a writing duly signed by all Parties. Any failure by any Party to insist upon the strict performance by other Party of any of the provisions of this Settlement Agreement shall not be deemed a waiver of any of the provisions hereof, and that Party, notwithstanding that failure, shall have the right thereafter to insist upon the strict performance of any and all of the provisions of this Settlement Agreement to be performed by the other Party.

3. The undersigned counsel of record for each of the Parties hereby represents that he or she is authorized to enter into this Settlement Agreement on behalf of their respective client(s).

4. The Settlement Agreement shall be deemed to have been mutually prepared by the Parties hereto and shall not be construed against any of them solely by reason of authorship.

E. *Independent Settlement.* This settlement of the Action is entirely independent of all other cases and is not conditioned on approval by any other party or settlement of any other case.

F. *Benefit.* Nothing in this Settlement Agreement, whether express or implied, is intended to confer any rights or remedies under or by reason of this Settlement Agreement on any Persons other than (1) the Parties hereto, (2) the Releasees, and (3) the Settling Class Members, and each of their respective

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                           Page 13
Not Reported in F.Supp.2d, 2003 WL 21087979 (D.D.C.)
**(Cite as: Not Reported in F.Supp.2d)**

heirs, successors and assigns.

G. *Captions.* The captions contained in this Settlement Agreement are inserted only as a matter of convenience and in no way define, limit, extend, or describe the scope of this Settlement Agreement or the intent of any provision hereof.

**\*17** H. *Governing Law, Jurisdiction And Venue.* This Settlement Agreement, including, but not limited to, the releases contained herein, shall be governed by, and construed in accordance with the laws of the State of New York, without regard to its choice of law or conflict of laws principles. This Settlement Agreement shall be first enforced exclusively in the United States District Court for the District of Columbia, and in that respect the Parties, on behalf of themselves and the Class, waive any objection that each of them may now have or hereafter have to the venue of any such suit, action or proceeding and irrevocably consent to the jurisdiction of the Court in any such suit, action or proceeding and agree to accept and acknowledge service of any and all process which may be served in any such suit, action or proceeding. It is expressly acknowledged that the Court retains exclusive jurisdiction over the Class for the purposes of enforcing the terms of this Settlement Agreement.

I. *Arm's-Length Negotiations.* This Settlement Agreement, including the exhibits attached hereto, was executed after arm's-length negotiations among the Parties and reflects the conclusion of the Class Counsel and Bristol's Counsel that this Settlement Agreement and the settlement are fair, equitable and in the best interests of each of their respective clients.

J. *Reasonable Efforts.* Counsel for all of the Parties shall use all reasonable and practicable efforts to obtain the entry of the Final Order and Judgment. The Parties, and their respective counsel, agree to use all reasonable and practicable efforts and to take all steps reasonably necessary to effectuate the settlement set forth in this Settlement Agreement.

K. *Counterparts.* This Settlement Agreement may be executed in two or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument. Counsel for the Parties to this Settlement Agreement shall exchange among themselves original signed counterparts and a complete set of original executed counterparts shall be filed with the Court.

L. *Stay and Resumption of Discovery.* The Parties

agree, subject to the approval of the Court, that discovery shall be stayed except to the extent discovery is necessary with respect to opt outs and for purposes of administering and consummating this Settlement Agreement. In the event that this Settlement Agreement is not approved by the Court or the settlement does not become final pursuant to paragraph I.H., discovery will resume in a reasonable manner to be approved by the Court.

M. *Settlement Agreement Controls.* To the extent that there is any ambiguity or inconsistency concerning disbursements when this Settlement Agreement and the Escrow Agreement, dated March 14, 2003, are read together, the terms of this Settlement Agreement shall control.

IN WITNESS WHEREOF, this Stipulation of Settlement has been executed this 14th day of March, 2003, by the undersigned counsel of record for the Parties.

D.D.C.,2003.
Oncology & Radiation Associates, P.A. v. Bristol-Myers Squibb Co.
Not Reported in F.Supp.2d, 2003 WL 21087979 (D.D.C.)

Briefs and Other Related Documents (Back to top)

• 1:01cv02313 (Docket) (Nov. 06, 2001)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT H

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
CASE NO. 99-MDL-1317-SEITZ/KLEIN

IN RE TERAZOSIN HYDROCHLORIDE
ANTITRUST LITIGATION

_____/

**This Document Relates to:**

*Louisiana Wholesale Drug Co., Inc.*          *Case No. (S.D. Fla.) 98-3125*
*v. Abbott Laboratories, et al.*

*Valley Drug Company v. Abbott*               *Case No. (S.D. Fla.) 99-7143*
*Laboratories, et al.*

_____/

## OMNIBUS ORDER (1) GRANTING MOTION FOR CERTIFICATION OF THE PROPOSED DIRECT PURCHASER ("SHERMAN ACT") CLASS; (2) GRANTING MOTION FOR PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT; (3) GRANTING MOTION FOR APPROVAL OF THE FORM AND MANNER OF NOTICE TO THE CLASS; AND (4) GRANTING MOTION FOR SETTING CERTAIN DEADLINES

THIS MATTER is before the Court upon the Sherman Act Class Plaintiffs' Motion for (A) Certification of the Proposed Direct Purchaser ("Sherman Act") Class In Light of Settlement and Re-Appointment of Class Counsel; (B) Preliminary Approval of the Proposed Settlement With Defendants Abbott Laboratories and Geneva Pharmaceuticals, Inc. (now known as Sandoz, Inc.); (C) Approval of the Form and Manner of Notice to the Class; and (D) Setting of Certain Deadlines, filed on February 24, 2005. The Court heard argument from counsel at the preliminary approval hearing on February 24, 2005. Upon review of the Sherman Act Class Plaintiffs' Motion and supporting memorandum of law, the authorities cited therein, the parties' Settlement Agreement, and the proposed Notice, it is hereby

ORDERED AND ADJUDGED as follows:

1.       In light of the changed circumstances brought on by the proposed settlement (the "Settlement") between the Sherman Act Class Plaintiffs and members of the proposed class (the "Sherman Act Class" or the "Class") and defendants Abbott Laboratories ("Abbott") and Geneva Pharmaceuticals, Inc.

-1-

("Geneva"), the Court finds it appropriate to certify a class of Direct Purchasers for purposes of settlement.

The Sherman Act Class Plaintiffs' Motion for Certification of the Proposed Direct Purchaser Class In Light

of Settlement and Re-Appointment of Class Counsel is, therefore, GRANTED. The Court will set forth its

reasoning regarding class certification in light of the fact of settlement in a separate opinion. The certified

class is defined as follows:

> All persons who purchased Hytrin, also known by the chemical name terazosin
> hydrochloride, directly from Abbott Laboratories, at any time during the period commencing
> March 31, 1998, through and including, June 30, 2001. *Excluded from the Class are:* (1)
> Defendants Abbott Laboratories, Geneva Pharmaceuticals, Inc. (now known as Sandoz,
> Inc.), Zenith Goldline Pharmaceuticals, Inc. (now known as Ivax Pharmaceuticals, Inc.),
> their officers, directors, management, employees, subsidiaries, and affiliates; (2) each of the
> following entities, and any and all claims of each said entity that have been asserted or could
> have been asserted, in *In re Terazosin Hydrochloride*, Case No. 99 MDL 1317, arising out
> of Hytrin or generic terazosin hydrochloride purchases by said entity: CVS Meridian, Inc.,
> Rite Aid Corp., Walgreen Co., Eckerd Corp., The Kroger Co., Albertson's, Inc., the Stop
> & Shop Supermarket Co., and Hy-Vee, Inc.; and (3) Kaiser Foundation Health Plan, Inc. and
> the Kaiser entities on whose behalf it has asserted claims in paragraph 8 of its complaint in
> 99 MDL 1317.

2.      The Court also appoints as class counsel pursuant to Rule 23(g) of the Federal Rules of Civil

Procedure those firms named in ¶ 2 of this Court's August 25, 2000, Second Amended Case Management

Order, namely Garwin Gerstein & Fisher, LLP; Boies Schiller & Flexner LLP; Berger & Montague, P.C.;

and The Calvin Law Firm, P.C.

3.      Based on its preliminary review of the proposed Settlement Agreement, the Court finds that

the proposed Settlement appears to have been the result of arm's length negotiation by highly experienced

counsel, with the assistance and support of a highly competent mediator. The Court also finds that the

proposed Settlement falls within the reasonable range of approvable settlements. Therefore, the Motion for

Preliminary Approval of the Proposed Settlement With Defendants Abbott Laboratories and Geneva

Pharmaceuticals, Inc. (now known as Sandoz, Inc.) is GRANTED, and the proposed settlement is

PRELIMINARILY APPROVED.

4.    The Court finds that the attached Notice of Proposed Class Action Settlement and Hearing Regarding Settlement,[1] which is to be mailed by first class United States mail to all Class members who can be reasonably identified and located, is the best notice practicable under the circumstances under Rule 23(c)(2)(B); otherwise satisfies Rule 23(c)(2), the requirements of Rule 23(e), and constitutional due process; and is otherwise fair and reasonable. Thus, the Sherman Act Class Plaintiffs' Motion for Approval of the Form and Manner of Notice to the Class is GRANTED, and the attached Notice of Proposed Class Action Settlement and Hearing Regarding Settlement is APPROVED for dissemination to the Class. On or before **March 1, 2005**, the Sherman Act Class Plaintiffs shall disseminate the Notice to the Class via first class mail to all Class members. Dissemination shall be considered complete upon mailing.

5.    The Court approves the continued use of Heffler Radetich & Saitta, L.L.P., 1515 Market Street, Suite 1700, Philadelphia, PA 19102, as the Claims Administrator. Responsibilities of the Claims Administrator shall include: disseminating the Notice (as described in paragraph 4 above) to the Class; accepting and maintaining documents sent from Class members, including opt-out forms, claim forms, and other documents relating to claims administration; and administering claims for allocating damages to Class members.

6.    As described in the Notice to the Class, any proposed Class member who wishes to opt out of the Class may do so by making a written request and causing same to be *received* by the Claims Administrator on or before **March 31, 2005**. Requests for exclusion from the Class must include the sender's name and address and clearly state that the sender wishes to opt out or be excluded from the Class. Persons or entities that request exclusion from the Class will not be entitled to share in the benefits of the settlement, and will not be bound by any judgment, whether favorable or adverse.

---

[1] The original form of Notice to the Class was submitted as Exhibit 2 to the Settlement Agreement, which is attached as Exhibit A to Plaintiffs' Preliminary Approval Motion. The approved notice, attached to this Order, incorporates the Court's and the parties' revisions based on the discussions at the February 24, 2005, preliminary approval hearing.

7.    On or before **April 5, 2005**, counsel for the Sherman Act Class Plaintiffs shall file: (a) their application for attorneys' fees and costs, specifying the total amount of costs and expenses to be reimbursed, and the total amount of attorneys' fees sought from the settlement fund; (b) their request for incentive awards for the representative plaintiffs; (c) their plan of allocation; and (d) their motion for final approval of the Settlement Agreement and brief in support.

8.    Class members who have not availed themselves of the opportunity to opt out of the Class, but who wish to object to the proposed settlement and/or be heard at the Fairness Hearing (*see* below), shall file with the Clerk of this Court by no later than **April 8, 2005** (and cause to be received by Class Counsel no later than **April 8, 2005**) a Notice of Intention to Appear and Statement of the position to be asserted and the ground therefor, together with copies of any supporting papers or briefs. Except as provided herein, no person shall be entitled to contest the terms and conditions of the Settlement, and persons who fail to object as provided herein shall be deemed to have waived, and shall forever be foreclosed from raising, any such objections.

