# EXHIBIT F

# *RESUME OF*

# *GARWIN GERSTEIN & FISHER LLP*

Garwin Gerstein & Fisher LLP and its predecessor firms have successfully championed the

rights of investors and consumers for over fifty years. Garwin Gerstein & Fisher are well known

around the United States for skill in representing investors, consumers, small businesses and the

public in complex class action litigation involving such issues as:

- *The violation of investors' rights as a result of securities fraud or breaches of fiduciary duty;*

- *Antitrust violations, such as price-fixing and other anti-competitive practices;*

- *Unfair and deceptive trade practices;*

- *Deceptive insurance practices;*

- *Employment discrimination practices.*

Garwin Gerstein & Fisher has been general or trial counsel in class action and stockholder

derivative lawsuits where we have generated outstanding results on behalf of our clients for over fifty

years.

Set forth below are a few examples of cases which Garwin Gerstein & Fisher have

prosecuted as lead or co-lead counsel over the past few years alone:

    (a)    *In re Buspirone Antitrust Litigation,* MDL Docket No. 1413 (S.D.N.Y.) (Co-Lead Counsel). Case was resolved after direct negotiation between our firm and counsel for the defendant for $220 million on behalf of a class of direct purchasers of Buspirone, *see*, 185 F.Supp.2d 340 (S.D.N.Y. 2002) granting summary judgment against Bristol Myers with respect to certain patent infringement claims *see also*, 208 F.R.D. 516 (S.D. N.Y. 2002) discussing issues of waiver of attorney client privilege with respect to matters placed at issue in the litigation. *See also e.g.*, 185 F.Supp.2d 363 (S.D.N.Y. 2002); 210 F.R.D. 43 (S.D.N.Y. 2002)

(b)   *In re Relafen Antitrust Litigation,* Master File No. 01-12239-WGY (D. Mass.) (Co-Lead Counsel). Case was resolved on the eve of trial after direct negotiation between our firm and counsel for the defendant for $175 million on behalf of a class of direct purchasers of Relafen. District Court certified class of direct purchasers 218 F.R.D. 337 (D. Mass 2003) and denied defendants' motion for summary judgment.

(c)   *Butler et al. v. Provident Mutual Life Insurance Company*, January Term, 1999, No. 007801 (Court of Common Pleas-Philadelphia County), (Co-Lead Counsel) After expedited efforts led by our firm, we successfully preliminarily and permanently enjoined a transaction we argued would had denied Provident's policyholders any compensation for their ownership interests in Provident as part of a conversion of Provident to a Mutual Holding Company. After defeat of this proposal, at our urging, Provident then successfully sought a partner for a sponsored demutualization (Nationwide Financial Services) which delivered over $1 billion in compensation to Provident's eligible members.

(d)   *Sanders v. Wang, etc.*, Del. Ch., CA No. 16640, Steele, V.C. (November 8, 1999); (Co-Lead Counsel)  The Court of Chancery concluded that a Compensation Committee of the Board "exceeded their authority" under a stock option plan in awarding shares to inside directors/officers in granting judgment on the pleading for plaintiffs on behalf of nominal defendant Computer Associates - settled for the return of in excess of $250 million in value of common stock for the Company. *See e.g.*, 1999 WL 1044880, 25 Del. J.Corp.L. 1036

(e)   *In re M&F Worldwide Corp. Shareholder Litigation*, Consolidated Civil Action No. 18502, V.C. Strine, (Co-Trial Counsel). After complete discovery and a two-week trial, the defendants agreed in 2002, to the complete relief sought by the plaintiffs - rescission of a complex series of transactions valued by defendants' own evidence at over $130 million

(f)   *In re Cardizem CD Antitrust Litigation* 200 F.R.D. 326 (E.D. Mich. 2001), (Co-Lead Counsel) Certifying class of direct purchasers of diltiazem; 105 F. Supp.2d 618 (E. D. Mich. District Court 2000) found Noerr-Pennington doctrine inapplicable and finding antitrust claim stated under both *per se* rule and rule of reason; granting partial summary judgment for violation of antitrust law. Case settled for $110 million in cash.

(g)   *In re Terazosin Hydrochloride Antitrust Litigation* 99-MDL-1317 (S.D.Fla.) (Co-Lead Counsel), recovered $75 million for a class of direct purchasers of Terazosin Hydrochloride ("Hytrin") who were overcharged because of an illegal agreement between Abbott Laboratories, Zenith Pharms. Inc. (now known as Ivax Pharms., Inc.) and Geneva Pharms. Inc., which improperly delayed competition from generic versions of Hytrin; *see, e.g.,* 335 F.Supp 2d 1336 (S.D. Fla. 2004); 352 F. Supp. 2d 1279 (S.D. Fla. 2005); 344 F.3d 1294 (11th Cir. 2003)l 164 F. Supp. 1240 (S.D. Fla. 2001),

2

(h) *In re Remeron Antitrust Litigation*, Case No. 2:02-cv-02007-FSH-PS (D.N.J.) (Co-Lead Counsel), recovered $75 million for a class of direct purchasers of mirtazapine who were overcharged because Organon USA, Inc. and Akzo Nobel, N.V. engaged in a scheme involving various illegal and deceptive acts to improperly extend Remeron's patent protection and market exclusivity, in violation of §2 of the Sherman Act.

(i) *Gutter v. E.I. DuPont de Nemours, et al.*, Case No. 95-2152 (S.D. Fla.), (Lead Counsel) After over seven years of intensive litigation, after complete fact and expert discovery, this securities law violation case was settled in 2003 for $77.5 million in cash. *See e.g.*,124 F.Supp.2d 1291 (S.D.Fla. 2000)

(j) *In re Cendant Corporation Derivative Action Litigation*, 189 F.R.D. 117 (D.N.J. 1999), 232 F.Supp.2d 327 (D.N.J. 2002), (Lead Counsel) Court found, *inter alia*, demand excused where board implicated in failing to oversee alleged management financial fraud and Certificate of Incorporation liability exclusion for breach of fiduciary duty did not insulate directors – recovery of $54,000,000 for Cendant, and its shareholders.

(k) *In re Nuveen Fund Litigation*, 1996 WL 347012, 1996 WL 328001, 1996 WL 328003, 1996 WL 328006, 1994 WL 505293, 1994 WL 505294 (N.D. Ill. 1996) (Lead Counsel) (a case addressing novel issues arising under the Investment Company Act and Minnesota Corporate law); *see also* 555 N.W. 2d 301 (MN App. 1996). – recovery of $24 million in cash for shareholders of certain Nuveen Funds.

(l) *In re Northwest Airlines Corp. Antitrust Litigation*, 49 F.Supp.2d 553 (E.D. Mich. 1999), 197 F.Supp.2d 908 (E.D. Mich. 2002), 208 F.R.D. 174 (E.D.Mich. 2002), 310 F.3d 953 (6th Cir. 2002) (Lead Counsel) Successful withstanding a motion to dismiss a novel antitrust claim lodged against, *inter alia*, Northwest Airlines for "hidden cities" price ticketing practices and then successfully persuaded the District Court to certify a class of those impacted by "hidden cities" fares.

(m) *In re USACafes, L.P. Litigation*, 600 A.2d. 43 (Del. Ch. 1991), (Lead Counsel) - - a case recognizing for the first time under Delaware law, a fiduciary duty owed by directors of a Delaware corporate general partnership to its Delaware limited partners.

(n) *Zapata v. Maldonado*, 430 A.2d 779 (Del. Supr. 1981) (Lead Counsel) -- unquestionably one of the most important decisions in stockholder derivative litigation. The Delaware Supreme Court's decision halted a tidal wave of decisions that threatened to eliminate the derivative action as an effective barrier to corporate waste and mismanagement.

(o) *Michelson v. Duncan*, 407 A.2d 211 (Del. Sup. 1979) (Lead Counsel) --a reversal in part of a dismissal of a derivative action predicated upon a shareholder

ratification. The Delaware Supreme Court defined and reinstated plaintiff's waste cause of action.

(p)     *Stein v. Orloff*, Del. Ch., CA No. 7276, 11 Del. J. Corp. L. 312, 1985 WL 11561 Hartnett, V.C. (May 30, 1985) (Lead Counsel) - finding demand excused where plaintiffs stated a claim for waste of corporate assets by alleging properly "the consideration received by corporation was so inadequate that no person of ordinary sound business judgment would deem it worth what corporation paid."

(q)     *Galef v. Alexander*, 615 F.2d 51 (2d Cir. 1980) (Lead Counsel) --almost as important a decision as *Maldonado*, wherein Second Circuit reversed and remanded a business judgment dismissal of a derivative action. The Second Circuit's decision strongly intimated that business judgment could not be used to dismiss a well pleaded proxy claim, regardless of state law.

(r)     *Halpern v. Armstrong*, 491 F. Supp. 365 (S.D.N.Y. 1980) (Lead Counsel) - - an important Section 14(a) decision by Judge Milton Pollack wherein he found material proxy violations and thereby voided a number of transactions undertaken by Revlon, Inc., the corporation in question.

