## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| IN RE: TRICOR DIRECT PURCHASER ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>C.A. No. 05-340 (KAJ)<br>C.A. No. 05-351 (KAJ)<br>C.A. No. 05-358 (KAJ) | Civil Action No.: 05-340 (KAJ) (Consolidated)<br><br>ANSWER BY FOURNIER |

## FOURNIER'S ANSWER TO DIRECT PURCHASER CLASS PLAINTIFFS' FIRST AMENDED AND CONSOLIDATED CLASS ACTION COMPLAINT

Respondents, Fournier Industrie et Santé and Laboratoires Fournier S.A. (collectively, "Fournier"), by their undersigned attorneys, answer to Direct Purchaser Class Plaintiffs' First Amended and Consolidated Class Action Complaint ("DPP Complaint"), on knowledge as to themselves and otherwise on information and belief, as follows:

1.     Admitted that Fournier has manufactured a fenofibrate drug product marketed by Abbott under the trade name TriCor. The remainder of paragraph 1 contains a description of this proceeding and conclusions of law, to which no response is required.

2.     Admitted that Abbott began marketing TriCor capsules in the United States in 1998 and that sales of TriCor in 2001 exceeded $227 million. Otherwise denied.

3.     Denied.

4.     Admitted that on November 10, 1999, Abbott applied to the U.S. Food and Drug Administration for approval to market a fenofibrate product in tablet form. Otherwise denied.

5.    Denied.

6.    Denied.

7.    Denied.

8.    Denied.

9.    Admitted that Fournier and Abbott asserted patents in this District against Teva and Impax. Also admitted that Abbott received approval for a second fenofibrate tablet formulation. Otherwise denied.

10.    Admitted that sales of TriCor in 2004 exceeded $750 million. Otherwise denied.

11.    Denied.

12.    Denied.

13.    To the extent that the Direct Purchaser Class Plaintiffs' ("DPP") averments state legal conclusions, no response is required. Otherwise denied.

14.    To the extent that DPP's averments state legal conclusions, no response is required.    Admitted that this Court has jurisdiction over the alleged subject matter of this litigation. Otherwise denied.

15.    Denied.

16.    Fournier is without sufficient information or knowledge to form a belief as to the truth of the averments in paragraph 16 of the Complaint and, therefore, denies these allegations.

17.    Fournier is without sufficient information or knowledge to form a belief as to the truth of the averments in paragraph 17 of the Complaint and, therefore, denies these allegations.

18.    Fournier is without sufficient information or knowledge to form a belief as to the truth of the averments in paragraph 18 of the Complaint and, therefore, denies these allegations.

19.    Admitted.

20.    Admitted.

21.    Admitted that plaintiffs purport to bring this action on behalf of themselves and others similarly situated and purport to define a class but deny that class treatment is proper in this case. Otherwise denied.

22.    Denied.

23.    Denied.

24.    Denied.

25.    Denied.

26.    Fournier is without sufficient information or knowledge to form a belief as to the truth of the averments in paragraph 26 of the Complaint and, therefore, denies these allegations.

27.    Denied.

28.    Denied.

29.    Denied.

30.    Fournier is without sufficient information or knowledge to form a belief as to the truth of the averments in paragraph 30 of the Complaint and, therefore, denies these allegations.

31.    To the extent that DPP's averments state legal conclusions, no response is required. Otherwise denied.

32.    To the extent that DPP's averments state legal conclusions, no response is required. Otherwise denied.

33.    To the extent that DPP's averments state legal conclusions, no response is required. Otherwise denied.

34.    To the extent that DPP's averments state legal conclusions, no response is required. Otherwise denied.

35.    To the extent that DPP's averments state legal conclusions, no response is required. Otherwise denied.

RLF1-3034048-1

36.    To the extent that DPP's averments state legal conclusions, no response is required. Otherwise denied.

37.    To the extent that DPP's averments state legal conclusions, no response is required. Otherwise denied.

38.    To the extent that DPP's averments state legal conclusions, no response is required. Otherwise denied.

39.    To the extent that DPP's averments state legal conclusions, no response is required. Otherwise denied.

40.    To the extent that DPP's averments state legal conclusions, no response is required. Otherwise denied.

41.    To the extent that DPP's averments state legal conclusions, no response is required. Otherwise denied.

42.    Admitted that paragraph 42 provides a non-exhaustive description of TriCor.

43.    Admitted that fenofibrate is a fibrate and that fibrates, statins, bile acid sequestrants, and niacin may be used to address cholesterol conditions. Otherwise denied.

