IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IN RE:  TRICOR DIRECT PURCHASER                )
           ANTITRUST LITIGATION                                )
_____    )
                                             )    Civil Action No. 05-340 (KAJ)

THIS DOCUMENT RELATES TO:                       )
                                             )    CONSOLIDATED
          C.A. No. 05-340 (KAJ)              )
          C.A. No. 05-351 (KAJ)              )
          C.A. No. 05-358 (KAJ)              )
_____    )

### ABBOTT'S ANSWER TO DIRECT PURCHASER CLASS PLAINTIFFS' FIRST AMENDED AND CONSOLIDATED CLASS ACTION COMPLAINT

Respondent Abbott Laboratories ("Abbott"), by its undersigned attorneys, hereby answers Direct Purchaser Class Plaintiffs' First Amended and Consolidated Class Action Complaint ("DPP Complaint"), on knowledge as to itself and otherwise on information and belief, as follows:

1.      Paragraph 1 contains a description of this proceeding and legal conclusions that require no answer.

2.      Admit only that (i) Abbott began marketing TriCor capsules in the United States in 1998, and (ii) sales of TriCor in 2001 exceeded $227 million.  Abbott otherwise denies the allegations in paragraph 2.

3.      Denied.

4.      Admit only that Abbott filed an application with the FDA on November 10, 1999 for a tablet version of TriCor.  Abbott otherwise denies the allegations in paragraph 4.

5.      Denied.

6.      Denied.

7.      Denied.

8.     Denied.

9.     Admit only that (i) Abbott and Fournier asserted patents in this District against Teva and Impax and (ii) Abbott received approval for TriCor 145 mg and 45 mg tablets. Abbott otherwise denies the allegations in paragraph 9.

10.     Admit only that sales of TriCor in 2004 exceeded $750 million.  Abbott otherwise denies the allegations in paragraph 10.

11.     Denied.

12.     Denied.

13.     Denied.

14.     Paragraph 14 contains a description of this proceeding and legal conclusions that require no answer.

15.     Admitted.

16.     Abbott is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 16, therefore denied.

17.     Abbott is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 17, therefore denied.

18.     Abbott is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 18, therefore denied.

19.     Admitted.

20.     Admitted.

21.     Admit that plaintiffs purport to bring the action described in paragraph 21. Abbott otherwise denies the allegations in paragraph 21.

22.     Denied.

23.    Denied.

24.    Denied.

25.    Denied.

26.    Abbott is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 26, therefore denied.

27.    Denied.

28.    Denied.

29.    Denied.

30.    Abbott is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 30, therefore denied.

31.    Paragraph 31 contains legal conclusions that require no answer.

32.    Paragraph 32 contains legal conclusions that require no answer.

33.    Paragraph 33 contains legal conclusions that require no answer.

34.    Paragraph 34 contains legal conclusions that require no answer.

35.    Paragraph 35 contains legal conclusions that require no answer.

36.    Paragraph 36 contains legal conclusions that require no answer.

37.    Paragraph 37 contains legal conclusions that require no answer.

38.    Paragraph 38 contains legal conclusions that require no answer.

39.    Paragraph 39 contains legal conclusions that require no answer.

40.    Denied.

41.    Paragraph 41 contains legal conclusions that require no answer.  Abbott otherwise denies the allegations in paragraph 41.

42.    Admit only that paragraph 42 provides a non-exhaustive description of TriCor.

43.    Admit only that (i) fenofibrate is a fibrate and (ii) fibrates, statins, bile acid sequestrants, and niacin may be used to address cholesterol conditions.  Abbott otherwise denies the allegations in paragraph 43.

44.    Admit only that FDA approved fibrate drugs include TriCor (fenofibrate), Atromid (clofibrate), and Lopid (gemfibrozil).  Abbott otherwise denies the allegations in paragraph 44.

45.    Admit only that paragraph 45 purports to describe an unspecified Abbott document.  Without a cite to a specific document, Abbott is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 45 and therefore denies the allegations.  Abbott otherwise denies the allegations in paragraph 45.

