ROSENTHAL, MONHAIT & GODDESS, P. A.
ATTORNEYS AT LAW
SUITE 1401, 919 MARKET STREET
P. O. BOX 1070
WILMINGTON, DELAWARE 19899-1070

JOSEPH A. ROSENTHAL
NORMAN M. MONHAIT
JEFFREY S. GODDESS
CARMELLA P. KEENER
EDWARD B. ROSENTHAL
JESSICA ZELDIN

TELEPHONE (302) 656-4433
FACSIMILE (302) 658-7567

September 22, 2006

The Hon. Kent A. Jordan
U.S. District Court
844 N. King Street
Wilmington, DE 19801

RE: *In re Tricor Direct Purchaser Antitrust Litig.*, C.A. No. 05-340 (KAJ).

Dear Judge Jordan:

I am writing on behalf of Coordinated Direct Purchaser Plaintiffs ("Plaintiffs") to request the Court's intervention in two discovery disputes that the parties have been unable to resolve. *See* Plaintiffs' letters dated August 28, September 7, and September 14, 2006 (Ex. A).

**1.    Documents regarding Higher Dosage Strengths**. Defendants have alleged that each successive form of TriCor is an improvement over the previous formulation. These purported improvements include the fact that each successive version had a lower dosage amount (200mg - 160mg - 145 mg) of the active ingredient fenofibrate.

Plaintiffs dispute Defendants' claim that these lower dosages constitute an improvement because, *inter alia*, the lower dosages were deemed "bioequivalent" by the FDA to the dosages they replaced.[1] Plaintiffs sought documents relevant to Defendants' claims of improvement. *See* Direct Purchaser's Document Requests to Defendants nos. 51, 63 and 83 (Ex. B); *see also* Teva's First Antitrust Document Requests no. 43 (Exhibit C). Defendants' initial production included a limited number of documents that reference Defendants' consideration, development, and/or sale of new versions of fenofibrate products with <u>higher</u>, rather than lower, dosage strengths. These documents include the following:

a.  *See* Fournier-AT141111-2, Fournier-AT12982 and Fournier-AT154855 (Ex. D);

---

[1]    The FDA defines bioequivalence as: "The absence of a significant difference in the rate and extent to which the active ingredient or active moiety in pharmaceutical equivalents or pharmaceutical alternatives becomes available at the site of the drug action when administered at the same molar dose under similar conditions in an appropriately designed study." 21 CFR § 320.1.

b. ███████████████████████████████████
███████████████████████████████████ *See*
Fournier/FTC 0000284 (Ex. E);

c. ███████████████████████████████████
███████████████████████████████ *See* Fournier_AT136531 (Ex. F). ███

Upon discovering the existence of these ██████████████, Plaintiffs sought additional documents regarding these products including documents demonstrating: (a) the reasons and considerations contributing to the actual or potential production, marketing, and sale ████████████████████████████████████████████████████████ well as the reasons or considerations for selling or not selling these products; (b) the actual or potential use of the ████████████████████████████████████████ ████ as part of a strategy or policy to address potential or actual competition, including generic competition; (c) studies performed testing the bioequivalence, safety, efficacy, and/or bioavailability ████████. The requested documents regarding █████████████████ are clearly relevant to one of the key factual disputes in this case: whether Defendants' lower dosage versions of Tricor sold in the United States were product improvements (as Defendants claim), or whether the lower dosages were simply a vehicle to impede generic competition (as Plaintiffs claim). Defendants have not denied the relevance of the requested documents; rather they have simply ignored Plaintiffs' letters requesting their prompt production.

Defendants may argue that ████████████████████████████████', and thus are exempt from discovery under the Court's November 15, 2005 Order. But these particular ███ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████, Defendants seem to recognize this reality as they have already produced certain documents ████████.

In light of the above, Plaintiffs respectfully request that the Court order Defendants to promptly produce the requested documents identified above.

2. **Discovery Regarding Defendants' Patent Suits**. Defendants have also failed to provide adequate responses to Plaintiffs' Second Set of Interrogatories and Second Set of Documents Requests ("Second Set of Requests") (Ex.G). These requests pertain generally to Defendants' decision to investigate, file and prosecute the Capsule and Tablet patent litigations. On August 24, 2006, Plaintiffs agreed to Defendants' request to a two-week extension to respond to the Second Set of Requests, with the understanding that Defendants would produce substantive responses and documents on the new deadline. Counsel for Fournier, Timothy

Bickham, assured Plaintiffs that Defendants "fully intended to provide substantive responses on September 8, 2006." (Ex. H). Despite Mr. Bickham's assurances, Defendants' responses consist merely of boilerplate objections that are inadequate for the following reasons. First, while Defendants invoke the attorney-client privilege and work-product doctrine to block all of Plaintiffs' requested discovery, they also purport to reserve the right to supplement their responses at *some unspecified future time* after Abbott completes a "further investigation" or in the event Fournier "elects to waive privilege."[2] *See* Ex. G

Defendants' suggestion that they might seek to waive their privilege at some future point, possibly after the end of the discovery period, is clearly prohibited by law and not in keeping with a sense of fair play. *See, e.g., In re Cardizem CD Antitrust Litig.*, MDL No. 1278 (E.D. Mich. Jan. 9, 2002) (Slip. Op. at 6.) (requiring antitrust defendants to elect during the discovery period whether they would waive or maintain their attorney-client privilege claims as to advice provided by their patent attorneys, because it would be unfair to allow the defendants to assert the attorney-client privilege while the discovery period was open and, after the time to investigate had closed, assert a defense which placed at issue its privileged communications) (Ex. I). *See also W.L. Gore & Assoc. Inc. v. Tetratec Corp.*, 1989 U.S. Dist. LEXIS at *9 (E.D. Pa. Nov. 28, 1989) ("Tetratec must elect now...or be precluded from introducing the privileged evidence at trial...If privileged material is to be used at trial, however, the plaintiffs must be allowed to examine the privileged material in order to conduct pre-trial discovery.").

Second, Defendants' blanket privilege assertion was overbroad because certain responsive information relates to <u>business</u> (rather than legal) issues, and thus is not privileged. For example, Interrogatory 16 asks Defendants to describe the nature and scope of the pre-filing investigation conducted before Defendants made the decision to file the Capsule and Tablet Lawsuits. This investigation clearly includes the business factors involved in the decision to file and prosecute the lawsuits, which is not privileged.

In light of the October 31, 2006 discovery cut-off date Plaintiffs respectfully request that the Court order Defendants to definitively elect (a) whether or not they intend to waive any alleged privileges and (b) if they do elect to waive any alleged privileges to produce all documents previously withheld on the grounds of the now waived privilege.

Thank you for your consideration of these matters.

Respectfully submitted,

Jeffrey S. Goddess (Del. No. 630)
jgoddess@rmgglaw.com
(302) 656-4433

---

[2] *See* Abbott's Response to Direct Purchaser Plaintiffs Second Set of Interrogatories at 2-3; Fournier's Response to Direct Purchaser Plaintiffs Second Set of Interrogatories at p 6. Ex. G.

3