# EXHIBIT A

LAW OFFICES
## ODOM & DES ROCHES, LLP
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

SUITE 2020, POYDRAS CENTER
650 POYDRAS STREET
NEW ORLEANS, LA 70130
TELEPHONE (504) 522-0077
FAX (504) 522-0078

217 WEST MAIN STREET
P.O. BOX 523
HAHIRA, GA 31632
TELEPHONE (229) 794-8412
FAX (229) 794-8544

August 28, 2006

Chad Peterman, Esq.
Patterson, Belknap, Webb & Tyler, LLP
1133 Avenue of the Americas
New York, New York 10036-6710

*Via Telecopier*
(212) 336-2222

Bradley J. Demuth, Esq.
Cadwalader, Wickersham & Taft LLP
One World Financial Center
New York, New York 10281

*Via Telecopier*
(212) 504-6666

Re: *In re TriCor Direct Purchaser Antitrust Litig.*
*C.A. No. 05-340 (KAJ) (D. Del).*

Dear Chad and Brad:

I am writing to follow-up on the production of documents from both Abbott and Fournier. In light of Defendants' assertions regarding the benefits to patients provided by the lower fenofibrate milligram dosage present in the 160mg tablet as compared to the 200mg capsule, and the 145mg tablet as compared to the 160mg tablet, it is our belief that Defendants have improperly redacted documents related to these issues and failed to produce specific documents responsive to Direct Purchaser Plaintiffs' document request nos. 51, 63, 83 and Teva's document request no. 43.

Specifically, Defendants have produced a limited number of documents that refer to ███████████████████████████████ *See, e.g., Fournier-AT128852-53.* ███████ are relevant to Defendants' claims that the 145mg and 160mg strengths that Defendants chose to sell were developed because they were lower dosages than those previously sold, and thus were improvements over the prior versions. ████████████████████████████████ relevant to assessing the credibility of defendants' claims of good faith and product improvement ████

EXHIBIT
A

LAW OFFICES
ODOM & DES ROCHES, LLP



Therefore, we ask that Fournier produce all documents dealing with this topic.

As a result, Plaintiffs request that Defendants produce the following previously requested documents:

1- Documents relating to the reasons for, and/or factors and considerations contributing to, the actual or potential production

2- Documents related to any reasons and considerations for not producing or selling the

3- Documents relating to the actual or potential

4- Documents related to the reasons for, and/or factors and considerations contributing to, the actual or potential production

5- Documents relating to the actual

6- Documents relating to the actual or potential

7- Documents relating to any studies performed testing the

Please let us know by September 1st when we may expect production of these documents or that Defendants are going to refuse to produce these documents so that we may promptly seek relief from the Court.

LAW OFFICES
ODOM & DES ROCHES, LLP

Thank you for your attention to this matter.

Very truly yours,

*Stuart E. Des Roches by A.F.*

Stuart E. Des Roches

cc: Mary B. Graham, Esq.
Christopher T. Holding, Esq.
Barry Taus, Esq.
Adam Steinfeld, Esq.
Lauren Ravkind, Esq.
Scott Perwin, Esq.
Joseph T. Lukens, Esq.
Asim Bhansali, Esq.
Paula Blizzard, Esq.
Pat Cafferty, Esq.
Ken Zylstra, Esq.
(all via telecopier)

**LAW OFFICES**
## ODOM & DES ROCHES, LLP
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

SUITE 2020, POYDRAS CENTER
650 POYDRAS STREET
NEW ORLEANS, LA 70130
TELEPHONE (504) 522-0077
FAX (504) 522-0078

217 WEST MAIN STREET
P.O. Box 523
HAHIRA, GA 31632
TELEPHONE (229) 794-3412
FAX (229) 794-3544

September 7, 2006

Chad Peterman, Esq.
Patterson, Belknap, Webb & Tyler, LLP
1133 Avenue of the Americas
New York, New York 10036-6710

*Via Telecopier*
(212) 336-2222

Bradley J. Demuth, Esq.
Cadwalader, Wickersham & Taft LLP
One World Financial Center
New York, New York 10281

*Via Telecopier*
(212) 504-6666

Re:   *In re TriCor Direct Purchaser Antitrust Litig.*
      *C.A. No. 05-340 (KAJ) (D. Del).*

Dear Chad and Brad:

I am writing to follow-up on my letter of August 28, 2006 in which we requested that Abbott and Fournier produce additional documents ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌. We had asked for a response to our request by September 1, 2006, but to date we have not received any response. If we do not hear from Abbott and Fournier by tomorrow we will assume that the defendants are refusing to produce any additional documents.

▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌
Pre-IND meeting with FDA rega▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ on this product for FDA's review prior to that meeting. *See, e.g.,* Fournier-AT121973. Although the cover letter forwarding the briefing package has been produced (and a host of other documents referring to the SEC), we do not believe that the package itself has been produced. Thus, we ask that this document be produced. Please let us know whether defendants are amenable to producing this document.

LAW OFFICES
ODOM & DES ROCHES, LLP

Thank you for your attention to this matter.

Very truly yours,

Stuart

Stuart E. Des Roches

cc: Mary B. Graham, Esq.
Christopher T. Holding, Esq.
Barry Taus, Esq.
Adam Steinfeld, Esq.
Lauren Ravkind, Esq.
Scott Perwin, Esq.
Joseph T. Lukens, Esq.
Asim Bhansali, Esq.
Paula Blizzard, Esq.
Pat Cafferty, Esq.
Ken Zylstra, Esq.
(all via telecopier)

**GARWIN GERSTEIN & FISHER LLP**

Counselors at Law
1501 Broadway, Suite 1416
New York, NY 10036
(212) 398-0055
Telecopier No. (212) 764-6620
E-Mail: lawoffices@garwingerstein.com

Bruce E. Gerstein
Scott W. Fisher
Barry S. Taus
Noah H. Silverman
Brett H Cebulash
Joseph Opper
Kevin S. Landau

Sidney L. Garwin (1908-1980)

Jan R. Bartelli
Adam M. Steinfeld
Archana Tamoshunas
Anne K. Fornecker
Kimberly M. Hennings

September 14, 2006

**VIA FIRST CLASS MAIL AND E-MAIL**

William F. Cavanaugh, Jr.
Chad J. Peterman
PATTERSON, BELKNAP, WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036-6710

Steven C. Sunshine
Maria M. DiMoscato
CADWALADER, WICKERSHAN & TAFT LLP
1201 F Street, N.W.
Washington, D.C. 20004

Matthew P. Hendrickson
Bradley J. Demuth
CADWALADER, WICKERSHAN & TAFT LLP
One World Financial Center
New York, New York 10281

Timothy C. Bickham
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036-1795

   Re: *In re: Tricor Direct Purchaser Antitrust Litigation*, 05-cv-340 (KAJ)

Dear Counsel:

  I write on behalf of Direct Purchaser Plaintiffs ("Plaintiffs") regarding the responses submitted by Defendants Fournier Industrie et Sante and Laboratoires Fournier, S.A. ("Fournier") and Defendant Abbott Laboratories ("Abbott") (collectively, "Defendants") to Direct Purchaser Plaintiffs' Second Set of Interrogatories and Second Set of Document Requests to Defendants Abbott and Fournier (collectively, "Second Set of Requests").

William F. Cavanaugh, Jr., Esq.
Steven C. Sunshine, Esq.
Matthew P. Hendrickson, Esq.
Timothy C. Bickham, Esq.
September 14, 2006
Page 2

As you know, on July 26, 2006, Direct Purchaser Plaintiffs served their Second Set of Requests which contained three interrogatories (numbered 15 - 17) and seven document requests (numbered 1 - 7) pertaining generally to facts related to the Capsule and Tablet Lawsuits. On August 24, 2006, counsel for Direct Purchaser Plaintiffs, Stuart Des Roches, consented to Defendants' request for a two-week extension of time to respond to the Second Set of Requests on the condition that Defendants produce "substantive responses and documents on the new deadline and not just boilerplate objections." Counsel for Fournier, Timothy Bickham, assured Mr. Des Roches that Defendants "fully intend[ed] to provide substantive responses" on September 8, 2006.

Despite Mr. Bickham's assurances, Defendants' responses do not provide substantive answers to the Second Set of Requests.[1] Rather, Defendants' responses merely state boilerplate objections to the requests. Even worse, despite the fact that the close of fact discovery is only six weeks away, Defendants purported to grant themselves the right to supplement their boilerplate responses at some unspecified future point, after Abbott completes its purported "further investigation" or if Fournier "elects to waive privilege." *See* Defendant Abbott Laboratories' Response to Direct Purchaser Plaintiffs' Second Set of Interrogatories ("Abbotts' Response") at pp. 2 - 3; Defendant Fournier's Response to Direct Purchaser Plaintiffs' Second Set of Interrogatories ("Fournier's Interrogatory Response) at pp. 6.

