# EXHIBIT B

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| IN RE: TRICOR DIRECT PURCHASER ANTITRUST LITIGATION | ) ) ) | Civil Action No. 05-340 (KAJ) |
|  | ) | Hon. Kent Jordan, U.S.D.J. |
| THIS DOCUMENT RELATES TO: | ) ) |  |
| ALL ACTIONS | ) ) |  |

### COORDINATED DIRECT PURCHASER PLAINTIFFS' FIRST SET OF DOCUMENT REQUESTS TO DEFENDANTS ABBOTT LABORATORIES, FOURNIER INDUSTRIE ET SANTÉ AND LABORATORIES FOURNIER S.A.

In accordance with Federal Rule of Civil Procedure 34 (hereinafter "Rule 34"), defendants are hereby requested to produce the documents requested herein for inspection, examination, and reproduction by plaintiff, through his attorneys, within the time allotted under Rule 34. The documents requested herein are requested to be produced at Garwin, Bronzaft, Gerstein & Fisher, 1501 Broadway, Suite 1416, New York, NY 10036, or at such other time and place as counsel for the parties may agree.

Pursuant to Rule 34(b), within 30 days of the service of this request, the defendants shall serve a written response to this document request stating that inspection will be permitted as requested with respect to each item or category listed herein, unless defendants object to the specific item or category, in which case the reasons for objection shall be stated. Defendants shall produce documents as they are maintained in the ordinary course of business.

**EXHIBIT**

**B**

## I. DEFINITIONS

1.      The term "person" means a natural person, corporation, association, company, firm, partnership, joint venture, trust, estate, agency, department or bureau, governmental or judicial person or legal entity.

2.      The term "Defendants," "you," "your," and "yours" shall mean, unless otherwise specified in a particular request, Abbott Laboratories and Fournier Industrie et Santé, and Laboratories Fournier S.A., their predecessor and successor entities, their officers, directors, shareholders, parent and subsidiary companies (whether direct or indirect), employees, agents, attorneys, representatives and other persons acting or authorized to act on behalf of Abbott Laboratories, Fournier Industrie et Santé, and/or Laboratories Fournier S.A.

3.      The term "Abbott" means Abbot Laboratories, or any of its subsidiaries, divisions, subdivisions, affiliates, predecessor and successor entities, partners, officers, directors, employees, agents, legal counsel, or any other person acting on its behalf.

4.      The term "Fournier" means Fournier Industrie et Santé, and/or Laboratories Fournier S.A., or any of their subsidiaries, divisions, subdivisions, affiliates, predecessor and successor entities, partners, officers, directors, employees, agents, legal counsel, or any other person acting on their behalf.

5.      The term "Tricor" means any and all drugs or pharmaceutical products which are, or have in the past been, marketed, sold or labeled under the trademark or name "TriCor" (or any variant thereof), regardless of the form, formulation, strength, dosage, dissolution rate or package size of such drugs, including but not limited to the pharmaceutical products described in the New Drug Applications Nos. NDA 19-304, NDA 21-203, and NDA 21-656.

2

6.      The phrase "fenofibrate product" or the term "fenofibrate" means any and all products, drugs or pharmaceuticals which contain the chemical or compound fenofibrate as an active ingredient or product, including, but not limited to, Tricor.

7.      The term "FDA" refers to the United States Food and Drug Administration, including any of its departments, committees, subdivisions or individuals or entities acting on its behalf or under its authority.

8.      The terms "generic," "generically equivalent product," or "generic drug equivalent" means a pharmaceutical or drug product which has been submitted to, or deemed by, the FDA as meeting necessary requirements to be an A-B rated alternative to a branded product, as such is defined by the FDA.

9.      The term "Orange Book" refers to the FDA publication "Approved Drug Products with Therapeutic Equivalence Evaluations."

10.     The terms "'726 Patent" and "Curtet Patent" refers to U.S. Patent 4,895,726.

11.     The term "'670 patent" refers to U.S. Patent No. 6,074,670.

12.     The term "'405 Patent" refers to U.S. Patent No. 6,277,405.

13.     The term "'552 Patent" refers to U.S. Patent No. 6,589,522.

14.     The term "'881 Patent" refers to U.S. Patent No. 6,652,881.

15.     The term "Stamm Patents" refers to, both individually and collectively, the '726 Patent, '670 Patent, '405 Patent and '881 Patent.

16.     The term "Illinois Patent Litigation" refers to those actions instituted by Defendants in the United States District Court for the Northern District of Illinois alleging infringement of the '726 Patent, including but not limited to <u>Abbott Laboratories, et al. v. Novopharm Ltd.</u>, Civ. No.

3

1:00-02141-JWD (N.D. Ill. 2000); <u>Abbott Laboratories, et al. v. Novopharm Ltd.</u>, Civ. No.
1:00-05094-JWD (N.D. Ill. 2000); and <u>Abbott Laboratories, et al. v. Novopharm Ltd.</u>, Civ. No.
1:01-01914-JWD (N.D. Ill. 2001).

