# EXHIBIT C

GOODWIN | PROCTER

Christopher T. Holding
617.570.1679
goodwinprocter.com

Goodwin Procter LLP
Counsellors at Law
Exchange Place
Boston, MA 02109
T: 617.570.1000
F: 617.523.1231

August 9, 2005

**By Facsimile and First Class Mail**

Chad J. Peterman, Esq.
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036-6710

Mary B. Graham, Esq.
Moris, Nichols, Arsht & Tunnell
1201 N Market Street
Wilmington, DE 19801

Matthew R. Hendrickson, Esq.
Cadwalader, Wickersham & Taft LLP
One World Financial Center
New York, NY 10281

Frederick L. Cottrell, III, Esq.
Richards, Layton & Finger
One Rodney Square
Washington, DC 19801

Re:    **Abbott Laboratories, et al. v. Teva Pharmaceuticals USA, Inc.**
       **CA No. 02-1512 (KAJ) (consolidated)**

Dear Counsel:

Enclosed for service please find Teva's First Antitrust Set of Requests for the Production of
Documents and Things.

Very truly yours,

Christopher T. Holding
CTH:sah
Enc.

LIBA/1583100.1

EXHIBIT
C

# GOODWIN | PROCTER

cc:     *(via facsimile)*:
        Josy W. Ingersoll, Esq.
        Paula L. Blizzard
         (both w/encs.)

LIBA/1583100.1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ABBOTT LABORATORIES, an Illinois )
corporation, FOURNIER INDUSTRIE )
ET SANTÉ, a French corporation, and )
LABORATOIRES FOURNIER S.A., a )
French corporation, )
                                       )
              Plaintiffs,              )
                                       )       C.A. No. 02-1512 (KAJ)
       v.                              )          (consolidated)
                                       )
TEVA PHARMACEUTICALS USA, Inc., )
a Delaware corporation,                )
                                       )
              Defendant.               )
_____ )
                                       )
TEVA PHARMACEUTICALS USA, Inc., )
a Delaware corporation, and TEVA )
PHARMACEUTICAL INDUSTRIES )
LTD., an Israeli corporation,          )
                                       )
       Counterclaim Plaintiffs,        )
                                       )
       v.                              )
                                       )
ABBOTT LABORATORIES, an Illinois )
corporation, FOURNIER INDUSTRIE )
ET SANTÉ, a French corporation, and )
LABORATOIRES FOURNIER S.A., a )
French corporation,                    )
                                       )
       Counterclaim Defendants.        )
_____ )

## TEVA'S FIRST ANTITRUST SET OF REQUESTS
## FOR THE PRODUCTION OF DOCUMENTS AND THINGS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure and the definitions and instructions set forth below, Counterclaim Plaintiffs Teva Pharmaceuticals USA, Inc. and Teva Pharmaceutical Industries, Ltd. (collectively, "Teva"), hereby request that each of Counterclaim Defendants Abbott Laboratories, Fournier Industrie et Santé, and Laboratoires Fournier S.A. (collectively, "Counterclaim Defendants") produce all documents requested herein for inspection and copying within 30 days of service hereof.

### *Definitions*

For purposes of these requests, the following terms shall have the following meanings:

A.      "Abbott" means Abbott Laboratories and any predecessor or successor company, and any corporation or other business entity subsidiary to, or affiliated with Abbott.

B.      "Fournier" means Fournier Industrie et Santé, Laboratoires Fournier S.A., and any predecessor or successor company, and any corporation or other business entity subsidiary to, or affiliated with Fournier Industrie et Santé or Laboratoires Fournier S.A.

C.      "The '405 patent" means United States Patent No. 6,277,405 entitled "Fenofibrate pharmaceutical composition having high bioavailability and method for preparing it," which issued on August 21, 2001.

D.      "The '552 patent" means United States Patent No. 6,589,552 entitled "Fenofibrate pharmaceutical composition having high bioavailability and method for preparing it," which issued on July 8, 2003.

E.      "The '670 patent" means United States Patent No. 6,074,670 entitled "Fenofibrate pharmaceutical composition having high bioavailability and method for preparing it," which issued on June 13, 2000.