9.    A fairness hearing shall be held before the undersigned at **10:00 a.m. on April 15, 2005** ("Fairness Hearing") for the purpose of considering: (a) whether the proposed settlement between the Sherman Act Class Plaintiffs, members of the Sherman Act Class, and defendants Abbott and Geneva is fair, reasonable, and adequate and should be finally approved by the Court; and (b) whether Sherman Act Class Counsel's application for attorneys' fees, expenses and costs, and for incentive awards for the Representative Plaintiffs, should be granted.

DONE and ORDERED in Chambers, in Miami, Florida, on this $\underset{\sim}{25}$ day of February, 2005.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc:
U.S. Magistrate Judge Theodore Klein
All Counsel of Record

-4-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
SOUTHERN DIVISION

CASE NO. 99-MDL-1317-SEITZ/KLEIN

In re TERAZOSIN HYDROCHLORIDE
ANTITRUST LITIGATION
_____/

This Notice pertains to:

| | |
|---|---|
| *Louisiana Wholesale Drug Co.,* | *Valley Drug Co., et al. v. Abbott* |
| *Inc., et al. v. Abbott Labs., et al.,* | *Labs., et al.,* Civ. No. 99-7143-S/G |
| Civ. No. 98-3125-S/G (S.D. Fla.) | (S.D. Fla.) |

NOTICE OF PROPOSED CLASS ACTION
SETTLEMENT AND HEARING REGARDING SETTLEMENT

*PLEASE READ THIS NOTICE FULLY AND CAREFULLY. A SETTLEMENT
HAS BEEN PROPOSED IN PENDING CLASS ACTION LITIGATION THAT
MAY AFFECT YOUR RIGHTS. IF YOU ARE A MEMBER OF THE CLASS
DESCRIBED BELOW, YOU MAY BE ENTITLED TO SHARE IN THE
SETTLEMENT FUND.*

TO:    All persons who purchased Hytrin, also known by the chemical name terazosin
hydrochloride, directly from Abbott Laboratories at any time during the period
commencing March 31, 1998 through and including June 30, 2001.

EXCLUDED FROM THE CLASS ARE: (1) Defendants Abbott Laboratories, Geneva
Pharmaceuticals, Inc. (now known as Sandoz Inc.), Zenith Goldline Pharmaceuticals,
Inc. (now known as Ivax Pharmaceuticals, Inc.), their officers, directors, management,
employees, subsidiaries, and affiliates; (2) each of the following entities, and any and all
claims of each said entity that have been asserted, or could have been asserted, in *In re
Terazosin Hydrochloride,* Case No. 99 MDL 1317 arising out of Hytrin or generic
terazosin hydrochloride purchases by said entity: CVS Meridian, Inc., Rite Aid Corp.,
Walgreen Co., Eckerd Corp., The Kroger Co., Albertson's, Inc., The Stop & Shop
Supermarket Co., and Hy-Vee, Inc.; and (3) Kaiser Foundation Health Plan, Inc. and
the Kaiser entities on whose behalf it has asserted claims in paragraph 8 of its
complaint in 99 MDL 1317.

## I.    PURPOSE OF NOTICE

Pending in this Court are cases brought by Louisiana Wholesale Drug Co., Inc. ("Louisiana

Wholesale") and Valley Drug Co. ("Valley Drug") (collectively, "Class Plaintiffs" or "Class

Representatives") under the federal antitrust laws on behalf of themselves and a class of similarly

situated persons, against defendants Abbott Laboratories ("Abbott"), and Geneva Pharmaceuticals,

Inc. ("Geneva") (now known as Sandoz, Inc.), alleging a conspiracy to violate the federal antitrust

laws. Abbott and Geneva will be referred to below collectively as "Defendants." Previously, notice

(dated March 13, 2002) had been given of a settlement with another defendant, Zenith Goldline

Pharmaceuticals, Inc. ("Zenith"), now known as Ivax Pharmaceuticals, Inc. ("Ivax"). That settlement

was finally approved by the Court on June 13, 2002.[1]

This Notice is given pursuant to Federal Rule of Civil Procedure 23 and by Order of the

United States District Court for the Southern District of Florida (the "Court") for the purpose of

informing you of your rights with regard to:

(a)    the Court's ruling that this lawsuit may be settled as a class action, with

Louisiana Wholesale and Valley Drug as class representatives, on behalf of all persons who

purchased Hytrin, also known by the chemical name terazosin hydrochloride, directly from

Abbott Laboratories at any time during the period commencing March 31, 1998 through and

---

[1] Under that settlement ("Zenith Settlement"), Zenith paid $2,072,327 into an escrow account. The payments by
Zenith, plus all interest earned on such payments, will be used to reimburse costs and expenses of this litigation, thereby
effectively increasing the amount of the Net Settlement Fund available to distribute to members of the Class (defined
below). The Zenith Settlement provided Zenith with the right to terminate the settlement if certain specified conditions
occurred. Should the settlement between the Class *and Abbott and Geneva* described in *this notice* become final, and
provided that the Court in its final order of approval of the Abbott and Geneva settlement re-affirms that all of the terms
of the Zenith Settlement, including class-wide releases and the other provisions of the Zenith Settlement incorporated into
the June 13, 2002 final judgment remain in full force and effect (except for any obligation for Zenith to pay up to $25,000
in notice costs, which obligation Plaintiffs have excused), then, in that event, to the extent Zenith has retained any
enforceable rights to terminate the Zenith Settlement (which Plaintiffs dispute), those rights are forever expunged, the
Zenith Settlement funds may be used for the benefit of the Class as the Court may direct, and the Zenith Settlement and
all of its terms, including releases given by members of the Class, remain in full force and effect.

including June 30, 2001. Excluded from the Class are: (1) defendants Abbott Laboratories, Geneva Pharmaceuticals, Inc. (now known as Sandoz Inc.), Zenith Goldline Pharmaceuticals, Inc. (now known as Ivax Pharmaceuticals, Inc.), their officers, directors, management, employees, subsidiaries, and affiliates; (2) each of the following entities, and any and all claims of each said entity that have been asserted, or could have been asserted, in *In re Terazosin Hydrochloride*, Case No. 99 MDL 1317 arising out of Hytrin or generic terazosin hydrochloride purchases by said entity: CVS Meridian, Inc., Rite Aid Corp., Walgreen Co., Eckerd Corp., The Kroger Co., Albertson's, Inc., The Stop & Shop Supermarket Co., and Hy-Vee, Inc.; (3) Kaiser Foundation Health Plan, Inc. and the Kaiser entities on whose behalf it has asserted claims in paragraph 8 of its complaint in 99 MDL 1317 ("the Class" or "the Sherman Act Class");[2]

       (b)    a proposed settlement (the "Settlement") as described below of the above-referenced litigation on behalf of the Sherman Act Class in exchange for a cash payment by defendant Abbott of $43.5 million and a cash payment by defendant Geneva of $29 million, for a total amount paid by these Defendants combined of $72.5 million in cash (the "Settlement Fund"); and,

       (c)    a fairness hearing scheduled to be held on **April 15, 2005 at 10:00 a.m.,** before The Honorable Patricia A. Seitz, United States District Judge for the United States District Court for the Southern District of Florida, in the Fifth Floor Courtroom, United States Courthouse, 301 North Miami Avenue, Miami, Florida (the "Fairness Hearing").

---

[2] Other cases challenging the same conduct by Abbott, Geneva, and Zenith were filed on behalf of consumers and other persons who purchased Hytrin indirectly, *i.e.*, from sources other than Abbott, and on behalf of persons that paid for all or part of such indirect purchases, including third-party payors such as insurance companies or health care plans. The proposed settlement described in this Notice relates *only* to the Class of direct purchasers of Hytrin from Abbott as defined above. NEITHER CONSUMERS NOR THIRD-PARTY PAYORS ARE PART OF THE CLASS TO WHOM THIS NOTICE IS DIRECTED.

The purpose of the Fairness Hearing will be to consider whether to approve: (1) the proposed settlement between the Sherman Act Class and defendants Abbott and Geneva as fair, reasonable, adequate, and in the best interests of the Sherman Act Class; (2) a proposed Plan of Allocation to allocate the settlement proceeds among Sherman Act Class members; and (3) the application by Class Counsel for an award of attorneys' fees and costs, and the application for incentive awards for the Class Representatives, as described below. . The Court may continue or reschedule the hearing; if the Court does so, the Class Counsel will advise the Sherman Act Class by posting a conspicuous notice at the internet web sites www.bsfllp.com and www.garwingerstein.com.

(d)    Right to Object: Sherman Act Class members also are hereby advised of their right to object (by filing with the Clerk of the Court no later than April 8, 2005) and/or appear at the Fairness Hearing; or to elect to exclude themselves from the Sherman Act Class (by written notice received by the claims administrator no later than March 31, 2005), as explained further below. This Settlement is contingent upon Defendants not electing to terminate the Settlement in the event that the confidential threshold for exclusions from the Class is exceeded, or in the event other triggering events occur that are referenced in the Settlement Agreement.   In the event any triggering event occurs that would permit Defendants to terminate the Settlement, Defendants must decide whether to terminate the Settlement at a date certain prior to the Fairness Hearing as provided for by the Settlement Agreement.

II.    **THE LITIGATION**

A.    **Class Representatives' Claims**      On December 18, 1998, plaintiff Louisiana Wholesale filed an action in the United States District Court for the Southern District of Florida

alleging violations of the federal antitrust laws, specifically the Sherman Act and the Clayton Act, against defendants Abbott, Geneva and Zenith. Louisiana Wholesale alleged, among other things, that Abbott entered into an agreement with Geneva, pursuant to which Abbott agreed to pay Geneva millions of dollars in exchange for Geneva's agreement to refrain from marketing its generic version of Hytrin until Abbott's then-pending patent infringement suit against Geneva was resolved. Louisiana Wholesale alleged that the Abbott/Geneva Agreement, as well as a similar agreement between Abbott and Zenith (collectively "the Agreements"), were illegal under Section 1 of the Sherman Act, and caused direct purchasers of Hytrin to be overcharged for terazosin hydrochloride ("terazosin") because the agreements kept less expensive generic versions of Hytrin off the market.

On August 30, 1999, plaintiff Valley Drug filed a similar complaint challenging the Abbott/Geneva Agreement, alleging similar antitrust violations against Abbott and Geneva. The Louisiana Wholesale and Valley Drug cases were consolidated by the Court on October 22, 1999. Louisiana Wholesale and Valley Drug are hereafter referred to as the "Class Representatives" or "Class Plaintiffs."

**B.    Defendants' Denial Of Liability**

Defendants Abbott and Geneva vigorously dispute Class Plaintiffs' claims that the Agreements were illegal. Defendants also deny Class Plaintiffs' claims that the Agreements caused Class Plaintiffs and members of the Sherman Act Class any harm. For example, defendants assert, among other defenses, that Geneva would not have come to market earlier with its cheaper generic product, even without the Abbott/Geneva Agreement, because of the risk of liability if Abbott won its then pending patent suit against Geneva relating to Geneva's proposed generic terazosin product. Defendants also assert that technical problems in manufacturing Geneva's terazosin product

prevented it from bringing its product to market any earlier than August 1999, when it actually launched its product.

### C.    Status of the Litigation

On February 11, 2000, the Court appointed the law firms of Garwin Gerstein & Fisher LLP and Boies, Schiller & Flexner LLP as Co-Lead Counsel for the Sherman Act Class cases. Since that time, Co-Lead Counsel and lawyers working at their direction (collectively "Class Counsel") have prosecuted this lawsuit on behalf of the Sherman Act Class.

### 1.    Class Certification

On November 30, 1999, Class Counsel and the Class Plaintiffs moved for certification of the Sherman Act Class. On September 20, 2001, the Court certified the Sherman Act Class with Louisiana Wholesale and Valley Drug as Class Representatives. Defendants appealed the Court's order certifying the Sherman Act Class.