(s)     *Jacobs v. Adams*, 601 F.2d 176 (5th Cir. 1979) (Lead Counsel)--an important and total reversal of a district court's holding (1) that a New York executor may not prosecute a derivative action in Florida; and (2) that Florida law requires a plaintiff in a derivative action to make a demand on a corporation's shareholders before instituting suit.

## FIRM PARTNERS

*BRUCE E. GERSTEIN* graduated from Bernard M. Baruch College of The City University of New York in 1972 with a Bachelor of Business Administration with a major in public accounting, and is a Certified Public Accountant licensed in the State of New York (inactive). He graduated from Brooklyn Law School with honors in 1977. For the six years prior to joining the firm then known as Garwin & Bronzaft in January 1978, Mr. Gerstein was an investigatory accountant specializing in the area of stockholder's derivative and class actions. Mr. Gerstein is recognized as a leading attorney in complex litigation around the country resolving successfully antitrust, securities and consumer related class actions resulting in hundreds of millions of dollars for class members. Most recently, he was principally responsible for the negotiation of settlements of $110 million (Cardizem/Andrx), $220 million (Buspar/Bristol Myers) and $175 million (Relafen/Glaxo Smith Kline) representing direct purchasers of pharmaceutical products.

He has been named lead counsel in federal and state courts across the United States. He has lectured recently at conferences discussing important cutting edge antitrust issues in Florida and California, appearing most recently at a University of San Francisco symposium as a panelist with

4

Herbert Hovenkamp, a leading authority and author of the seminal treatise on Antitrust law, discussing *inter alia*, issues arising out of the interplay between antitrust law, patent law and the Hatch Waxman Act.

Mr. Gerstein is admitted to practice in all of the Courts of the State of New York and the Court of Appeals for the First, Second, Third, Fifth, Seventh, Ninth and Eleventh Circuits. He is a member of the Association of the Bar of the City of New York and the New York County Lawyers' Association (the "NYCLA"), the Federal Bar Council and the Federal Courts Committee of the NYCLA.

*SCOTT W. FISHER* graduated from Rensselaer Polytechnic Institute in 1971 with a Bachelor of Science degree in Aeronautical Engineering. He received a Master of Arts in Mathematics Education in 1974 from Brooklyn College. Following his graduation from Rensselaer Polytechnic Institute, Mr. Fisher was an educator employed by the New York City Board of Education in a wide variety of pedagogical areas including curriculum development in mathematics.

Mr. Fisher graduated from Brooklyn Law School in 1982. Following his graduation from law school, he joined the firm then known as Garwin, Bronzaft & Gerstein, where he has worked on many major consumer class actions, stockholder class and derivative litigations. Mr. Fisher has been appointed lead or co-lead counsel in various securities litigations. Most recently Mr. Fisher served as co-trial counsel in Delaware Chancery Court in the *M&F Worldwide Corp. Shareholder Litigation*, Del. Ch. Consolidated C.A. No. 18502 NC (V.C. Strine) a case which resulted in a complete victory for M&F shareholders. He also had a prominent role in the pre-trial and trial proceedings of the fen/phen diet drug product liability class action tried before the Hon. Marina Corodemus in New Jersey Superior Court in 1999, which was resolved as part of a global resolution of diet drug cases for in excess of $4 billion.

Mr. Fisher has lectured recently at a Lorman sponsored conference on issues raised in connection with the settlement of class actions, including the use of mediation to facilitate settlement; and has appeared as a panel member at a New York State Bar Association conference discussing *inter alia*, class action practice from the plaintiff's perspective.

Mr. Fisher is admitted to the Bars of the State of New York and of the United States District Courts for the Southern and Eastern Districts of New York, the District of Arizona, the Eastern District of Michigan, the Courts of Appeal for the Second, Third, Seventh and Eleventh Circuits and the Supreme Court of the United States. Mr. Fisher is also a member of The Association of The Bar of The City of New York, American Trial Lawyers' Association and The New York State Bar Association.

*BARRY S. TAUS* graduated Cum Laude from the State University of New York at Albany in 1986 with a Bachelor of Science degree in Accounting.

Mr. Taus joined the firm then known as Garwin, Bronzaft, Gerstein & Fisher in 1988, where he has worked on numerous antitrust and stockholder class action and derivative litigations. He graduated from Brooklyn Law School in 1989.

Mr. Taus is admitted to the Bars of the State of New York and the United States District Court for the Southern District of New York. He is also a member of the Association of the Bar of the City of New York and the New York State Bar Association.

Mr. Taus is acting as Lead Counsel or Co-Lead Counsel in a number of major, complex antitrust litigations, including *In re Terazosin Hydrochloride Antitrust Litigation* (S.D. Fla.); *In re Ciprofloxacin Hydrochloride Antitrust Litigation* (E.D. N.Y.); and *In re K-Dur Antitrust Litigation* (D.N.J.) (Motion for Appointment as Co-Lead Counsel pending).

Mr. Taus had also taken a central, active role in many of the stockholder class actions and derivative actions in which his firm has been Lead Counsel (as detailed above), including *Rebenstock v. Fruehauf (Fruehauf Trailer); In Re Par Pharmaceutical Securities Litigation; and In Re F&M Distributors, Inc. Securities Litigation.*

**NOAH H. SILVERMAN** graduated from Grinnell College in 1986 with a Bachelor of Arts degree in Political Science.

Mr. Silverman graduated from Northwestern University School of Law in 1990 and has been with the firm since May 1991.

Mr. Silverman is admitted to the Bar of the State of New York and the United States District Court for the Southern and Eastern Districts of New York. He is a member of the Association of the Bar of the City of New York.

**BRETT H CEBULASH** graduated from the University of Virginia in 1984 with a Bachelor of Arts degree in Psychology.

Mr. Cebulash graduated cum laude from Brooklyn Law School in 1993 and has been with the firm since October 1993.

Mr. Cebulash is admitted to the Bar of the State of New York and the State of New Jersey and the United States District Court for the Southern and Eastern Districts of New York. He is a member of the Association of the Bar of the City of New York and the American Bar Association.

**JOSEPH OPPER** graduated from Tufts University in 1970 with a Bachelor of Arts in Political Science. He graduated from Hofstra University School of Law in 1975. From 1985 to 1996

6

Mr. Opper was a member of the Antitrust Bureau of the New York State Department of Law and served as the Acting Bureau Chief from 1994-96. Immediately, prior to joining the firm in 2000, he was employed by Milberg Weiss Bershad Hynes & Lerach LLP, where he specialized in Antitrust and Human Rights litigation. From 1975-85 Mr. Opper practiced law at the Legal Aid Society in Brooklyn, New York.

Mr. Opper is a member of the New York Bar and is admitted to practice before the United States District Courts for the Southern and Eastern Districts of New York; United States Court of Appeals for the Second Circuit and United States Supreme Court.

*KEVIN S. LANDAU* graduated from Lehigh University in 1993 with a Bachelor of Arts degree in Government, with high honors.

Mr. Landau graduated from Brooklyn Law School in 1996, where he served on the Brooklyn Law Review. Mr. Landau has been employed by Garwin Gerstein & Fisher since September 1996.

Mr. Landau is admitted to the Bar of the State of New York and is a member of the New York State Bar Association.

*ADAM STEINFELD* graduated from Brandeis University in 1994 with a Bachelor of Arts degree in Political Science.

Mr. Steinfeld graduated from Brooklyn Law School in 1997, where he served on the Brooklyn Law Review. Mr. Steinfeld has been employed by Garwin Gerstein & Fisher since August, 1997.

Mr. Steinfeld is admitted to the Bars of the States of New York and Massachusetts.

## ASSOCIATES

*JAN BARTELLI* graduated from Syracuse University in 1993 with a Bachelor of Arts degree in English. She graduated from Brooklyn Law School in 1997, where she was a member of the Brooklyn Law Review and Moot Court. Prior to entering law school, Ms. Bartelli worked as a newspaper reporter for publications in New York City, New Jersey, and Connecticut. She has been employed by Garwin Gerstein & Fisher since January 1998.

Ms. Bartelli is admitted to the Bars of the States of New York and New Jersey.

*ARCHANA TAMOSHUNAS* graduated from Williams College in 1995 with a Bachelor of Arts degree in Political Science and Studio Art.

Ms. Tamoshunas graduated from New York University School of Law in 1999, where she was a member of the Moot Court Board. After graduating from law school, Ms. Tamoshunas was employed by the City of New York, representing the City in Family Court. Ms. Tamoshunas has been employed by Garwin Gerstein & Fisher since October 2002.

Ms. Tamoshunas is admitted to the Bar of the State of New York, the United States District Courts for the Southern and Eastern Districts of New York, and is a member of the American Bar Association, The New York State Bar Association and the New York County Lawyers' Association.

***ANNE K. FORNECKER*** graduated magna cum laude from James Madison University in 1996 with a Bachelor of Arts degree in Sociology.

Ms Fornecker graduated cum laude from Brooklyn Law School in 2002, where she was a member of Brooklyn Law Review. Ms. Fornecker has been employed by Garwin Gerstein & Fisher since January 2003.

Ms. Fornecker is admitted to the Bar of the State of New York and the United States District Courts for the Southern and Eastern Districts of New York.