44.    Admitted that TriCor (fenofibrate), Atromid (clofibrate), and Lopid (gemfibrozil) are drugs approved by the FDA. Otherwise denied.

45.    Admitted that paragraph 45 purports to describe a document from either Fournier or Abbott. Otherwise denied.

-5-

46.    Admitted that in 1997 Fournier granted Abbott an exclusive license to a Patent No. 4,895,726 ("'726 patent") in the United States claiming a novel dosage form of fenofibrate; the FDA approved the TriCor 67mg capsule on February 9, 1998; the FDA approved TriCor 134 mg and 200mg capsule on June 30, 1999; and sales of TriCor exceeded $150 million in 2000 and $277 million in 2001. Otherwise denied.

47.    Denied.

48.    Denied.

49.    Denied.

50.    Denied.

51.    Admitted that fenofibrate has poor hydrosolubility and is poorly absorbed in the human digestive tract.

52.    Admitted.

53.    To the extent that DPP's averments state legal conclusions, no response is required. To the extent DPP's averments intend to recite from the prosecution history or reexamination history of the '726 patent, the prosecution history and reexamination history speak for themselves. Otherwise denied.

54.    To the extent that DPP's averments state legal conclusions, no response is required. To the extent DPP's averments intend to recite from the prosecution history or reexamination history of the '726 patent, the prosecution history and reexamination history speak for themselves. Otherwise denied.

55.    To the extent that DPP's averments state legal conclusions, no response is required.  To the extent DPP's averments intend to recite from the prosecution history or reexamination history of the '726 patent, the prosecution history and reexamination history speak for themselves.  Otherwise denied.

56.    To the extent that DPP's averments state legal conclusions, no response is required.  To the extent DPP's averments intend to recite from the prosecution history or reexamination history of the '726 patent, the prosecution history and reexamination history speak for themselves.  Otherwise denied.

57.    To the extent that DPP's averments state legal conclusions, no response is required.  To the extent DPP's averments intend to recite from the prosecution history or reexamination history of the '726 patent, the prosecution history and reexamination history speak for themselves.  Otherwise denied.

58.    To the extent that DPP's averments state legal conclusions, no response is required.  To the extent DPP's averments intend to recite from the prosecution history or reexamination history of the '726 patent, the prosecution history and reexamination history speak for themselves.  Otherwise denied.

59.    To the extent that DPP's averments state legal conclusions, no response is required.  Otherwise denied.

60.    Admitted that in December 1999, Fournier filed for reexamination of the '726 patent and Fournier filed a declaration by Philippe Reginault in support of that reexamination.  To the extent that DPP's averments state legal conclusions, no response is

required.  To the extent DPP's averments intend to recite from the prosecution history or reexamination history of the '726 patent, the prosecution history and reexamination history speak for themselves.  Otherwise denied.

61.    Denied.

62.    Admitted.

63.    Admitted.

64.    To the extent that DPP's averments state legal conclusions, no response is required.  To the extent DPP's averments intend to recite from the trial court's opinion in <u>Abbott Laboratories v. Novopharm Ltd., 2002 WL 433584 (N.D.Ill. Mar. 20, 2002)</u>, the cited opinion speaks for itself.  Otherwise denied.

65.    Admitted that Abbott and Fournier filed complaints alleging infringement of the '726 patent by against Teva and Impax in the United States District Court of the District of Illinois on or about April 7, 2000, August 18, 2000, and March 19, 2001.  Otherwise denied.