46.    Admit only that (i) in 1997 Fournier granted Abbott an exclusive license to a Patent No. 4,895,726 ("'726 patent") in the United States covering a formulation of fenofibrate, (ii) the FDA approved the TriCor 67mg capsule on Feburary 9, 1998, and the TriCor 134 mg and 200mg capsule on June 30, 1999, and (iii) sales of TriCor exceeded $150 million in 2000 and $227 million in 2001.  Abbott otherwise denies the allegations in paragraph 46.

47.    Denied.

48.    Denied.

49.    Denied.

50.    Denied.

51.    Admit only that fenofibrate has poor hydro-solubility and is poorly absorbed in the human digestive tract.  Abbott otherwise denies the allegations in paragraph 51.

52.     Admitted.

53.     Admit only that language quoted in paragraph 53 is excerpted from the '726 patent.  Abbott states that the '726 patent, its prosecution history and its reexamination history speak for themselves and should be read as a whole.  Abbott otherwise denies the allegations in paragraph 53.

54.     Admit only that language quoted in paragraph 54 is excerpted from the '726 patent.  Abbott states that the '726 patent, its prosecution history and its reexamination history speak for themselves and should be read as a whole.  Abbott otherwise denies the allegations in paragraph 54.

55.     Admit only that language quoted in paragraph 55 is excerpted from the '726 patent.  Abbott states that the '726 patent, its prosecution history and its reexamination history speak for themselves and should be read as a whole.  Abbott otherwise denies the allegations in paragraph 55.

56.     Admit only that language quoted in paragraph 56 is excerpted from the '726 patent.  Abbott states that the '726 patent, its prosecution history and its reexamination history speak for themselves and should be read as a whole.  Abbott otherwise denies the allegations in paragraph 56.

57.     Admit only that language quoted in paragraph 57 appears to be excerpted from the '726 patent, its prosecution history or its reexamination history.  Abbott states that the '726 patent, its prosecution history and its reexamination history speak for themselves and should be read as a whole.  Abbott otherwise denies the allegations in paragraph 57.

58.     Admit only that language quoted in paragraph 58 appears to be excerpted from the '726 patent, its prosecution history or its reexamination history.  Abbott states that the

'726 patent, its prosecution history and its reexamination history speak for themselves and should be read as a whole. Abbott otherwise denies the allegations in paragraph 58.

59. Paragraph 59 contains legal conclusions that require no answer. Abbott otherwise denies the allegations in paragraph 59.

60. Admit only that (i) in December 1999, Fournier filed for reexamination of the '726 patent, (ii) Fournier filed a declaration by Philippe Reginault in support of that reexamination, and (iii) language quoted in paragraph 60 appears to be excerpted from the '726 patent, its prosecution history or its reexamination history. Abbott states that the '726 patent, its prosecution history and its reexamination history speak for themselves and should be read as a whole. Abbott otherwise denies the allegations in paragraph 60.

61. Denied.

62. Admitted.

63. Admitted.

64. The first sentence of paragraph 64 contains legal conclusions that require no answer. Abbott admits only that the remaining sentences of paragraph 64 quote or cite *Abbott Laboratories v. Novopharm Ltd.*, 2002 WL 433584 (N.D. Ill. Mar. 20, 2002) (the "Illinois Decision"). The decision speaks for itself and should be read as a whole. Abbott otherwise denies the allegations in paragraph 64.

65. Admit only that Abbott and Fournier instituted patent infringement suits in the United States District Court of the District of Illinois on or about April 7, 2000, August 18, 2000, and March 19, 2001 against Teva and Impax for infringement of the '726 patent. Abbott otherwise denies the allegations in paragraph 65.

66. The first sentence of Paragraph 66 contains legal conclusions that require no answer. Abbott otherwise denies the allegations in paragraph 66.

67. Admit only that the FDA granted Impax tentative approval for Impax's fenofibrate capsules on February 20, 2002. Abbott otherwise denies the allegations in paragraph 67.

68. Admit only that the Illinois Decision granted summary judgment in favor of Teva. The decision speaks for itself and should be read as a whole. Abbott otherwise denies the allegations in paragraph 68.