In light of the pending discovery deadline, and for the reasons discussed further below, Plaintiffs request that by September 20, 2006, Defendants: (1) state definitively whether or not Defendants intend to assert any defense that would cause Defendants to waive any privilege; and (2) provide to Plaintiffs complete, substantive responses to Direct Purchaser Plaintiffs' Second Set of Requests.

A.   **Defendants Must Make an Explicit Defense Election at This Time**

As you are aware, in its Second Set of Requests, Direct Purchaser Plaintiffs seek facts surrounding Defendants' decisions to investigate, file and prosecute the Capsule and Tablet Lawsuits, which Plaintiffs allege were sham patent infringement suits filed as part of an overarching scheme to illegally impede generic competition for Tricor. Rather than providing the requested information, Defendants chose to withhold this information on the purported basis that it is privileged.

---

[1] In fact, Abbott has provided to Plaintiffs absolutely no response to Direct Purchaser Plaintiffs Second Set of Document Requests despite being given an extra two weeks to prepare such a response.

William F. Cavanaugh, Jr., Esq.
Steven C. Sunshine, Esq.
Matthew P. Hendrickson, Esq.
Timothy C. Bickham, Esq.
September 14, 2006
Page 3

    If all of the requested information was legitimately privileged (which it not - *see* Section B below), Defendants would be within their rights to assert that privilege. However, Defendants have also left the door open to waive their asserted privilege at some uncertain future date. In fact, Fournier specifically states that it may supplement its boilerplate objections to the interrogatories "if it elects to waive privilege." Fournier's Interrogatory Response at pp. 6.

    The law clearly prohibits what Defendants are positioning themselves to do here: (a) blocking discovery of privileged information during discovery, while leaving the door open to (b) later asserting defenses that implicate privileged information on summary judgment or at trial. *See, e.g., In re Cardizem CD Antitrust Litig.*, MDL No. 1278 (E.D. Mich. Jan. 9, 2002) (Order No. 31 Modifying Magistrate Judge's September 26, 2001 Order Regarding Plaintiffs' Motion to Compel or Preclude Evidence at Trial at p. 6) (requiring antitrust defendants to elect **during the discovery period** whether they would waive or maintain their attorney-client privilege claims as to advice provided by their patent attorneys, because it would be unfair to allow the defendants to assert the attorney-client privilege while the discovery period was open and, after the time to investigate had closed, assert a defense which placed at issue its privileged communications) (attached hereto as Exhibit A).[2]

---

[2]*See also American International Airways, Inc. v. American International Group, Inc.*, 1991 U.S. Dist. LEXIS 17400 at *5 (E.D. Pa. Nov. 14, 1991) (ordering discovery of privileged materials since "[i]t is unfair and contrary to the purpose underlying the discovery rules to allow defendant to assert a privilege in refusing to comply with discovery requests for information and then to rely on this same information at trial, preventing any effective preparation by opposing counsel."); *W.L. Gore & Assoc. Inc. v. Tetratec Corp.*, 1989 U.S. Dist. LEXIS at *9 (E.D. Pa. Nov. 28, 1989) ("Tetratec must elect now...or be precluded from introducing the privileged evidence at trial. Tetratec is free to choose to stand behind its attorney-client privilege and the work product immunity, and refuse to produce the opinions of its counsel. If privileged material is to be used at trial, however, the plaintiffs must be allowed to examine the privileged material in order to conduct pre-trial discovery.") (internal citations omitted); Paul Rice, 2 *Attorney-Client Privilege in the U.S.* §9:35 ("Delaying the resolution of the waiver question until the communications are actually used, however, often creates unfairness for the adversary because it does not give the opposition time to adequately prepare to evaluate and meet the evidence. To avoid this unfairness, courts often require the client to make a pretrial election of whether it will use the communication for evidentiary purposes, and thereby waive its privilege protection, or preserve its confidentiality by bypassing its evidentiary use.").