     17.    The term "Delaware Patent Litigation" refers to those actions instituted by Defendants
in the United States District Court for the District of Delaware alleging infringement of the '726
Patent and Stamm Patents, including, but not limited to: <u>Abbott Laboratories, et al. v. Impax
Laboratories</u> (1:03-cv-00120-KAJ), and <u>Abbott Laboratories, et al. v. Teva Pharmaceuticals</u>
(1:02-cv-01512-KAJ), and all cases coordinated and/or consolidated therewith.

     18.    The term "Antitrust Litigation" refers to those actions brought against Defendants,
alleging any type of anti-competitive conduct by Defendants in connection with or regarding the '726
Patent and/or Stamm Patents.

     19.    The term "document" means any written, printed, recorded, digital, electronic and/or
video matter and/or tangible thing upon which any words, phrases, numbers, data and/or images are
affixed or conveyed, including but not limited to any item within the scope of Rule 34 of the Federal
Rules of Civil Procedure. The term "document" includes, but is not limited to, any writing, report,
memorandum, file, computer file, computer-stored data or databases in computer-readable format,
computer drive, home computer contents, personal computer contents, floppy disk, zip disk, printout,
communications, computer transmission, e-mail, correspondence, electronic transmission, word
processing file, spreadsheet, spreadsheet program file, calculation, database, database entries,
database queries, database query results, mainframe computer file, computerized spreadsheet,
analysis, outline, pro forma, forecast, white paper, projection, market study, marketing plan, tactical
plan, long-range plan, strategic forecast, plan of action, pricing study, budget, presentation, slide,

4

slide deck, Powerpoint presentation, proposal, record, draft, memorialization, computerized memorialization, personal digital assistant file, message, book, survey, research, background information, talking points, list, contract, agreement, purchase order, invoice, receipt, shipping paper, catalog, brochure, manual, publication, policy statement, promotional or advertising literature or materials, credit memos or memoranda, claim form, production record, inventory record, account, letter, side letter, letter of commitment, journal, profit and loss statement, income and expense sheet, statement of financial condition, audit report, organizational chart, flow chart, addendum, check, docket sheet, brief, court filing, pleading, transcript, affidavit, deposition, discovery request, discovery response, log, calendar, list, journal, pamphlet, abstract, computation, tabulation, bill, statement, invoice, schedule, exhibit, attachment, photostat, electronic transmission, image, network communications and transmissions, satellite network communications,  study, telegram, telex, agenda, minutes, bulletin, instruction, literature, memorandum of conversations, notes, notebook, diary, data sheet, work sheet, recording, tape, videotape, audiotape, internal or interoffice communication, drawing, table, diagram, graph, index, chart, telephone record, photograph, phonographic record, written memorialization of oral communication, and/or other data compilation of any other written, recorded, transcribed, punched, taped, filed and/or other graphic matter including any draft of the foregoing items upon which any notation, work, figure or form is recorded or has been made which does not appear on the original, or as to whose existence, either past or present, the responding party has any knowledge or information.

20.    The phrase "relating to" and "relates to" includes reflecting, constituting, evidencing, referring to, concerning, involving, dealing with, or bearing on (whether legally, factually, or otherwise), in whole or in part.

5

21.     The term "communication" and "communications" include all forms of transmission of information, whether oral or in writing or in some other medium.

22.     The term "correspondence" means any letter, memorandum or other writing.

23.     The term "minutes" means any document created in connection with a meeting, including minutes of a meeting, exhibits and attachments to minutes of a meeting, agendas for meetings (including exhibits, attachments and/or materials distributed or circulated at, or in connection with, any meeting), notices of meetings, waivers of meetings and certification or signatures appended to or referred to in the notices, agendas or minutes.

24.     The terms "and/or", "or" and "and" are used inclusively, not exclusively.

25.     The term "brand-name prescription drug" means any drug marketed by Defendants for which they hold trademark protection as to its branded name and which formulation of such drug or method of use is protected by any patent held by Defendants at any time.

6

## II.  INSTRUCTIONS

1.    In producing documents and other materials, you are requested to furnish all documents or things in your possession, custody or control, regardless of whether such documents or materials are possessed directly by you or your directors, officers, agents, employees, representatives, subsidiaries, managing agents, affiliates, investigators or by your attorneys or their agents, employees, representatives or investigators.

2.    If any part of a document is responsive to any request, the whole document is to be produced.

3.    Any alteration of a responsive document, including any marginal notes, handwritten notes, underlining, date stamps, received stamps, endorsed or filed stamps, drafts, revisions, modifications and other versions of a final document is a separate and distinct document and it must be produced.

4.    If you are unable to produce a document in response to any request, so state and indicate whether the document ever existed, or whether the document once existed but cannot be located. If any document once was, but is no longer in your possession, custody or control, state the whereabouts of any such document when last in your possession, custody or control, state the date and manner of its disposition and identify its last known custodian. To the extent any documents are lost or destroyed, produce any documents which support your assertion that the document was lost or destroyed, and provide the date thereof.

5.    If you file a timely objection to any portion of a request, definition, or an instruction, provide a response to the remaining portion.

7

6.      The terms defined above and the individual requests for production and inspection should be construed broadly to the fullest extent of their meaning in a good faith effort to comply with the Federal Rules of Civil Procedure.