F.      The phrases "the '726 patent" and "the Curtet patent" mean United States Patent

2

No. 4,895,726 entitled "Novel dosage form of fenofibrate," which issued on January 23, 1990.

G.    "The '881 patent" means United States Patent No. 6,652,881 entitled "Fenofibrate pharmaceutical composition having high bioavailability," which issued on November 25, 2003.

H.    "ANDA" means Abbreviated New Drug Application pursuant to 21 U.S.C. § 355.

I.    "Concerning" means containing, constituting, evidencing, referring to, relating to, discussing, or prepared, considered, presented, or consulted in connection with, or resulting from, the matter.

J.    "Elan" means Elan Corporation and any predecessor or successor company, and any corporation or other business entity subsidiary to, or affiliated with Elan Corporation.

K.    "FDA" means the United States Food and Drug Administration, including any of its departments, committees, or employees.

L.    "Fenofibrate" means the organic compound commonly known as fenofibrate.

M.    "Lofibra®" means the branded products manufactured and sold by Teva that contain fenofibrate as an active ingredient.

N.    "Lopid®" means the branded fibrate drug that contains gemfibrozil.

O.    "NDA" means New Drug Application pursuant to 21 U.S.C. § 355, including supplemental NDAs.

P.    "NDDF" means the National Drug Data File, the database of drug and clinical information provided by First DataBank, Inc.

Q.    "Orange Book" means the FDA publication entitled "Approved Drug Products with Therapeutic Equivalence Evaluations."

R.    "Patent cases," "patent suits," "patent actions," and "patent litigations" mean those actions instituted by Abbott or Fournier against Teva alleging infringement of U.S. Patent

3

Nos. 4,985,726 (the "'726 Patent"), 6,074,670 (the "'670 Patent"), 6,277,405 (the "'405 Patent"),

6,589,552 (the "'552 Patent"), or 6,652,881 (the "'881 Patent"), including but not limited to Civil

Action Nos. 02-1512, 03-847, and 04-0047.

      S.     "Patents-in-suit" means collectively the '726 patent, the '670 patent, the '405

patent, the '552 patent, and the '881 patent.

      T.     "Pricing database" means the NDDF or any similar database, including but not

limited to Medispan.

      U.     "Product conversion" means the replacing of one formulation TriCor® product

with any other formulation TriCor® product – including the conversion from TriCor® capsules

to TriCor® original formulation tablets, and the conversion from TriCor® original formulation

tablets to TriCor® replacement formulation tablets – and includes but is not limited to any or all

of the following actions:

    1.     Developing any new formulation TriCor® product, including original
             formulation TriCor® tablets and replacement formulation TriCor® tablets;

    2.     Preparing and submitting any NDA for any new formulation TriCor®
             product;

    3.     Launching sales of any new formulation TriCor® product;

    4.     Ceasing sales of any existing formulation TriCor® product at or near the
             same time that any new formulation TriCor® product is launched;

    5.     Taking actions to market, detail, or otherwise promote sales of any new
             formulation TriCor® product;

    6.     Listing patents in the Orange Book in relation to the NDA for any new
             formulation TriCor® product;

    7.     Creating incentives for distributors, wholesalers, retailers, pharmacy
             chains, or any other entity to return any existing formulation TriCor®
             products at or near the time that sales of any new formulation TriCor®
             product are launched; or

4

        8.     Causing any TriCor® product to be listed as obsolete in the NDDF or any other pricing database.

V.     "PTO" means the United States Patent and Trademark Office and any of its departments or employees.

W.    "Statins" mean a class of hypolipidemic agents used to lower blood levels of LDL-cholesterol.

X.    "Purchaser Actions" means the actions captioned In re TriCor Direct Purchaser Antitrust Action and In re TriCor Indirect Purchaser Antitrust Action.

Y.    "The Stamm patents" means, collectively, the '670 patent, the '405 patent, the '552 patent, and the '881 patent, as well as any patents or applications that are continuations, continuations-in-part, divisionals, or otherwise related to the four patents listed here.

Z.    "Teva" means Teva Pharmaceuticals USA, Inc. and/or Teva Pharmaceutical Industries, Ltd.

AA.    "TriCor® capsules" means the branded capsules marketed by Abbott that contain fenofibrate as an active ingredient.