On November 14, 2003, the Eleventh Circuit Court of Appeals vacated the Court's order certifying the Sherman Act Class, and remanded the case for further proceedings to determine, among other things, whether there were conflicts of interest between the Class Representatives and members of the Sherman Act Class in connection with the prosecution of this litigation.

In March 2004, the Class Representatives filed a renewed motion for class certification. On June 23, 2004, the Court denied that motion, holding that, although "...the evidence indicates there is no class antagonism or conflict," the Sherman Act Class could not be certified at that time because of the possibility of potential unforeseen conflict in the future with regard to this litigation.[3]

---

[3]If this proposed settlement is terminated for any reason or is not approved by the Court, the Class Representatives have the right to appeal the Court's June 2004 Order denying their renewed motion for class certification at the conclusion of the litigation.

–6–

On February 25, 2005, this Court certified the Sherman Act Class, holding, among other things, that because the proposed settlement would end the litigation, there was no longer any possibility of a future conflict of interest with regard to this litigation. Moreover, if any member of the Sherman Act Class does not believe that this Settlement is in its best interests, or for any other reason, such class member may exclude itself from the Sherman Act Class. *See* Section VII below. If for any reason any Class member, who does not timely exclude itself from the Class, believes that the Settlement is unfair, unreasonable, or inadequate, such Class member may submit an objection to the Settlement and be heard at the Fairness Hearing. *See* Section IX below.

### 2.    Class Plaintiffs' Substantive Claims

On December 13, 2000, the Court found that the Abbott/Geneva Agreement was *per se* illegal under Section 1 of the Sherman Act. Defendants appealed the Court's decision. On September 15, 2003, the Eleventh Circuit Court of Appeals reversed the Court's December 13, 2000 order, and remanded for further proceedings. On January 5, 2005, upon consideration of additional briefing by the parties, the Court again held that the Abbott/Geneva Agreement was *per se* illegal. On January 21, 2005, the Court denied Defendants' request for permission to immediately appeal the Court's *per se* ruling to the Eleventh Circuit Court of Appeals. On February 9, 2005, Defendants filed a Writ of Mandamus, asking the Eleventh Circuit to review and vacate the Court's January 5, 2005 *per se* ruling or the Court's January 21, 2005 refusal to permit an immediate appeal of the *per se* ruling. That Writ of Mandamus is currently pending. Whether or not the Writ is granted, Defendants will have the right to appeal the Court's *per se* ruling after a final judgment in this case.

Although the Court has ruled (subject to Defendants' right to appeal) that the Abbott/Geneva Agreement is a *per se* violation of Section 1 of the Sherman Act, in order to recover monetary damages in this case, Class Plaintiffs still would have been required to prove that the Agreement

–7–

caused them damage in a quantifiable amount. As described above, defendants vigorously contend that the Agreement did not delay Geneva's (or any generic manufacturer's) entry into the market with a generic version of Hytrin, and thus did not cause plaintiffs or members of the Class to incur any damages.

At the time that the proposed settlement was reached, discovery in the case, which included the review of hundreds of thousands of pages of documents, and the depositions of dozens of fact and expert witnesses, had been completed. As a result, Class Counsel had conducted an intensive investigation, and obtained significant knowledge regarding the strengths and weaknesses of the claims and defenses in this case before entering into settlement negotiations with Defendants.

In the event Defendants elect to terminate this Settlement under the terms of the Settlement Agreement, or if the Settlement is otherwise not consummated, the parties' stipulation as to class certification would become null and void. In that event, the Court could order the trial scheduled for May 2005 to proceed on behalf of the Representative Plaintiffs only, and not on behalf of any other member of the Class.

OTHER THAN AS SPECIFICALLY INDICATED ABOVE REGARDING THE *PER SE* ILLEGALITY OF THE ABBOTT/GENEVA AGREEMENT, THE COURT HAS NOT RULED ON THE MERITS OF ANY OF THE CLAIMS OR DEFENSES ASSERTED BY THE PARTIES. THIS NOTICE IS NOT TO BE UNDERSTOOD AS AN EXPRESSION OF ANY OPINION BY THIS COURT AS TO THE MERITS OF ANY OF THE CLAIMS OR DEFENSES ASSERTED BY EITHER SIDE.

## III.    SUMMARY OF THE PROPOSED SETTLEMENT

Subject to the terms and conditions of the settlement agreement with Abbott and Geneva ("the Settlement Agreement"), which is on file with the Court as Exhibit "A" to the Sherman Act Class Plaintiffs' February 24, 2005 Motion for Preliminary Approval, a copy of which is also available at www.bsfllp.com or www.garwingerstein.com, Abbott has paid $43.5 million, and

–8–

Geneva has paid $29 million (for a combined total of $72.5 million in cash) into an escrow account for the benefit of the Sherman Act Class. Defendants do not admit any wrongdoing or liability. The proposed settlement is a compromise of disputed claims and does not mean that any defendant in this action has been found liable for the claims made by the Class Plaintiffs.

The Settlement Agreement also provides that if Class members who validly exclude themselves from the Class pursuant to Section VII below collectively have aggregate potential damages (as calculated by Class Plaintiffs' expert economist, based on the amount of their purchases of Hytrin and/or generic versions of Hytrin reflected in the sales records of Abbott, Geneva, and non-party, Mylan Pharmaceuticals, Inc.) that exceed a confidential number agreed upon with Abbott and Geneva, then Abbott and Geneva may exercise their right to terminate the Settlement as provided for under the Settlement Agreement.[4]

If the Settlement is finally approved by the Court, Abbott and Geneva, and their past, present and future parents, subsidiaries, divisions, affiliates, stockholders, officers, directors, insurers, general or limited partners, employees, agents, attorneys and any of their legal representatives (and the predecessors, heirs, executors, administrators, successors and assigns of each of the foregoing) (the "Released Parties") are and shall be released and forever discharged from all manner of claims, demands, actions, suits, causes of action, damages whenever incurred, liabilities of any nature whatsoever, including costs, expenses, penalties and attorneys' fees, known or unknown, suspected or unsuspected, in law or equity, that Plaintiffs or any member or members of the Class who has (have) not timely excluded itself (themselves) from the Class, whether or not they object to the Settlement and whether or not they make a claim upon or participate in the Settlement Fund, ever

---

[4]Under the Settlement Agreement, Abbott and Geneva may also have the right to terminate this Settlement prior to the Fairness Hearing (described below) if certain other conditions set out in paragraph 13 of the Settlement Agreement are satisfied (see www.bsfllp.com and www.garwingerstein.com).

had, now has, or hereafter can, shall or may have, arising out of any conduct alleged in the Actions or in any other complaint filed in any action consolidated or coordinated in 99 MDL 1317, or otherwise relating to any alleged delay in marketing or selling of generic equivalents of Hytrin, prior to the date of the Settlement Agreement (the "Released Claims").[5]  Plaintiffs and each member of the Class covenant and agree that each shall not sue or otherwise seek to establish or impose liability against any Released Party based, in whole or in part, on any of the Released Claims.

Any disputes arising under or relating to the Settlement Agreement, including, but not limited to, the releases in the Settlement Agreement, will be resolved in the United States District Court for the Southern District of Florida.

The foregoing text is only a summary of the Settlement with Abbott and Geneva. A full copy of the Settlement Agreement, including the release, is attached as Exhibit "A" to Sherman Act Class Plaintiffs' February 24, 2005 Motion for Preliminary Approval on public file with the United States District Court for the Southern District of Florida, 301 North Miami Avenue, Miami, Florida. Class counsel have made copies of the settlement agreement readily available at www.bsfllp.com or www.garwingerstein.com.

Certain individual direct purchasers (or purchasers suing based upon an assignment of rights from members of the Class) have brought their own lawsuits against Abbott and Geneva. These individual plaintiffs will not share in the proposed Settlement with the Sherman Act Class.

---

[5] The Settlement Agreement expressly provides that: "Released Claims shall not include claims arising in the ordinary course of business between Class members and the Released Parties concerning product liability, breach of warranty, breach of contract (other than breach of contract based in whole or in part on any conduct challenged by any plaintiff in 99 MDL 1317), personal or bodily injury, or any claim of any sort that does not relate to Hytrin or terazosin hydrochloride. Released Claims also shall not include any claim asserted in 99 MDL 1317 by any of the following entities based upon an assignment to said entity arising out of Hytrin or generic terazosin hydrochloride purchases of said entity: CVS Meridian, Inc., Rite Aid Corp., Walgreen Co., Eckerd Corp., The Kroger Co., Albertson's, Inc., The Stop & Shop Supermarket Co., and Hy-Vee, Inc.; this settlement shall not be construed to disturb or affect any such assigned claim."

The Court preliminarily approved the proposed Settlement with Abbott and Geneva on February 25, 2005 after a hearing on February 24, 2005. The Court found the proposed settlement, upon preliminary review, to be within the range of reasonableness given the present posture of this case.

Accordingly, the Court has set a Fairness Hearing in order to determine whether the proposed settlement with Defendants should finally be approved as described in Section VIII, below.

## IV.    PLAN OF ALLOCATION

In the event the proposed settlement is approved by the Court and becomes final, the Settlement Fund will be distributed in accordance with a proposed Plan of Allocation approved by the Court. Plaintiffs will file the Plan of Allocation with the Court on or before April 5, 2005. The Plan of Allocation will be based upon proofs of claim to be filed by class members at a later time. You may be required as a condition of participating in the recovery to present evidence of your purchases of brand name Hytrin and generic terazosin during the period **March 31, 1998 through and including June 30, 2001** (the "Class Period"). In summary, the Settlement Fund totaling $72.5 million plus interest, less administrative expenses, taxes, attorneys' fees and expenses, and incentive payments to the two Class Representatives as may be allowed by the Court (the "Net Settlement Fund"),[6] will be allocated to Class members who choose not to exclude themselves from the Class (*see* Section VII below for an explanation of how to exclude yourself from the Class) as follows: The Net Settlement Fund will be allocated based on a *pro rata* share of the total estimated actual overcharge damages of all class members making valid claims (at a later date after the Settlement

---

[6] If the proposed Settlement with Abbott and Geneva is finally approved, the proceeds of the Zenith Settlement ($2,072,327), plus interest, upon authorization from the Court, will be applied to the costs and expenses incurred in this litigation, thereby reducing the amount that will be deducted from the settlement fund to reimburse class counsel for the outlay of such costs and expenses. Class counsel will not seek any attorneys' fees from the proceeds of the Zenith Settlement.

becomes final) allegedly incurred as a result of the Defendants' alleged restraint of trade.  Class

Representatives claim their damages are measured by an "overcharge," *i.e.*, the amount by which

Class members overpaid for terazosin as a result of the Defendants' conduct, which allegedly caused

a delay in the entry into the market of less expensive generic versions of terazosin.

According to Class Plaintiffs, if generic entry had occurred earlier, direct purchasers would

have realized significant savings by: (a) substituting Hytrin with less expensive generic versions of

terazosin for some or all of their terazosin requirements; and/or (b) obtaining increased discounts,

rebates, or lower prices on purchases of the brand name Hytrin after generic terazosin had entered the

market; and/or (c) paying less for generic terazosin on or after October 1, 1999 (the date Plaintiffs

believe that a second generic terazosin manufacturer would have entered the market had the alleged

conduct in restraint of trade not occurred).