***KIMBERLY HENNINGS*** graduated cum laude from the University of Tampa in 2000 with a Bachelor of Science degree in Criminology.

Ms. Hennings graduated cum laude from Brooklyn Law School in 2003, and has been employed by Garwin Gerstein & Fisher since October 2003.

Ms. Hennings is admitted to the Bar of the State of New Jersey and is admitted to the Bar of the State of New York.

***ELENA K. CHAN*** graduated *cum laude* from Barnard College of Columbia University in 1997 with Bachelor of Arts degrees in Political Science and East Asian Languages and Cultures.

Ms. Chan graduated *cum laude* from American University's Washington College of Law in 2004, where she was a Dean's Fellow and Student Attorney in the Glushko-Samuelson Intellectual Property Law Clinic. She has been employed by Garwin Gerstein & Fisher since March 2005.

Ms. Chan is admitted to the Bars of the States of New York and New Jersey .

Garwin Gerstein & Fisher or its predecessor firms, Garwin, Bronzaft, Gerstein & Fisher, Garwin, Bronzaft & Gerstein, Garwin & Bronzaft and Sidney L. Garwin, while acting as part of a team of lawyers has been actively involved in dozens of outstanding settlements over the past decades, including, without limitation *In re Diet Drugs Product Liability Litigation*, MDL 1203,

8

*Vadino v. America Home Products Corp.*, Diet Drug Case Code #240; *In re Nasdaq Antitrust Litigation*; and *In re VMS Securities Litigation*.

In addition to those cases identified at pp 1-4 above, among the following cases our firm has

also resolved as either sole lead or co-lead counsel:

| **Title of Action** | **Approximate Amount of Benefits** |
|---|---|
| *Robert Cicarell, et al. v. Provident Mutual Life Insurance Company* (Court of Common Pleas) | $30 Million in life insurance policy benefits and $15 million cash |
| *In re Saloman Bros. Derivative Litigation* (S.D.N.Y.) | $40 Million |
| *In Re F&M Distributors, Inc. Securities Litigation* (E.D. Mich.) | $20.25 Million plus accrued interest |
| *In re Jiffy Lube Securities Litigation* (D. Md.) | $9.5 Million plus accrued interest |
| *Tabankin v. Kemper Short Term Global Income Fund* (N.D. Ill.) | $7.5 Million and other consideration valued in excess of $12.5 Million |
| *In re Mutual Savings Bank Securities Litigation* (E.D. Mich.) | $12 Million plus accrued interest |
| *Beaumont, et al. and Levine, et al. v. American Can* (N.Y. Supreme) | $10.5 Million plus accrued interest |
| *Rebenstock v. Fruehauf (Fruehauf Trailer Corp.) and Rebenstock v. DeLoitte & Touche* (E.D. Mich.) | $10.6 Million in cash and securities |
| *In Re RAC Mortgage Investment Corporation Securities Litigation* (D. Md.) | $12 Million plus accrued interest |
| *In Re Par Pharmaceutical Securities Litigation* (S.D.N.Y.) | $20 Million in cash and securities |
| *In Re Interco Incorporated Shareholders Litigation* (Del. Ch. Ct.) | $18.5 Million plus accrued interest |
| *In Re Revlon Group, Inc. Shareholders Litigation* (Del. Ch. Ct.) | $60 Million |
| *Goldberg v. Americana Hotels and Realty Corp., et al. (D. of Mass.)* | $9.46 Million plus accrued interest |

| | |
|---|---|
| *In Re: American Dental Laser, Inc. Securities Litigation* (E.D. Mich.) | $8 Million |
| *In re Buffets, Inc. Securities Litigation* (D. of Minn.) | $7 Million plus accrued interest |
| *In re GCA Corporation Securities Litigation* (D. of Mass) | $5.5 Million plus 1.15 million warrants |
| *In re American Southwest Mortgage Securities Litigation* (D. Of Ariz.) | $5.2 million |
| *In re Shared Medical Securities Litigation* (E.D. Pa.) | $5 Million plus accrued interest |
| *Wechsler v. Abramowitz, Del. Ch. Civil Action No. 6681 and 6862* (Del. Ch. Ct.) | Increased Going Private Price from $14.50 per share to $22.875 per share |

Currently Garwin Gerstein & Fisher LLP is either lead counsel, co-lead counsel or chairman of the Executive Committee in a number of complex class actions. Those cases include, *In re Merrill Lynch Focus Twenty Fund Investment Company Act Litigation,* pending in the Eastern District of New York; *Robert Corwin, derivatively on behalf of JDS Uniphase, Inc. v. Martin A. Kaplan, et al.,* pending in the Northern District of California; *Chase v. Northwest Airlines Corp. et al.,* 96-74711, pending in the United Stated District Court for the Eastern District of Michigan; *In re K-Dur Antitrust Litigation,* pending in the United States District Court for the District of New Jersey; *In Re Ciproflaxin Hydrochloride Antitrust Litigation,* pending in the United States District Court for the Eastern District of New York; *Louisiana Wholesale Drug Co. v. Becton Dickinson & Co., 05-CV-1602 (JLL),* pending in the United States District Court for the District of New Jersey; *In Re: Tricor Direct Purchaser Antitrust Litigation,* pending in the United States District Court for the District of Delaware; *In re OxyContin Antitrust Litigation,* pending in the United States District Court, Southern District of New York; *In re Neurontin Antitrust Litigation* -- MDL Docket No. 1479, pending in the United States District Court for the District of New Jersey.

11

# EXHIBIT G

# BERGER & MONTAGUE, P.C.

### BERGER & MONTAGUE, P.C.

#### THE FIRM:

Berger & Montague has been engaged in the practice of complex and class action litigation from its Center City Philadelphia office for over 35 years. The firm has been recognized by courts throughout the country for its ability and experience in handling major complex litigation, particularly in the fields of securities, antitrust, mass torts, and civil and human rights. In numerous precedent-setting cases, the Berger firm has played a principal or lead role. The firm has achieved the highest possible rating by its peers and opponents as reported in Martindale-Hubbell. Currently, the firm consists of 66 lawyers, approximately half of whom are engaged full-time in securities litigation; 18 paralegals; several professional investigators; and an experienced support staff.

Berger & Montague was founded in 1970 by David Berger to concentrate on the representation of plaintiffs in a series of antitrust class actions. David Berger pioneered the use of class actions in antitrust litigation and was instrumental in extending the use of the class action procedure to other litigation areas, including securities, employment discrimination, civil and human rights, and mass torts. The firm's complement of nationally recognized lawyers has represented both plaintiffs and defendants in these and other areas, and has recovered billions of dollars for its clients. In complex litigation, particularly in areas of class action litigation, Berger & Montague has established new law and forged the path for recovery for victims of fraud and other wrongdoing.

The firm has been involved in a series of notable cases, some of them among the most important in the last 35 years of civil litigation. For example, the firm was one of the principal counsel for plaintiffs in the Drexel Burnham Lambert/Michael Milken securities and bankruptcy litigation. Claimants in these cases recovered approximately \$2 billion in the aftermath of the collapse of the junk bond market and the bankruptcy of Drexel in the late 1980's. The firm was also among the principal counsel engaged in the trial of the Exxon Valdez Oil Spill in Anchorage, Alaska, a trial resulting in a record punitive damages award of \$5 billion against Exxon. Berger & Montague was lead counsel in the School Asbestos Litigation, in which a national class of secondary and elementary schools recovered in excess of \$300 million to defray the costs of asbestos abatement. The case was the first mass tort property damage class action certified on a national basis.

In the area of securities litigation, the firm has represented public institutional investors - such as the retirement funds for the States of Pennsylvania, Connecticut, New Hampshire, New Jersey and

2

Louisiana, as well as the City of Philadelphia and numerous individual investors and private institutional investors. The firm was co-lead counsel in the Melridge Securities Litigation in the Federal District Court in Oregon, in which an $88.2 million jury verdict was obtained. Berger and Montague has served as lead counsel in numerous other major class action cases, including those against Waste Management (settlement for investors of $220 million) and Rite Aid (settlements totalling $334 million), to name only two of the most notable successes.

In addition to its distinction in securities litigation, the firm has served as lead or co-lead counsel on many of the most significant civil antitrust cases over the last 30 years, including In re Corrugated Container Antitrust Litigation (recovery in excess of $366 million), the Infant Formula case (recovery of $125 million), and the Retail Drug price fixing case (settlement of more than $700 million). More recently, the firm, through its membership on the litigation Executive Committee, helped to achieve a $1.25 billion settlement with the largest Swiss banks on behalf of victims of Nazi aggression whose deposits were not returned after the Second World War. The firm has also played an instrumental role in bringing about a $4.37 billion settlement with German industry and government for the use of slave and forced labor during the Holocaust.

The *National Law Journal* in October, 2005 selected Berger & Montague as one of the 12 top plaintiffs' litigation firms in the U.S. based on its most recent performance and its track record of successes in the last 3-to-5 year period.

## PROMINENT JUDGMENTS AND SETTLEMENTS

The success of Berger & Montague in prosecuting class actions and other complex litigation is best demonstrated by the firm's significant results for its clients. The following is a partial list of some of the more notable judgments and settlements from the past few years:

### *Securities Litigation*

*In re Fleming Companies, Inc. Securities Litigation:* The firm, as lead counsel, obtained a class settlement of $94 million for the benefit of the class. (Civil Action No. 5-03-MD-1530 (TJW) (E.D.Tex.)).