66.    To the extent that DPP's averments state legal conclusions, no response is required. Otherwise denied.

67.    Admitted that the FDA granted Impax tentative approval for Impax's fenofibrate capsules on February 20, 2002.  Otherwise denied.

68.    Admitted that the Illinois District Court granted summary judgment of non-infringement in favor of Teva.  To the extent DPP's averments intend to recite from the trial

court's opinion in <u>Abbott Laboratories v. Novopharm Ltd., 2002 WL 433584 (N.D.Ill. Mar. 20, 2002),</u> the cited opinion speaks for itself. Otherwise denied.

69.    To the extent that DPP's averments state legal conclusions, no response is required. To the extent DPP's averments intend to recite from the trial court's opinion in <u>Abbott Laboratories v. Novopharm Ltd., 2002 WL 433584 (N.D.Ill. Mar. 20, 2002),</u> the cited opinion speaks for itself. Otherwise denied.

70.    To the extent that DPP's averments state legal conclusions, no response is required. To the extent DPP's averments intend to recite from the trial court's opinion in <u>Abbott Laboratories v. Novopharm Ltd., 2002 WL 433584 (N.D.Ill. Mar. 20, 2002),</u> the cited opinion speaks for itself. Otherwise denied.

71.    To the extent that DPP's averments state legal conclusions, no response is required. To the extent DPP's averments intend to recite from the trial court's opinion in <u>Abbott Laboratories v. Novopharm Ltd., 2002 WL 433584 (N.D.Ill. Mar. 20, 2002),</u> the cited opinion speaks for itself. Otherwise denied.

72.    To the extent that DPP's averments state legal conclusions, no response is required. To the extent DPP's averments intend to recite from the trial court's opinion in <u>Abbott Laboratories v. Novopharm Ltd., 2002 WL 433584 (N.D.Ill. Mar. 20, 2002),</u> the cited opinion speaks for itself. Otherwise denied.

73.    Admitted that on March 20, 2003, the U.S. Court of Appeals for the Federal Circuit ruled on the appeal of the trial court's decision in <u>Abbott Laboratories v. Novopharm Ltd., 2002 WL 433584 (N.D.Ill. Mar. 20, 2002)</u>. To the extent that DPP's averments

state legal conclusions, no response is required. To the extent DPP's averments intend to recite from the Federal Circuit's opinion, the opinion speaks for itself. Otherwise denied.

74.    To the extent that DPP's averments state legal conclusions, no response is required. To the extent DPP's averments intend to recite from the Federal Circuit's opinion, the opinion speaks for itself. Otherwise denied.

75.    To the extent that DPP's averments state legal conclusions, no response is required. To the extent DPP's averments intend to recite from the Federal Circuit's opinion, the opinion speaks for itself. Otherwise denied.

76.    Admitted that Teva received final FDA approval to market its 134 mg and 200 mg fenofibrate capsule product on April 9, 2002, tentative approval to market its 67 mg fenofibrate capsule product on April 9, 2002, and final approval to market its 67 mg fenofibrate capsule product on September 3, 2002. To the extent that DPP's averments state legal conclusions, no response is required. Otherwise denied.

77.    Admitted that on March 26, 2003, the Illinois district court granted Impax's motion for summary judgment for the reasons stated in the opinion issued by that court, and on or about October 28, 2003, the FDA granted Impax final approval to market its fenofibrate capsules. To the extent that DPP's averments state legal conclusions, no response is required. Otherwise denied.

78.    Denied.

79.    Admitted that Fournier and Abbott developed a tablet product in dosages containing 54mg and 160mg of fenofibrate. Otherwise denied.

80.     Admitted that on September 4, 2001, Abbott obtained FDA approval to market the 54mg and 160mg tablet TriCor formulation.  Otherwise denied.

81.     Admitted that the TriCor capsule formulation was discontinued and that the discontinuance was communicated to the public.  Otherwise denied.

82.     Admitted that Abbott announced in October 2001 that it would no longer market TriCor capsules.  Otherwise denied.