69. Admit only that language quoted in paragraph 69 is excerpted from the Illinois Decision. The decision speaks for itself and should be read as a whole. Abbott otherwise denies the allegations in paragraph 69.

70. Admit only that language quoted in paragraph 70 is excerpted from the Illinois Decision. The decision speaks for itself and should be read as a whole. Abbott otherwise denies the allegations in paragraph 70.

71. Admit only that language quoted in paragraph 71 is excerpted from the Illinois Decision. The decision speaks for itself and should be read as a whole. Abbott otherwise denies the allegations in paragraph 71.

72. Admit only that language quoted in paragraph 72 is excerpted from the Illinois Decision. The decision speaks for itself and should be read as a whole. Abbott otherwise denies the allegations in paragraph 72.

73. Admit only that (i) the Federal Circuit Court of Appeals ruled on an appeal from the Illinois Decision and (ii) the language quoted in paragraph 73 is excerpted from *Abbott Laboratories v. Novopharm Ltd.*, 323 F.3d 1324 (Fed. Cir. 2003) ("Federal Circuit

Decision"). The decision speaks for itself and should be read as a whole. Abbott otherwise denies the allegations in paragraph 73.

74. Admit only that language quoted in paragraph 74 is excerpted from the Federal Circuit Decision. The decision speaks for itself and should be read as a whole. Abbott otherwise denies the allegations in paragraph 74.

75. Admit only that language quoted in paragraph 75 is excerpted from the Federal Circuit Decision. The decision speaks for itself and should be read as a whole. Abbott otherwise denies the allegations in paragraph 75.

76. Admit only that Teva received FDA (i) final approval to market its 134 mg and 200 mg fenofibrate capsule product on April 9, 2002, (ii) tentative approval to market its 67 mg fenofibrate capsule product on April 9, 2002, and (iii) final approval to market its 67 mg fenofibrate capsule product on September 3, 2002. Paragraph 76 contains legal conclusions that require no answer. Abbott otherwise denies the allegations in paragraph 76.

77. Admit only that (i) on March 26, 2003, the Illinois district court granted Impax's motion for summary judgment for the reasons stated in the opinion issued by that court, and (ii) on or about October 28, 2003, the FDA granted Impax final approval to market its fenofibrate capsules. Abbott otherwise denies the allegations in paragraph 77.

78. Denied.

79. Admit only that Abbott and Fournier developed TriCor 160 mg and 54 mg tablets. Abbott otherwise denies the allegations in paragraph 79.

80. Admit only that Abbott received final approval on September 4, 2001 (during the pendency of the Illinois Patent Litigation) from the FDA to market its 160 mg and 54 mg TriCor tablets. Abbott otherwise denies the allegations in paragraph 80.

81.    Admit only that (i) Abbott discontinued marketing of the TriCor capsule formulation at a point following the introduction of the 160 mg and 54 mg TriCor tablet products and (ii) Abbott sales representatives stopped detailing the discontinued TriCor capsule product. Abbott otherwise denies the allegations in paragraph 81.

82.    Admit only that in or around October 2001, Abbott announced that it would not continue to market the TriCor capsule product.  Abbott otherwise denies the allegations in paragraph 82.

83.    Denied.

84.    Denied.

85.    Admit only that, on February 27, 2002, Abbott notified the NDDF that the TriCor capsule products were discontinued.  Abbott is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 85 and therefore denies them.

86.    Denied.

87.    Admit only that (i) the 160 mg and 54 mg TriCor tablet product contained an indication (HDL) not contained by the TriCor capsule product, (ii) the clinical studies supporting the indication were based on the TriCor capsule product, and (iii) the language quoted in paragraph 87 is excerpted from the cite given in the paragraph 87 ("Medical Review Statement").  The Medical Review Statement speaks for itself and should be read as a whole. Abbott otherwise denies the allegations in paragraph 87.

88.    Denied.

89.    Admit only that Abbott and Fournier invested resources developing the TriCor tablet formulation.  Abbott otherwise denies the allegations in paragraph 89.