William F. Cavanaugh, Jr., Esq.
Steven C. Sunshine, Esq.
Matthew P. Hendrickson, Esq.
Timothy C. Bickham, Esq.
September 14, 2006
Page 4

> B. **Defendants Must Produce Substantive Responses to the Second Set of Requests**

Whether or not Defendants elect to waive any privilege, not all of the information responsive to the Second Set of Requests is privileged. Specifically, these Requests seek information regarding Defendants' decisions to investigate, file and prosecute the Capsule and Tablet Lawsuits - - decisions which clearly contain both legal and business components. Even if Defendants elect to assert the privilege over information related to the legal component, Plaintiffs are entitled to full discovery regarding the business component of these decisions. *See Constar Int'l, Inc. v. Continental Pet Tech., Inc.*, 2003 U.S. Dist. LEXIS 21132 at *8 (D. Del. Nov. 19, 2003) ("...while parts of the other requests target legal discourse between companies and attorneys, some communications responsive to these requests may not be privileged because they may be business discourse"); *Kramer v. The Raymond Corp.*, 1992 U.S. Dist. LEXIS 74118 *3 - 4 (E.D. Pa. May 29, 1992).

For example, Interrogatory 16, asks Defendants to describe the nature and scope of the pre-filing investigation conducted before Defendants made the decision to file the Capsule and Tablet Lawsuits. This investigation clearly includes facts regarding the business/commercial factors involved in making the decision to file and prosecute the Lawsuits. Similarly, Interrogatory 17 asks Defendants to state all facts the Decision Makers relied upon in making the decision to file and prosecute the Capsule and Tablet Lawsuits. These facts include facts regarding the effect on Defendants' business/finances in addition to facts relevant to legal issues.[3]

---

[3] Interrogatory 15 asks Defendants to identify the names of the Decision Makers involved in the Capsule and Tablet Lawsuits and the roles those Decision Makers played in making the decision to file and prosecute the suits. The names of employees and the description of the roles that they played in making the decision to file the Lawsuits are not privileged.

Although Fournier - - unlike Abbott - - did identify one Decision Maker, Bertrand Traverse, in response to Interrogatory 15, Fournier limited the term "Decision Maker" to "mean the Fournier representative(s), who, acting solely in a business capacity, had responsibility over the decision to file the Capsule and Tablet Lawsuits." Fournier Interrogatory Response at p. 5. Because Plaintiffs believe that the names of any employees, not just those who acted solely in a business capacity, are not privileged, Plaintiffs request that Fournier provide the names and roles of all employee Decision Makers, not just those who acted solely in a business capacity, which are responsive to this request.

William F. Cavanaugh, Jr., Esq.
Steven C. Sunshine, Esq.
Matthew P. Hendrickson, Esq.
Timothy C. Bickham, Esq.
September 14, 2006
Page 5

Finally, in its response to Document Request No. 3, Fournier also states that it has "already produced the referenced patents, their respective file histories and other non-privileged documents relating to the prosecution of the referenced patents." Fournier's Document Responses at p. 7. However, Request No. 3 is not limited to such documents. Defendants must produce all information responsive to this request.

### C. Conclusion

Since it is only six weeks before the fact discovery cutoff, and numerous depositions of witnesses with knowledge relevant to the topic of Plaintiffs' Second Set of Requests must take place before that deadline, Defendants must, by September 20, 2006: (1) elect definitively whether they intend to waive the privilege in defense of this action; and (2) produce all information responsive to the Second Set of Requests (as well as responsive privileged information, if Defendants elect to waive privilege).

If Defendants do not comply, Plaintiffs will have no choice but to move the Court to compel a defense election and the full production of responsive information (which, if Defendants elect to waive the privilege, must include privileged information). In the alternative, Plaintiffs may move to preclude Defendants from asserting any defense that implicates privileged communications and/or from using in its defense any responsive information improperly withheld.

Yours Truly,

Barry S. Taus

cc (via e-mail only):   Christopher T. Holding, Esq.
Paula Blizzard, Esq.
Joseph T. Lukens, Esq.
Lauren Ravkind, Esq.
David Nalven, Esq.
Stuart Des Roches, Esq.
Russ Chorush, Esq.
Jeffrey S. Goddess, Esq.

# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE: CARDIZEM CD ANTITRUST
LITIGATION,

Master File No. 99-md-1278
MDL No. 1278

THIS DOCUMENT RELATES TO:
ALL ACTIONS,

Honorable Nancy G. Edmunds

_____/

ORDER NO. 31
MODIFYING MAGISTRATE JUDGE'S SEPTEMBER 26, 2001 ORDER REGARDING
PLAINTIFFS' MOTION TO COMPEL OR PRECLUDE EVIDENCE AT TRIAL

This matter comes before the Court on Plaintiffs' objection to and appeal of the Magistrate Judge's September 26, 2001 opinion and order denying Plaintiffs' motion to compel or preclude evidence at trial. The Magistrate Judge denied Plaintiffs' motion, finding that, on the current record, Andrx had not disclosed any substantive information obtained from its patent counsel in connection with the HMRI/Andrx patent infringement action, and therefore had not waived the attorney-client privilege as to those communications. The Magistrate Judge further observed, however, that: "[s]hould additional discovery reveal that reliance on the advice of counsel concerning the infringement is a primary defense in this case, then perhaps a finding of waiver might be appropriate." Mem. Opin. & Order at 5.

Plaintiffs do not object to the Magistrate Judge's conclusion that Defendant Andrx has not yet waived the attorney-client privilege as to these patent counsel communications. Rather, they focus on the latter part of the Magistrate Judge's ruling and argue that,

1-14-02

contrary to law, it unfairly prejudices Plaintiffs by creating a situation where Defendant Andrx has the opportunity to shield itself by asserting the attorney-client privilege until the discovery cutoff date has passed and then subsequently waiving the privilege by asserting arguments, either in a dispositive motion or at trial, that put these communications "at issue"; i.e., by arguing that the "biggest reason" it did not enter the market in mid-1998 was its fear of patent infringement liability to HMRI.[1]

Plaintiffs observe that Defendant Andrx has repeatedly argued, as a defense to causation, that its fear of being subject to a treble-damage judgment for willful infringement (rather than the illegal HMRI/Andrx Agreement) caused it to stay off the market in mid-1998. Andrx refines that causation defense in its Opposition Brief here. It argues that, although it wanted to get its generic product to market fast, it needed to do so prudently. Thus, Andrx argues, it's "business decision", based on its "precarious financial condition" and the fear of a treble-damage judgment for patent infringement, caused it to delay entry into the market. "Andrx knew that it would risk financial disaster by launching a potentially illegal product during the Patent Litigation." Andrx Opposition Brief at 6.

In light of Andrx's causation defense, Plaintiffs' assert, the critical factor is not whether Andrx actually relied on its patent lawyers' advice in deciding whether to enter the market

---

[1] Plaintiffs support this contention with 9/25/01 deposition testimony from Andrx's Chief Financial Officer that "[t]he biggest reason" Andrx would not have entered the market in mid-1998 was its alleged fear of patent liability to HMRI. See Plaintiffs' Obj., Ex. 1, 9/25/01 A. Malahias Dep. at 20-21.

Plaintiffs provide further support with testimony of Scott Lodin, Andrx's general counsel, before the FTC that Andrx's assessment of its patent risk was a critical factor in its decision whether to go to market while the patent infringement action was pending. See Ps' Reply at 5, quoting testimony of Scott Lodin in In re Andrx Corp. and Hoechst Marion Roussel (FTC Docket No. 9810368) at 209-210.

2

in mid-1998. Rather, the critical facts that Defendant Andrx puts at issue here concern the basis for Andrx's alleged fear of a treble-damage judgment for patent infringement. Andrx is willing to allow discovery of information regarding its financial condition in mid-1998 but not information regarding the additional critical factor supporting its "business decision" that it was too risky to enter the market in mid-1998; i.e., its fear of patent liability.[2] To allow Andrx to present this "causation" argument either in a dispositive motion or at trial after the close of discovery, Plaintiffs argue, would be unfair and contrary to law. This Court agrees. See *United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999) (observing that the attorney-client privilege may be implicitly waived where "a party raises a claim which in fairness requires disclosure of the protected communication"); *Belmont Textile Mach. Co. v. Superba, S.A.*, 48 F. Supp. 2d 521, 523 (W.D. N.C. 1999) (giving defendant ten days to elect whether to assert non-willfulness defense in patent case and waive attorney-client privilege or withdraw the defense and retain the privilege).