7.      As used in these requests, the singular shall also be treated as plural and vice-versa.

8.      These document requests are continuing and require supplemental responses as specified in Federal Rule of Civil Procedure 26(e) if you (or any person acting on your behalf) obtain additional information called for by the request between the time of the original response and the time set for trial. Each supplemental response shall be served on Plaintiff no later than thirty (30) days after the discovery of the further information, and in no event shall any supplemental response be served later than the day before the first day of trial.

9.      The fact that a document is produced by another party does not relieve you of the obligation to produce your copy of the same document, even if the two documents are identical in all respects.

10.     Documents are to be produced in full. Redacted documents will not constitute compliance with these requests. If any requested document or thing cannot be produced in full, produce it to the extent possible, indicating which document or portion of that document is being withheld and the reason that document is being withheld.

11.     In producing documents, you are requested to produce the original of each document requested together with all non-identical copies and drafts of that document. If the original of any document cannot be located, a copy shall be provided in lieu thereof, and shall be legible and bound or stapled in the same manner as the original. Where electronic and/or computer generated documents are produced, such shall include all metadata associated with the documents.

8

12.    Pursuant to Rule 34(b) of the Federal Rules of Civil Procedure, documents shall be produced as they are kept in the usual course of business or segregated as responsive to a specific request enumerated in this Request for Production of Documents.

13.    All documents shall be produced in the file folder, envelope or other container in which the documents are kept or maintained by you. If, for any reason, the container cannot be produced, produce copies of all labels or other identifying marks.

14.    Documents shall be produced in such fashion as to identify the department, branch or office in whose possession it was located and, where applicable, the natural person in whose possession it was found and the business address of each document's custodian(s).

15.    Documents attached to each other should not be separated.

16.    Documents not otherwise responsive to this discovery request shall be produced if such documents mention, discuss, refer to or explain the documents which are called for by this discovery request, or if such documents are attached to documents called for by this discovery request and constitute routing slips, transmittal memoranda, letters, comments, evaluations or similar materials.

17.    If any documents requested herein have been lost, discarded, destroyed, or are otherwise no longer in your possession, custody or control, or have been transferred voluntarily or involuntarily to another person or persons, or otherwise disposed of, they shall be identified as completely as possible including, but not limited to, information necessary to identify the document and the following information: the date of disposal or transfer; the manner of disposal or transfer; the reason for disposal or transfer; the person authorizing the disposal or transfer; and the person disposing of or transferring the document.

9

18.    If you claim the attorney-client privilege, or any other privilege or work product protection for any document, you shall provide the following information with respect to each such document:

    a.    the type of document;

    b.    general subject matter of the document;

    c.    date of the document;

    d.    such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the author of the document, the addressee of the document, and, where not apparent, the relationship of the author and addressee to each other; and

    e.    any other information required to be furnished by the local rules of the United States District Court For the District of Delaware.

## III.    RELEVANT TIME PERIOD

Unless otherwise specified, the discovery sought relates to the period from January 1, 1998 through the present.

## IV. DOCUMENT REQUESTS

## A.    DOCUMENTS FROM THE PATENT LITIGATIONS

1.    All pleadings, motions, memoranda, briefs, discovery requests, discovery responses, expert reports, discovery produced and/or other papers filed, served, or tendered in the Illinois Patent Litigation and/or the Delaware Patent Litigation, to the extent not already produced.

2.    All transcripts of deposition testimony, witness statements, affidavits and/or witness declarations taken, offered and/or filed in the Illinois Patent Litigation or Delaware Patent Litigation, or any other case regarding the '726 Patent and/or Stamm Patents.

3.     All logs, lists and/or records of documents or portions of documents that were withheld from production in the Illinois Patent Litigation and/or Delaware Patent Litigation for any reason, including but not limited to any privilege claims, relevance objections and/or confidentiality concerns.

4.     All documents, generated at any time, (a) analyzing, assessing and/or addressing the decision by either or both of the Defendants to commence and/or prosecute the Illinois Patent Litigation; (b) evaluating, analyzing, assessing and/or addressing the merits, strength and/or validity of the claims asserted in the Illinois Patent Litigation; and/or (c) assessing and/or evaluating the probability or likelihood that Defendants would prevail in the Illinois Patent Litigation.

5.     All documents, generated at any time, (a) analyzing, assessing and/or addressing the decision by either or both of the Defendants to commence and/or prosecute the Delaware Patent Litigation; (b) evaluating, analyzing, assessing and/or addressing the merits, strength and/or validity of the claims asserted in the Delaware Patent Litigation; and/or (c) assessing and/or evaluating the probability or likelihood that Defendants would prevail in the Delaware Patent Litigation.

6.     All documents, generated at any time, analyzing and/or addressing the scope, impact and/or effect of any potential or actual outcome of the Illinois Patent Litigation, including but not limited to settlement or judgment following trial.

7.     All documents, generated at any time, analyzing and/or addressing the scope, impact and/or effect of any potential or actual outcome of the Delaware Patent Litigation, including but not limited to settlement or judgment following trial.