BB.    "TriCor® original formulation tablets" means the branded tablets manufactured marketed by Abbott that contain 54 mg or 160 mg of fenofibrate as an active ingredient.

CC.    "TriCor® replacement formulation tablets" means the branded tablets marketed by Abbott that contain 48 mg or 145 mg of fenofibrate as an active ingredient.

DD.    "Document" means all materials, data, and things within the scope of Fed. R. Civ. P. 34, and includes without limitation any writing, report, memorandum, file, minutes, communication, computer transmission, e-mail, correspondence, calendar, notes, notebook, diary, data sheet, work sheet, recording, tape, drawing, graph, index, chart, telephone record, photograph, photographic record, powerpoint presentation, slide, other data compilation of any

other written, recorded, transcribed, punched, taped, filed or other graphic material including any draft of the foregoing items and any copy or reproduction of any of the foregoing items upon which any notation work, figure or form is recorded or has been made which does not appear on the original, or as to whose existence, either past or present, the responding party has any knowledge or information.

EE.    "Minutes" means any document created in connection with a meeting including minutes of a meeting, exhibits and attachments to minutes of a meeting, agendas for meetings (including exhibits, attachments or materials distributed or circulated at, or in connection with, any meeting), notices of meetings, waiver of meetings and certification or signatures appended to or referred to in the notices, agendas or minutes.

FF.    The connectives "and" and "or" shall be construed either in the disjunctive or the conjunctive, so as to bring within the scope of the discovery request the broadest range of documents and information. Likewise, the past tense shall be construed to include the current, and vice versa, and the singular shall be construed to include the plural, and vice versa, all so as to bring within the scope of the discovery request the broadest range of documents and information.

### *Instructions*

1.    All requests directed to Counterclaim Defendants are to include all documents and things in the possession, custody, or control of the responding Counterclaim Defendant, including documents in the possession of its agents, officers, employers, or servants, including but not limited to its attorneys, wherever located.

2.    If any document requested by this discovery was at one time in existence but is no longer in existence, or has been made unavailable in any manner, identify the nature of the document and state the date on which it ceased to exist, the circumstances under which it ceased

6

to exist, the identity of all persons having knowledge of the circumstances under which it ceased to exist, and the identity of all persons having knowledge of the contents thereof.

3.    To the extent that any of the information sought by these document requests is maintained in an electronic format, please so indicate in your response. Teva requests production of any and all such information in that electronic format.

4.    The documents or things requested shall be produced either as they are kept in the usual course of business or organized and labeled to correspond with the document request to which they are responsive. If there are no documents or things responsive to any particular discovery request, each Counterclaim Defendant shall so state in writing rather than leave the request unanswered.

5.    If you contend that any document sought by these requests is protected by the attorney-client privilege, the work product doctrine, or any other claimed privilege or protection, please furnish a log setting forth sufficient information to identify clearly each privileged item of information—including a description of the subject matter of the document, the type of document (e.g., letter, memorandum, email, etc.), the author(s) of the document, the direct or copied recipient(s) of the document, and the date of the document—and state all the reasons for the claim of privilege or protection.

6.    Each document request should be construed independently. No document request should be construed by reference to any other document request for the purpose of limiting the scope of the answer to such document request.

7.    This Request for Production of Documents and Things shall be deemed continuing in order to require supplemental answers and supplemental productions of documents subsequent to responding to these requests.

7

*Requests*

## REQUEST NO. 1

All documents identified in Abbott's and Fournier's initial disclosures in connection with Teva's antitrust counterclaims pursuant to Fed. R. Civ. P. 26(a)(1).

## REQUEST NO. 2

All documents produced to the U.S. Federal Trade Commission in connection with the investigation titled Abbott Laboratories, File 005-0124, or concerning the investigation.

## REQUEST NO. 3

All documents given to any government entity, or concerning any government investigation or inquiry, concerning (a) TriCor® products, (b) fenofibrate, or products containing fenofibrate,(c) generic competition concerning TriCor® products, (d) the listing of each patent-in-suit in the Orange Book, (e) each patent action, or (f) the present antitrust litigation.