For purposes of allocation of the Net Settlement Fund, it is anticipated that damages will be

estimated based on the following formulas (class members have damages under any one or all of the

formulas as may be applicable):

(1)    the quantity of generic terazosin that each Class member purchased from any

source from August 13, 1999 through June 30, 2001 as a substitute for buying brand-name

Hytrin from Abbott, multiplied by the average differential in price between the brand and

generic forms of terazosin (*i.e.*, the price savings due to the ability to substitute with cheaper

generics);

(2)    the quantity of generic terazosin that each Class member purchased from

October 1, 1999 through June 30, 2001, multiplied by the price differential between the

actual price paid for the generic and the price that allegedly would have been paid had there

been no alleged delay in generic entry; and

−12−

(3)    the quantity of brand-name Hytrin that each Class member purchased from

October 1, 1998 through June 30, 2001, multiplied by the price differential between the

actual price paid and the price that allegedly would have been paid for Hytrin had there been

no alleged delay in generic entry.

Based upon substantial analysis and investigation, Plaintiffs believe that in the absence of

Defendants' alleged restraint of trade, it is unlikely that generic versions of terazosin would have

been on the market prior to October 1, 1998. Thus, it is also very unlikely that more than nominal

overcharge damages were incurred with respect to Hytrin purchases made *before* that date.

Accordingly, for those Class members who, during the Class Period (a) purchased Hytrin directly

from Abbott *only* from March 31, 1998 through September 30, 1998, *and* (b) who also did *not*

purchase any generic terazosin directly from any generic manufacturer from October 1, 1999 through

June 30, 2001, nominal damages of a few cents per capsule will be awarded for each Hytrin capsule

purchased.[7]

## V.    FEES, EXPENSES, AND INCENTIVE AWARDS

All costs and fees related to this litigation will be paid out of the proceeds of the Settlement

Fund as the Court may order. Class Counsel intend to apply to the Court for attorneys' fees of up to

thirty-three and one-third percent (33 1/3 %) of the gross Settlement Fund, including interest. In

addition, Class Counsel intend to seek, from the Settlement Fund, reimbursement for any costs and

expenses incurred in this litigation not otherwise reimbursed by the funds procured from the Zenith

Settlement. Moreover, applications will also be made to the Court for incentive awards of $75,000,

in total, for the two Class Representatives, to compensate them for their efforts in prosecuting this

---

[7]Combined Hytrin purchases by Class members who purchased only during this early part of the Class Period
amount to only approximately 0.025% of the total terazosin purchases by all Class members during the entire Class
Period.

case on behalf of the Sherman Act Class, which efforts have included, among other things, submitting to depositions, producing hundreds of pages of documents, producing electronic purchase data, and providing written discovery. Class Counsel will file their Motion in Support of Final Approval of this Settlement, the Plan of Allocation, application for an award of attorneys' fees, reimbursement of costs and expenses, and request for incentive awards to the Class Representatives with the Clerk of the U.S. District Court for the Southern District of Florida, 301 North Miami Avenue, Miami, Florida on or before April 5, 2005. The application and other documents will be available for inspection during normal business hours at the office of the Clerk or on the website of www.bsfllp.com or www.garwingerstein.com.

## VI.   HOW TO PARTICIPATE IN THIS CLASS ACTION AND SETTLEMENT

**If you wish to remain a member of the Class, you need not do anything at this time.** All members of the Class will be entitled to share in the proceeds of this Settlement as described above and according to the terms of the Settlement Agreement if it is finally approved by the Court, and all members of the Class will be bound by the final judgment and release of claims against Abbott and Geneva entered by the Court. Class Counsel has been appointed by the Court to represent you as a member of the Class. All fees and expenses of Class Counsel will be paid out of any recovery by the Class. You will not have to pay Class Counsel any additional amounts, and in no event will you be obliged to pay any judgment, court costs, or lawyers' fees for participating in this class action. In addition, any Class member who does not request exclusion from the Class may also enter an appearance through their own counsel at their own expense. The pleadings and other public records in this litigation may be examined and copied at the cost of 50 cents per page at any time during regular business hours at the Office of the Clerk of Court, 301 North Miami Avenue, Miami, Florida.

## VII.  HOW TO BE EXCLUDED FROM THE CLASS

If you wish to be excluded from the Sherman Act Class you may do so by mailing a written request for exclusion which must be received by the Claims Administrator on or before **March 31, 2005** at the following address: Terazpsin Hydrochloride Antitrust Litigation, c/o Heffler, Radetich & Saitta L.L.P., P.O. Box 150, Philadelphia, PA 19105-0150.  The request for exclusion must:  (1) clearly state your name, address, and the name of the case (*In re Terazosin Hydrochloride Litigation*), and (2) clearly state that you wish to be excluded from the Sherman Act Class.  You do not have to state the reason for this request.

If you exclude yourself from the Sherman Act Class in this way, you will NOT be entitled to appear at the Fairness Hearing, OR to share in the benefits of the Settlement, and you will NOT be bound by the release of Defendants summarized in this notice.

## VIII.  FAIRNESS HEARING

Pursuant to an Order of the Court, a hearing will be held on **April 15, 2005 at 10 a.m.**, in the courtroom of the Honorable Patricia A. Seitz, Fifth Floor, United States District Court for the Southern District of Florida, 301 North Miami Avenue, Miami, Florida, for the purpose of determining whether the Court should approve: (1) the proposed settlement between the Sherman Act Class and defendants Abbott and Geneva as fair, reasonable, adequate, and in the best interests of the Sherman Act Class; (2) a proposed Plan of Allocation for distributing the net settlement proceeds to the members of the Sherman Act Class; and (3) the application of Class Counsel for an award of attorneys' fees and costs, and the application for incentive awards for the Sherman Act Class Representatives.  You are entitled to appear and be heard at this hearing.  The time and date of the hearing may be continued or rescheduled without further notice.  If you have no objection to the

-15-

Settlement with Abbott and Geneva, it is not necessary to appear at the hearing or to take any action at this time.

## IX.    OBJECTIONS TO THE PROPOSED SETTLEMENT

Any member of the Sherman Act Class who does not exclude itself from the Class may appear at the Fairness Hearing in person or by duly authorized attorney and show cause why the Settlement should not be approved as fair, reasonable and adequate, or to oppose or comment on any other subject of the hearing (including, for example, the Plan of Allocation, and request for attorneys' fees), *provided* that the class member files with the Office of the Clerk, Southern District of Florida, 301 North Miami Avenue, Miami, Florida, a Notice of Intention to Appear and a Summary Statement of the position asserted and the grounds therefor, together with copies of any supporting papers or briefs, on or before **April 8, 2005, and causes a copy to be received by Co-Lead Counsel for the Class on the same day.**[8] The Court will not consider any paper or brief submitted after April 8, 2005. Unless a Class member files the *Notice* and *Summary* described above, it shall not be entitled to contest the terms and conditions of the proposed Settlement or to appear in person at the hearing, and may be deemed to have waived any such objections.

## X.    ADDITIONAL INFORMATION

The pleadings and other records in this litigation may be examined and copied during regular hours at the Office of the Clerk, United States District Court for the Southern District of Florida, 301 North Miami Avenue, Miami, Florida. Copies of the Motion for Preliminary Approval of the Settlement, this Notice, and (when filed on April 5, 2005) the Proposed Plan of Allocation, Motion

---

[8]You need not appear at the hearing in order to object. The Notice of Intention to Appear and Summary Statement, and any accompanying papers, must include in a prominent location the name of the case, "*In re Terazosin Hydrochloride Litigation,*" the "MDL" case number (99-MDL-1317), and the Judge's name (the Honorable Patricia A. Seitz).

for Final Approval and Application for Attorneys' Fees and Incentive Awards for the Representative

Plaintiffs will also be available at www.bsfllp.com or www.garwingerstein.com.

Any questions that you have concerning the matters contained in this Notice may be directed

in writing to the Co-Lead Counsel for Sherman Act Class:

Richard B. Drubel
Kimberly Schultz
**BOIES, SCHILLER**
   **& FLEXNER, L.L.P.**
26 South Main Street
Hanover, NH 03755
Telephone: (603) 643-9090
Email: rdrubel@bsfllp.com

Bruce E. Gerstein
Barry S. Taus
**GARWIN GERSTEIN & FISHER LLP**
1501 Broadway, Suite 1416
New York, NY 10036
Telephone: (212) 398-0055
Email: btaus@garwingerstein.com

## PLEASE DO NOT ADDRESS ANY INQUIRIES TO THE COURT.

Dated: March 1, 2005 in Miami, Florida.

# EXHIBIT I

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22316548 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

# H
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
In re: TYSON FOODS, INC Securities Litigation
**No. Civ.A. 01-425-SLR.**

Oct. 6, 2003.

John L. Reed, and Timothy R. Dudderar, of Duane
Morris L.L.P., Wilmington Delaware, for Lead
Plaintiff. Mark C. Gardy, and Karis E. Fisch of
Abbey Gardy L.L.P., New York, New York and
Michael H. Schaalman and Cristina D. Hernandez-
Malaby of Quarles & Brady L.L.P., Milwaukee,
Wisconsin, of counsel.
Anthony W. Clark, Robert S. Saunders, Michelle L.
Davis, and Cynthia E. Carrasco, of Skadden, Arps,
Slate, Meagher & Flom L.L.P., Wilmington
Delaware, for Defendants. David F. Graham, and
Anne E. Rea, of Sidley Austin Brown & Wood,
Chicago, Illinois, of counsel.

MEMORANDUM OPINION
ROBINSON, Chief J.

## I. INTRODUCTION

*1 Pending before the court is a motion for class
certification (D.I.62) filed by Aetos Corporation
("Aetos"), Pelican Limited Partnership ("Pelican"),
Stark Investments, L.P. ("Stark"), and Shepherd
Investments International, Ltd. ("Shepherd")
(collectively the "Lead Plaintiffs"). (D.I.62) By their
motion, Lead Plaintiffs move this court to certify a
class defined as all persons and entities (excluding
defendants, members of the immediate families of
and persons affiliated with each defendant, the legal
representatives, heirs, and successors and assigns of
any of the defendants) who purchased IBP, Inc.
("IBP") securities on or before March 29, 2001, and
subsequently sold those securities during the period
from March 30, 2001 through June 15, 2001,
inclusive, and who sustained damages as a result of
such transactions (the "Proposed Class"). In addition,
Lead Plaintiffs request the court to enter an order
appointing Lead Plaintiffs as Class Representatives
and Duane Morris L.L.P., Abbe Gardy L.L.P., and
Quarles & Brady L.L.P. as Class Counsel. For the
reasons discussed, the court will grant Lead Plaintiffs'

motion.

## II. BACKGROUND

This is a securities fraud class action brought under
Sections 10(b) and 20(a) of the Securities Exchange
Act of 1934, 15 U.S.C. § § 78j and 77t, and Rule
10b-5 promulgated by the Securities and Exchange
Commission ("SEC"). (D.I.1) Lead Plaintiffs seek to
maintain this class action pursuant to Rule 23(a) and
23(b)(3) of the Federal Rules of Civil Procedure on
behalf of the Proposed Class.

This case stems from the aborted merger between
Tyson Foods, Inc. ("Tyson") and IBP. The details of
that merger are laid out in great detail in *In re IBP
Shareholders Litigation,* 789 A.2d 14 (Del. Ch.2001).
IBP is the nation's largest beef distributor and second
largest pork distributor. Tyson is the nation's largest
chicken distributor. On January 1, 2001, Tyson and
IBP entered into a merger agreement, whereby IBP
shareholders were to receive cash or shares in Tyson
in exchange for their IBP shares. Thereafter, Tyson's
largest shareholder began to have buyer's remorse,
based on economic downturns affecting both
companies. At that time, IBP's subsidiary, DFG, Inc.,
was under SEC investigation for accounting
discrepancies. Tyson was aware of this SEC
investigation prior to the signing of the merger
agreement. On March 29, 2001, Tyson issued a press
release and letter claiming that it had been
fraudulently induced into the merger agreement. That
March 29 letter and press release are the basis for this
action. Plaintiffs allege that the press release and
letter (1) contained false information about IBP and
Tyson's planned merger, and (2) omitted material
information concerning Tyson, IBP and their planned
merger. According to the complaint, the press release
and the letter falsely state that Tyson's reason for
terminating the merger stemmed solely from recent
developments in the SEC investigation. (D.I. 63 at 7-
8) Further, Tyson falsely claimed that IBP had
inappropriately induced Tyson to enter the merger
agreement, based upon IBP's representation of the
SEC investigation. (*Id.*) The falsity of these
statements were the subject, in part, of the litigation
in the Delaware Court of Chancery. See *In re IBP,*
789 A.2d at 72.