*In re Xcel Energy Inc. Securities, Derivative & "ERISA" Litigation:* The firm, as co-lead counsel in the Securities Actions, obtained a cash settlement of $80 million on behalf of investors against Xcel Energy and certain of its officers and directors in 2005. (Civil Action No. 02-2677 (DSD/FLN) (D.Minn.)).

*In re Campbell Soup Co. Securities Litigation:* The firm, as co-lead counsel, obtained a settlement of $35 million for the benefit of the class. (Civil Action No. 00 152 (JEI) (D.N.J.)).

*In re Premiere Technologies, Inc. Securities Litigation:* The firm, as co-lead counsel, obtained a class settlement of over $20 million in combination of cash and common stock. (Civil Action No.1:98-CV-1804-JOF (N.D.Ga.)).

*In re: PSINet, Inc., Securities Litigation:* The firm, as co-lead counsel, obtained a settlement of $17.83 million on behalf of investors. (Civ. No. 00-1850-A (E.D.Va.)).

*In re Safety Kleen Corp. Securities Litigation :* The firm, as co-lead counsel, obtained a class settlement in the amount of $45 million against Safety-Kleen's outside accounting firm and certain of the Company's officers and directors. The final settlement was obtained 2 business days before the trial was to commence. (C.A. No. 3:00-CV-736-17 (D.S.C.)).

*Emil Rossdeutscher and Dennis Kelly v. Viacom:* The firm, as lead counsel, obtained a settlement resulting in a fund of $14.25 million for the class (C.A. No. 98C-03-091 (JEB)

4

(Sup. Ct. Del.)).

***Silver v. UICI:*** The firm, as co-lead counsel, obtained a settlement resulting in a fund of $16 million for the class. (No. 3:99 CV 2860-L (N.D. Tex.)).

***In re Alcatel Alsthom Securities Litigation:*** In 2001, the firm, as co-lead counsel, obtained a class settlement for investors of $75 million cash. (MDL Docket No. 1263 (PNB)).

***In re Rite Aid Corp.. Securities Litigation:*** The firm, as co-lead counsel, has obtained settlements totalling $334 million against Rite Aid's outside accounting firm and certain of the company's former officers (99 CV 1349 (E.D. Pa. 2001).

***In re Sunbeam Inc. Securities Litigation:*** As co-lead counsel, the firm obtained a settlement on behalf of investors of $141 million in the action against Sunbeam's outside accounting firm and Sunbeam's officers. (98 CV 8258 (S.D. Fla. 2001)).

***In re Waste Management, Inc. Securities Litigation:*** In 1999, the firm, as co-lead counsel, obtained a class settlement for investors of $220 million cash which included a settlement against Waste Management's outside accountants. (97CV 7709 (N.D. Il. 2000)).

***In re IKON Office Solutions Inc. Securities Litigation:*** The firm, serving as both co-lead and liaison counsel, obtained a cash settlement of $111 million in an action on behalf of investors against IKON and certain of its officers in 2000. (MDL Dkt. No. 1318 (E.D. Pa. 2000)).

***In re Melridge Securities Litigation:*** The firm served as lead counsel and co-trial counsel for a class of purchasers of Melridge common stock and convertible debentures. A four-month jury trial yielded a verdict in plaintiffs' favor for $88.2 million, and judgment was entered on RICO claims against certain defendants for $239 million. The court approved settlements totaling $55.4 million. (CV-87-1426FR (D. Or. 1998)).

***Walco Investments, Inc. et al. v. Kenneth Thenen, et al. (Premium Sales):*** The firm, as a member of the Plaintiffs' Steering Committee, obtained settlements of $141 million for investors victimized by a ponzi scheme. (Reported at: 881 F. Supp. 1576 (S.D. Fla. 1995);168 F.R.D. 315 (S.D. Fla. 1996); 947 F. Supp. 491 (S.D. Fla. 1996)).

*In re The Drexel Burnham Lambert Group, Inc.:* The firm was appointed co-counsel for a mandatory non-opt-out class consisting of all claimants who had filed billions of dollars in securities litigation-related proofs of claim against The Drexel Burnham Lambert Group, Inc. and/or its subsidiaries. Settlements in excess of $2.0 billion were approved in August 1991 and became effective upon consummation of Drexel's Plan of Reorganization on April 30, 1992. (90 Civ. 6954 (MP), Chapter 11, Case No. 90 B 10421 (FGC), Jointly Administered, reported at, *inter alia*, 960 F.2d 285 (2d Cir. 1992), *cert. dismissed*, 506 U.S. 1088 (1993) ("Drexel I") and 995 F.2d 1138 (2d Cir. 1993) ("Drexel II")).

*In re Michael Milken and Associates Securities Litigation:* As court-appointed liaison counsel, the firm was one of four lead counsel who structured the $1.3 billion "global" settlement of all claims pending against Michael R. Milken, over 200 present and former officers and directors of Drexel Burnham Lambert, and more than 350 Drexel/Milken-related entities. (MDL Dkt. No. 924, M21-62-MP (S.D. N.Y.1993)).

*RJR Nabisco Securities Litigation:* In this action, Berger & Montague represented individuals who sold RJR Nabisco securities prior to the announcement of a corporate change of control. This securities case settled for $72 million. (88 Civ. 7905 MBM (S.D. N.Y. 1992)).

## *Antitrust Litigation*

*In re High Fructose Corn Syrup:* Berger & Montague was one of three co-lead counsel in this nationwide class action alleging a conspiracy to allocate volumes and customers and to price-fix among five producers of high fructose corn syrup. After nine years of litigation, including four appeals, the case was settled on the eve of trial for $531 million.

*In re Linerboard Antitrust Litigation:* Berger & Montague was one of a small group of court-appointed executive committee members who led this nationwide class action against producers of linerboard. The complaint alleged that the defendants conspired to reduce production of linerboard in order to increase the price of linerboard and corrugated boxes made therefrom. At the close of discovery, the case was settled for more than $200 million.

*In re Relafen Antitrust Litigation:* Berger & Montague was one of a small group of firms who

6

prepared for the trial of this nationwide class action against GlaxoSmithKline, which was alleged to have used fraudulently-procured patents to block competitors from marketing less-expensive generic versions of its popular nonsteroidal anti-inflammatory drug, Relafen (nabumetone). Just before trial, the case was settled for $175 million. (No. 01-12239-WGY, D. Mass. 2003).

***State of Connecticut Tobacco Litigation:*** Berger & Montague was one of three firms to represent the State of Connecticut in a separate action in state court against the tobacco companies. The case was litigated separate from the coordinated nationwide actions. Although eventually Connecticut joined the national settlement, its counsel's contributions were recognized by being awarded the fifth largest award among the states from the fifty states' Strategic Contribution Fund.

***In re Graphite Electrodes Antitrust Litigation:*** Berger & Montague was one of the four co-lead counsel in a nationwide class action price-fixing case. The case eventually settled in excess of $130 million.

***In re Buspirone Antitrust Litigation:*** The firm served on the court-appointed steering committee in this class action, representing a class of primarily pharmaceutical wholesalers and resellers. The Buspirone class action alleged that pharmaceutical manufacturer BMS engaged in a pattern of illegal conduct surrounding its popular anti-anxiety medication, Buspar, namely, paying a competitor to refrain from marketing a generic version of Buspar; improperly listing a patent with the FDA; and wrongfully prosecuting patent infringement actions against generic competitors to Buspar. On April 11, 2003, the Court finally approved a $220 million settlement. (MDL No. 1410 (S.D.N.Y. 2003)).

***In re Cardizem CD Antitrust Litigation:*** Berger & Montague served on the Executive Committee of firms appointed to represent the class of direct purchasers of Cardizem CD. The suit charged that Aventis (the brand-name drug manufacturer of Cardizem CD) entered into an illegal agreement to pay Andrx (the maker of a generic substitute to Cardizem CD) millions of dollars to delay the entry of the less expensive generic product. On November 26, 2002, the district court approved a final settlement against both defendants for $110 million. (No. 99-MD-1278, MDL No. 1278 (E.D. Mich. 2002)).

7

*In re Brand Name Prescription Drugs Antitrust Litigation*: The firm served as co-lead counsel in this antitrust price-fixing class action on behalf of a class of purchasers of brand name prescription drugs. Following certification of the class by the district court, settlements exceeded $717 million. (No. 94 C 897 (M.D. Ill. 2000)).

**North Shore Hematology-Oncology Assoc., Inc. v. Bristol-Myers Squibb Co.:** The firm was one of several prosecuting an action complaining of Bristol Myers's use of invalid patents to block competitors from marketing more affordable generic versions of its life-saving cancer drug, Platinol (cisplatin). The case settled for $50 million. (No. 1:04CV248 (EGS) (D. D.C. 2004))

*In re Catfish Antitrust Litig.*: The firm was co-trial counsel in this action (by Mr. Twersky) which settled with the last defendant a week before trial, for total settlements approximating $27 million. (No. 2:92CV073-D-O, MDL No. 928 (N.D. Miss. 1995)).