83.     Denied.

84.     Denied.

85.     Admitted that Abbott communicated the discontinuance of the TriCor capsule formulation to First DataBank.  Fournier is without sufficient information or knowledge to form a belief as to the truth of the remaining averments in paragraph 85 of the Complaint and, therefore, denies these allegations.

86.     Denied.

87.     Admitted that Abbott sought and obtained from the FDA an additional indication for the TriCor tablet formulation that the capsule formulation did not have, and in support of that application Abbott relied on clinical studies conducted in connection with the capsule formulation.   To the extent DPP's averments intend to recite from correspondence originating from the FDA, the document speaks for itself.  Otherwise denied.

88.     Denied.

89.    Admitted that Abbott and Fournier invested resources developing and obtaining FDA approval for the 54mg and 160mg TriCor tablet formulations. Otherwise denied.

90.    Admitted that Abbott and Fournier invested resources developing and obtaining FDA approval for the 54mg and 160mg TriCor tablet formulations. Otherwise denied.

91.    Denied.

92.    Denied.

93.    To the extent DPP's averments intend to recite from an Abbott document, the document speaks for itself. Otherwise denied.

94.    Admitted that Teva began marketing a fenofibrate capsule product in or around April 2002. Otherwise denied.

95.    Denied.

96.    Denied.

97.    Admitted that Teva filed an ANDA for 54mg and 160mg fenofibrate tablets; that said ANDA contained Paragraph IV certifications for the '726 patent and U.S. Patent Nos. 6,074,670 (the "'670 patent") and 6,277,405 (the "'405 patent"); and notice of Teva's Paragraph IV certification was received by Fournier and Abbott. Otherwise denied.

98.    Admitted that U.S. Patent Nos. 6,589,552 (the "'552 patent") and 6,652,881 (the "'881 patent") subsequently issued; Teva filed Paragraph IV certifications for the '552 and '881 patents; and Abbott and Fournier received notice of the Paragraph IV

certifications; and Abbott and Fournier filed suit against Teva on the '552 and '881 patents within 45-days after receiving such notice. Otherwise denied.

99.     Admitted.

100.     To the extent that DPP's averments state legal conclusions, no response is required. Otherwise denied.

101.     Admitted that Abbott and Fournier filed a complaint against Impax alleging infringement of the '670 and '405 patents on January 23, 2003, and that subsequent suits asserting the '552 and '881 patents were filed. To the extent that DPP's remaining averments state legal conclusions, no response is required. Otherwise denied.

102.     Admitted that on March 5, 2004, the FDA granted tentative approval to Teva and Impax's ANDA's for 54mg and 160 mg fenofibrate tablets, and that Teva and Impax have represented to this Court that, absent the 30-month stays, they would have received final approval from the FDA on March 5, 2004 and would have entered the market shortly thereafter. Otherwise denied.

103.     Admit only that Teva, Impax, Abbott and Fournier agreed to modifications of the original trial schedule; on May 20, 2005, Abbott and Fournier moved to voluntarily dismiss the patent infringement complaint and Teva's and Impax's counterclaims; and Teva, Impax, Abbott and Fournier jointly stipulated to a dismissal of the patent infringement claims and counterclaims. Otherwise denied.

104.     Denied.

105. To the extent that DPP's averments state legal conclusions, no response is required. To the extent DPP's averments intend to recite from unidentified Abbott and Fournier documents, the documents speak for themselves. Otherwise denied.

106. To the extent that DPP's averments state legal conclusions, no response is required. To the extent DPP's averments intend to recite from unidentified Abbott and Fournier documents, the documents speak for themselves. Otherwise denied.

107. Admitted that Abbott obtained FDA approval to market a new tablet TriCor formulation in 48mg and 145 mg strengths on November 5, 2004, and the new tablet formulation contains the same active ingredient, fenofibrate. Otherwise denied.

108. To the extent that DPP's averments state legal conclusions, no response is required. To the extent DPP's averments intend to recite from unidentified Abbott and Fournier documents, the documents speak for themselves. Otherwise denied

109. Denied.

110. Admitted that the new tablet formulation was developed using nanotechnology licensed from Elan Corporation, Plc. Otherwise denied.