90.    Admit only that Abbott and Fournier invested resources developing and marketing the TriCor tablet formulation.  Abbott otherwise denies the allegations in paragraph 90.

91.    Denied.

92.    Denied.

93.    Admit only that language quoted in paragraph 93 is purported to be excerpted from an unspecified internal Abbott document.  Without a cite to a specific document, Abbott is without sufficient knowledge or information to form a belief as to accuracy of the quoted excerpts in paragraph 93 and therefore denies its accuracy.  Abbott otherwise denies the allegations in paragraph 93.

94.    Admit only that Teva purports to have begun marketing a fenofibrate capsule product in or around April 2002.  Abbott otherwise denies the allegations in paragraph 94.

95.    Denied.

96.    Denied.

97.    Admit only that (i) Teva sent Abbott a paragraph IV certification dated August 21, 2002, (ii) the certification related to an ANDA for 160 mg and 54 mg fenofibrate tablet, and (iii) the certification referenced the '726 patent and U.S. Patent Nos. 6,074,670 (the "'670 patent") and 6,277,405 (the "'405 patent").  Abbott otherwise denies the allegations in paragraph 97.

98.    Admit only that (i) Teva sent paragraph IV certifications dated July 16, 2003 and December 12, 2003 (concerning U.S. Patent Nos. 6,589,552 (the "'552 patent") and 6,652,881 (the "'881 patent")  respectively to Abbott and (ii) Abbott and Fournier filed suit

against Teva on the '552 and '881 patents within 45-days after receiving such certifications. Abbott otherwise denies the allegations in paragraph 98.

99.     Admitted.

100.     Paragraph 100 contains legal conclusions that require no answer.

101.     Admit only that Abbott and Fournier instituted patent infringement actions against Impax first on the '670 and '405 patents, and subsequently on the '552 and '881 patents. Further answering, Paragraph 101 contains legal conclusions concerning 30-month stays that require no answer.  Abbott otherwise denies the allegations in paragraph 101.

102.     Admit only that (i) Teva and Impax received tentative approval for their tablet ANDAs on March 5, 2004 and (ii) Teva and Impax represented to the Delaware Court that, absent the 30-month stay, they would have received final approval from the FDA on March 5, 2004, and would have entered the market shortly thereafter.  Further answering, Paragraph 102 contains legal conclusions concerning the FDA, final approvals and the 30-month stays that require no answer.  Abbott otherwise denies the allegations in paragraph 102.

103.     Admit only that (i) Teva, Impax, Abbott and Fournier agreed to modifications of the original trial schedule, (ii) on May 20, 2005, Abbott and Fournier moved to voluntarily dismiss the patent infringement complaint and Teva's and Impax's counterclaims, and (iii) Teva, Impax, Abbott and Fournier jointly stipulated to a dismissal of the patent infringement claims and counterclaims.  Abbott otherwise denies the allegations in paragraph 103.

104.     Denied.

105.     Admit only that language quoted in paragraph 105 is purported to be excerpted from an unspecified, internal Abbott or Fournier document.  Without a cite to a

specific document, Abbott is without sufficient knowledge or information to form a belief as to accuracy of the quoted excerpts in paragraph 105 and therefore denies its accuracy. Abbott otherwise denies the allegations in paragraph 105.

106. Admit only that language quoted in paragraph 106 is purported to be excerpted from an unspecified, internal Abbott or Fournier document. Without a cite to a specific document, Abbott is without sufficient knowledge or information to form a belief as to accuracy of the quoted excerpts in paragraph 106 and therefore denies its accuracy. Abbott otherwise denies the allegations in paragraph 106.

107. Admit only that (i) Abbott obtained FDA approval on November 5, 2004 to market a 48 mg and 145 mg TriCor tablet formulation and (ii) the new tablet formulation contains fenofibrate as its active ingredient. Abbott otherwise denies the allegations in paragraph 107.

108. Admit only that language quoted in paragraph 108 is excerpted from an internal Abbott document. The document speaks for itself and should be read as a whole. Abbott otherwise denies the allegations in paragraph 108.