Plaintiffs are not asking this Court to overturn Magistrate Goldman's ruling that Andrx has not yet waived the attorney-client privilege nor are they insisting that Andrx waive its privilege. Rather, they argue that the facts and the law support their request that, in fairness, if Andrx does not waive its attorney-client privilege before discovery is completed, Andrx should be precluded from presenting a causation defense, either at the summary judgment or trial stage, that has as its basis an alleged fear of patent liability. In other

---

[2]Plaintiffs claim that it is undisputed that Andrx has in its possession two opinion letters from patent counsel concerning the HMRI/Andrx Patent Litigation. Plaintiffs apparently believe that discovery of Andrx's patent counsel communications in connection with the HMRI/Andrx patent litigation will provide them with evidence refuting Andrx's claim that fear of patent liability was the reason it delayed entry into the market.

words, after the close of discovery, Andrx should not be permitted to use its fear of a treble damage judgment for patent liability as a sword to attack Plaintiffs' causation arguments while simultaneously using that attorney-client privilege as a shield to prevent Plaintiffs' from discovering facts concerning the basis of Andrx's alleged fear. A recent decision by the Ninth Circuit Court of Appeals supports this result. See *United States v. Amlani*, 169 F.3d 1189 (9th Cir. 1999).

In *Amlani*, the defendant was convicted of conspiracy to commit and the commission of wire fraud and was subsequently sentenced. On appeal, he argued "that the government deprived him of his Sixth Amendment right to counsel when the prosecutor intentionally undermined [defendant]'s confidence in his chosen counsel...by disparaging [that counsel] in front of [defendant]." *Id.* at 1191. The defendant further alleged that the disparaging comments caused him to fire his chosen counsel and to hire new, inexperienced counsel, and this resulted in his "unusually high" sentence. See *id.* The appellate court remanded the case to the district court with instructions to hold a hearing to determine whether the government did in fact disparage defendant's counsel in his presence and, if so, whether this disparagement caused the defendant "to retain difference counsel". *Id.*

On remand, the district court agreed with the government's argument that the defendant "had implicitly waived the privilege by asserting the disparagement claim" thus allowing discovery of privileged documents and conversations. *Id.* The defendant appealed, and the Ninth Circuit affirmed finding that "[the defendant] cannot assert that certain factors <u>caused</u> him to discharge his attorney and then invoke the attorney-client privilege to prevent the government from examining the situation further." *Id.* at 1195

4

(emphasis added). The *Amlani* Court also rejected the defendant's claim that alternative sources of evidence existed that allowed the government to dispute his disparagement claim. It observed that, without access to the privileged communications, the government would have to rely "almost exclusively" on the defendant's characterization of events and further observed that fairness dictated otherwise. See *id.* at 1195-96. "In fairness", the Court observed, the government must have access to the defendant's communications with his counsel "to determine whether in fact the disparaging comments <u>caused</u> the substitution of counsel." *Id.* at 1196 (emphasis added). Accordingly, the Court held that the defendant "'cannot invoke the attorney-client privilege to deny [the government] . . . access to the very information that [the government] . . . must refute in order to demonstrate that" [the defendant] did not discharge [his original counsel] because of the prosecutor's allegedly disparaging statements." *Id.* at 1196 (quoting *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1163 (9th Cir. 1992)). *Accord, In re Kidder Peabody Securities Litig.*, 168 F.R.D. 459, 470 (S.D.N.Y. 1996) (observing that "[t]he waiver may be found even if the privilege holder does not attempt to make use of a privileged communication; he may waive the privilege if he makes factual assertions the truth of which can only be assessed by examination of the privileged communication.")

As Andrx acknowledges, the attorney-client privilege is waived whenever the privilege holder "puts the privileged information at issue" though an "affirmative act," and "allowing the privilege would deny the opposing party access to information vital to its defense." Andrx Opposition Br. at 7 (quoting *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995)). An argument by Andrx, at the summary judgment stage or at trial, that fear of patent liability (along with Andrx's alleged precarious financial condition),

5

rather than the HMRI/Andrx Agreement, caused Andrx to stay off the market in mid-1998, would satisfy these requirements. Accordingly, it should not be allowed to use the attorney-client privilege as a shield for its patent counsel's infringement analysis while discovery is ongoing, only to turn around at summary judgment or trial and advance a causation defense that its fear of patent infringement liability (and treble damages) caused it to delay entry into the market. If Andrx chooses to assert the causation defense it raises here, it cannot, in fairness, deny Plaintiffs access to the very information they must refute in order to show that Andrx's fear of patent liability was not the cause of its delayed market entry. See Amlani, 169 F.3d at 1196. This Court concludes that, should Andrx choose to rely on that causation defense, it will place at issue the advice it received from its patent counsel as to the likely outcome of the HMRI/Andrx patent litigation and will thus waive its privilege.