**B.     DOCUMENTS REGARDING THE DEFENDANTS' SALES, PRICING AND CONTRACTS REGARDING TRICOR AND/OR ANY FENOFIBRATE PRODUCTS**

8.     All transaction-level sales (and sales adjustment) data (in digital, computer-readable format) relating to your sales of Tricor. Such data shall identify, where applicable, for each sale and/or other transaction (including returns and error corrections):

11

(a)    the date thereof, the identity of the particular product, and any and all codes relating to transaction types;

(b)    the name and address of, and all unique codes or identifiers for, the person, firm, corporation, or other business entity whom  billed or credited for the sale (the "bill-to customer") and, in addition, the full name and address of the parent company, if the database or documents identify a subsidiary, corporate affiliate, division, satellite office, or warehouse;

(c)    the name and address of, and all unique codes or identifiers for, the person, firm, corporation, or other business entity to whom you shipped the products (the "ship-to customer") and, in addition, the full name and address of the parent company, if the database or documents identify a subsidiary, corporate affiliate, division, satellite office, or warehouse;

(d)    the SKU, NDC, UPC, package size in extended units per package, and any and all other unique codes or other identifiers;

(e)    the number of packages sold, returned or otherwise affected by the transaction;

(f)    any price or unit adjustments (including but not limited to discounts, rebates, chargebacks, billbacks, price adjustments, shelf-stock price adjustments, returns, error corrections, free goods, and/or nominally-priced goods), whether monthly, quarterly or at any other periodicity, involving or relating to sales or transactions of Tricor, and including all database fields specified above in this request; and

(g)    the net amount in dollars, dollars per package, and dollars per unit, for each sale or transaction and/or the source of the transaction price.

9.    With regard to the data requested in the immediately-preceding Request, please provide: (a) a separate product list, including NDC, SKU, UPC, product description, and package size; (b) a separate table that lists, for each "bill-to customer" and "ship-to customer," the customer number, parent customer number, customer group number, customer identity, contact information, address, and class of trade (*e.g.*, SIC code); (c) a separate table listing and defining each transaction code, abbreviation, or other field or entry code, and indicating whether quantity values for each transaction type should be included in calculating net quantity sold, or should be ignored because they do not affect net quantity sold; and (d) all datasets and calculations used (i) to determine accrued rebates and/or chargebacks and/or (ii) to periodically reconcile accrued rebates and/or chargebacks with actual rebates and/or chargebacks.

12

10.    All data, in digital, computer-readable format, relating to chargebacks, rebates, discounts, and/or other consideration given and/or accrued relating to sales of Tricor. Such data shall identify:

(a)    each transaction, including the date thereof;

(b)    the name and address of, and all unique codes or identifiers for, the person, firm, corporation, or other business entity whom you paid, and/or on whose behalf you accrued, the chargeback, rebate, discount and/or other consideration;

(c)    the name and address of, and all unique codes or identifiers for, the person(s), firm(s), corporation(s), or other business entity(ies) that made the purchase(s) in respect of which you paid and/or accrued the chargeback, rebate, discount and/or other consideration;

(d)    the sales, or group of sales, upon which the rebate, discount and/or other consideration is based, including:

(1)    the number of units of the particular product sold, by package size, SKU, UPC, NDC, and any and all other unique codes or other identifiers for each sale or other transaction;

(2)    the bill-to customer;

(3)    the ship-to customer;

(4)    the date(s) of the sales, or group of sales;

(5)    the invoice amount in dollars for the sale(s) or group of sales;

(e)    the amount of the chargeback, rebate, discount, and/or other consideration paid and/or accrued;

(f)    the contract, agreement, or other basis upon which the chargeback, rebate, discount, and/or other consideration is calculated.

11.    All documents which reflect the prices charged to, and other terms and/or conditions of sale of Tricor including, but not limited, to:

(a)    the wholesale acquisition cost, direct price, wholesale price, catalog price, list price, and every other published price for Tricor;

13

     (b)    payment terms;

     (c)    discounts, rebates, chargebacks and/or other price and/or quantity adjustments offered to any purchaser, class of customer, and/or class of trade, including but not limited to wholesale purchasers, chain pharmacy purchasers, hospital purchasers, managed care purchasers, mail order purchasers, and each and every type and/or class of purchaser or trade;

     (d)    pricing manuals, matrices, guidelines, policies, and/or formulas, for each customer, class of customer, and/or class of trade or subgroup thereof.

12.    Documents sufficient to identify each person, firm, corporation and/or other business entity that purchased Tricor directly from you.

13.    All documents constituting or relating to written contracts for the sale of Tricor by you. This Request includes, but is not limited to (i) contracts which generate chargebacks and (ii) contracts between you and a purchaser that provide that the purchaser will take delivery of Tricor from a person, firm, corporation and/or business entity other than you (such as a wholesaler).

14.    All IMS data, in electronic format, relating to Tricor and/or any other product(s) prescribed for one or more of the same indications and/or health conditions as Tricor.

15.    All documents relating to communications with First DataBank, Medispan or any other similar entity with respect to Tricor or any fenofibrate products.