## REQUEST NO. 4

All documents concerning Abbott's and Fournier's decisions to develop each of the TriCor® tablet formulations, whether or when to effectuate each product conversion, and the reasons for each product development and each product conversion.

## REQUEST NO. 5

All documents concerning the medical, economic, or other purposes to be served by each product conversion, the aims of each product conversion, the expected financial or other benefits of each product conversion, and any countervailing financial costs or other considerations concerning each product conversion.

## REQUEST NO. 6

All documents concerning communications to, from, or between Abbott and Fournier concerning whether or when to effectuate each product conversion.

## REQUEST NO. 7

All documents concerning the advantages or disadvantages of tablets versus capsules, both generally and concerning TriCor® products.

## REQUEST NO. 8

All documents concerning projected, estimated, or actual effects of each product conversion on Abbott's or Fournier's income, profit, or expenses.

8

**REQUEST NO. 9**

All documents concerning any participation by Abbott's or Fournier's marketing or sales departments in making the decisions to bring about each product conversion and the giving of any consideration to any effects on generic competition in making those decisions.

**REQUEST NO. 10**

All documents concerning any plans for future product conversions involving any of Abbott's or Fournier's fenofibrate products.

**REQUEST NO. 11**

All documents concerning the reasons for, timing of, or expected or actual effect of the decision to discontinue sales of one formulation of TriCor® at or near the same time that Abbott or Fournier started selling a different formulation of TriCor®.

**REQUEST NO. 12**

All documents concerning the number or percentage of patients who, prior to November 2004, took any TriCor® product without food, and how frequently they did so.

**REQUEST NO. 13**

All documents concerning any problems or complications actually experienced by patients due to taking TriCor® capsules or TriCor® original formulation tablets without food.

**REQUEST NO. 14**

All documents concerning the relative efficacy or bioavailability of Tricor® replacement formulation tablets compared to TriCor® original formulation tablets taken with food or TriCor® capsules taken with food.

**REQUEST NO. 15**

All documents concerning Abbott's profit margin or method for calculating profit margin on its TriCor® products, individually and collectively.

**REQUEST NO. 16**

All documents concerning Fournier's profit margin or method for calculating profit margin on all TriCor® products, individually and collectively.

**REQUEST NO. 17**

All documents concerning any market studies or market analysis concerning any TriCor® product or the sale or distribution of other fenofibrate products.

9

**REQUEST NO. 18**

All documents concerning projections, estimates, or assumptions underlying projections or estimates of sales volume, sales quantity, revenue, profits, or prices for TriCor® or other fenofibrate products.

**REQUEST NO. 19**

All documents concerning projections or estimates made of sales of generic fenofibrate products, including but not limited to Teva's fenofibrate products.

**REQUEST NO. 20**

All documents concerning projected or estimated dates on which generic competition for any TriCor® product would commence or on which any generic fenofibrate product would become available for purchase in the United States.

**REQUEST NO. 21**

All documents concerning the actual, projected, or estimated effect on sales of TriCor® products and/or generic fenofibrate products, including but not limited to Teva's fenofibrate products, if TriCor® capsules and, subsequently, TriCor® original formulation tablets, were or were not listed as obsolete the NDDF or other pricing databases.

**REQUEST NO. 22**

All documents concerning the actual, projected, or estimated effect on sales of TriCor® products and/or generic fenofibrate products, including but not limited to Teva's fenofibrate products, if generic manufacturers were or were not able to introduce generic versions of TriCor® products before Abbott could complete each product conversion.

**REQUEST NO. 23**

All documents concerning the possible or expected effect of sales of generic fenofibrate products on Abbott's or Fournier's revenues or profits.

**REQUEST NO. 24**

All documents concerning the licensing or potential licensing of TriCor® products, and the effect that such licensing would have on generic competition, and on Abbott's own sales and profits.

**REQUEST NO. 25**

10

All documents concerning generic competition with respect to any fenofibrate product manufactured, distributed, marketed, or sold by Abbott or Fournier, including but not limited to any TriCor® product.

### REQUEST NO. 26

All documents concerning any consideration of the effect on TriCor® products or on generic competition of (a) listing any of the patents-in-suit in the Orange Book, (b) bringing each patent action against Teva or against any other entity, (c) bringing about each product conversion, (d) obtaining a new indication for TriCor® original formulation tablets that could have been (but was not) obtained for TriCor® capsules, (e) removing existing product from the distribution channel, or (f) listing TriCor® capsules and then TriCor® original formulation tablets as obsolete in the NDDF or any other pricing database.