*2 The market sharply reacted to Tyson's

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22316548 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

announcement, with IBP's common share price dropping from $27.79 per share at the close of business on March 29, to a low of $15 on March 30, 2001. The price of IBP's stock continued to fall as low as $14.50 per share on April 9, 2001. Plaintiffs allege that the negative effect on the market for IBP shares was not corrected until June 15, 2001, when Vice Chancellor Strine ordered specific performance of the merger agreement and issued an opinion determining that Tyson had not relied upon misleading information and that Tyson had not been inappropriately induced. (D.I. 63 at 10 (citing *In re IBP,* 789 A .2d at 14))

On June 22, 2001, the first of several class actions were filed against Tyson, IBP, Don Tyson (Tyson's Chairman, President and Chief Executive Officer) and Les Baledge (Tyson's Executive Vice President and General Counsel). (D.I.1) On September 20, 2001 this court consolidated these cases pursuant to the Private Securities Litigation Reform Act, Pub.L. 104-67, 109 Stat. 737 (1995) (codified at various sections of 15 U.S.C.), and named Aetos, Pelican, Stark and Shepherd as Lead Plaintiffs.

Lead Plaintiffs are hedge funds which engage in merger arbitrage. Aetos and Pelican are funds managed by Arbhold & S. Bleichroder Advisers, Inc., an international banking firm headquartered in New York City. Stark and Shepherd are funds managed by Staro Asset Management, LLC which is headquartered in St. Francis, Wisconsin. Each of the Lead Plaintiffs engages in a short-term higher-risk investment strategy known as merger arbitrage, in which arbitragers target corporations for whom they believe the market price does not reflect an accurate valuation of a potential merger. (D.I. 83 at 23-24) Lead Plaintiffs jointly lost in excess of $20 million in connection with their trading in IBP shares during the proposed class period.

Lead Plaintiffs filed this consolidated class action complaint on December 4, 2001. (D.I.11) On January 22, 2002, defendants moved for dismissal of the complaint. On October 23, 2002, this court, following full briefing and oral argument, granted in part and denied in part defendants' motion to dismiss, finding that two of the statements by Tyson were potentially actionable under federal securities law. (D.I. 25 at ¶ 14) On February 23, 2003, Lead Plaintiffs moved this court for an order to certify the proposed class.

III. STANDARD FOR CLASS CERTIFICATION

A party seeking to certify a class bears the burden of establishing that the requirements of Federal Rule of Civil Procedure 23 are met. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 613 (1997). First, a moving party must show that all four requirements of Rule 23(a) are satisfied:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative party are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

*3 Fed.R.Civ.P. 23(a). The moving party must also demonstrate that at least one of three additional requirements under Rule 23(b) is met. In this case, Lead Plaintiffs assert that, pursuant to Rule 23(b)(3), common questions of law and fact predominate and the class action is a superior method for a "fair and efficient adjudication of the controversy." *Id.* at 23(b)(3).

### IV. DISCUSSION

#### A. The Requirements of Rule 23(a)

##### 1. Numerosity

To be certified, a class must be "so numerous that joinder of all the parties is impracticable." Fed.R.Civ.P. 23(a)(1). The defendants have not objected to the certification of the class on this ground. (D.I.83) In the present case, there were well over one hundred million shares of IBP common stock publicly traded during the class period. Without appropriate discovery, the exact size of the class cannot be determined, but it may certainly number in the thousands. The court finds that the numerosity requirement is satisfied.

##### 2. Commonality and Predominance

The requirement of commonality insures that class members share at least a single common issue. *See Baby Neal ex rel. Kanter v.. Casey,* 43 F.3d 48, 56 (3d Cir.1994). Predominance requires that the issues common to the class predominate over those issues affecting only individuals. Fed.R.Civ.P. 24(b)(3). The Third Circuit "requires that commonality and predominance be analyzed together, because the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

predominance requirement, which is 'far more demanding,' incorporates the commonality requirement." *In re Warfarin Sodium Antitrust Litig.,* 212 F.R.D. 231, 247 (2002) (Robinson, C.J.) (quoting *In re LifeUSA Holding, Inc.,* 242 F.3d 136, 144 (3d Cir.2001)). In this case, the common legal and factual issues are: (1) whether the federal securities laws were violated by the defendants; (2) whether representations made to the investing public and IBP shareholders during the Class Period omitted and/or misrepresented material facts about defendants' decision to terminate the planned merger; (3) whether defendants failed to disclose material facts necessary to not mislead the investing public; and (4) whether the members of the Proposed Class have sustained damages and what the measure of those damages should be. Consequently, the real inquiry is whether any individual issues predominate over these common legal and factual issues. Put another way, is the proposed class "sufficiently cohesive to warrant adjudication by representation." *Amchem,* 521 U.S. at 623.

As a matter of general applicability, the Supreme Court has suggested that "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Id.* at 625. A securities fraud action, based upon false and misleading statements to the market, is a prototypical class action claim. *See, e.g., Semerenko v. Cendant Corp.,* 223 F.3d 175 (3d. Cir.2000) (financial statement); *Weiner v. Quaker Oats Corp.,* 129 F.3d 310 (3d. Cir.1997) (corporation's financial condition); *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410 (3d Cir.1997) (projected future earnings); *In re Westinghouse Sec. Litig.,* 90 F.3d 696 (3d Cir.1996) (stock offering). The Third Circuit has held that "[c]lass actions are a particularly appropriate and desirable means to resolve claims based on the securities laws, 'since the effectiveness of the securities laws may depend in large measure on the application of the class action device." ' *Eisenberg v. Gagnon* 766 F.2d 770, 785 (3d Cir.1985) (quoting *Kahan v. Rosenstiel,* 424 F.2d 161, 169 (3d Cir.) (1970)).

**\*4** Tyson contends that Lead Plaintiffs have not satisfied the predominance requirement of Rule 23(b)(3) because individual issues of reliance will predominate over other elements of the case. Tyson contends in this regard that the length of the proposed class period and the possible change in materiality of the March 29 statements by Tyson will make individual issues of reliance more pronounced and less amenable to class resolution.

Tyson largely relies on *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 259 F.3d 154, 172-73 (3d Cir.2001), for the proposition that individualized issues of reliance may preclude class action. In that case, the alleged misconduct related to the "broker-dealer accepting an investor's order under the implied representation of the duty of best execution." *Id.* at 173. The Third Circuit affirmed the trial court's decision to not certify the class because the type of claim being asserted did not satisfy Rule 23's commonality and predominance requirements. In particular, the Court of Appeals held that while the plaintiffs were entitled to the presumption of reliance, the kind of claim-duty of best execution-did not invoke a presumption of class-wide economic loss. *Id.* at 181. In doing so, the Third Circuit specifically distinguished the best execution duty from those more garden-variety claims which "involve a fraudulent material misrepresentation or omission that affects a security's value." *Id.* at 173. Unlike *Newton,* this case at its heart alleges that the defendants' false or misleading statements decreased the value of a security. *See id.* at 180.

The defendants contend the Lead Plaintiffs are not entitled to the fraud-on-the-market presumption and, as such, individual issues of reliance will predominate over the class action. However, it is settled law that issues of individual reliance will not defeat class certification. *Eisenberg,* 766 F.2d. at 786; *Newton,* 259 F.3d at 154; *In re Honeywell Int'l, Inc., Sec. Litig.,* 211 F.R.D. 255, 266 (D.N.J.2002); *Snider v. Upjohn Co.,* 115 F.R.D. 536, 541 (E.D.Pa.1987); *In re Data Access Sys. Sec. Litig.,* 103 F.R .D. 130, 147 (D.N.J.1984) *rev'd on other grounds,* 843 F.2d 1537 (3d Cir.1988). It is premature to determine whether the fraud-on-the-market presumption may be invoked by Lead Plaintiffs at this time. To hold otherwise would result in the conclusion in nearly every securities fraud case that class certification is not proper as defendants would always seek to show that lead plaintiffs' individual reliance will be the overriding issue. *Eisenberg,* 766 F.2d at 786.

This court finds the defendants' argument pertaining to the length of the class period to be equally uncompelling. Defendants argue that, over the course of the eleven weeks of the proposed class period, the available information in the market place changed so substantially that the materiality of the alleged misleading statements is called into question. The defendants argue that *Klein v. A.G. Becker Paribas Inc.,* 109 F.R.D. 646 (S.D.N.Y.1986), stands for the proposition that the class period is "too long and too

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

disparate to permit certification." (D.I. 83 at 32) In *Klein,* however, the district court granted class certification, but limited it to a period between when the first alleged misleading statement occurred and when the corporation issued what could be construed as a curative statement. *Klein,* 109 F.R.D. at 652. In any market, there is a continuing influx of information which, directly or indirectly, affects the materiality of a particular statement. Consequently, courts have been reticent to reject class certification on the basis of timing. *See e.g., Kinney v. Metro Global Media, Inc.,* 170 F.Supp.2d 173, 181 (D.R.I.2001); *In re Oxford Health Plans Inc.,* 191 F.R.D. 369, 377 (S.D.N.Y.2000); *In re Miller Indus. Inc. Sec. Litig.,* 186 F.R.D. 680, 687 (N.D.Ga.1999); *Welling v. Alexy,* 155 F.R.D. 654, 662 (N.D.Cal.1994). The defendants argument, taken to its logical conclusion, would necessitate the exclusion of nearly any class extending beyond a single day or two, if not shorter.

**\*5** Therefore, the court finds that the commonality and predominance requirements are satisfied. In this case, there are common questions of law and fact that are paradigmatic of a securities fraud class action. *See In re DaimlerChrysler AG Sec. Litig.,* 216 F.R.D. 291, 297 (D.Del.2003) (Farnan, J.). Consequently, while there may be individualized issues that speak to both defenses and damages, the plaintiff class is united by claims under the same laws and based on the same conduct by the defendants.

### 3. Typicality

Rule 23(a)(3) requires that claims or defenses of the named class representatives be "typical of the claims or defenses of the class." The purpose of the typicality requirement is to insure that representative plaintiffs' interests are aligned with the interests of the class. *See In re Prudential Ins. Co of America Sales Practices Litig.,* 148 F.3d 283, 311 (3d Cir.1998). "Typicality lies where there is a strong similarity of legal theories ... or where the claims of the class representatives and the class members arise from the same alleged course of conduct by the defendant." *In re Prudential Ins. Co. of America,* 962 F. Supp 450, 518 (D.N.J.1997) (internal citation omitted).

Tyson contends that Lead Plaintiffs do not satisfy the typicality requirements of Rule 23(a) for three reasons: (1) Lead Plaintiffs did not believe the alleged misstatements and would have sold their IBP shares notwithstanding those statements; (2) Lead

Plaintiffs have an "idiosyncratic interpretation" of Tyson's March 29 statements, which precludes their individual reliance on the fraud-on-the-market presumption; and (3) Lead Plaintiffs did not rely on the integrity of the market price of IBP stock. Each of these arguments, however, is essentially directed at the extent to which Lead Plaintiffs relied on the March 29 statements and the extent to which that reliance was reasonable.