*In re Carbon Dioxide Antitrust Litigation:* The firm was co-trial counsel in this antitrust class action which settled with the last defendant days prior to trial for total settlements approximating $53 million, plus injunctive relief. (MDL No. 940 (M.D. Fla. 1995)).

*In re Infant Formula Antitrust Litigation*: The firm served as co-lead counsel in an antitrust class action where settlement was achieved two days prior to trial, bringing the total settlement proceeds to $125 million. (MDL No. 878 (N.D. Fla. 1992)).

*Red Eagle Resources Corp., Inc., v. Baker Hughes, Inc.:* The firm was a member of the plaintiffs' executive committee in this antitrust class action which yielded a settlement of $52.5 million. (C.A. No. H-91-627 (S.D. Tex. 1991)).

*In re Corrugated Container Antitrust Litigation:* The firm, led by H. Laddie Montague, was co-trial counsel in an antitrust class action which yielded a settlement of $366 million, plus interest, following a trial. (MDL No. 310 (S.D. Tex. 1981)).

*Bogosian v. Gulf Oil Corp.:* With Berger & Montague as sole lead counsel, this landmark action on behalf of a national class of more than 100,000 gasoline dealers against 13

8

major oil companies lead to settlements of over $35 million plus equitable relief on the eve of trial. (No. 71-1137 (E.D. Pa. 1977)).

*In re Master Key Antitrust Litigation:* The firm served as co-lead counsel in antitrust class action that yielded a settlement of $21 million during trial. (MDL No. 45 (D. Conn. 1977)).

## *Environmental/Mass Tort Litigation*

*In re Exxon Valdez Oil Spill Litigation*: On September 16, 1994, a jury trial of several months duration resulted in a record punitive damages award of $5 billion against the Exxon defendants as a consequence of one of the largest oil spills in U.S. history. David Berger was co-chair of the Plaintiffs' Discovery Committee (appointed by both the federal and state courts). H. Laddie Montague was specifically appointed by the federal court as one of the four designated trial counsel. Both Mr. Montague and Peter Kahana shared (with the entire trial team) in the 1995 "Trial Lawyer of the Year Award" given by the Trial Lawyers for Public Justice. (No. A89-0095-CVCHRH (D. Ala. 1996)).

*In re Ashland Oil Spill Litigation*: The firm served as co-lead counsel and obtained a $30 million settlement for damages resulting from a very large oil spill. (Master File No. M-14670 (W.D. Pa. 1990)).

*In re School Asbestos Litigation*: As co-lead counsel, the firm successfully litigated a case in which a nationwide class of elementary and secondary schools and school districts suffering property damage as a result of asbestos in their buildings were provided relief. Pursuant to an approved settlement, the class received $70 million in cash and $145 million in discounts toward replacement building materials. (No. 83-0268 (E.D. Pa. 1986)).

## *Health Care/ERISA Litigation*

*In re Unisys Corp. Retiree Medical Benefits:* The firm, as co-lead counsel, handled the presentation of over 70 witnesses, 30 depositions, and over 700 trial exhibits in this

9

action that has resulted in partial settlements of over $110 million for retirees whose health benefits were terminated. (MDL No. 969 (E.D. Pa.)).

***Local 56 U.F.C.W. v. Campbell Soup Co.:*** The firm represented a class of retired Campbell Soup employees in an ERISA class action to preserve and restore retiree medical benefits. A settlement yielded benefits to the class valued at $114.5 million. (No. 93-MC-276 (SSB) (D. N.J. 1984)).

### *Civil/Human Rights*

***In re Holocaust Victim Assets Litigation:*** Through Stephen A. Whinston's membership on the Executive Committee in cases brought by Holocaust survivors against the three largest Switzerland-based banks, this litigation was settled for $1.25 billion. (105 F. Supp.2d 139 (E.D. N.Y. 2000)).

***In re Nazi Era Cases Against German Defendants Litigation:*** Through the firm's co-lead counsel role, cases against German industry and banks for the use of slave and forced labor during the Nazi era were ultimately settled in the context of international negotiations which created a fund for victims of $4.5 billion. (198 F.R.D. 429 (D. N.J. 2000)).

10

## JUDICIAL PRAISE FOR BERGER & MONTAGUE ATTORNEYS

Berger & Montague's record of successful prosecution of class-actions and other complex litigation has been recognized and commended by judges and arbitrators across the country. Some remarks on the skill, efficiency, and expertise of the firm's attorneys are excerpted below.

### *Securities Litigation*

From **Judge Stewart Dalzell**, of the U.S. District Court for the Eastern District of Pennsylvania:

"Thanks to the nimble class counsel, this sum, which once included securities worth $149.5 million is now all cash. Seizing on an opportunity Rite Aid presented class counsel first renegotiated what had been stock consideration into Rite Aid Notes and then this year monetized those Notes. Thus, on February 11, 2003, Rite Aid redeemed those Notes from the class, which then received $145,754,922.00. The class also received $14,435,104 in interest on the Notes.

Co-lead counsel ... here were extraordinarily deft and efficient in handling this most complex matter... they were at least eighteen months ahead of the United States Department of Justice in ferreting out the conduct that ultimately resulted in the write down of over $1.6 billion in previously reported Rite Aid earnings.  In short, it would be hard to equal the skill class counsel demonstrated here."

Praising the work of Berger & Montague attorneys including Securities Department Chair, Sherrie R. Savett and partners Carole Broderick and Robin Switzenbaum *In re Rite Aid Corp. Securities Litigation*, 269 F. Supp. 2d 603 (E.D. Pa. 2003)

From **Judge Clarence C. Newcomer**, of the U.S. District Court for the Eastern District of Pennsylvania:

"...[C]ounsel has conducted this litigation with skill, professionalism and extraordinary efficiency."

11

Praising the work of Sherrie R. Savett, Securities Department Chair, and Arthur Stock, *In Re: Unisys Corporation Securities Litigation*, Civil Action No. 99-5333 (E.D. Pa. 1999).

From **Judge Stewart Dalzell**, of the U.S. District Court for the Eastern District of Pennsylvania:

"As to 'the skill and efficiency of the attorneys involved,' we can only echo what we said about some of the same lawyers in *U.S. Bioscience*. The results here are outstanding in a litigation that was far ahead of public agencies like the Securities and Exchange Commission and the United States Department of Justice. . . . At the same time, these attorneys have, through the division of their labors, represented the class most efficiently[.]"

Praising the work of Berger & Montague attorneys including Securities Department Chair, Sherrie R. Savett, in achieving settlements of over \$190 million in *In re Rite Aid Inc. Securities Litigation*, 146 F. Supp.2d 706 (E.D. Pa. June 8, 2001).

From **Judge Marvin Katz**, of the U.S. District Court for the Eastern District of Pennsylvania:

"Class counsel did a remarkable job in representing the class interests."

Commenting on the work of Berger & Montague attorneys Merrill G. Davidoff, Todd S. Collins and Douglas M. Risen, on the partial settlement for \$111 million approved May, 2000, *In Re: IKON Offices Solutions Securities Litigation*, Civil Action No. 98-4286 (E.D. Pa. 2000).

From Judge **Wayne R. Andersen**, of the U.S. District Court for the Northern District of Illinois:

"...[Y]ou have acted the way lawyers at their best ought to act. And I have had a lot of cases...in 15 years now as a judge and I cannot recall a significant case where I felt people were better represented than they are here ... I would say this has been the best representation that I have seen."

12

Praising the work of Sherrie R. Savett and Carole A. Broderick, in *In Re: Waste Management, Inc. Securities Litigation*, Civil Action No. 97-C 7709 (N.D. Ill. 1999).

From **Judge Stewart Dalzell**, of the U.S. District Court for the Eastern District of Pennsylvania:

"The quality of lawyering on both sides, but I am going to stress now on the plaintiffs' side, simply has not been exceeded in any case, and we have had some marvelous counsel appear before us and make superb arguments, but they really don't come any better than Mrs. Savett . . . , and the arguments we had on the motion to dismiss [Mrs. Savett argued the motion], both sides were fabulous, but plaintiffs' counsel were as good as they come."

Commenting on the settlement of a securities case litigated by Sherrie R. Savett and Carole A. Broderick, *In re U.S. Bioscience Securities Litigation*, Civil Action No. 92-0678, (E.D. Pa. 1994).

From **Judge Joseph F. Anderson, Jr.**, of the U.S. District Court for the District of South Carolina:

"I don't have a problem at all approving the settlement. In light of what you've said today and your submission to the Court and I am familiar with the case ... it was a sharply litigated case, with good lawyers on both sides and I think it's an ideal case for settlement. It's the largest settlement I've been called upon to approve in my eight years as a judge."

Praising the work of Sherrie R. Savett, Securities Department Chair, in achieving a $32 million settlement in *In Re: Policy Management Systems Corporation*, Civil Action No. 3:93-0807-17 (D.S.C. 1993).