111. Admitted that the patent license obtained from Elan was exclusive for the field of fenofibrate dosage forms. Otherwise denied.

112. Admitted that Abbott discontinued the TriCor original tablet formulation when the new tablet formulation became available, communicated the tablet discontinuance to

the public, and under certain circumstances accepted returns of the original tablet formulation. Otherwise denied.

113.    Denied.

114.    Admitted that Abbott received FDA approval for the new tablet formulation NDA in November 2004, and Teva and Impax received tentative approval for their 54mg and 160mg tablet ANDA's on March 5, 2004. Otherwise denied.

115.    Denied.

116.    Fournier is without sufficient information or knowledge to form a belief as to the truth of the averments in paragraph 116 of the Complaint and, therefore, denies these allegations.

117.    Denied.

118.    Denied.

119.    Denied.

120.    Admitted that Fournier and Abbott asserted the '726 patent against Teva and Impax in the Illinois Patent Litigation. Otherwise denied.

121.    Admited that this paragraph purports to summarize the '726 patent, the Illinois Decision and Novopharm's paragraph IV certification. These documents speaks for themselves. Otherwise denied.

122.    Denied.

123.    Admitted that the Illinois District Court granted summary judgment for Teva on the '726 patent infringement claims. To the extent that DPP's averments state legal conclusions, no response is required. To the extent DPP's averments intend to recite from the Federal Circuit's opinion, the opinion speaks for itself. Otherwise denied.

124.    To the extent that DPP's averments state legal conclusions, no response is required. To the extent DPP's averments intend to recite from the trial court's opinion in Abbott Laboratories v. Impax Laboratories, Inc., 2003 WL 1563426 (N.D. Ill. 2003), the opinion speaks for itself. Otherwise denied.

125.    Admitted that the '726 patent was asserted against Teva during the pendency of the appeal to the Federal Circuit. Otherwise denied.

126.    Admitted that Abbott and Fournier initiated the patent infringement action against Teva for infringement of the '726. '670, '405, '552, and '881 patents. Otherwise denied.

127.    Admitted that Teva provided Abbott and Fournier with technical materials from its ANDA statements in connection with its Paragraph IV certifications. Otherwise denied.

128.    Denied.

129.    To the extent that DPP's averments state legal conclusions, no response is required. Otherwise denied.

130.    Admitted that the '881 patent resulted from Application No. 10/288,425, filed November 6, 2002; and the '881 patent is assigned to Fournier. To the extent DPP's

averments intend to recite from the '881 patent or its prosecution history, the patent and its prosecution history speak for themselves. Otherwise denied.

131.    Admitted that Fournier is the owner of the '726 patent. To the extent that DPP's averments state legal conclusions, no response is required. To the extent DPP's averments intend to recite from the prosecution history or reexamination history of the '726 patent, the prosecution history and reexamination history speak for themselves. Otherwise denied.

132.    To the extent that DPP's averments state legal conclusions, no response is required. To the extent DPP's averments intend to recite from the '881 patent or its prosecution history, the '881 patent and its prosecution history speak for themselves. Otherwise denied.

133.    To the extent that DPP's averments state legal conclusions, no response is required. To the extent DPP's averments intend to recite from the '881 patent or its prosecution history, the '881 patent and its prosecution history speak for themselves. Otherwise denied.

134.    To the extent that DPP's averments state legal conclusions, no response is required. To the extent DPP's averments intend to recite from the '881 patent or its prosecution history, the '881 patent and its prosecution history speak for themselves. Otherwise denied.

135.    Admitted.

136.    To the extent that DPP's averments state legal conclusions, no response is required. To the extent DPP's averments intend to recite from the '881 patent or its prosecution history, the '881 patent and its prosecution history speak for themselves. Otherwise denied.

137.    To the extent that DPP's averments state legal conclusions, no response is required.  To the extent DPP's averments intend to recite from the '881 patent or its prosecution history, the '881 patent and its prosecution history speak for themselves.  Otherwise denied.