109. Denied.

110. Admit only that the TriCor 148 mg and 48 mg products were developed using nanotechnology licensed from Elan Corporation, Plc. Abbott otherwise denies the allegations in paragraph 110.

111. Admit only that the license from Elan Corporation Plc. was an exclusive license with respect to fenofibrate dosage forms. Abbott otherwise denies the allegations in paragraph 111.

112.    Admit only that (i) Abbott discontinued marketing of the TriCor 160 mg and 54 mg tablet products at a point following the introduction of the TriCor 145 mg and 48 mg tablet products, (ii) Abbott sales representatives stopped detailing the discontinued TriCor 160 mg and 54 mg tablet product, (iii) under certain circumstances, Abbott accepted returns of the TriCor 160 mg and 54 mg tablet products, and (iv) on May 6, 2005, Abbott notified the NDDF that the TriCor 160 mg and 54 mg tablet products were discontinued.  Abbott otherwise denies the allegations in paragraph 112.

113.    Denied.

114.    Admit only that (i) Abbott obtained FDA approval on November 5, 2004 to market a 48 mg and 145 mg TriCor tablet formulation and (ii) Teva and Impax received tentative approval from the FDA for their 160 mg and 54 mg fenofibrate tablets on March 5, 2004.  Abbott otherwise denies the allegations in paragraph 114.

115.    Denied.

116.    Admit only that Abbott (i) introduced Hytrin capsules after it introduced Hytrin tablets and (ii) introduced TriCor tablets after it introduced TriCor capsules.  Abbott otherwise denies the allegations in paragraph 116.

117.    Denied.

118.    Denied.

119.    Denied.

120.    Admit only that Abbott and Fournier instituted the Illinois Patent Litigation, alleging infringement of the '726 patent by Teva and Impax.  Abbott otherwise denies the allegations in paragraph 120.

121.    Admit only that paragraph 121 purports to summarize the '726 patent, the Illinois Decision and Novopharm's paragraph IV certification.  These documents, the '726 patent prosecution history and reexamination history speak for themselves and should be read as a whole.  Abbott otherwise denies the allegations in paragraph 121.

122.    Denied.

123.    Admit only that the Illinois Decision granted summary judgment in favor of Teva and the Federal Circuit Court of Appeals ruled on an appeal from the Illinois Decision. The Illinois Decision and the Federal Circuit decision speak for themselves and should be read as a whole.  Abbott otherwise denies the allegations in paragraph 123.

124.    Admit only that paragraph 124 cites *Abbott Laboratories v. Impax Laboratories, Inc.* 2003 WL 1563426 (N.D. Ill. 2003).  This decision speaks for itself and should be read as a whole.  Abbott otherwise denies the allegations in paragraph 124.

125.    Admit only that the '726 patent was asserted against Teva during the pendency of the appeal to the Federal Circuit.   Abbott otherwise denies the allegations in paragraph 125.

126.    Admit only that Abbott and Fournier initiated the patent infringement action against Teva for infringement of the '726, '670, '405, '552 and '881 patents in the Delaware litigation.  Abbott otherwise denies the allegations in paragraph 126.

127.    Admit only that Teva provided Abbott and Fournier (i) paragraph IV certifications for the '726, '670, '405, '552 and '881 patents and (ii) with technical materials from its ANDA.  Abbott otherwise denies the allegations in paragraph 127.

128.    Denied.

129.    The second sentence of paragraph 129 contains legal conclusions that require no answer. Abbott otherwise denies the allegations in paragraph 129.

130.    Admit only that (i) the '881 patent resulted from Application No. 10/288,425, filed November 6, 2002, (ii) the '881 patent is assigned to Fournier, and (iii) the language quoted in paragraph 130 is excerpted from the '881 patent. Abbott states that the '881 patent and its prosecution history speak for themselves and should be read as a whole. Abbott otherwise denies the allegations in paragraph 130.

131.    Admit only that the '726 patent is assigned to Fournier. Abbott states that the '726 patent, its prosecution history and its reexamination history speak for themselves and should be read as a whole. Additionally, paragraph 131 contains legal conclusions that require no answer. Abbott otherwise denies the allegations in paragraph 131.