Accordingly, this Court modifies the Magistrate Judge's September 26, 2001 Order, and orders Defendant Andrx to inform the Court within 45 days from the date of this Order whether it will waive or maintain a claim of privilege with respect to the advice it received from its patent lawyers.[3] Absent a waiver of its privilege, this Court will grant Plaintiffs' motion and preclude Defendant Andrx from raising a causation defense, either at the summary judgment or the trial stage, that is based upon the risk of patent infringement liability. If Andrx elects to waive its privilege, it shall file with the Court a written waiver of privilege claims. See Belmont Textile, 48 F. Supp. 2d at 523-24 (where the court allowed the defendant ten business days from the entry of its order to elect whether it would waive

---

[3]The discovery cut-off date is April 1, 2002.

its privilege and concluding that if it did not elect waiver it would not be allowed to rely on attorney advice as a defense to a claim of willful infringement).

This Court is not precluding Andrx from asserting its attorney-client privilege as to its patent counsel's communications. It is free to deny causation without relying on the argument that its fear of patent liability formed the basis for its business decision that it was too risky to enter the market in mid-1998. This Court's ruling also affirms the Magistrate Judge's decision that Andrx, on the record presented, had not yet waived its attorney-client privilege.

SO ORDERED.

Nancy G. Edmunds
U.S. District Judge

Dated: 1/9/02

7

## CERTIFICATE OF SERVICE

Pursuant to Rule 77(d), Federal Rules of Civil Procedure, copies have been mailed to:

Elwood S. Simon, Esq.
ELWOOD S. SIMON & ASSOCIATES
355 South Old Woodward Avenue
Suite 250
Birmingham, MI 48009

Stephen Lowey, Esq.
LOWEY, DANNENBERG,
 BEMPORAD & SELINGER PC
The Gateway, 11th Floor
One North Lexington Avenue
White Plains, New York 10601-1714

Joseph J. Tabacco, Jr., Esq.
BERMAN, DEVALERIO, PEASE & TABACCO
425 California Street, Suite 2025
San Francisco, CA 94104

Richard Drubel, Esq.
BOIES & SCHILLER
26 South Main Street
Hanover, NH 03755

Bruce E. Gerstein, Esq.
GARWIN BRONZAFT GERSTEIN & FISHER, LLP
1501 Broadway
New York, NY 10036

Scott E. Perwin, Esq.
KENNY NACHWALTER SEYMOUR ARNOLD
 CRITCHLOW & SPECTOR, PA
1100 Miami Center
201 South Biscayne Boulevard
Miami, FL 33131-4327

Joseph Rebein, Esq.
SHOOK, HARDY & BACON LLP
One Kansas City Place
1200 Main Street
Kansas City, MO 64105

Craig L. John, Esq.
DYKEMA GOSSETT PLLC
1577 North Woodward Avenue
Suite 300
Bloomfield Hills, MI 48304-2820

Louis M. Solomon, Esq.
SOLOMON ZAUDERER ELLENHORN
 FRISCHER & SHARP
45 Rockefeller Plaza
New York, NY 10111

Norman C. Ankers, Esq.
HONIGMAN MILLER SCHWARTZ & COHEN
32270 Telegraph Road, Suite 225
Bingham Farms, MI 48025-2457

Steve D. Shadowen
SCHNADER HARRISON SEGAL & LEWIS, L.L.P.
Suite 700, 30 North Third Street
Harrisburg, PA 17101-1713

Paul F. Novak
Assistant Attorney General
CONSUMER PROTECTION DIVISION
670 G Mennen Williams Building
Lansing, MI 48913

Jay Himes
Bureau Chief, Antitrust Bureau
OFFICE OF THE NEW YORK ATTORNEY GENERAL
120 Broadway
New York, NY 10271-0332

David L. Douglas
PORTER WRIGHT MORRIS & ARTHUR
1919 Pennsylvania Avenue N.W.
Washington, DC 20006-3434

JUDICIAL PANEL MULTIDISTRICT LITIGATION
Thurgood Marshall Federal Judiciary Building
Room G-255 North
One Columbus Circle, N.E.
Washington, D.C. 20002-8004

_____
Deputy Court Clerk

1/9/02
Date