16.    All documents relating to any process, method, manner, policy, practice, strategy or procedure that you proposed, considered or used for setting, raising, lowering, changing or maintaining the prices charged for Tricor or any fenofibrate products sold by Defendants.

17.    All documents, excluding transactional data, relating to Defendants' return and/or exchange policies, and any changes in such policies made during the Relevant Period.

C.    **DOCUMENTS REGARDING THE DEFENDANTS' REVENUES AND PROFITS REGARDING TRICOR AND/OR ANY FENOFIBRATE PRODUCT**

18.    All documents referring or relating to actual, anticipated, and/or forecasted sales, revenues, profits, royalties and/or payments to you related to Tricor.

19.    Distinguishing between each such version, all documents and electronic data relating to any and all costs of developing, formulating, producing, manufacturing, scaling up, marketing, and/or selling of the versions of Tricor corresponding to NDA 19-304, NDA 21-203, and/or NDA 21-656, including but not limited to annual and monthly per-product and per-unit:

    (a)    gross revenue;

    (b)    net revenue;

    (c)    cost of goods sold;

    (d)    manufacturing cost;

    (e)    sales and/or distribution cost;

    (f)    marketing cost;

    (g)    any and all other costs, including but not limited to allocation of depreciable equipment, capital improvements, research and development, technology related expenses, and licensing fees and/or royalties, individuated by category;

    (h)    short-run average variable costs;

    (i)    long-run average variable costs;

    (j)    fixed costs;

    (k)    materials cost;

    (l)    labor cost; and

    (m)    marginal cost.

20.    Distinguishing between each such version, all documents and electronic data relating to sales, revenues, and profits for the versions of Tricor corresponding to NDA 19-304, NDA 21-203, and/or NDA 21-656, including but not limited to annual and monthly per-product and per-unit:

    (a)    gross profit;

    (b)    net profit;

    (c)    unit volume sold; and

    (d)    unit volume sold, net of returns.

21.    All documents (including but not limited to analyses, projections, and/or forecasts) relating to any and all actual and/or projected effects on sales, revenues, costs, and/or profits of:

    (a)    developing, formulating, scaling up, manufacturing, producing, marketing, and/or selling the versions of Tricor corresponding to NDA 21-203, and/or NDA 21-656;

    (b)    not developing, formulating, scaling up, manufacturing, producing, marketing, and/or selling the versions of Tricor corresponding to NDA 21-203, and/or NDA 21-656;

    (c)    ceasing and/or reducing production, formulation, scaling up, manufacturing, marketing, selling, and/or availability of the version of Tricor corresponding to NDA 19-304; and/or

    (d)    ceasing and/or reducing production, formulation, scaling up, manufacturing, marketing, selling, and/or availability of the version of Tricor corresponding to NDA 21-203.

22.    All documents (including but not limited to analyses, projections, and/or forecasts) relating to any and all actual and/or projected effects on efficiencies, economies of scale and/or scope, and/or production capacity, relating to the development, scaling up, production, manufacturing, marketing, and/or selling (and/or the cessation and/or reduction of development, scaling up, production, manufacturing, marketing, selling and/or availability) of the versions of Tricor corresponding to NDA 19-304, NDA 21-203, and/or NDA 21-656.

23.    All documents (including but not limited to analyses, projections, and/or forecasts) relating to any and all actual and/or projected effects on revenues, costs, and/or profits, relating to

16

converting sales, prescriptions, and/or market demand from one version of Tricor corresponding to NDA 19-304, NDA 21-203, and/or NDA 21-656, to another such version.

    24.    All documents relating to any effects on costs, revenues, profits and/or efficiencies created (and/or foregone) by:

            (a)    developing, producing, manufacturing, marketing, and/or selling the version of Tricor corresponding to NDA 21-203, when the version corresponding to NDA 19-304 was already developed, produced, manufactured, marketed, and sold;

            (b)    developing, producing, manufacturing, marketing and/or selling the version of Tricor corresponding to NDA 21-656, when the versions corresponding to NDA 19-304 and NDA 21-203 were already developed, produced, manufactured, marketed, and sold;

            (c)    converting production, sales, prescriptions, and/or market demand from the version of Tricor corresponding to NDA 19-304 to the version(s) corresponding to NDA 21-203 and/or NDA 21-656; and/or

            (d)    converting production, sales, prescriptions, and/or market demand from the version of Tricor corresponding to NDA 21-203 to the version corresponding to NDA 21-256.

**D.    DOCUMENTS   REGARDING THE DEFENDANTS' DEVELOPMENT, MARKETING AND PROMOTION OF TRICOR AND/OR ANY FENOFIBRATE PRODUCTS**

    25.    All documents related to marketing and/or promoting Tricor and any fenofibrate products, including but not limited to: (a) sales training manuals; (b) marketing meeting agendas, reports and minutes; (c) advertising directed to the public; (d) advertising published in trade journals directed to physicians, pharmacists and other heathcare professionals; (e) product brochures; (f) press releases; (g) communications with the FDA; and (h) any other selling and promotional materials.