### REQUEST NO. 27

All documents concerning any financial reports or communications to lenders, shareholders, investors, or stock analysts concerning sales of TriCor® products, the future likelihood and effects of generic competition for fenofibrate products, and any plans to forestall such competition.

### REQUEST NO. 28

All documents concerning any proposal or decision by Abbott or Fournier to, or not to, offer, sell, or market a generic fenofibrate product, either themselves or through any other entity.

### REQUEST NO. 29

All documents concerning Abbott's decision as to which entity should market TriCor® products, which entity should file or hold the NDAs for the TriCor® products, and why any of these entities played a role in Abbott's decision.

### REQUEST NO. 30

Documents sufficient to reflect the organization of each and every division, subdivision, unit, subsidiary or affiliate of Abbott or Fournier having any involvement with TriCor® or other fenofibrate products during any period in which any TriCor® or other fenofibrate product was being considered, developed, marketed, or sold, including but not limited to organizational charts, personnel directories, telephone directories, and electronic mail user and address lists.

### REQUEST NO. 31

All documents concerning any communications about any TriCor® product or any other fenofibrate product between Abbott or Fournier and the FDA, including but not limited to Abbott's and/or Fournier's filings with the FDA concerning its NDAs for TriCor® products and documents concerning all meetings, discussions, or other communications between Abbott and/or Fournier and the FDA.

11

**REQUEST NO. 32**

All documents concerning the product market or submarket in which TriCor® and any other fenofibrate products compete.

**REQUEST NO. 33**

All documents concerning the presence, absence, or extent of competition between any TriCor® product and any other product, including but not limited to other TriCor® products, any generic fenofibrate product, Lopid® and/or gemfibrozil, or any statin.

**REQUEST NO. 34**

All documents concerning the cross-elasticity of demand of any TriCor® product with any other product, including but not limited to other TriCor® products, any generic fenofibrate product, Lopid® and/or gemfibrozil, or any statin.

**REQUEST NO. 35**

All documents concerning the degree to which any other drug product – including but not limited to other TriCor® products, any generic fenofibrate product, Lopid® and/or gemfibrozil, or any statin – is or is not substitutable for, interchangeable with, in the same therapeutic class as, or close therapeutic equivalents of any TriCor® product.

**REQUEST NO. 36**

All documents concerning differences or similarities between Lopid® and/or gemfibrozil or any statin and any TriCor® product.

**REQUEST NO. 37**

All documents concerning differences or similarities between or among any TriCor® products.

**REQUEST NO. 38**

All documents concerning the degree to which the pricing of any TriCor® product is affected by the pricing of any other drug, or the degree to which the pricing of any other drug is affected by the pricing of any TriCor® product.

**REQUEST NO. 39**

All documents concerning any actual or contemplated changes in the pricing of any TriCor® product price, including but not limited to documents concerning the process, method, or procedure used for setting, changing, or deciding whether or not to change prices for TriCor®

products; or concerning any price changes or information about price changes in response to the marketing or pricing of Teva's fenofibrate capsules, any other actual or anticipated generic fenofibrate product, Lopid® and/or gemfibrozil, or any statin.

## REQUEST NO. 40

All documents concerning whether, and the extent to which, the marketing, pricing, or sale of a drug other than TriCor® has caused, or could or might cause, physicians, consumers, and other individuals or entities to terminate or reduce their purchases or use(s) of any TriCor® product.

## REQUEST NO. 41

All documents concerning market power, monopoly power, dominance, market control, or market share of TriCor® products.

## REQUEST NO. 42

All documents concerning any agreement between Abbott and Fournier about the subject matter of this litigation, or any insurance agreements or indemnification agreements with any third parties with respect to any claim in this antitrust litigation.

## REQUEST NO. 43

All documents concerning any strategy to maintain sales for TriCor® products or to forestall generic competition, including but not limited to the decisions to file each patent suit, the decision to make each product conversion, the timing of each product conversion, and the use of patents, regulatory filings, changes to TriCor®'s product formulation, and changing the coding of TriCor® products in pricing databases, to expand, maintain or secure sales of TriCor®.