The fundamental concern of typicality is insuring that Lead Plaintiffs' interests are aligned with the class they represent; it is not required that Lead Plaintiffs' interests be identical to that of the class they represent or that Lead Plaintiffs have identical theories of recovery. In this case, the claims of Lead Plaintiffs and of the Proposed Class stem from the same operative facts and the same provisions of federal law. The extent to which Lead Plaintiffs may be entitled to the presumption of reliance under the fraud-on-the-market theory or, alternatively, the extent to which they relied on the alleged false statements of the defendants goes to the merits of the case and is not dispositive at this time. *Zeffiro v. Pennsylvania Bank & Trust Co.,* 96 F.R.D. 567, 569-70 (E.D.Pa.1983) ("[P]articular factual differences, differences in the amount of damages claimed, or even the availability of certain defenses against a class representative may not render his or her claims atypical.").

> FN1. The fraud-on-the-market presumption "obviates the need to prove subjective reliance in open market transactions since the market interposed between the buyer and the seller." *Moskowitz v. Lopp,* 128 F.R.D. 624, 630 (E.D.Pa.1989). The presumption has three components: "First, the court presumes that the misrepresentation affected the market price. Second, it presumes that a purchaser did in fact rely of the price of the stock as an indication of its value. Third, it presumes the reasonableness of the reliance." *Id.* at 630 (citing *Zlotnick v. Tie Communications,* 836 F.2d 818, 822 (3d Cir.1988)). This presumption may be rebutted by showing either that the statements did not affect the market price or that the plaintiff would have "made the purchase regardless of the undisclosed information." *Id.* (citations omitted); *see also Basic v. Levinson,* 485 U.S. 224, 249 (1988); *Moskowitz,* 128 F.R.D. at 631 ("The fact that these traders have divergent

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22316548 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

motivations in purchasing shares would not defeat the fraud-on-the-market presumption absent convincing proof that price played *no* part whatsoever in their decision making."). In this case, each of the defendants' arguments regarding typicality goes to whether Lead Plaintiffs are entitled to the fraud-on-the-market presumption. This is an issue on the merits, and a defense hardly unique to Lead Plaintiffs. "Exactly what plaintiff relied on in purchasing and selling his shares ... is a question of fact which can not be resolved at the class action stage." *Moskowitz,* 128 F.R.D. at 631 (citing *Eisen v. Carlisle & Jacqueline,* 417 U.S. 156, 177-78 (1974)).

This court concludes that the Proposed Class claims are typical within the meaning of Rule 23 as they share the same operative facts and legal theories.

### 4. Adequacy of Representation

\*6 Rule 23(a)'s adequacy requirement tests the "qualifications of the counsel to represent the class" and whether there are "conflicts of interests between named parties and the class they seek to represent." *In re Prudential,* 148 F. Supp at 313 (internal citations omitted); *see also Wetzel v. Liberty Mut. Ins. Co.,* 508 F.2d 238, 247 (3d Cir.1975).

Defendants challenge the adequacy of representation based upon the alleged presence of conflicts of interest between Lead Plaintiffs and members of the Proposed Class. Defendants broadly conclude that Lead Plaintiffs are unsuited to represent the interests of the Proposed Class because Lead Plaintiffs made their decision to dispose of their holdings in IBP at an early point during the Proposed Class Period. (D.I. 63 at 36-37) However, the defendants fail to identify the presence of a real intraclass conflict not otherwise found in securities fraud claims. This court finds that Lead Plaintiffs have a strong interest in establishing liability under federal securities law, and that they seek similar damages for similar injuries. Consequently, the court concludes that Lead Plaintiffs' interests are not in conflict with those of the Proposed Class, and that they will serve as adequate representatives.

This court also concludes that Lead Plaintiffs' counsel are qualified to represent the class, and that there are no conflicts of interest between Lead Plaintiffs and the Proposed Class that renders the Lead Plaintiffs

inadequate to represent the class.

### B. The Requirements of Rule 23(b)

#### 1. Superiority

The superiority requirement directs the court to "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *In re Prudential,* 148 F.3d at 316. Rule 23(b)(3) sets out several factors to be considered in this regard, including: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 26(b)(3). In determining issues of class certification, "the interests of justice require that in a doubtful case ... any error, if there is to be one, should be committed in favor of allowing a class action." *Kahan,* 424 F.2d at 169 (quoting *Esplin v. Hirschi,* 402 F.2d 94, 101 (10th Cir.1968)).

Defendants contends that the sophistication of Lead Plaintiffs cuts against a finding that a class action is a superior forum for resolving these claims. (D.I. 83 at 34) This argument, however, is in conflict with the express intent of Congress to favor institutional investors, who by their very nature are likely to have sophisticated investment strategies. *See* 15 U.S.C. § 77z-1(b) (2001). Federal securities laws do not protect investors any differently, and certainly no less, simply because they engage in more complicated investment strategies. *See Deutschman v. Beneficial Corp.,* 841 F.2d 502, 507-08 (3d Cir.1988).

\*7 The court finds that the factors enumerated in Rule 23(b)(3) militate in favor of the conclusion that a class action is superior to other available methods of litigating the claims. There are potentially thousands of claimants with varying degrees of injury. "The class action device is especially appropriate in securities fraud cases, such as this one, wherein there are many individual plaintiffs who suffer damages too small to justify a suit against a large corporate defendant." *Deutschman v. Beneficial*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22316548 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

*Corp.,* 132 F.R.D. 359, 378 (D.Del.1990).

### V. CONCLUSION

For the reasons discussed above, the court concludes
that Lead Plaintiffs have met the requirements set
forth in Rule 23, and that certification of the
Proposed Class is proper.

### ORDER

At Wilmington this 6th day of October 2003, Lead
Plaintiffs having established that class certification
under Fed.R.Civ.P. 23 is proper;

IT IS ORDERED that:

1. A Class, defined as all persons and entities
(excluding defendants, members of the immediate
families of and persons affiliated with each
defendant, the legal representatives, heirs, and
successors and assigns of any of the defendants) who
purchased IBP, Inc. ("IBP") securities on or before
March 29, 2001, and subsequently sold those
securities during the period from March 30, 2001
through June 15, 2001, inclusive, and who sustained
damages as a result of such transactions, is hereby
certified.

2. Aetos Corporation, Pelican Limited Partnership,
Stark Investments, L.P., and Shepherd Investments
International, Ltd. are hereby appointed as Class
Representatives.

3. Duane Morris L.L.P., Abbe Gardy L.L.P., and
Quarles & Brady L.L.P. are hereby appointed as
Class Counsel.

D.Del.,2003.
In re Tyson Foods, Inc.
Not Reported in F.Supp.2d, 2003 WL 22316548
(D.Del.)

Briefs and Other Related Documents (Back to top)

• 2004 WL 1125187 (Trial Motion, Memorandum
and Affidavit) Lead Plaintiffs' Opposition to
Defendants' Motion for Leave to File Sur-Reply
(May. 05, 2004)
• 2004 WL 869617 (Trial Motion, Memorandum and
Affidavit) Defendants' Consolidated Reply Brief in
Support of Their Respective Motions for Summary
Judgment (Apr. 05, 2004)

• 2004 WL 874829 (Trial Motion, Memorandum and
Affidavit) Defendants' Answering Brief in
Opposition to Lead Plaintiffs' Motion for Summary
Judgment (Mar. 22, 2004)
• 2004 WL 601957 (Trial Pleading) Lead Plaintiffs'
Opening Brief in Support of Their Motion for
Summary Judgment on Liability (Corrected Version)
(Feb. 26, 2004)
• 2004 WL 601956 (Trial Pleading) Defendants Don
Tyson and John Tyson's Brief in Support of Motion
for Summary Judgment (Feb. 19, 2004)
• 2001 WL 34131251 (Trial Pleading) Class Action
Complaint (Jun. 22, 2001)
• 1:01cv00425 (Docket) (Jun. 22, 2001)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT J

Westlaw.

Not Reported in F.Supp.
Not Reported in F.Supp., 1995 WL 447658 (D.Del.)
(Cite as: Not Reported in F.Supp.)

Page 1

**H**

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
Joseph R. WALLING, and other individuals similarly
situated, Plaintiff,

v.

Edward J. BRADY, Harold R. Brohawn, John D.
Daniello, William R. Hickman, Terrence M.
Shannon, John W. Stewart, James R. Wahl and
Alfred C. Wilson, Jr., as Trustees of the Plumbers
and Pipefitters Local Union No. 74 Pension Fund,
and Plumbers and Pipefitters Local Union No. 74
Pension Fund, Defendants.
**Civ.A. No. 94-410 MMS.**

July 19, 1995.

Richard L. Abbott, Theisen, Lank, Mulford &
Goldberg, P.A., Wilmington, DE, for plaintiff.
Perry F. Goldlust, Heiman Aber & Goldlust,
Wilmington, DE, for defendants; David Garcia-
Villarreal, Blackburn & Michelman, P.C.,
Philadelphia,, PA, of counsel.

*MEMORANDUM OPINION*

MURRAY M. SCHWARTZ, District Judge.

I. INTRODUCTION

\*1 Plaintiff Joseph R. Walling has commenced this
action against the Plumbers and Pipefitters Local
Union No. 74 Pension Fund ("Pension Fund") and
the Pension Fund Trustees alleging violations of the
Employee Retirement Income Security Act of 1974
("ERISA"), 29 U.S.C. § 1001 *et seq.,* and the Labor
Management Relations Act, 29 U.S.C. § 186. The
Court has jurisdiction pursuant to 28 U.S.C. § 1331.
Before the Court is plaintiff's motion for class
certification. Docket Item ("D.I.") 23.

According to the record, on or about December 14,
1992, the Pension Fund Trustees informed the Fund's
participants, including plaintiff, of a newly-approved
$100 monthly increase in benefits for some of the
Pension Fund's participants. Complaint, D.I. 1 at ¶ ¶
7-8; Answer, D.I. 13 at ¶ ¶ 7-8. Effective January
1993, the enhanced benefit is payable exclusively to
Pension Fund participants who are also participants
in a second fund (a separate legal entity), known as

the Plumbers and Pipefitters Local Union No. 74
Welfare Fund ("Welfare Fund"). *Id.* Payment of the
extra $100 per month is drawn from a surplus of
investment returns enjoyed by the Pension Fund.
Affidavits of Terence Shannon, Edward Brady,
Alfred Wilson, Jr., D.I. 42, Exh. A at 9. Not every
beneficiary under the Pension Fund participates in the
Welfare Fund, which provides medical and health
care coverage to its beneficiaries. *Id.*

The amendment of Pension Fund benefits came as
reaction to an amendment enacted by the trustees of
the Welfare Fund. D.I. 1,13 at ¶ 8. The Pension Fund
Trustees were aware that effective January 1, 1993,
the Welfare Fund's plan of benefits had been
modified to require that certain retirees pay $100 per
month into the Welfare Fund for continued coverage.
D.I. 42, Exh. A at 9. These Welfare Fund participants
had previously received their health care coverage
free of charge. *Id.* In order to permit the Welfare
Fund retirees to maintain the same level of
purchasing power in the face of the new $100
monthly fee, the Pension Fund Trustees granted the
$100 per month increase as an offset for those
participating in both funds. *Id.*

Not surprisingly, plaintiff participates only in the
Pension Fund and cannot enjoy the extra $100 per
month paid to his dually-funded counterparts. D.I.
1,13 at ¶ 8. He seeks to enjoin defendants from
paying this enhanced pension benefit exclusively to
the eligible subgroup of Pension Fund beneficiaries;
as alternative relief, plaintiff seeks an order
retroactively amending the Pension Fund plan to
increase benefits by $100 per month for all
participants, with damages to be paid both
retroactively and prospectively. D.I. 1 at p. 8.