From **Judge Harry R. McCue**, of the U.S. District Court for the Southern District of California:

"There can be no doubt that the public good was fully served by the attorneys for the plaintiffs in this case, because they invested their own time, their own money, they invested

13

their special skills and knowledge to vindicate the rights and interests of the thousands of investors who invested their money and placed their trust in the integrity of the securities market. . . . I conclude that the achievement of plaintiffs' counsel under any of those tests was superior. "

Concerning the work of Berger & Montague in achieving a $33 million settlement in *In re Oak Securities Litigation*, 1986 U.S. Dist. LEXIS 20942 (S.D. Cal. 1986).

From **Judge John F. Keenan**, of the U.S. District Court for the Southern District of New York:

"The quality of work of plaintiffs' counsel on this case is also demonstrated by the efficient manner of prosecution. . . . At the settlement hearing, defense counsel conceded that plaintiffs' counsel constitute the 'cream of the plaintiffs' bar.' The court cannot find fault with that characterization."

Regarding the work of Sherrie R. Savett and Stephen A. Whinston, *In re Warner Communications Securities Litigation*, 618 F. Supp. 735 (S.D.N.Y. 1985).

## *Antitrust Litigation*

From **Judge Charles P. Kocoras**, of the U.S. District Court for the Northern District of Illinois:

"The stakes were high here, with the result that most matters of consequence were contested. There were numerous trips to the courthouse, and the path to the trial court and the Court of Appeals frequently traveled. The efforts of counsel for the class has [sic] produced a substantial recovery, and it is represented that the cash settlement alone is the second largest in the history of class action litigation. . . . There is no question that the results achieved by class counsel were extraordinary[.]"

Regarding the work of Berger & Montague shareholders H. Laddie Montague and Peter R. Kahana, among others, in achieving a more than $700 million settlement with some of the

14

defendants in *In Re Brand Name Prescription Drugs Antitrust Litigation*, 2000 U.S. Dist. LEXIS 1734, \*5-6 (N.D. Ill. February 9, 2000).

From **Judge Peter J. Messitte**, of the U.S. District Court for the District of Maryland:

"The experience and ability of the attorneys I have mentioned earlier, in my view in reviewing the documents, which I have no reason to doubt, the plaintiffs' counsel are at the top of the profession in this regard and certainly have used their expertise to craft an extremely favorable settlement for their clients, and to that extent they deserve to be rewarded."

Concerning the work of senior member, Merrill G. Davidoff, as stated in a Settlement Approval Hearing, Oct. 28, 1994. *Spawd, Inc. and General Generics v. Bolar Pharmaceutical Co., Inc.*, CA No. PJM-92-3624.

From **Judge Donald W. Van Artsdalen**, of the U.S. District Court for the Eastern District of Pennsylvania:

"As to the quality of the work performed, although that would normally be reflected in the not immodest hourly rates of all attorneys, for which one would expect to obtain excellent quality work at all times, the results of the settlements speak for themselves. Despite the extreme uncertainties of trial, plaintiffs' counsel were able to negotiate a cash settlement of a not insubstantial sum, and in addition, by way of equitable relief, substantial concessions by the defendants which, subject to various condition, will afford the right, at least, to lessee-dealers to obtain gasoline supply product from major oil companies and suppliers other than from their respective lessors. The additional benefits obtained for the classes by way of equitable relief would, in and of itself, justify some upward adjustment of the lodestar figure."

Commending the skills of firm chairman David Berger, shareholder Martin Twersky, and other Berger & Montague attorneys, in *Bogosian v. Gulf Oil Corp*, 621 F. Supp. 27 (E.D. Pa. 1985).

15

From **Judge Joseph Blumenfeld**, of the U.S. District Court of Connecticut:

> "The work of the Berger firm showed a high degree of efficiency and imagination, particularly in the maintenance and management of the national class actions."

Referencing the leadership of managing partner H. Laddie Montague, co-lead counsel, in *In re Master Key Antitrust Litigation*, 1977 U.S. Dist LEXIS 12948 (Nov. 4, 1977).

## *Civil/Human Rights Cases*

From **Deputy Treasury Secretary Stuart E. Eizenstat**:

> "We must be frank. It was the American lawyers, through the lawsuits they brought in U.S. courts, who placed the long-forgotten wrongs by German companies during the Nazi era on the international agenda. It was their research and their work which highlighted these old injustices and forced us to confront them. Without question, we would not be here without them. . . . For this dedication and commitment to the victims, we should always be grateful to these lawyers."

In his remarks at the July 17, 2000, signing ceremony for the international agreements which established the German Foundation to act as a funding vehicle for the payment of claims to Holocaust survivors. Among the lawyers specifically mentioned for special recognition were Stephen A. Whinston and Edward W. Millstein, both shareholders of the firm.

## *Customer/Broker Arbitrations*

From **Robert E. Conner**, Public Arbitrator with the National Association of Securities Dealers, Inc.:

> ". . . [H]aving participated over the last 17 years in 400 arbitrations and trials in various settings, . . . the professionalism and the detail and generally the civility of everyone involved has been not just a cause for commentary at the end of these proceedings but between ourselves [the arbitration panel] during the course of them, and . . . the detail and the

16

intellectual rigor that went into the documents was fully reflective of the effort that was made in general. I wanted to make that known to everyone and to express my particular respect and admiration."

About the efforts of Berger & Montague shareholders Merrill G. Davidoff and Eric L. Cramer, who achieved a $1.1 million award for their client, in *Steinman v. LMP Hedge Fund, et al.*, NASD Case No. 98-04152, at Closing Argument, June 13, 2000.

17

## BERGER & MONTAGUE ATTORNEYS PROSECUTING THE TRICOR DIRECT PURCHASER ANTITRUST LITIGATION:

### Daniel Berger

Daniel Berger graduated with honors from Princeton University (Class of 1969) and Columbia Law School (1974) where he was a Harlan Fiske Stone academic scholar. He is presently a senior member and shareholder of the firm, for which he serves as Managing Shareholder. Over the last 15 years, he has been involved in a number of complicated commercial cases including class action securities, antitrust, mass tort and bankruptcy cases. In the antitrust area, he has headed up the Firm's involvement in highly successful litigation against brand and generic prescription drug manufacturers in which the Berger Firm has been co-lead counsel, a member of various executive committees or otherwise played a key role including, *inter alia*, the following cases: Duane Reede Co. v. Aventis *et. al.* ($110 million settlement involving prescription drug Hytrin); Louisiana Wholesale Drug Co. V. Bristol Myers Squibb ($220 million settlement involving prescription drug Buspar); Valley Drug Co. v. Abbott Laboratories *et. al.*, (pending case involving agreements by brand and generic drug companies to delay generic entry). Louisiana Wholesale Drug Co. v. Schering Plough (pending case involving agreements by brand and generic drug companies to delay generic entry); and Louisiana Wholesale Drug Co. v. Glaxo SmithKline Co. (pending case involving fraud on the US. Patent Office and improper FDA listing by a brand prescription drug manufacturer which delayed generic entry. In the civil rights area, he has been counsel in informed consent cases involving biomedical research and human experimentation by federal and state governmental entities.

Daniel Berger also has a background in the study of economics having done graduate level work in applied micro-economics and macro-economic theory, the business cycle and economic history. He has published law review articles in the *Yale Law Journal*, the Duke University's *Journal of Law and Contemporary Problems* and the New York Law School *Law Review* and worked with the American Law Institute /American Bar Association program on continuing legal education. He has been affiliated with the Kennedy School of Government through the Shorenstein center of Media and Public Policy at Harvard University.

Mr. Berger has been active in city government in Philadelphia and was a member of the Mayor's Cultural Advisory Council, advising the Mayor of Philadelphia on arts policy and the

Philadelphia Cultural Fund, which is responsible for all city grants to arts organizations. Mr. Berger was also a member of the Pennsylvania Humanities Council, one of the State organizations through which the NEA makes grants.

Mr. Berger is also an author and journalist and has published in the *Nation* magazine and reviewed books for the *Philadelphia Inquirer*.

## David F. Sorensen

Mr. Sorensen graduated from Duke University (B.A. *magna cum laude* 1983) and from Yale University (J.D. 1989). He was Law Clerk to the Hon. Norma L. Shapiro (E.D. Pa.), in 1990-1991. He was admitted to the Pennsylvania bar in 1989, and is admitted to practice in various federal courts, including the Eastern District of Pennsylvania, and the United States Courts of Appeals for the Ninth, Tenth, and Eleventh Circuits.

Mr. Sorensen practices in the areas of complex mass tort and antitrust class action litigation. He helped try a class action property damage case, *Cook v. Rockwell Corp.*, that resulted in a jury verdict of $554 million on February 14, 2006, after a four-month trial, on behalf of thousands of property owners near the former Rocky Flats nuclear weapons plant located outside Denver, Colorado. The jury verdict is the largest in Colorado history, and is the first time a jury has awarded damages to property owners living near one of the nation's nuclear weapons sites. The verdict included an award of $200 million in punitive damages against the former Rocky Flats contractors, Dow Chemical Company and Rockwell International Corporation. The case was filed in 1990, and has resulted in 10 published court opinions. The suit alleged that defendants negligently and recklessly caused plutonium to be released off-site from the plant onto class properties, damaging property values and putting residents at increased risk of developing cancer. The jury found for plaintiffs on both of their claims, for trespass and nuisance.