138.    To the extent that DPP's averments state legal conclusions, no response is required.  To the extent DPP's averments intend to recite from unidentified Abbott and Fournier documents, the documents speak for themselves.  Otherwise denied.

139.    To the extent that DPP's averments state legal conclusions, no response is required.  To the extent DPP's averments intend to recite from the '881 patent or its prosecution history, the '881 patent and its prosecution history speak for themselves.  Otherwise denied.

140.    To the extent that DPP's averments state legal conclusions, no response is required.  To the extent DPP's averments intend to recite from the '881 patent or its prosecution history, the '881 patent and its prosecution history speak for themselves.  Otherwise denied.

141.    To the extent that DPP's averments state legal conclusions, no response is required.  To the extent DPP's averments intend to recite from the '881 patent or its prosecution history, the '881 patent and its prosecution history speak for themselves.  Otherwise denied.

142.    To the extent that DPP's averments state legal conclusions, no response is required.  To the extent DPP's averments intend to recite from the '881 patent or its prosecution history, the '881 patent and its prosecution history speak for themselves.  Otherwise denied.

143.    To the extent that DPP's averments state legal conclusions, no response is required.  To the extent DPP's averments intend to recite from the prosecution history or reexamination history of the '726 patent, those documents speak for themselves.  To the extent

-18-

DPP's averments intend to recite from the prosecution history '881 patent, that document speaks for itself. Otherwise denied.

144.    Denied.

145.    Denied.

146.    Denied.

147.    Admitted.

148.    Admitted.

149.    Denied.

150.    Denied.

151.    Admitted.

152.    Denied.

153.    Denied.

154.    Denied.

155.    Denied.

156.    Denied.

157.    Denied.

158.    Denied.

RLF1-3034048-1

159.    Denied.

# COUNT I

## Monopolization in Violation of Section 2 of the Sherman Act

160.    Fournier repeats and realleges its responses herein to paragraphs 1-159 in answer to paragraph 160.

161.    Denied.

162.    Admitted.

163.    Denied.

164.    Denied.

165.    Denied.

166.    Denied.

167.    Denied.

168.    Denied.

169.    Denied.

170.    Denied.

171.    Denied.

## COUNT II

### Monopolization in violation of Section 1 of the Sherman Act

172.    Fournier repeats and realleges its responses herein to paragraphs 1-159 in answer to paragraph 172.

173.    Denied.

174.    Denied.

175.    Admitted.

176.    Denied.

177.    Denied.

178.    Denied.

179.    Denied.

180.    Denied.

181.    Denied.

182.    Denied.

183.    Denied.

184.    Denied.

## ADDITIONAL DEFENSES

## FIRST ADDITIONAL DEFENSE

Plaintiffs fail to state a claim against Fournier upon which relief may be granted.

## SECOND ADDITIONAL DEFENSE

Plaintiffs have not suffered, and will not suffer, injury of the type that the antitrust laws are designed to prevent, or any other injury to a legally cognizable interest, by reason of the conduct alleged in the DPP Complaint.

## THIRD ADDITIONAL DEFENSE

At all times, Fournier has acted in good faith in furtherance of its legitimate business interests and has caused no injury to competition, the public, or plaintiffs.

## FOURTH ADDITIONAL DEFENSE

Fournier's conduct is protected under the Noerr-Pennington doctrine and/or otherwise under the Constitution of the United States.

## FIFTH ADDITIONAL DEFENSE

Plaintiffs' claims are precluded, in whole or in part, by the Federal Food, Drug, and Cosmetic Act, the Drug Price Competition and Patent Term Restoration Act of 1984 and related amendments.

### SIXTH ADDITIONAL DEFENSE

Plaintiffs' claims are barred, in whole or in part, because this action is not properly maintainable as a class action.

### SEVENTH ADDITIONAL DEFENSE

Plaintiffs' claims are barred, in whole or in part, because there have been no classwide damages as alleged by plaintiffs.

### EIGHTH ADDITIONAL DEFENSE

To the extent there is a finding of conduct that prevented generic entry and higher prices as a result, plaintiffs' claims are barred, in whole or in part, to the extent any higher prices were passed on, in whole or in part, to parties not included in the putative class.