132.    Admit only that paragraph 132 purports to describe the '881 patent and quotes a selected excerpt. Abbott states that the '881 patent and its prosecution history speak for themselves and should be read as a whole. Additionally, paragraph 132 contains legal conclusions that require no answer. Abbott otherwise denies the allegations in paragraph 132.

133.    Admit only that paragraph 133 purports to describe a portion of the prosecution history regarding the '881 patent. Abbott states that the '881 patent and its prosecution history speak for themselves and should be read as a whole. Additionally, paragraph 133 contains legal conclusions that require no answer. Abbott otherwise denies the allegations in paragraph 133.

134.    Admit only that paragraph 134 purports to describe a portion of the prosecution history regarding the '881 patent. Abbott states that the '881 patent and its prosecution history speak for themselves and should be read as a whole. The last sentence of

15

paragraph 134 contains legal conclusions that require no answer. Abbott otherwise denies the allegations in paragraph 134.

135. Admitted.

136. Admit only that Reginault submitted a declaration to the PTO in connection with the prosecution of the '881 patent. Abbott states that the '881 patent and its prosecution history speak for themselves and should be read as a whole. The "materiality" allegation in the last sentence of paragraph 136 contains legal conclusions that require no answer. Abbott is without sufficient knowledge or information to form a belief as to whether Reginault was in possession of the "results" as alleged in the last sentence of paragraph 136 and therefore denies this allegation. Abbott otherwise denies the allegations in paragraph 136.

137. Admit only that paragraph 137 purports to describe the prosecution history for the '881 patent. Abbott states that the '881 patent and its prosecution history speak for themselves and should be read as a whole. Additionally, paragraph 137 contains legal conclusions that require no answer. Abbott otherwise denies the allegations in paragraph 137.

138. Admit only that paragraph 138 purports to describe an unspecified Fournier document. Without a cite to a specific document, Abbott is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 138 and therefore denies the allegations. Additionally, paragraph 138 contains legal conclusions that require no answer.

139. Admit only that paragraph 139 purports to describe the prosecution history for the '881 patent. Abbott states that the '881 patent and its prosecution history speak for themselves and should be read as a whole. Additionally, paragraph 139 contains legal conclusions that require no answer. Abbott otherwise denies the allegations in paragraph 139.

140.    Admit only that paragraph 140 purports to describe the prosecution history for the '881 patent.  Abbott states that the '881 patent and its prosecution history speak for themselves and should be read as a whole.  Additionally, paragraph 140 contains legal conclusions that require no answer.  Abbott otherwise denies the allegations in paragraph 140.

141.    Admit only that paragraph 141 purports to describe the prosecution history for the '881 patent.  Abbott states that the '881 patent and its prosecution history speak for themselves and should be read as a whole.  Additionally, paragraph 141 contains legal conclusions that require no answer.  Abbott otherwise denies the allegations in paragraph 141.

142.    Paragraph 142 contains legal conclusions that require no answer.  Abbott otherwise denies the allegations in paragraph 142.

143.    Paragraph 143 contains legal conclusions regarding the "duty to disclose" and "material information" that require no answer.  Admit only that Reginault signed an inventor's oath in connection with the '726 patent.  Abbott states that the inventor's oath, and the '881 patent and its prosecution history speak for themselves and should be read as a whole.  Abbott is without sufficient knowledge or information to form a belief as to Reginault's "aware[ness]" as alleged in paragraph 143 and therefore denies this allegation.  Abbott otherwise denies the allegations in paragraph 143.