    26.    All documents related to communications with physicians, pharmacists and other healthcare professionals related to Tricor and any fenofibrate products, including but not limited to: (a) individual inquiries and responses; (b) presentations to institutes, symposium, conferences and seminars; (c) publications in clinical journals; and (d) surveys and any other types of marketing studies.

27.    All documents relating to any reason(s) why you decided to develop, seek FDA approval of, produce, market, and/or sell the versions of Tricor corresponding to NDA 21-203 and/or NDA 21-656.

28.    All documents relating to any reason(s) why you decided to cease commercial production, marketing, and/or sale of the versions of Tricor corresponding to NDA 19-304 and/or NDA 21-203.

29.    All documents constituting and/or relating to comparisons between and/or among the versions of Tricor corresponding to NDA 19-304, NDA 21-203, and/or NDA 21-656.

30.    All documents addressing or discussing the use and/or function of the National Drug Data File ("NDDF").

31.    All documents concerning and/or related to any decision by either or both of the Defendants to submit and/or render obsolete and/or withdraw information from the NDDF regarding Tricor and/or any fenofibrate product.

E.    **DOCUMENTS REGARDING THE PRODUCT MARKET FOR TRICOR AND/OR ANY FENOFIBRATE PRODUCTS**

32.    All documents relating to the actual, potential, expected, and/or forecasted effects of the market entry, and/or absence thereof, of one or more versions of generic Tricor on:

(a)    unit sales and/or dollar sales and/or profits from and/or prices of Tricor;

(b)    unit sales and/or dollar sales and/or profits from and/or prices of generic Tricor products; and/or

(c)    unit sales and/or dollar sales and/or profits from and/or prices of any other product(s) used for the same purposes, and/or prescribed for the same indications, as Tricor.

18

33.     All documents relating to the actual, potential, expected, and/or forecasted effects of the market entry, and/or absence thereof, of one or more generic versions of any other product(s) prescribed for one or more of the same indications and/or health conditions as Tricor on:

(a)     unit sales and/or dollar sales and/or profits from and/or prices of Tricor;

(b)     unit sales and/or dollar sales and/or profits from and/or prices of generic Tricor products; and/or

(c)     unit sales and/or dollar sales and/or profits from and/or prices of any other product(s) prescribed for one or more of the same indications and/or health conditions as Tricor.

34.     All documents relating to the functional and/or economic substitutability between Tricor and any other product(s).

35.     All documents relating to the features, benefits, and/or characteristics of Tricor relative to other product(s).

36.     All documents relating to actual, potential, desired, and/or forecasted switching and/or substitution between and/or among Tricor and any other product(s).

37.     All documents relating to the reasons for, causes of, and/or factors contributing to actual, potential, desired, and/or forecasted switching and/or substitution between and/or among Tricor and any other product(s).

38.     All documents relating to your strategies for increasing the sales and/or market share of Tricor relative to any other product(s).

39.     All documents relating to factors that cause increased and/or decreased sales and/or market share of (i) Tricor and/or (ii) any other product(s).

19

40.    All documents relating to the cross-elasticity of demand with respect to price between and/or among Tricor and any other product(s).

41.    All documents relating to price-volume relationships, if any, between Tricor and any other product(s).

42.    All documents relating to the extent to which constraints on price are exerted as between and/or among Tricor and any other product(s).

43.    All documents relating to your pricing and/or adjustments to price, such as rebates and discounts, of Tricor.

44.    All documents relating to factors you considered in setting and/or changing your pricing, and/or adjustments to price such as rebates and discounts, of Tricor.

45.    All documents relating to pricing studies, price elasticity studies, optimal pricing studies, and/or cross-price elasticity studies relating to Tricor and/or any other product(s) prescribed for one or more of the same indications and/or health conditions as Tricor.

46.    All documents relating to any relationship between (a) the costs of producing, distributing, marketing, promoting and selling Tricor, and (b) the price or prices for which Tricor is sold.

47.    All documents relating to the actual and/or projected relative market shares between/among Tricor and any other product(s) prescribed for one or more of the same indications and/or health conditions as Tricor.

20

48.    All documents reflecting comparisons or relationships between the actual and/or projected size, composition, dollar sales, and/or unit sales of Tricor and other products prescribed to treat some or all of the same indications/and or health conditions as Tricor.

49.    All documents relating to analysis of, and/or projections and/or forecasts relating to, the market(s) in which Tricor is, or would be, sold. This includes, but is not limited to documents relating to pricing, supply, demand, sales forecasts, sales, sales trends, sales projections, profit projections, output, output restrictions, output expansions and/or contractions, market share, product features, product benefits, product comparisons, product superiority, market participants, promotional spending, marketing strategies, selling strategies, manufacturing costs, other costs, budgeting, anticipated new entrants, contracting, classes of trade, distribution, distribution channels, purchaser characteristics and/or behavior, regulatory approvals, and/or the legislative and/or regulatory environment.

50.    All documents relating to actual or potential competition between Tricor and any other products.

51.    All documents relating to your competitive strategies relating to Tricor and/or to any actual and/or anticipated products that compete, and/or were anticipated to compete, with Tricor.

52.    All documents relating to the competitive strategies of sellers of any products that compete, and/or were anticipated to compete, with Tricor.