## REQUEST NO. 44

All documents circulated to any member of the Board of Directors of Abbott or Fournier concerning TriCor®, generic competition for TriCor®, changes to TriCor®'s product formulation or the use of patents, regulatory filings and changes to TriCor®'s product formulation to expand, maintain, or secure sales of TriCor®.

## REQUEST NO. 45

All documents concerning discussions, communications, and information provided to external auditors, internal audit committees, or internal auditors relating to the evaluation of legal or financial risks of each product conversion and each patent suit, or to establish any litigation reserve in connection with each product conversion or patent suit.

13

## REQUEST NO. 46

Any regulatory filings made by, or communications to, from, or between Abbott and/or Fournier and any government entity concerning the financial or legal risks of each product conversion or patent suit.

## REQUEST NO. 47

All documents to, from, or between Abbott or Fournier concerning negotiation of the license(s) for each patent-in-suit, including but not limited to due diligence conducted by or on behalf of Abbott, evaluating the validity or enforceability of each patent-in-suit, prior to the licensing of each patent-in-suit.

## REQUEST NO. 48

All documents to, from, or between Abbott or Fournier concerning any pre-suit investigation of Teva's alleged infringement of any of the patents-in-suit.

## REQUEST NO. 49

All documents concerning the illnesses or health problems for which, or the categories of patients for whom, TriCor® is more appropriate than other cholesterol-lowering drugs, including but not limited to communications with Abbott's sales staff concerning what the sales staff should communicate to physicians, HMOs, third party payors, hospitals, pharmacies, or patients.

## REQUEST NO. 50

All documents concerning discussions or communications within or between Abbott and/or Fournier concerning what to tell pharmacies and doctors about whether or not to use existing TriCor® products before converting to use of the new formulations.

## REQUEST NO. 51

All documents concerning any communications with physicians, HMOs, third party payors, hospitals, pharmacies, or patients concerning any TriCor® product, including individual inquiries and responses, presentations at symposia, conferences and seminars, and publications in journals.

## REQUEST NO. 52

All documents concerning opinion leaders for any TriCor® product.

## REQUEST NO. 53

All documents concerning seminars or meetings for doctors, pharmacists, or other health care providers at which the TriCor® product conversions were discussed, including but not

14

limited to documents concerning the retention of doctors or other individuals to speak at those meetings or the content of those communications.

**REQUEST NO. 54**

All documents concerning communications with wholesalers, distributors, pharmacy chains, or other customers concerning each product conversion, what should be done with the products to be replaced, or what the response should be to any generic products that purport to be equivalent to the new or replaced formulation.

**REQUEST NO. 55**

All documents concerning strategic plans, development plans, market plans, sales plans, business plans, business reviews, forecasts, projections, marketing studies, or analyses of market share or competitive position concerning any TriCor® product.

**REQUEST NO. 56**

All documents concerning the training of Abbott's sales force concerning the TriCor® products, including but not limited to sales training manuals, sales or marketing meetings, and any advertising, sales, marketing, or promotional materials.

**REQUEST NO. 57**

All documents produced in discovery in any other lawsuits involving enforcement of any of the patents-in-suit against any generic manufacturer other than Teva.

**REQUEST NO. 58**

All documents concerning Abbott's sales, pricing, discounts, or profits concerning any of its TriCor® products.

**REQUEST NO. 59**

All documents from January 1, 2000, concerning the terms of sale for TriCor® products, including but not limited to contracts governing sale for TriCor® products.

**REQUEST NO. 60**

Documents sufficient to show, by month, the following information for each TriCor ® product from January 1, 2000, to the present: (a) sales volume by unit; (b) sales volume by dollar; (c) total net sales; and (d) total profits.

15

**REQUEST NO. 61**

All documents concerning Abbott's or Fournier's analysis, evaluation, or consideration of IMS Health, Inc. or other survey data with respect to TriCor® products or any generic version of any TriCor® product.

**REQUEST NO. 62**

All documents concerning communications between Abbott and/or Fournier and First Data Bank, Medispan, or any other pricing database concerning TriCor® products.