Plaintiff has moved for certification of the following
class:
All present and future beneficiaries under the
Plumbers and Pipefitters Local Union No. 74 Pension
Fund who did not receive, or will not receive, $100
per month pension benefit enhancement which
commenced January 1, 1993, because they were not,
or will not be, beneficiaries under the Plumbers and
Pipefitters Local Union No. 74 Welfare Fund.

\*2 D.I. 23 at ¶ 4. For the following reasons, the
Court will grant plaintiff's motion for class
certification.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 2

## II. DISCUSSION

Federal Rule of Civil Procedure 23 governs certification in a class action. To obtain class certification, plaintiff bears the burden of satisfying the four threshold requirements of Rule 23(a) and at least one part of Rule 23(b), *Baby Neal ex rel. Kanter v. Casey,* 43 F.3d 48, 55 (3d Cir. 1994), with the caveat that in "doubtful" cases the interests of justice require the Court to err in favor of allowing a class action, *Eisenberg v. Gagnon,* 766 F.2d 770, 785 (3d Cir.), *cert. denied,* 474 U.S. 946 (1985). In a motion for class certification, however, the Court does not address the merits of plaintiff's claims. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177 (1974).

In the present case, plaintiff argues that he satisfies each of the requirements of Rule 23(a) and Rule 23(b)(1)(B), (b)(2), and Rule 23(b)(3). Declining to address the actual elements of Rule 23, defendants limit their argument to whether class certification is appropriate and necessary. D.I. 42 at 2-3.

### A. Rule 23(a) Requirements

Rule 23(a) provides:

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The four requisites under Rule 23(a) are categorized as numerosity, commonality, typicality, and adequacy of representation.

#### 1. Numerosity

Rule 23(a)(1) permits class certification only when "the class must be so numerous that joinder of all members is impracticable." *Weiss v. York Hosp.,* 745 F.2d 786, 807-08 (3d Cir. 1984), *cert. denied,* 470 U.S. 1060 (1985). There is no numerical threshold for meeting the rule's requirement; rather, the Court makes the determination based upon common sense. *Deutschman v. Beneficial Corp.,* 132 F.R.D. 359, 371 (D. Del. 1990). As one commentator has noted:

While the attitude taken towards a given number may vary, each opinion reflects a practical judgment on the particular facts of the case. Thus no hard and fast number rule can or should be stated, since "numerosity" is tied to "impracticability" of joinder under the specific circumstances. Nevertheless, some general tendencies can be observed. While there are exceptions, numbers under twenty-one have generally been held to be too few. Numbers between twenty-one and forty have evoked mixed responses and again, while there are exceptions, numbers in excess of forty, particularly those exceeding one hundred or one thousand have sustained the requirement.

*3 3B James W. Moore & John E. Kennedy, Moore's Federal Practice ¶ 23.05 [1] at 23-138-45 (2d ed.1993); *see Weiss v. York Hosp.,* 745 F.2d at 808 n.35 (quoting same). In this case, based on defendants' answers to interrogatories, plaintiff alleges that the size of the proposed class is at least 55, including himself. D.I. 23 at ¶ 3. Many courts have certified classes of this size or less. *See e.g., Horn v. Associated Wholesale Grocers, Inc.,* 555 F.2d 270, 276 (10th Cir.1977) (holding that 46 class members satisfied Rule 23(a)(1)); *Jones v. Diamond,* 519 F.2d 1090, 1100 n. 18 (5th Cir. 1975) (48 member class met numerosity requirement); *Arkansas Educ. Ass'n v. Board of Educ.,* 446 F.2d 763, 766-67 (8th Cir. 1971) (20 member class upheld); *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n,* 375 F.2d 648, 653 (4th Cir. 1967) (18 member class upheld); *New Castle v. Yonkers Contracting Co.,* 131 F.R.D. 38, 40 (D.N.J. 1990) (36 member class certified); *Artz v. Fairbanks Co.,* 112 F.R.D. 59 (N.D.N.Y 1986) (potential class in excess of 40 members certified); *Philadelphia Elec. Co. v. Anaconda Amer. Brass Co.,* 43 F.R.D. 452, 463 (E.D.Pa.1968) (25 member class certified). *See also Butkus v. Chicken Unlimited Enter., Inc.,* 1971 Trade Cas. (CCH) ¶ 73780 at 91,291, 1971 WL 582 at *1 (N.D. Ill. November 5, 1971) (certifying a class of 36, "noting the difficulties involved in having thirty-five intervenors, all with their respective attorneys, attempt to go through the formal motions required for entrance into and participation in the suit.").

In addition to class size, there are several other factors courts consider in determining whether joinder is impracticable. These include: judicial economy in the avoidance of a multiplicity of actions, geographic disbursement of class members, financial resources, requests for prospective relief involving future class members, and the amount of the claims

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1995 WL 447658 (D.Del.)
(Cite as: Not Reported in F.Supp.)

Page 3

of the class members. 1 Herbert B. Newberg and Alba Conte, *Newberg on Class Actions* § 3.06 (3d ed. 1992) (collecting cases); *Ardrey v. Federal Kemper Ins. Co.,* 142 F.R.D. 105, 110 (E.D. Pa. 1992). An examination of these factors militates towards class certification in the case *sub judice.* It is much more convenient and expedient for the Court to resolve the issue in this case in one adjudication as opposed to at least 55 discrete and redundant actions.

According to plaintiff, the class members are retirees whose resources may be limited and whose claims are valued at approximately $2700 each. D.I. 24 at 10. These relatively small claims may be described as "uneconomical" to be brought individually and thus properly litigated as a class action. *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 809 (1985). As retirees, the putative class members may or may not have relocated outside the District of Delaware. This uncertainty weights against practicability of joinder and in favor of class certification. *Artz v. Fairbanks Co.,* 112 F.R.D. 59, 61 n.6 (N.D.N.Y. 1986). Given the above considerations, the Court concludes that the numerosity requirement has been met for the proposed class.

### 2. Commonality

\*4 Plaintiff is also required to show the existence of "questions of law or fact common" to the proposed class. Fed. R. Civ. P. 23(a)(2). Because this requirement may be satisfied by one common issue, it is easily met. *Baby Neal ex rel. Kanter v. Casey,* 43 F.3d 48, 56 (3d Cir. 1994). In the case at bar, the common issue of law concerns defendants' course of conduct, *i.e.,* whether the Pension Fund's schedule of benefits, as modified in January 1993, violates ERISA and the Labor Management Relations Act. Each member of the proposed class would be identically impacted in their receipt of $100 per month less than the pensioners who participate in both the Pension Fund and the Welfare Fund. All would possess the same right to proceed against defendants for the asserted violations of law.

The Court recognizes that there may be slight factual variations among the proposed class members. Although the disparity in Pension Fund benefit payouts commenced on January 1, 1993, it is possible that not all class members would have been receiving Pension Fund benefits as of that date. Some members of the proposed class may not have inaugurated receipt of benefits until more recently; however, these individuals would still be receiving $100 per

month less than the dually-funded pensioners. It is well settled that such inconsequential factual differences among the claims of the putative class members do not defeat certification. *Id.; Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 456 (3d Cir. 1977), *cert. denied,* 434 U.S. 1086 (1978). Here, the proposed class members are challenging defendants' conduct involving the same operative facts and the same ultimate result: alteration of the Pension Fund's plan of benefits and the nonparity in Pension Fund benefits. Therefore, the Court finds there are questions of law and fact common to the member of the proposed class as required by Fed. R. Civ. P. 23(a)(2).

### 3. Typicality

Rule 23(a)(3) requires that "the claims ... of the representative parties [[[be] typical of the claims ... of the class." This typicality requirement involves assessment of whether the representative plaintiff differs markedly from the other potential class members either in his individual situation or in the legal theory upon which he bases his claim. *Baby Neal ex rel. Kanter v. Casey,* 43 F.3d at 57-58. "Typical" does not necessarily mean identical, *id.* at 56; rather, the representative plaintiff must not exhibit unique circumstances which will receive inordinate emphasis in the litigation and thus prevent other claims from being pressed with equal vigor, *Weiss v. York Hosp.,* 745 F.2d 786, 809 n.36 (3d Cir. 1984), *cert. denied,* 470 U.S. 1060 (1985); *Christiana Mortgage Corp. v. Delaware Mortgage Bankers Ass'n,* 136 F.R.D. 372, 379 (D. Del. 1991). Ultimately, the Court must determine whether the named plaintiff has incentives that align with those of the potential class members so as to guarantee that the absentees' interests will be fairly represented. *Baby Neal ex rel. Kanter v. Casey,* 43 F.3d at 57.

\*5 Here, the plaintiff representative of the proposed class is typical of the class sought to be certified. He receives the same lesser benefit as others in the putative class and shares the same interest in either enjoining the payment of the enhanced benefit or in seeking a parity of the level of benefits paid to all Pension Fund beneficiaries. The defendants' course of conduct has given rise to the claims of all class members, and defendants have not taken any action unique to the named plaintiff. Accordingly, the Court concludes that plaintiff is typical of the proposed class and has satisfied the requirement of Rule 23(a)(3).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1995 WL 447658 (D.Del.)
(Cite as: Not Reported in F.Supp.)

Page 4

### 4. Adequacy of Representation

Rule 23(a)(4) requires the Court to evaluate whether "the representative part[y] will fairly and adequately protect the interests of the class." In *Hassine v. Jeffes,* 846 F.2d 169 (3d Cir. 1988), the Third Circuit Court of Appeals stated:

The inquiry that a court should make regarding the adequacy of representation requisite of Rule 23(a)(4) is to determine that the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously, that he or she has obtained adequate counsel, and that there is no conflict between the individual's claims and those asserted on behalf of the class.

*Id.* at 179 (citations omitted). Defendants do not question whether plaintiff is capable of vigorous representation of the claims in this case, nor do they argue that plaintiff's interests would be antagonistic to those of the class. Defendants also do not challenge the adequacy of plaintiff's counsel. There is no record evidence suggesting that the plaintiff's interests are not aligned fully with the proposed class members; plaintiff's counsel appears to be experienced and competent. In short, there is no reason to not conclude that plaintiff has fulfilled the adequacy of representation requirement.

### B. Requirements under Rule 23(b)

In addition to meeting the four requisites of Rule 23(a), plaintiff must satisfy at least one requirement under Rule 23(b) to prevail on his motion for class certification. *Baby Neal ex rel. Kanter v. Casey,* 43 F.3d at 55. Plaintiff contends that he can establish certification worthiness under any and all of the following: Rule 23(b)(1)(B), (b)(2), and (b)(3). D.I. 24 at 15-17. Because the Court finds class certification appropriate under Rule 23(b)(3), it will not reach the issue of certification under the other subsections of the rule.

Under Rule 23(b)(3), a class may be certified if "the court finds that the questions of law or fact common to the members of the class predominate over any question affecting only individual members, and that a class action is superior to other available methods for fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The rule sets forth four factors upon which the court should ground its analysis:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

**\*6** *Id.*

As discussed above, the proposed class members have little interest in controlling individual actions for several reasons. First, the singular issue to be litigated - the legality of defendants' conduct in amending the Pension Fund and the schedule of benefits - is common and predominates over any incidental questions that could be raised by individual members. Determining the legality of a schedule of benefits for all participants in one action is more efficient and effective for all parties involved. *See Walsh v. Pittsburgh Press Co.,* 160 F.R.D. 527, 531 (W.D. Pa. 1994) (certifying class in action where all potential class members sought same benefits and information under ERISA). Second, the value of each individual's claim under the instant facts is small when compared with the costs of prosecuting that claim, a disincentive for the lone beneficiary to file and control an individual suit.