Mr. Sorensen also played a major role in the firm's representation of the State of Connecticut in *State of Connecticut v. Philip Morris, Inc., et al.*, in which Connecticut recovered approximately $3.6 billion (excluding interest) from certain manufacturers of tobacco products.

Mr. Sorensen also has been involved in a number of antitrust cases representing direct purchasers of prescription drugs. These cases have alleged that pharmaceutical manufacturers have conspired

19

to keep less expensive generic drugs off of the market, in violation of federal antitrust laws. Several of these cases have resulted in substantial cash settlements, including *In re Terazosin Hydrochloride Antitrust Litigation*, MDL 1317 (S.D.Fla.) ($75 million); and *In re Remeron Antitrust Litig.* ($75 million).

Mr. Sorensen, along with his partner Eric L. Cramer, presented at a symposium in November 2004, focusing on antitrust issues in the pharmaceutical industry, at the University of San Francisco School of Law. Several articles from the symposium were published in the school's law review, including one co-authored by Mr. Sorensen and one of the school's law professors, Joshua P. Davis. The article is entitled, *Chimerical Class Conflicts in Federal Antitrust Litigation: The Fox Guarding the Chicken House in Valley Drug*, 39 U.S.F. Law Review 141 (Fall 2004).

Mr. Sorensen also has presented a seminar, with his partner Eric L. Cramer, on the law of class actions, sponsored by the National Business Institute in Philadelphia. Mr. Sorensen was named as one Pennsylvania's "SuperLawyers" in 2005 in the Philadelphia Magazine; and has received the highest peer-review rating, "AV," in Martindale-Hubbell.

## Eric L. Cramer

Eric L. Cramer graduated *summa cum laude* from Princeton University (A.B. 1989), where he was selected for Phi Beta Kappa, and *cum laude* from Harvard Law School (J.D. 1993). He is admitted to practice in Pennsylvania and New York, and various federal courts.

In June 2005, Chambers USA *America's Leading Lawyers for Business* honored Mr. Cramer as one of Philadelphia's "up and coming" antitrust lawyers, noting that he is "admired [by his peers] for his strong analytical skills" and recognized for his "expert knowledge of the economic side of the law." Moreover, the June 2005 edition of Philadelphia Magazine selected Mr. Cramer as one of the City's *"Super Lawyers,"* based on his work in the antitrust field.

Since joining Berger & Montague in 1995, Mr. Cramer has concentrated his practice in complex public protection litigation, representing victims of mass torts and those injured by violations of antitrust and consumer protection laws. Mr. Cramer has spent the past five years prosecuting antitrust class actions on behalf of direct purchasers of brand name drugs, charging pharmaceutical manufacturers with illegally blocking the market entry of less expensive competitor drugs. In four

20

such cases, Mr. Cramer was significantly responsible for winning class certification. *See In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297 (E.D. Mich. 2001); *In re Buspirone Patent & Antitrust Litig.*, 210 F.R.D. 43 (S.D.N.Y. 2002); *In re Premarin Antitrust Litig.*, 225 F.R.D. 208 (S.D. Ohio 2003); and *In re Relafen Antitrust Litig.*, 218 F.R.D. 337 (D. Mass. 2003).

In the last three years, Mr. Cramer and his colleagues have won substantial settlements in six of these cases for a combined total of more than $700 million: *Cardizem* settled in November 2002 for $110 million; *Buspirone* settled in April of 2003 for $220 million; *Relafen* settled in February 2004 for $175 million; *In re Platinol Antitrust Litig.* settled in November 2004 for $50 million; *In re Terazosin Hydrochloride Antitrust Litig.* settled in April 2005 for nearly $75 million; and *In re Remeron Antitrust Litig.* settled in November 2005 for $75 million.

In addition, Mr. Cramer was significantly responsible for winning class certification in *In re Microcrystalline Cellulose Antitrust Litigation*, No. 01-CV-111 (E.D. Pa. Aug. 13, 2003).

Mr. Cramer recently co-sponsored, and presented at, a symposium in November 2004, focusing on antitrust issues in the pharmaceutical industry, at the University of San Francisco School of Law. Several articles from the symposium were published in the Fall 2004 edition of that school's law review, including a piece co-authored by Mr. Cramer with his partner, Daniel Berger, entitled *The Superiority of Direct Proof of Monopoly Power and Anticompetitive Effects in Antitrust Cases Involving Delayed Entry of Generic Drugs*, 39 U.S.F. Law Rev. 81 (Fall 2004). Mr. Cramer has also taught several seminars on the law of class actions and expert witnesses sponsored by the National Business Institute in Philadelphia.

Mr. Cramer began his career representing victims of human radiation experimentation carried out by the federal government in conjunction with state and private actors as part of the U.S. atomic weapons program during the Cold War. He helped resolve two such cases for over $4.7 million combined, and was principally responsible for a reversal by the Ninth Circuit Court of Appeals of a summary judgment dismissal of one of those cases on statute of limitations grounds. *See Bibeau, et al. v. Pacific Northwest Research Foundation, et al.*, 188 F.3d 1105 (9th Cir. 1999).

Mr. Cramer is also active in community affairs, specifically those involving public education. He is a co-founder, current member, and past President of the Board of Trustees of the Independence Charter School, for which he also acted as litigation counsel. After a successful appeal to the

21

Pennsylvania Charter School Appeal Board, which granted the school a charter, Mr. Cramer secured an affirmance by the Commonwealth Court. *See School District of Philadelphia v. Independence Charter School*, 2001 Pa. Commw. LEXIS 279 (May 3, 2001). The Center City Philadelphia charter school opened its doors to nearly three-hundred elementary age school children in the Fall of 2001. Mr. Cramer also serves on the Board of the Center for Literacy, one of largest non-profit adult literacy organizations in the country.

## Peter Russell Kohn

Peter Kohn is a 1989 graduate of the University of Pennsylvania (B.A., English) and a 1992 *cum laude* graduate of Temple University Law School, where he was senior staff for the *Temple Law Review* and recipient of awards for trial advocacy. Prior to joining the firm in July of 2000, Mr. Kohn defended products liability, toxic and mass tort cases on behalf of insureds and self-insureds at LaBrum & Doak (1992-1994) and prosecuted toxic tort, civil rights, class, and MDL actions at Monheit, Monheit, Silverman & Fodera (1994-2000), where he specialized in lead-based paint-related litigation. He is a member of the bars of the Supreme Court of Pennsylvania (1992-present), the United States District Court for the Eastern District of Pennsylvania (1995-present), and the United States Court of Appeals for the Third Circuit (2000-present), as well as of the Association of Trial Lawyers of America and Trial Lawyers for Public Justice. Mr. Kohn is an member of the legal advisory board for Quackwatch, an affiliate of the National Council for Reliable Health Information.

## Neill W. Clark

Neill W. Clark graduated *cum laude* from Appalachian State University in 1994 (B.A.) and from Temple University School of Law in 1998 (J.D.), where he earned seven "distinguished class performance" awards, an oral advocacy award and a "best paper" award. After graduating from law school, he clerked for Judge Stephen E. Levin, who handled pre-trial proceedings in all class actions filed in the Court of Common Pleas, Philadelphia County.

Since joining the firm in 1999, Mr. Clark has been significantly involved in prosecuting antitrust class actions on behalf of direct purchasers of brand name drugs and charging pharmaceutical manufacturers with illegally blocking the market entry of less expensive competitors.

22

Six of those cases have resulted in substantial settlements totaling over $700 million: *In re Cardizem CD Antitrust Litig.* settled in November 2002 for 110 million; *In re Buspirone Antitrust Litig.* settled in April 2003 for 220 million; *In re Relafen Antitrust Litig.* settled in February 2004 for $175 million; *In re Platinol Antitrust Litig.* settled in November 2004 for $50 million; *In re Terazosin Antitrust Litig.* settled in April 2005 for $75 million; and *In re Remeron Antitrust Litig.* settled in November 2005 for $75 million.

Mr. Clark was selected as a "Rising Star" by Pennsylvania Super Lawyers and listed as one of the Top Young Lawyers in Pennsylvania in the December 2005 edition of Philadelphia Magazine.

An avid runner, Mr. Clark has won the Lawyer's Division of the annual Philadelphia Bar Association race seven consecutive times.

## Candice Enders

Candice Enders is a member of Berger & Montague's antitrust department. She received a B.A. in political science from the University of Delaware in 2000 and earned her J.D. from the University of Pennsylvania in 2003.

While in law school, Ms. Enders served as a senior editor on the Journal of Labor and Employment Law, volunteered as a legal advocate at the Custody and Support Assistance Clinic, and interned at Philadelphia City Council.

# EXHIBIT H

**ODOM & DES ROCHES, LLP**
*A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS*
**SUITE 2020, POYDRAS CENTER**
**650 POYDRAS STREET**
**NEW ORLEANS, LOUISIANA 70130**
**TEL.  (504) 522-0077**
**FAX (504) 522-0078**

---

**Firm Resume**

---

Odom & Des Roches, LLP, engages in multi-party litigation of complex civil matters throughout the United States. The firm's clients include local businesses, national and international companies, and private individuals.