### NINTH ADDITIONAL DEFENSE

Plaintiffs' claims are barred, in whole or in part, because plaintiffs would be unjustly enriched if allowed to recover all or any part of the damages alleged in the DPP Complaint.

### TENTH ADDITIONAL DEFENSE

Plaintiffs' claims fail to comply with the pleading requirements of Rules 8 and 9(b) of the Federal Rules of Civil Procedure.

RLF1-3034048-1

## ELEVENTH ADDITIONAL DEFENSE

Plaintiffs did not suffer injury or damages by reason of any act or omission by Fournier.

## TWELFTH ADDITIONAL DEFENSE

Plaintiffs' claims are barred, in whole or in part, because plaintiffs failed to mitigate their damages.

## THIRTEENTH ADDITIONAL DEFENSE

Any injuries, losses, or damages suffered by plaintiffs were proximately caused by their own actions regardless of whether contributory, negligent, incompetent, careless or reckless.

## FOURTEENTH ADDITIONAL DEFENSE

Plaintiffs' claims are barred, in whole or in part, because plaintiffs alleged damages, if any, are speculative.

## FIFTEENTH ADDITIONAL DEFENSE

Venue does not lie in this district as to the claims against Fournier.

## SIXTEENTH ADDITIONAL DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the applicable statute of limitations and/or laches.

RLF1-3034048-1

### SEVENTEENTH ADDITIONAL DEFENSE

Plaintiffs' claims are barred, in whole or in part, because of waiver and/or estoppel.

### EIGHTEENTH ADDITIONAL DEFENSE

Fournier does not maintain monopoly power in the relevant market.

### NINETEENTH ADDITIONAL DEFENSE

The Food and Drug Administration approved each version of TriCor for sale in the United States.

### TWENTIETH ADDITIONAL DEFENSE

Fournier reserves the right to add to its additional defenses as additional information becomes available in the course of this litigation.

### RELIEF REQUESTED

WHEREFORE, Fournier, having answered, respectfully requests judgment dismissing with prejudice the DPP Complaint and each and every claim for relief therein, and awarding Fournier its costs, disbursements, attorneys' fees and such other and further relief as the Court deems just and proper.

*Anne Shea Gaza*

Frederick L. Cottrell, III (I.D. #2555)

*Of Counsel:*

Anne Shea Gaza (I.D. #4093)

Steven C. Sunshine

cottrell@rlf.com

Maria M. DiMoscato

gaza@rlf.com

CADWALADER, WICKERSHAM & TAFT LLP

RICHARDS, LAYTON & FINGER

1201 F Street, N.W.

One Rodney Square

Washington, D.C. 20004

P.O. Box 551

(202) 862-2200

Wilmington, DE 19801

(302) 651-7700

Matthew P. Hendrickson

Bradley J. Demuth

CADWALADER, WICKERSHAM & TAFT LLP

Attorneys for Defendants Fournier

One World Financial Center

Industrie et Sante and Laboratories

New York, NY 10281

Fournier, S.A.

(212) 504-6000

Timothy C. Bickham

STEPTOE & JOHNSON LLP

1330 Connecticut Avenue, N.W.

Washington, DC 20036-1795

(202) 429-5517

Dated: July 6, 2006

## CERTIFICATE OF SERVICE

I hereby certify that on July 6, 2006, I caused to be served by hand delivery the foregoing document and electronically filed the same with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

Josy W. Ingersoll
John W. Shaw
Karen Keller
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391

Jeffrey S. Goddess
Rosenthal, Monhait, Gross & Goddess, P.A.
919 Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE 19899-1070
Tel. (302) 656-4433
Fax. (302) 658-7567

Jonathan L. Parshall
Murphy Spadaro & Landon
1011 Centre Road, Suite 210
Wilmington, DE 19801

Michael I. Silverman
Lynn A. Iannone
Silverman & McDonald
1010 North Bancroft Parkway
Suite 22
Wilmington, DE 19805