144.    Denied.

145.    Denied.

146.    Denied.

147.    Admitted.

148.    Admitted.

149.    Denied.

150.   Denied.

151.   Admitted.

152.   Denied.

153.   Denied.

154.   Denied.

155.   Denied.

156.   Denied.

157.   Denied.

158.   Denied.

159.   Denied.

## COUNT I

### MONOPOLIZATION IN VIOLATION OF SECTION 2 OF THE SHERMAN ACT

160.   Abbott incorporates by reference its answers to paragraphs 1-159.

161.   Denied.

162.   Admitted.

163.   Denied.

164.   Denied..

165.   Denied.

166.   Denied.

167.   Denied.

168.   Denied.

169.   Denied.

170.   Denied.

171.   Denied.

## COUNT II

**MONOPOLIZATION IN VIOLATION OF SECTION 1 OF THE SHERMAN ACT**

172.    Abbott incorporates by reference its answers to paragraphs 1-159.

173.    Denied.

174.    Denied.

175.    Admitted.

176.    Denied.

177.    Denied.

178.    Denied.

179.    Denied.

180.    Denied.

181.    Denied.

182.    Denied.

183.    Denied.

184.    Denied.

## ADDITIONAL DEFENSES

### ADDITIONAL DEFENSE NO. 1

The DPC Complaint fails to state a claim against Abbott upon which relief may be granted.

### ADDITIONAL DEFENSE NO. 2

Plaintiffs have not suffered, and will not suffer, injury of the type that the antitrust laws are designed to prevent, or any other injury to a legally cognizable interest, by reason of the conduct alleged in the DPP Complaint.

### ADDITIONAL DEFENSE NO. 3

At all times, Abbott has acted in good faith in furtherance of its legitimate business interests and has caused no injury to competition, the public, or plaintiffs.

### ADDITIONAL DEFENSE NO. 4

Abbott's conduct is protected under the Noerr-Pennington doctrine, the First Amendment, and/or otherwise under the Constitution of the United States.

### ADDITIONAL DEFENSE NO. 5

Plaintiffs' claims are precluded, in whole or in part, by the Federal Food, Drug, and Cosmetic Act, the Drug Price Competition and Patent Term Restoration Act of 1984 and related amendments.

### ADDITIONAL DEFENSE NO. 6

Plaintiffs' claims are barred, in whole or in part, because this action is not properly maintainable as a class action.

## ADDITIONAL DEFENSE NO. 7

Plaintiffs' claims are barred, in whole or in part, because there have been no classwide damages as alleged by plaintiffs.

## ADDITIONAL DEFENSE NO. 8

To the extent there is a finding of conduct that prevented generic entry and higher prices as a result, plaintiffs' claims are barred, in whole or in part, to the extent any higher prices were passed on, in whole or in part, to parties not included in the putative class.

## ADDITIONAL DEFENSE NO. 9

Plaintiffs' claims are barred, in whole or in part, because plaintiffs would be unjustly enriched if allowed to recover all or any part of the damages alleged in the DPP Complaint.

## ADDITIONAL DEFENSE NO. 10

Plaintiffs' claims fail to comply with the pleading requirements of Rules 8 and 9(b) of the Federal Rules of Civil Procedure.

## ADDITIONAL DEFENSE NO. 11

Plaintiffs did not suffer injury or damages by reason of any act or omission by Abbott.

## ADDITIONAL DEFENSE NO. 12

Plaintiffs' claims are barred, in whole or in part, because plaintiffs failed to mitigate their damages.

ADDITIONAL DEFENSE NO. 13

Any injuries, losses, or damages suffered by plaintiffs were proximately caused by their own actions regardless of whether contributory, negligent, incompetent, careless or reckless.

ADDITIONAL DEFENSE NO. 14

Plaintiffs' claims are barred, in whole or in part, because plaintiffs alleged damages, if any, are speculative.

ADDITIONAL DEFENSE NO. 15

Plaintiffs' claims are barred, in whole or in part, by the applicable statute of limitations and/or laches.

ADDITIONAL DEFENSE NO. 16

Plaintiffs' claims are barred, in whole or in part, because of waiver and/or estoppel.

ADDITIONAL DEFENSE NO. 17

Abbott does not maintain monopoly power in the relevant market.

ADDITIONAL DEFENSE NO. 18

The Food and Drug Administration approved each version of TriCor for sale in the United States.

ADDITIONAL DEFENSE NO. 19

Abbott reserves the right to add to its additional defenses as additional information becomes available in the course of this litigation.