F.    **DOCUMENTS REGARDING THE TRICOR PATENTS AND ANY ACTUAL <u>OR POTENTIAL FDA APPLICATIONS REGARDING TRICOR</u>**

53.    All documents addressing or discussing the requirements for listing a composition and/or formulation patent in the Orange Book.

54.    All documents relating to meetings, discussions, consideration, analysis or recommendations regarding listing the '726 Patent or any of the Stamm Patents in the Orange Book

21

or requesting that the '726 Patent or any of the Stamm Patents be listed in the Orange Book, including, but not limited to: (a) all documents recording any of the substance of such meetings or discussions; (b) all documents presented or circulated at such meetings or discussions; (c) all documents created during or as a result of such meetings or discussions; and/or (d) all documents such as agendas organizing such meetings or discussions.

55.     All documents, created anytime from January 1, 1990 to the present, not otherwise produced in connection with the requests herein, which regard or concern: (a) whether the '726 Patent or any of the Stamm Patents were eligible to be listed in the Orange Book; (b) whether it was appropriate or proper to list the '726 Patent or any of the Stamm Patents in the Orange Book; and/or (c) the timing for submitting an application to list the '726 Patent or any of the Stamm Patents in the Orange Book.

56.     All documents discussing, regarding or relating to whether to submit, file, draft and/or refrain from submitting, filing or drafting a New Drug Application ("NDA"), Supplemental NDA ("SNDA"), or otherwise obtaining FDA approval for any composition and/or formulation disclosed, claimed or addressed in the '726 Patent or any of the Stamm Patents.

57.     All documents concerning any actual and/or proposed changes, additions, amendments or supplements to the labeling, product inserts, and product monographs of Tricor to reflect and/or address any composition, formulation, and/or method of use disclosed, claimed or described in the '726 Patent or any of the Stamm Patents and all documents concerning any decision whether to seek regulatory approval for such labeling or proposed label, insert or monograph.

58.     All documents relating to or referring to any actual, potential or contemplated effort(s) by Abbott and/or Fournier to list any composition and/or formulation patent related to Tricor in the Orange Book.

59.     Any and all documents regarding FDA regulatory approval of NDA Nos. 19-304, 21-203, and 21-656, including but not limited to:

          (a)     any and all correspondence with the FDA, including drafts;

22

        (b)    any and all internal communications about these NDA's, including telephone contact reports;

        (c)    any and all data underlying and supporting the NDA's and any amendments and/or supplements thereto, including laboratory notebooks;

        (d)    any and all deficiency notices and responses thereto;

        (e)    any and all amendments and supplements thereto, including drafts;

        (f)    any and all approval letters;

        (g)    any and all warning letters;

        (h)    any and all Citizen Petitions

60.    Any and all documents regarding the development, formulation, scale up, validation, and manufacturing of your various versions of Tricor.

61.    Any and all documents evaluating the ability and prospect of pharmaceutical companies to develop, formulate, scale up, validate, manufacture, market, sell, and obtain FDA regulatory approval for generic versions of Tricor.

62.    Any and all documents regarding the actual development, formulation, scale up, validation, manufacture, marketing, sale, and FDA regulatory approval of generic versions of Tricor.

63.    Any and all documents regarding the life cycle management of Tricor and/or patents associated therewith.

## G.    DOCUMENTS REGARDING THE SALE OF GENERIC FORMS OF TRICOR

64.    All documents regarding any action(s) that Defendants have taken or considered taking to impede, deter, affect, influence, impact or prevent any other company from marketing or selling a generic, generically equivalent, or bioequivalent form of Tricor, including, but not limited to, any act to extend the patent or market exclusivity of Tricor.

65.     All documents related to communications with generic manufacturers related to Tricor and/or any fenofibrate product.

66.     All documents regarding Tricor and/or any fenofibrate product sold by Defendants, which use or contain the phrase "lifecycle," "life cycle" or "life cycle management" or are otherwise related to life cycle management issues.

67.     All documents, created anytime from January 1, 1997 to the present, related to licensing agreements concerning the composition, components, development, marketing and/or promotion of Tricor and/or any fenofibrate product.

## H.     MISCELLANEOUS DOCUMENTS

68.     All documents which refer, concern or relate to the claims, defenses and/or subject matter of this litigation.

69.     All documents consisting of, evidencing, referring or relating to any contacts or communications between Abbott and/or Fournier and anyone else concerning the claims, defenses and/or subject matter of this litigation. This includes documents consisting of, evidencing, referring or relating to any contacts or communications concerning the claims, defenses and/or subject matter of this litigation: (a) between Abbott and/or Fournier and any of their current or former agents, representatives, servants or employees, and/or (b) between Abbott and/or Fournier and any third parties.

70.     Documents sufficient to show Abbott's and/or Fournier's document destruction, retention and/or archiving policies and/or practices and any changes in such policies during the Relevant Time Period.

71.     All documents concerning any insurance policy, indemnification agreement, joint prosecution agreement and/or judgment sharing agreement taken out or entered into for the benefit of any defendant in relation to any claims asserted in this action.