**REQUEST NO. 63**

All documents concerning the coding of TriCor® capsules and TriCor® original formulation tablets in the NDDF or other pricing databases, including but not limited to documents concerning whether and when to have any product listed as obsolete, the reasons for doing so, and the actual or expected effects of doing so.

**REQUEST NO. 64**

All documents concerning policies or practices for having products listed as obsolete in the NDDF or other pricing databases.

**REQUEST NO. 65**

All documents concerning actual or potential new indications for each TriCor® product, including but not limited to the obtaining of FDA approval for such new indications, questions as to whether such approval should be sought and for which formulations of TriCor® products, any actual or potential improved performance for existing indications, and whether any new indication for a TriCor® product or any improved performance (*e.g.*, the drug may be ingested without food) makes the drug less interchangeable with any other drug.

**REQUEST NO. 66**

All documents concerning the destruction or other disposal of any TriCor® products.

**REQUEST NO. 67**

All documents concerning return policies applicable to TriCor® products, and documents sufficient to show how those policies differ from any return policies applicable to any other product.

## REQUEST NO. 68

All documents concerning returns of TriCor® products, including but not limited to the amount of product returned, the dates of the returns, and all payments or other compensation to the returning parties.

## REQUEST NO. 69

All documents concerning the actual or estimated amount of TriCor® products in the distribution channel, inventory of distributors, wholesalers, or retailers, or any calculations concerning the amount of inventory remaining, at any given time.

## REQUEST NO. 70

All documents concerning the economic cost of leftover TriCor® capsules after the product conversion to TriCor® original formulation tablets, or leftover TriCor® original formulation tablets after the product conversion to TriCor® replacement formulation tablets or the return of TriCor® products.

## REQUEST NO. 71

All documents concerning the TriCor® 145 mg & 48 mg Stocking Program or any other sales program or promotion in connection with the launch of TriCor® replacement tablets.

## REQUEST NO. 72

All documents concerning any agreements with Elan, including but not limited to agreements concerning the licensing or assignment of patents for use in connection with TriCor® products.

## REQUEST NO. 73

All documents concerning payments to Elan in connection with the licensing or assignment of patents for use with TriCor® products.

## REQUEST NO. 74

Documents sufficient to show the total costs incurred with each approved, pending, or potential NDA for any existing or potential TriCor® product, including but not limited to costs concerning research, development, formulation, testing, and compliance with regulatory requirements.

## REQUEST NO. 75

All documents concerning the listing of each patent-in-suit in the Orange Book, including but not limited to documents concerning the basis for listing, the eligibilty of a patent for listing,

17

the reasons for listing, and the actual or expected effects of listing on potential generic competition.

## REQUEST NO. 76

All documents concerning Philippe Reginault and any or all of the patents-in-suit, including but not limited to documents concerning Mr. Reginault's awareness of or participation in the applications for those patents in the PTO.

## REQUEST NO. 77

All documents concerning Pascale Blouquin and any or all of the patents-in-suit, including but not limited to documents concerning Ms. Blouquin's awareness of or participation in the applications for those patents in the PTO.

## REQUEST NO. 78

All documents concerning Maurice Tendero and any or all of the patents-in-suit, including but not limited to documents concerning Mr. Tendero's awareness of or participation in the applications for those patents in the PTO.

## REQUEST NO. 79

All documents concerning what information should or should not be disclosed to the PTO in connection with the prosecution of any of the patents-in-suit.

## REQUEST NO. 80

All documents concerning the disclosure to the PTO of any test results concerning dissolution rates and/or dissolution profiles for any formulations of fenofibrate made according to the Curtet Patent, including but not limited to documents concerning lot or batch numbers 2177, 68128, 71686, 73496, and 77161.

## REQUEST NO. 81

All documents concerning what Abbott or Fournier should say to the PTO concerning any test results concerning dissolution rates and/or dissolution profiles for any formulations of fenofibrate made according to the Curtet Patent.

## REQUEST NO. 82

All documents concerning the materiality of any test results concerning dissolution rates and/or dissolution profiles for any formulations of fenofibrate made according to the Curtet Patent to the prosecution of any of the patents-in-suit.