None of the parties has been able to point to other litigation commenced by potential class members; a survey of the court docket in the District of Delaware similarly fails to reveal any such suits. If such suits were to be brought, it is more than likely they would be brought in this forum. Plaintiff argues, and defendant does not dispute, that many or most of the proposed class members are located in Delaware. D.I. 24 at 18. The defendants are also located in Delaware. D.I. 1 at ¶ 6. All of these factors weight in favor of concentrating this litigation in this forum.

Finally, there are no foreseeable difficulties regarding management of this litigation. The number of class members is not unwieldy for the Court and the parties to readily manage. Defendants have already identified names of all the potential class members, and, because each member receives monthly benefits from the Pension Fund, the Court is confidant that the current address of each member is also readily available. It will not be difficult for plaintiff to give notice to the 55 identified members of the class as required by Rule 23(c). In light of all of the above considerations, the Court finds that a class action is superior to other methods of adjudication and that

Not Reported in F.Supp.
Not Reported in F.Supp., 1995 WL 447658 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

plaintiff has met his burden in satisfying the requirements of Rule 23(b)(3).

Defendants have not explicitly challenged the applicability of elements of Rule 23(b)(3), (b)(2), or (b)(1) to the facts of this case. Instead, they contend that certification of a class is unnecessary and inappropriate because the injunctive and declaratory relief sought by plaintiff will automatically benefit the members of the proposed class. D.I. 42 at 3. This so-called "lack of need" approach has been both embraced and rejected by a number of courts (but not the Court of Appeals for the Third Circuit); under this rationale, district courts may deny class certification under Rule 23(b)(2) if certification is not needed for the potential class members to obtain the desired class-wide relief. *Bacal v. Southeastern Pennsylvania Transp. Auth.,* 1995 WL 299029 *5 (E.D. Pa. May 16, 1995) (collecting cases).

*7 Plaintiff rejoins by pointing to his prayer for alternative relief in the form of money damages, D.I. 1 at 8, a remedy which possibly removes plaintiff from Rule 23(b)(2) rubric of injunctive and declaratory relief. *See In re School Asbestos Litigation,* 789 F.2d 996, 1008 (3d Cir.) (action for money damages may not be maintained as a Rule 23(b)(2) class action), *cert. denied,* 479 U.S. 852 (1986). Nevertheless, having ruled the class certifiable under Rule 23(b)(3), the Court need not reach the issues of class certification under the other subparts of the Rule.

### III. CONCLUSION

For the foregoing reasons, the plaintiff having met his burden for establishing class certification under Rule 23(a) and 23(b)(3), the Court will grant plaintiff's motion for class certification. The Court will certify the class of persons described in the order accompanying this memorandum.

> FN1. The Pension Fund Trustees are defendants Brady, Brohawn, Daniello, Hickman, Shannon, Stewart, Wahl, and Wilson.

> FN2. The Court does not necessarily find any of the facts outlined above to be true, but considers the facts placed before it in pleadings and affidavits as accurate for the limited purpose of deciding the motion for class certification. *See Blackie v. Barrack,*

524 F.2d 891, 901 n.17 (9th Cir. 1975) (for purposes of class certification motion, court takes factual allegations in complaint as true), *cert. denied,* 429 U.S. 816 (1976); *Eisenberg v. Gagnon,* 766 F.2d 770, 786 (3d Cir.) (relying on complaint's allegations in considering appeal of denial of class certification), *cert. denied,* 474 U.S. 946 (1985); *Roe v. Operation Rescue,* 123 F.R.D. 500, 502 (E.D. Pa. 1988) (relying on pleadings and affidavits for purposes of class certification).

> FN3. In addition, plaintiff moved for the inclusion of all future beneficiaries, currently unknown, who will be similarly situated, *i.e.,* participants of the Pension Fund who will not receive the $100 per month benefit increase because they will not be participants under the Welfare Fund. D.I. 23 at ¶ 3. The law allows for inclusion of this imprecise number of additional potential class members to meet the numerosity requirement. *Deutschman v. Beneficial,* 132 F.R.D. at 371; *Malloy v. Eichler,* 628 F. Supp. 582, 590 (D. Del.1986) (class of at least 30 persons, with an unknown number in unresearched cases, met numerosity requirement), *cert. denied,* 860 F.2d 1179 (3d Cir. 1988). However, in the proposed form of order defining the class, plaintiff did not include or mention any future beneficiaries. Because it is not crucial, for purposes of numerosity in this case, that the class definition encompass future beneficiaries, the Court will not consider them in its analysis.

> FN4. The labyrinthine body of conflicting jurisprudence on this issue has not gone unnoticed by Newberg, the leading commentator on class actions, who registers this conclusion:
> Like Newton's Law of Thermodynamics, for every class denial on the basis of lack of need, one is able to find a decision, or several decisions, often in the same circuit, where other courts have certified Rule 23(b)(2) classes under virtually the same circumstances.... [A] *need* requirement finds no support in Rule 23 and, if applied, would entirely negate any proper class certifications under Rule 23(b), a result hardly intended by the Rules Advisory Committee.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1995 WL 447658 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

Page 6

1 Herbert B. Newberg and Alba Conte,
*Newberg on Class Actions* § 4.19, at 4-62,
4-70 (3d ed. 1992) (collecting cases).
D.Del. 1995
Walling v. Brady
Not Reported in F.Supp., 1995 WL 447658 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:94cv00410 (Docket) (Aug. 02, 1994)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2006, I electronically filed the foregoing COMPENDIUM OF UNREPORTED CASES CITED IN DIRECT PURCHASER CLASS PLAINTIFFS' OPENING BRIEF IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION using CM/ECF, which will send notification of such filing to all registered participants, including:

Josy W. Ingersoll, Esquire
John W. Shaw, Esquire
Karen Keller, Esquire
Young Conaway Stargatt & Taylor
The Brandywine Building
1000 West Street, 17th Floor
P. O. Box 391
Wilmington, DE 19899-0391

Mary B. Graham, Esquire
Morris Nichols Arsht & Tunnell
1201 North Market Street
P. O. Box 1347
Wilmington, DE 19899

Frederick L. Cottrell, III, Esquire
Anne Shea Gaza, Esquire
Richards Layton & Finger
One Rodney Square
920 North King Street
Wilmington, DE 19801

Mary B. Matterer, Esquire
Morris James Hitchens & Williams
222 Delaware Avenue
10th Floor
P. O. Box 2306
Wilmington, DE 19899

Pamela S. Tikellis, Esquire
Robert J. Kriner, Jr., Esquire
A. Zachary Naylor, Esquire
Chimicles & Tikellis ILP
One Rodney Square
P. O. Box 1035
Wilmington, DE 19899

Jonathan L. Parshall, Esquire
Murphy Spadaro & Landon
1011 Centre Road
Suite 210
Wilmington, DE 19801

Elizabeth M. McGeever, Esquire
Prickett Jones Elliott, P.A.
1310 King Street
P. O. Box 1328
Wilmington, DE 19899

Michael I. Silverman, Esquire
Lynn A. Iannone, Esquire
Silverman & McDonald
1010 N. Bancroft Parkway #22
Wilmington, DE 19805

Patrick Francis Morris, Esquire
Morris & Morris
1105 North Market Street
Suite 803
Wilmington, DE 19801

I hereby certify that on May 8, 2006 I sent by electronic mail the foregoing document

to the following non-registered participants:

REPRESENTING DIRECT PURCHASER CLASS
(C.A. No. 05-340):

Bruce E. Gerstein
**bgerstein@garwingerstein.com**

Barry S. Taus
**btaus@garwingerstein.com**

Adam M. Steinfeld
**asteinfeld@garwingerstein.com**

Rimma Neman
**rneman@garwingerstein.com**

Daniel Berger
**danberger@bm.net**

Eric L. Cramer
**ecramer@bm.net**

Peter Kohn
**pkohn@bm.net**

Neill W. Clark
**nclark@bm.net**

Linda P. Nussbaum
**lnussbaum@cmht.com**

Steig D. Olson
**solson@cmht.com**

David P. Germaine
**dgermaine@daarvanek.com**

Joseph Vanek
**jvanek@daarvanek.com**

Stuart Des Roches
**stuart@odrlaw.com**

Andrew Kelly
**akelly@odrlaw.com**

Adelaida Ferchmin
**aferchmin@odrlaw.com**

David P. Smith
**dpsmith@psfllp.com**

Russell A. Chorush
**rchorush@hpcllp.com**

Michael F. Heim
**mheim@hpcllp.com**

REPRESENTING WALGREEN, ECKERD,
KROGER, MAXI, CVS, RITE AID
(C.A. No. 05-340):

Elizabeth M. McGeever
**emmcgeever@prickett.com**

Scott E. Perwin
**sperwin@kennynachwalter.com**

Joseph T. Lukens
**jlukens@hangley.com**

REPRESENTING PACIFICARE
(C.A. No. 05-340):

Jonathan L. Parshall
**jonp@msllaw.com**

William Christopher Carmody
**bcarmody@susmangodfrey.com**

John Turner
**jturner@susmangodfrey.com**

Shawn Rabin
**srabin@susmangodfrey.com**

Justin Nelson
**jnelson@susmangodfrey.com**

Ken Zylstra
**kzylstra@sbclasslaw.com**

Lyle Stamps
**lstamps@sbclasslaw.com**

Steve Connolly
**sconnolly@sbclasslaw.com**

Casey Murphy
**cmurphy@sbclasslaw.com**

Mark Sandman
**mms@rawlingsandassociates.com**

Jeffrey Swann
**js5@rawlingsandassociates.com**

REPRESENTING IMPAX
LABORATORIES (C.A. No. 03-120)

Mary Matterer
**mmatterer@morrisjames.com**

John C. Vetter
**jvetter@kenyon.com**

Asim Bhansali
**abhansali@kvn.com**

REPRESENTING INDIRECT PARTY
PLAINTIFFS (C.A. No. 05-360):

Pamela S. Tikellis
Thomas M. Sobol
Patrick E. Cafferty
Jeffery L. Kodroff
Bernard J. Persky
Michael Gottsch
A. Zachary Naylor
Robert Davis
Brian Clobes
Michael Tarringer
Tim Fraser
David Nalven
Greg Matthews
Christopher McDonald
Kellie Safar
Ted Lieverman
Pat Howard
**tricor@chimicles.com**

Michael I. Silverman
mike@silverman-mcdonald.psemail.com

Lynn A. Iannone
lynn@silverman-mcdonald.psemail.com

Patrick Francis Morris
**pmorris@morrisandmorrislaw.com**

REPRESENTING TEVA
PHARMACEUTICALS (C.A. No. 02-1512):

Josy W. Ingersoll
Bruce M. Gagala
Karen E. Keller
Christopher T. Holding
Ken Cohen
Elaine Blais
**tricor@ycst.com**

REPRESENTING ABBOTT (ALL CASES):

Mary B. Graham
**tricor@mnat.com**

William F. Cavanaugh
**wfcavanaugh@pbwt.com**

Chad J. Peterman
**cjpeterman@pbwt.com**

REPRESENTING FOURNIER (ALL CASES):

Frederick L. Cottrell, III
Anne Shea Gaza
Steven S. Sunshine
Matthew P. Hendrickson
Bradley J. Demuth
Maggie DiMoscato
Timothy C. Bickham
**tricor@rlf.com**

Jeffrey S. Goddess (Del. Bar No. 630)
Jessica Zeldin (Del. Bar No. 3558)
Rosenthal, Monhait & Goddess, P.A.
Suite 1401, 919 Market Street
P. O. Box 1070
Wilmington, DE 19899-1070
(302) 656-4433
jgoddess@rmgglaw.com
jzeldin@rmgglaw.com