The lawyers of Odom & Des Roches, LLP, have particular depth of experience in antitrust litigation, corporate litigation, financial transactions litigation, and pharmaceutical industry litigation. The firm maintains an active defense practice, and regularly represents an international accounting firm and other business interests. At the request of several nationally prominent law firms, the firm expanded its practice to represent plaintiffs in antitrust contingency fee class action and Multi-District Litigation matters, particularly in the pharmaceutical industry.

The firm has been involved in the following national antitrust class action and non-class action cases:

- *In re Buspirone Antitrust Litig.,* MDL Docket No. 1410, U.S.D.C., S.D.N.Y. (district court appointment to steering committee representing Sherman Act Class Plaintiffs) (district court approved settlement of $220,000,000).

- *In re Cardizem CD Antitrust Litig.,* MDL Docket No. 1278, U.S.D.C., E.D.Mich. (district court appointment to discovery committee representing Sherman Act Class Plaintiffs) (district court approved settlement of $110,000,000).

- *In re Relafen Antitrust Litig.,* Master File No. 01-12239, U.S.D.C., D.Mass. (district court approved settlement of $175,000,000).

- *In re Brand Name Prescription Drugs Antitrust Litig.,* No. 94 C 897, U.S.D.C., E.D.N.Y. (representation of 3,800 non-class independent retail pharmacy operations)

(private settlements reached with many defendants; case pending as to remaining defendants).

- *In re Terazosin Hydrochloride Antitrust Litig.*, MDL Docket No. 1317, U.S.D.C., S.D.Fla. (counsel for Sherman Act Plaintiffs) (district court approved settlement of $72,500,000).

- *In re Remeron Antitrust Litig.*, 03-CV-0085, U.S.D.C., D.N.J. (counsel for Sherman Act Plaintiffs)(district court approved settlement of $75,000,000).

- *In re K-Dur Antitrust Litig.*, MDL Docket No. 1419, U.S.D.C., D.N.J. (district court appointment to executive committee representing Sherman Act Class Plaintiffs) (case pending).

- *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 00-MDL-1383, U.S.D.C., E.D.N.Y. (district court appointment to executive committee representing Sherman Act Class Plaintiffs) (case pending).

- *In re TriCor Direct Purchaser Antitrust Litig.*, Civil Action No. 05-340, U.S.D.C., D.Del. (case pending).

- *In re Northwest Airlines Corp., et al., Antitrust Litig.*, Master File No. 96-74711, U.S.D.C., E.D.Mich. (case pending).

- *In re Neurontin Antitrust Litig.*, MDL No. 1479, U.S.D.C., D.N.J. (case pending).

- *In re Oxycontin Antitrust Litig.*, Civil Action No. 1:04-CV-00229-SHS, U.S.D.C., S.D.N.Y. (case pending).

- *Louisiana Wholesale Drug Company, Inc. v. Biovail Corp. and Forest Laboratories, Inc.*, Civil Action No. 04-cov-2235 (JR), U.S.D.C., D.D.C. (case pending).

- *In re Ovcon Oral Contraceptive Antitrust Litig.*, Civil Action No. 1:05-civ-02210-CKK, U.S.D.C., D.D.C. (case pending).

- *In re Hypodermic Direct Purchaser Antitrust Litig.*, Civil Action No. 05-1602 (JLL), U.S.D.C., D.N.J. (district court appointment to executive committee representing Sherman Act Class Plaintiffs) (case pending).

- *Rosenstein, et al. v. Eastern Mushroom Marketing Cooperative, et al.*, civil Action No. 06-620, U.S.D.C., E.D.Pa. (case pending).

The core of the firm's practice is its commitment and ability to try jury cases, and its lawyers structure their strategy from the outset of an engagement with an eye towards eventual appearance in the courtroom. It is the firm's philosophy and experience that being prepared for the rigors of trial maximizes the opportunities for the client to obtain favorable results. In addition to its active jury trial practice, the firm has extensive appellate experience, and its senior partner argued and won the unanimous reversal of a federal circuit court of appeals before the United States Supreme Court. Odom & Des Roches, LLP, which is rated "AV" by Martindale-Hubbell, maintains offices in New Orleans, Louisiana and Hahira, Georgia. The firm is listed in Martindale-Hubbell's "Bar Register of Preeminent Lawyers".

## PARTNERS

**John Gregory Odom, PLC.** Mr. Odom was born in Hahira, Lowndes County, Georgia on November 29, 1951, and was admitted to the bar of the State of Georgia in 1978, the District of Columbia in 1982, and the State of Louisiana in 1983. He is also admitted to the bars of numerous United States District Courts and Courts of Appeals throughout the country, as well as the United States Supreme Court. He practiced with a leading Savannah firm for several years, and was a business litigation partner in the second-largest firm in Louisiana for seven years before leaving to form his own firm in 1990.

Mr. Odom was educated at Yale University (B.A., cum laude, 1973); The Queen's College, Oxford University (B.A. (hons.), 1975; M.A., 1981); and the University of Virginia School of Law (J.D., 1978). He is the author of "Recent Developments in Litigation Under the Racketeer Influenced and Corrupt Organizations Act and Federal Securities Law," Manual of Recent Developments in the Law, Louisiana State Bar Association, 1987-1990, and "Creative Applications of Civil RICO," 11 Am. J. Trial Adv. 245, Fall, 1987. His regular areas of practice include corporate litigation; healthcare industry litigation; securities litigation; RICO litigation; professional liability litigation; class action litigation; and antitrust litigation.

**Stuart E. Des Roches.** Mr. Des Roches was born in New Orleans, Louisiana on August 12, 1966, was admitted to the bar for the State of Louisiana in 1992. He has practiced continuously with Mr. Odom since 1992 and was made a partner in the firm in 1998. He is admitted to practice in numerous United States District Courts and Courts of Appeals throughout the country, as well as the United States Supreme Court. Mr. Des Roches was educated at Louisiana State University; University of New Orleans (B.A., 1989); and Tulane University Law School (J.D., 1992), and is a member of the New Orleans, Louisiana, Federal and American Bar Associations. He has routinely practiced antitrust law in the pharmaceutical sector for the past twelve years. His other regular areas of practice include general business litigation and accountant's liability defense litigation.

**Andrew W. Kelly.** Mr. Kelly was born in Bellefont, Pennsylvania on December 6, 1966, and was admitted to the bar for the States of California and Louisiana in 1994. He is admitted to practice in the United States District Courts for the Eastern, Middle, and Western Districts of Louisiana, and the Southern District of California; and the United States Court of Appeals for the Fifth Circuit. Mr. Kelly was educated at the University of California at Berkeley (B.A., 1988); and the University of San Diego School of Law (J.D., 1994), and is a member of the California and Louisiana Bar Associations. He served as law clerk to the Honorable John Minor Wisdom, of the United States Court of Appeals for the Firth Circuit. His regular areas of practice include business litigation; class action litigation; and antitrust litigation. He is also available for counseling on criminal defense matters.

<h2 style="text-align:center"><u>ASSOCIATES</u></h2>

**Charles F. Zimmer II.** Mr. Zimmer was born in New Iberia, Louisiana, on October 29, 1973. He was educated at Louisiana State University (B.S., 1996); and Tulane University School of Law (J.D., 1999). Mr. Zimmer studied business and accounting in college, and has passed all parts of the Uniform Certified Public Accounting Examination. He is a member of the Louisiana bar and the bars of the United States Supreme Court and the United States District Court for the Eastern, Middle, and Western Districts of Louisiana. Mr. Zimmer joined the firm upon graduation from law school, and actively participates in all phases of the firm's litigation practice, particularly in accounting liability defense matters and class action antitrust matters involving the pharmaceutical industry.

**Adelaida J. Ferchmin.** Ms. Ferchmin was born in San Juan, Puerto Rico, on October 20, 1978. She was educated at Tufts University (B.A. 2000); and Tulane University School of Law (J.D. 2005). She joined the firm upon graduation from law school and is a member of the Louisiana bar. Ms. Ferchmin actively participates in all aspects of the firm's litigation practice. Ms. Ferchmin also speaks several languages, including Spanish, Croatian, and Polish.

**John Alden Meade.** Mr. Meade was born in New Orleans, Louisiana on November 5, 1975. He was educated at Stanford University (B.A. 1998); and Tulane University (J.D. 2005) where he graduated magna cum laude, and was a member of the Order of the Coif. Mr. Meade joined the firm upon graduation from law school and is a member of the Louisiana bar, actively participating in the firm's litigation practice.

## OF COUNSEL

**Randall S. Acree.** Mr. Acree was born in Augusta, Georgia on August 4, 1959, and was admitted to the bar for the State of Georgia in 1987. He is admitted to practice in the United States District Courts for the Northern and Southern Districts of Georgia. Mr. Acree was educated at Valdosta State College (B.A., 1981); did graduate work at the University of Georgia; and received his legal education at Mercer University (J.D., 1986), and Georgetown University (L.L.M. in Securities, 1987). Mr. Acree has extensive hospital industry experience, and his regular areas of practice include healthcare industry litigation; business tort litigation; securities litigation; class action litigation; and antitrust litigation.

********