Mary B. Graham
Morris Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899

Mary B. Matterer
Morris, James, Hitchens & Williams
222 Delaware Avenue, 10th Floor
Wilmington, DE  19801

Pamela S. Tikellis
Robert J. Kriner, Jr.
A. Zachary Naylor
Chimicles & Tikellis LLP
One Rodney Square
P.O. Box 1035
Wilmington, DE 19899

Elizabeth M. McGeever
Prickett Jones Elliott, P.A.
1310 King Street
Wilmington, DE 19801

Patrick Francis Morris
Morris & Morris LLC
4001 Kennett Pike, Suite 300
Wilmington, Delaware 19807

I hereby certify that on July 6, 2006, I sent by electronic mail the foregoing document to the following non-registered participants:

REPRESENTING DIRECT PARTY PLAINTIFFS
(C.A. 05-340):

Jeffrey S. Goddess
**jgoddess@rmgglaw.com**

Bruce E. Gerstein
**bgerstein@garwingerstein.com**
Barry S. Taus
**btaus@garwingerstein.com**

Adam M. Steinfeld
**asteinfeld@garwingerstein.com**

Daniel Berger
**danberger@bm.net**

Eric L. Cramer
**ecramer@bm.net**

Peter Kohn
**pkohn@bm.net**

Linda P. Nussbaum
**lnussbaum@cmht.com**

Steig D. Olson
**solson@cmht.com**

REPRESENTING WALGREEN, ECKERD, KROGER,
MAXI, CVS, RITE AID, ALBERTSON'S, SAFEWAY,
HY-VEE AND AMERICAN SALES
(C.A. 05-340):

Elizabeth M. McGeever
**emmcgeever@prickett.com**

Scott E. Perwin
**sperwin@kennynachwalter.com**

Joseph T. Lukens
**jlukens@hangley.com**

REPRESENTING PACIFICARE
(C.A. 05-340):

Jonathan L. Parshall
**jonp@msllaw.com**

William Christopher Carmody
**bcarmody@susmangodfrey.com**

John Turner:
**jturner@susmangodfrey.com**

Shawn Rabin:
**srabin@susmangodfrey.com**

Justin Nelson:
**jnelson@susmangodfrey.com**

Cindy Tijerina:
**ctijerina@susmangodfrey.com**

Ken Zylstra:
**kzylstra@sbclasslaw.com**

Lyle Stamps:
**lstamps@sbclasslaw.com**

Steve Connolly
**Sconnolly@abclasslaw.com**

Mark Sandman:
**mms@rawlingsandassociates.com**

Jeffrey Swann:
**js5@rawlingsandassociates.com**

REPRESENTING INDIRECT PARTY PLAINTIFFS
(C.A. 05-360):

Pamela S. Tikellis
Thomas M. Sobol
Patrick E. Cafferty
Jeffrey L. Kodroff
Bernard J. Persky
William C. Carmody
Mike Gottsch
Zach Naylor
Robert Davis
Brian Clobes
Michael Tarringer
Tim Fraser
David Nalven
Greg Matthews
Christopher McDonald
Kellie Safar
Ted Lieverman
Pat Howard

**Tricor@chimicles.com**

REPRESENTING IMPAX LABORATORIES
(C.A. 03-120):

Mary Matterer
**mmatterer@morrisjames.com**

John C. Vetter
**jvetter@kenyon.com**

Asim Bhansali
**abhansali@kvn.com**

REPRESENTING TEVA PHARMACEUTICALS
(C.A. 02-1512):

Josy W. Ingersoll
Bruce M. Gagala
Karen E. Keller
Christopher T. Holding
Ken Cohen
Elaine Blais

**tricor@ycst.com**

REPRESENTING ABBOTT (ALL CASES):

Mary B. Graham
**Tricor@mnat.com**

William F. Cavanaugh
**wfcavanaugh@pbwt.com**

Chad J. Peterman
**cjpeterman@pbwt.com**

_Anne Shea Gaza_
Anne Shea Gaza (#4093)
GAZA@rlf.com