## RELIEF REQUESTED

WHEREFORE, Abbott, having answered, respectfully requests judgment dismissing with prejudice the DPP Complaint and each and every claim for relief therein, and awarding Abbott its costs, disbursements, attorneys' fees and such other and further relief as the Court deems just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Mary B. Graham*
_____
Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200

*Attorneys for Defendant Abbott Laboratories*

OF COUNSEL:

William F. Cavanaugh, Jr.
Eugene M. Gelernter
Chad J. Peterman
Alexis Gander
PATTERSON, BELKNAP, WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY  10036-6710
(212) 336-2000

Dated:  July 6, 2006
527605

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 6, 2006, the foregoing was caused to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered participants.

In addition, the undersigned hereby certifies that true and correct copies of the foregoing were caused to be served via electronic mail on July 6, 2006 upon the following parties:

| | |
|---|---|
| REPRESENTING DIRECT PARTY PLAINTIFFS (C.A. 05-340): | Jeffrey S. Goddess **jgoddess@rmgglaw.com** |
| | Bruce E. Gerstein **bgerstein@garwingerstein.com** |
| | Barry S. Taus **btaus@garwingerstein.com** |
| | Adam M. Steinfeld **asteinfeld@garwingerstein.com** |
| | Daniel Berger **danberger@bm.net** |
| | Eric L. Cramer **ecramer@bm.net** |
| | Peter Kohn **pkohn@bm.net** |
| | Linda P. Nussbaum **lnussbaum@cmht.com** |
| | Steig D. Olson **solson@cmht.com** |
| REPRESENTING WALGREEN, ECKERD, KROGER, MAXI, CVS, RITE AID (C.A. 05-340): | Elizabeth M. McGeever **emmcgeever@prickett.com** |
| | Scott E. Perwin **sperwin@kennynachwalter.com** |
| | Joseph T. Lukens **jlukens@hangley.com** |

REPRESENTING PACIFICARE
(C.A. 05-340):

Jonathan L. Parshall
**jonp@msllaw.com**

William Christopher Carmody
**bcarmody@susmangodfrey.com**

John Turner
**jturner@susmangodfrey.com**

Shawn Rabin
**srabin@susmangodfrey.com**

Justin Nelson
**jnelson@susmangodfrey.com**

Cindy Tijerina
**ctijerina@susmangodfrey.com**

Ken Zylstra
**kzylstra@sbclasslaw.com**

Steve Connolly
**sconnolly@sbclasslaw.com**

Mark Sandman
**mms@rawlingsandassociates.com**

Jeffrey Swann
**js5@rawlingsandassociates.com**

REPRESENTING INDIRECT PARTY PLAINTIFFS
(C.A. 05-360):

Pamela S. Tikellis
Thomas M. Sobol
Patrick E. Cafferty
Jeffrey L. Kodroff
Bernard J. Persky
Mike Gottsch
A. Zachary Naylor
Robert Davis
Brian Clobes
Michael Tarringer
Tim Fraser
David Nalven
Greg Matthews
Christopher McDonald
Kellie Safar
Theodore M. Lieverman
Pat Howard

**tricor@chimicles.com**

- 2 -

| REPRESENTING TEVA PHARMACEUTICALS<br>(C.A. 02-1512): | Josy W. Ingersoll<br>Karen E. Keller<br>Bruce M. Gagala<br>Christopher T. Holding<br>Ken Cohen<br>Elaine Blais<br><br>**tricor@ycst.com** |
|---|---|
| REPRESENTING IMPAX LABORATORIES<br>(C.A. 03-120): | Mary Matterer<br>**mmatterer@morrisjames.com**<br><br>John C. Vetter<br>**jvetter@kenyon.com**<br><br>Asim Bhansali<br>**abhansali@kvn.com** |
| REPRESENTING FOURNIER<br>(ALL CASES): | Frederick L. Cottrell, III<br>Anne Shea Gaza<br>Steven C. Sunshine<br>Matthew P. Hendrickson<br>Bradley J. Demuth<br>Maggie DiMoscato<br>Timothy C. Bickham<br><br>**tricor@rlf.com** |

*/s/ Mary B. Graham*

_____

Mary B. Graham (#2256)

520842