24

72.    All documents regarding any meeting(s) among some or all of Defendants' directors, officers or employees during which generic, generically equivalent, or bioequivalent forms of Tricor were discussed or addressed.

73.    Any telephone logs during the Relevant Period for all persons or entities named in response to any of the interrogatories in the Direct Purchaser Plaintiffs' First Set Interrogatories to Defendants.

74.    All documents reflecting communications relating in any way to Tricor and/or fenofibrate, which communications occurred with, to, or from, any of the persons or entities named in response to any of the interrogatories in the Direct Purchaser Plaintiffs' First Set Interrogatories to Defendants.

75.    All calendars, notes, diaries, whether electronic or otherwise, of any Abbott and/or Fournier officer, director, or employee which discuss or relate to meetings in which the '726 Patent, the Stamm Patents, or any of their predecessor applications were discussed

76.    Organizational charts, personnel directories, telephone directories, and electronic mail user and address lists for Defendants as a whole and for each division, subsidiary, or affiliate of the Company that had or has any involvement in the research, development, manufacture, sale or marketing of Tricor and/or any fenofibrate product, or any patents related to Tricor and/or any fenofibrate product.

77.    All document assessing, analyzing and/or evaluating your costs, sales, revenues and/or profits in connection with your efforts to convert a market for a specific drug from one dosage formulation to another.

78.    All documents relating to any decision to develop, seek FDA approval for, scale up, manufacture, market and/or promote a new dosage form and/or formulation of a pharmaceutical product already sold by you, including but not limited to Hytrin and Traxene, including but not limited to documents concerning:

25

(a)    any actual, potential or claimed benefits of one dosage form and/or formulation over another;

(b)    whether to cease sales, marketing and/or promotion of one or more dosage forms and/or formulations; and

(c)    any surveys of pharmacists, doctors and/or other health professionals done in connection with the development, marketing, launch and/or promotion of a new dosage form and/or formulation of a pharmaceutical product already sold by you.

79.    All documents (including but not limited to analyses, projections, and/or forecasts) relating to any and all actual and/or projected effects on sales, revenues, costs, and/or profits of developing, formulating, scaling up, manufacturing, producing, marketing, and/or selling a new dosage form and/or formulation of a pharmaceutical product already sold by you.

80.    All documents (including but not limited to analyses, projections, and/or forecasts) relating to any and all actual and/or projected effects on efficiencies, economies of scale and/or scope, and/or production capacity, relating to the development, production, marketing, and/or selling (and/or the cessation and/or reduction of production, marketing, selling and/or availability) of a new dosage form and/or formulation of a pharmaceutical product already sold by you.

81.    All documents (including but not limited to analyses, projections, and/or forecasts) relating to any and all actual and/or projected effects on revenues, costs, and/or profits, relating to converting sales, prescriptions, and/or market demand from one formulation and/or dosage form of a pharmaceutical product sold by you to another version of such product.

82.    All documents relating to any and all actual and/or projected effects on revenues, costs, and/or profits, relating to converting sales, prescriptions, and/or market demand from one formulation and/or dosage form of a pharmaceutical product sold by you to another version of such product.

83.    All documents regarding any actual, projected and/or claimed benefits, harms, similarities and/or differences between capsule and tablet formulations of the same pharmaceutical product.

26

84.    All documents related to the therapeutic equivalence of the pharmaceutical products described and/or approved in: (a) NDA 19-304 and NDA 21-203 ; (b) NDA 19-304 and NDA 21-656; and (c) NDA 21-203 and NDA 21-656, including but not limited to:

(a)    documents relating to the meaning and/or definition of the term "therapeutic equivalence";

(b)    correspondence and/or communications with the FDA; and

(c)    documents related to your decision to seek a determination of "therapeutic equivalence" of any two products described in the enumerated NDAs.

85.    All documents regarding the destruction of any Tricor tablets and/or capsules.

Dated: September 19, 2005                  Respectfully submitted,

By: _____

Jeffrey S. Goddess (Del. Bar No. 630)
ROSENTHAL, MONHAIT, GROSS & GODDESS, P.A.
919 Market Street, Suite 1401
P.O. Box 1070
Wilmington, Delaware 19899-1070
Tel: (302) 656-4433
Fax: (302) 658-7567
jgoddess@rmgglaw.com
   Liaison Counsel for Direct Purchaser Class

Bruce E. Gerstein (BG-2726)
GARWIN, BRONZAFT, GERSTEIN & FISHER
1501 Broadway, Suite 1416
New York, NY 10036
Ph: (212) 398-0055
Fax: (212) 764-6620
   Lead Counsel for Direct Purchaser Class

Joseph T. Lukens
HANGLEY ARONCHICK SEGAL & PUDLIN
One Logan Square, 27th Floor
Philadelphia, PA 19103
Ph: (215) 496-7032
Fax: (215) 568-0300
   Attorneys for Plaintiffs CVS et al.

27

Scott E. Perwin
KENNY NACHWALTER, P.A.
201 South Biscayne Boulevard
1100 Miami Center
Miami, FL 33131
Ph: (305) 373-1000
Fax: (305) 372-1861
   Attorneys for Plaintiffs Walgreens, et al.