18

## REQUEST NO. 83

All documents concerning the prosecution of any of the Stamm patents, including any continuations, continuations-in-part, divisionals, and any other patents or applications that are otherwise related to the Stamm patents.

## REQUEST NO. 84

All documents concerning the patent suits against Teva, including but not limited to documents concerning:

(i)     Abbott's or Fournier's intent, purpose or reason for bringing each of the patent suits;

(ii)    Abbott's or Fournier's decisions whether and when to sue Teva for infringement of each of the patents-in-suit;

(iii)   Abbott's or Fournier's decisions whether and when to sue any of their potential or actual competitors for infringement of each of the patents-in-suit;

(iv)    Abbott's or Fournier's decisions whether and when to no longer maintain the patent suits;

(v)     Abbott's or Fournier's understanding of the scope of each patent-in-suit, including but not limited to each of the claim terms of the patents identified in the Complaint of each patent action; communications to, from, or between any scientists or inventors employed or retained by Abbott or Fournier concerning Abbott's or Fournier's construction of each claim in each patent action; and Abbott's or Fournier's basis for believing that Teva's fenofibrate product has micronized fenofibrate in accordance with the specification of the patents-in-suit;

(vi)    the factual, evidentiary, legal, and other strategic bases supporting the decision to initiate and maintain each of the patent actions, including but not limited to any investigation, due diligence, research, studies, or analysis that formed these bases, conducted by or on behalf of Abbott or Fournier at any of the following points: (a) prior to initiating each patent suit; (b) prior to conducting any discovery in each patent suit; (c) after the close of discovery in each patent suit; (d) and after the Federal Circuit's March 20, 2003 Decision;

(vii)   communications to, from, or between Abbott and Fournier concerning actual or potential infringement of each patent-in-suit by Teva;

(viii)  discussions, projections, or analysis of the actual or anticipated effects of bringing each patent suit or the possible outcomes of each patent suit, including but not limited to Teva's ability to sell a generic fenofibrate product;

(ix)    the effect of the automatic 30-month stay on Abbott's and Fournier's decisions whether and when to sue Teva for infringement of each patent-in-suit.

19

**REQUEST NO. 85**

All documents identified in your responses to any interrogatories served in this litigation.

**REQUEST NO. 86**

All documents produced by Abbott or Fournier in response to any discovery requests served by Impax in these consolidated actions or by any plaintiff in the Purchaser Actions.  .

**REQUEST NO. 87**

All documents upon which Abbott or Fournier intends to rely at trial.

**REQUEST NO. 88**

All documents provided to or received from any expert or potential expert Abbott or Fournier intends to call as a witness in the present antitrust litigation.

**REQUEST NO. 89**

     All documents concerning any defenses upon which Abbott or Fournier intend to rely in the present antitrust litigation.

                        GOODWIN PROCTER LLP

                        Kenneth A. Cohen
                        Elaine Herrmann Blais
                        Christopher T. Holding
                        Exchange Place
                        Boston, Massachusetts 02109-2881
                        (617) 570-1000

                        David M. Hashmall, P.C.
                        599 Lexington Avenue
                        40th Floor
                        New York, NY 10022
                        (212) 813-8800

                        YOUNG, CONAWAY, STARGATT & TAYLOR, LLP
                        Josy W. Ingersoll (#1088)
                        John W. Shaw (#3362)
                        The Brandywine Building
                        1000 West Street – 17th Floor
                        P.O. Box 391
                        Wilmington, Delaware 19899-0391
                        (302) 571-6672

                        LEYDIG, VOIT & MAYER, LTD.
                        Bruce M. Gagala
                        M. Daniel Hefner
                        Two Prudential Plaza – Suite 4900
                        180 N. Stetson Avenue
                        Chicago, Illinois 60601-6780
                        (312) 616-5600

                        Attorneys for Counterclaim-Plaintiffs
                        Teva Pharmaceuticals USA, Inc. and Teva
                        Pharmeutical Industries Ltd.

DATED: September 9, 2005

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served by facsimile and first-

class mail upon counsel of record for all parties on September 9, 2005.

Christopher T. Holding

# Exhibit D
# FILED UNDER SEAL

# Exhibit E
# FILED UNDER SEAL

# Exhibit F
# FILED UNDER SEAL