## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

IN RE:  TRICOR DIRECT PURCHASER )
ANTITRUST LITIGATION )

C.A. No. 05-340 (KAJ)

)
)
)
)

Hon. Kent Jordan, U.S.D.J.

THIS DOCUMENT RELATES TO: )
   ALL ACTIONS )
C.A. No. 05-340 (Louisiana Wholesale) )
C.A. No. 05-351 (Rochester Drug) )
C.A. No. 05-358 (Meijer, Inc., et al.) )

## DIRECT PURCHASER CLASS PLAINTIFFS' REPLY BRIEF
## IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION

Jeffrey S. Goddess (Del. Bar No. 630)
Jessica Zeldin (Del. Bar No. 3558)
ROSENTHAL, MONHAIT & GODDESS, P.A.
919 Market Street, Suite 1401
P.O. Box 1070
Wilmington, Delaware 19899-1070
Tel: (302) 656-4433
Fax: (302) 658-7567

ADDITIONAL COUNSEL ON SIGNATURE PAGE

October 4, 2006

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................... i

SUMMARY OF ARGUMENT .................................................... 1

ARGUMENT ............................................................... 4

A.   Plaintiffs' Ability to Prove Impact in the Form of Overcharges With
     Classwide Evidence is Undisputed .................................... 4

B.   Plaintiffs' Proposed Damages Methodology Poses No Obstacles to Class
     Certification ...................................................... 9

C.   Overcharge Is the Legally Applicable Measure of Injury and Damages
     Here .............................................................. 9

     1.   Direct Purchasers Are Entitled to the Full Amount of the Overcharge
          Regardless of What Happens "Downstream" ...................... 10

     2.   Defendants' Unsupported "Different Products" Argument Has
          Been Repeatedly Rejected ..................................... 11

     3.   Defendants' Contention That the Fenofibrate Market Would Not
          Have Grown As Much as it Did Absent the Challenged Conduct
          Relates to Quantum of Overcharges, Not the Propriety of Claiming
          Overcharges .................................................. 12

D.   Defendants' "Mitigation" Defense is Legally Inapplicable, Relates Solely to
     Quantum of Damages, and Creates no Obstacles to Class Certification ....... 16

CONCLUSION ............................................................ 20

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Abbott Labs. v. Teva Pharms. USA, Inc.,*
    432 F. Supp. 2d 408 (D. Del. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Bogosian v. Gulf Oil,*
    561 F.2d 434 (3d Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 10, 11, 16

*In re Bulk Extruded Graphite Prods. Antitrust Litig.,*
    2006 WL 891362 (D.N.J. April 4, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*In re Buspirone Patent & Antitrust Litig,*
    210 F.R.D. 43 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

*In re Cardizem CD Antitrust Litig.,*
    200 F.R.D. 297 (E.D. Mich. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10, 11, 12, 20

*In re Cardizem CD Antitrust Litig.,*
    332 F.3d 896 (6th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 12

*In re Cardizem CD Antitrust Litig.,*
    200 F.R.D. 326 (E.D. Mich. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*In re Fine Paper Antitrust Litig.,*
    632 F.2d 1081 (3d Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Hanover Shoe, Inc. v. United Shoe Machinery Corp.,*
    392 U.S. 481 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Helfrich v. Lehigh Valley Hosp.,*
    2005 WL 1715689 (E.D. Pa. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Howard Hess Dental Labs., Inc. v. Dentsply Int'l Inc.,*
    424 F.3d 363 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*J.B.D.L. Corp. v. Wyeth-Ayerst Labs., Inc.*
    225 F.R.D. 208 (S.D. Ohio 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Joint Stock Soc. v. UDV North America, Inc.,*
    104 F. Supp.2d 390 (D. Del. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Lee-Moore Oil v. Union Oil*,
  599 F.2d 1299 (4th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Litton Systems, Inc. v. American Telephone & Telegraph Co.*,
  700 F.2d 785 (2d Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Loeb Indus., Inc. v. Sumitomo Corp.*,
  306 F.3d 469 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re Lower Lake Erie Iron Ore Antitrust Litig.*,
  998 F.2d 1144 (3d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

*Malcolm v. Marathon Oil Co.*,
  642 F.2d 845 (5th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*In re Mercedes-Benz Antitrust Litig.*,
  213 F.R.D. 180 (D.N.J. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Mid-West Paper Prods. Co. v. Continental Group, Inc.*,
  596 F.2d 573 (3d Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Paper Systems, Inc. v. Nippon Paper Industries Co., Ltd.*,
  281 F.3d 629 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re Relafen Antitrust Litig.*,
  218 F.R.D. 337 (D. Mass. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

*In re Relafen Antitrust Litig.*,
  346 F. Supp. 2d 349 (D. Mass. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 15

*In re Visa Check/MasterMoney Antitrust Litig.*,
  192 F.R.D. 68 (E.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 20

## OTHER AUTHORITY

ABA Section of Antitrust Law, PROVING ANTITRUST DAMAGES: LEGAL AND ECONOMIC
  ISSUES (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## I.    SUMMARY OF ARGUMENT

Conceding that most of the requirements for certification of the direct purchaser class have been met, Defendants hinge their opposition on the erroneous contention that "lost profits" are the only appropriate measure of damages here, even though Plaintiffs are seeking overcharges, *not* lost profits. Not only has this argument been rejected by every court to have considered it – including this Court *in this case*[1] – but Defendants' own expert has effectively conceded that this position is contrary to well-settled law.

What Defendants fail to say *also* speaks volumes. Among other omissions, Defendants' brief ("Dfts.' Br.") fails to address:

• the provisions of Rule 23(a) (Open. Br. at 14-22),[2] and the superiority requirement of Rule 23(b)(3) (*see* Open. Br. at 38-39), thereby implicitly acknowledging their satisfaction;

• the entirely common proof of the underlying antitrust violation that would necessarily predominate in any trial of this matter (Open. Br. at 23-26), thus satisfying Rule 23(b)(3);

• a trio of binding Third Circuit decisions (*Linerboard*, *Bogosian*, and *Warfarin*), supporting certification of the direct purchaser class (Open Br. at, *e.g.*, 2-4); and,

• the numerous opinions certifying direct purchaser classes in directly analogous cases involving impeded generic entry (*e.g.*, *Relafen*, *Buspirone*, and *Lorazepam*). *Id.*

Moreover, Defendants do not dispute the common evidence and analysis of Plaintiffs' expert

---

[1] *See* Direct Purchaser Plaintiffs' Opening Brief (May 8, 2006) ("Open. Br.") at 21 n.22 (quoting March 3, 2006 Tr. at 34 (D.I. 98)) ("Downstream Ruling") (attached to the May 8, 2006 Declaration of Jeffrey S. Goddess, Esq. ("Goddess Decl.") as Ex. E)).

[2] Defendants do briefly suggest a class "conflict" (Dfts.' Br. at 20), but do not assert any Rule 23(a) "adequacy" concerns. The parties have already briefed and argued the issue of this supposed "conflict." *See* Plaintiffs' Letter Brief, dated March 2, 2006 (D.I. 93) (attached as Ex. M to the Oct. 4, 2006 Further Declaration of Jeffrey S. Goddess, Esq. ("Goddess Reply Decl.")). After reviewing the evidence, including letters from the three largest class members supporting the class action, the Court stated, *inter alia*: "I don't see how that [Defendant's assertion that certain class members may have benefitted from the challenged conduct] creates a conflict." *See* Goddess Decl. Ex. E, at 34:2-35:9.

economist, Jeffrey J. Leitzinger, Ph.D., showing the dramatic, market-wide, beneficial economic effects of unimpeded AB-rated generic entry.[3] As detailed below, Defendants' *own executives* have repeatedly acknowledged that, absent the challenged conduct *in this case*, the historical pattern of unimpeded AB-rated generic entry would have played out here, which would necessarily have led to lower fenofibrate prices to *all* direct purchasers.

In light of the undisputed common evidence of the marketwide effects of impeding AB-rated generic entry, Defendants' expert, Mr. Edward Sherry –

(*id.* at 355-64) –

**REDACTED**

*See* Sherry Dep. at 46:21-47:12; 290-291.

Accordingly, Defendants simply do not challenge Plaintiffs' ability to prove – with common evidence – that absent the challenged conduct, all class members would have either: (a) increasingly satisfied their fenofibrate purchase requirements with the far less expensive AB-rated generic versions, *and thus saved money*, or (b) bought branded Tricor at a substantial discount,[5] *and thus saved money*, or, (c) some combination of the two, *and thus saved money*. Defendants have, in short, conceded common proof of impact in the form of overcharges.

---

[3]*See* Open. Br. at 5-7, 9-13, 29-37; Declaration of Jeffrey J. Leitzinger, Ph.D., May 8, 2006 ("Leitz. Decl.") at 12-14, 16-40 (Goddess Decl. Ex. B).

[4]Deposition of Edward Sherry ("Sherry Dep.") at 10-18 (.
            ) (Goddess Reply Decl. Ex. N).  **REDACTED**

[5]Defendants misleadingly contend that Abbott would have raised Tricor's *list* price post unfettered AB-rated generic entry (Dfts.' Br. at 18), but their expert conceded that

Sherry Dep. at 207-209; *see also infra* at 7.           **REDACTED**

-2-

Defendants' class opposition essentially boils down to two arguments: (1) "lost profits," rather than overcharges, should be the measure of damages here because, faced with unimpeded generic competition, Abbott would have halted promotional efforts on Tricor, and thus some of the Tricor/fenofibrate that class members actually purchased from Abbott would not have been purchased (whether in brand or generic form) in the but-for world; and, (2) certain class members purportedly had the ability and obligation to try to overcome Defendants' impediments to competition and "mitigate" some of their overcharges by instituting expensive programs to attempt to convince physicians to switch patients from Tricor to Teva's cheaper fenofibrate products.

Defendants' first contention is a *non sequitur*, relevant (if at all) to *how*, and not *whether*, overcharges should be measured. As shown below, for various reasons, Defendants grossly overstate the likely differential between the actual and but-for size of the fenofibrate market. But, even putting that aside, the contention that every single unit of fenofibrate actually purchased would not have been purchased in the but-for world has *nothing to do* with whether it is appropriate to seek overcharges on fenofibrate in the first place. The undisputed common evidence shows that class members bought fenofibrate in the actual world that they would have purchased at a far lower price in the but-for world. Courts have long held that kind of overpayment represents a recoverable overcharge.[6]

**REDACTED** Defendants' real problem with Plaintiffs' overcharge analysis is that it fails to capture the *net actual economic harm* to direct purchasers. Sherry Dep. at, *e.g.*, 388-392. But, for important public policy reasons      **REDACTED** (*id.* at 396-97), direct purchasers are entitled to recover the full amount of their overcharge, regardless of *other* economic

---

[6]*E.g., Bogosian v. Gulf Oil*, 561 F.2d 434, 455-56 (3d Cir. 1977) ("plaintiffs could elect to prove damages on the basis of an illegal overcharge rather than by proving a loss of net profits"); *In re Cardizem CD Antitrust Litig.*, 332 F.3d 896, 910 (6th Cir. 2003) (purchasers of an expensive brand drug "who allege that they were deprived of a less expensive generic product, forcing them to purchase the higher-priced brand product" have "alleged the 'type of injury' the antitrust laws were meant to prevent"); *see also infra* note 19.

-3-

effects of the challenged conduct. Defendants' argument is therefore without merit.

Defendants' "mitigation" argument is similarly baseless because: (*i*) the evidence, including Defendants' own sources, shows that direct purchasers are effectively powerless to convince physicians to switch to non-AB-rated drugs like Teva's Lofibra; (*ii*) Defendants have not even asserted an essential element of this defense, namely that class members acted *unreasonably* in "failing" to "mitigate"; and, (*iii*) the defense is irrelevant to class certification because, at best, it relates only to quantum of damages, *not* Plaintiffs' ability to prove impact (in the form of overcharges) on a classwide basis. Indeed, it is axiomatic that issues relating solely to quantum of damages pose no obstacle to class certification. *See* Open. Br. at 37 & n. 35 (citing cases).[7] Where, as here, common evidence is available not only to prove the violation, but also to show that all (or nearly all) class members incurred some overcharge, the predominance requirement of Rule 23(b)(3) has been satisfied. *See* Open. Br. at 27-36.

In sum, as detailed below, the proposed direct purchaser class should be certified.[8]

## II.    ARGUMENT

### A.    Plaintiffs' Ability to Prove Impact in the Form of Overcharges With Classwide Evidence Is Undisputed

Plaintiffs' theory of antitrust impact (and damages) is based on largely undisputed classwide evidence, including governmental studies, academic literature, and Defendants' own internal

---

[7]*See also In re Bulk Extruded Graphite Prods. Antitrust Litig.*, 2006 WL 891362, *6 (D.N.J. April 4, 2006) ("factual differences in the amount of damages . . . will not defeat class action certification"). Differences in class members' positions in the market or negotiating power are similarly irrelevant. *Id.* *6, *10-11 (citation omitted).

[8]Defendants' attempt to incorporate "by reference"their Indirect Class opposition brief (Dfts.' Br. at 1) is improper. Neither Plaintiffs nor the Court are required to discern which (and how) arguments made in that very different context are applicable here. *E.g., Helfrich v. Lehigh Valley Hosp.*, 2005 WL 1715689, *4 n. 11 (E. D. Pa. 2005) (court need not "search[] the record . . . like a pig searching for truffles"); *Joint Stock Soc. v. UDV North America, Inc.*, 104 F. Supp.2d 390, 401 (D. Del. 2000) (same).

documents. It is also straightforward: as Dr. Leitzinger has explained, by engaging in a scheme to

interfere with the automatic AB-rated substitution mechanism, and thereby impede less expensive

generic fenofibrate competition, Defendants caused all direct purchasers to pay more for fenofibrate

than they would have paid in the but-for world. Leitz. Decl. at, *e.g.*, 34-36; Deposition of Jeffrey J.

Leitzinger, Ph.D. ("Leitz. Dep.") at 187 (Dfts.' Appx. Ex. 9).

**REDACTED**

---

[9]Dep. of T. Ackerman, 8/3/06 ("Ackerman Dep.") at 51-52, 119-121 (Goddess Reply Decl. Ex. O).

[10]*See* Ackerman Dep. at 81-86; Fiske Dep. at 178:14-179:2 (Goddess Decl. Ex. A); *see also* Leitz. Dep. at 224-25.

[11]Leitz. Decl. at 24-32 (company internal projections show that by forestalling unimpeded AB-rated
(continued...)

**REDACTED**

[12]

Based exclusively on common evidence, Dr. Leitzinger concluded that the class suffered

overcharges in two principal ways: (a) on those Tricor purchases that would have been substituted

with a less expensive AB-rated generic fenofibrate absent the challenged conduct (*i.e.*, the vast

majority), the price differential between Tricor and the less expensive AB-rated generic substitutes

("Brand-Generic" overcharge); and (b) on those (few) Tricor units that would have continued to be

purchased as branded Tricor in the but-for world, the price differential between the price actually

paid and the lower price that would have been paid (including increased discounts) if Tricor had

faced unimpeded generic competition ("Brand-Brand" overcharge).[13]

*As to Brand-Generic overcharges*, Dr. Leitzinger concluded, based solely on common

evidence, that absent the challenged conduct, all (or nearly all) members of the class would have

vastly increased their substitution of lower priced AB-rated generic fenofibrate for branded Tricor,

and thus paid far less per unit for their fenofibrate requirements. Leitz. Decl. at 16-18, 32, 34-36;

---

[11](...continued)

generic competition "Defendants were able to force substantial overcharges broadly across the market");
Fiske Dep. at 80-84 (

); *id.* at 210 (                                                                                          );
Ackerman Dep. at 128-133 (
).                                        **REDACTED**

[12]*See* Fiske Dep. at 296-98; *see also* Open. Br. at, *e.g.*, 10-11 (quoting internal Abbott document
.).

[13]Class members were *also* overcharged, and seek damages on, the relatively few units of fenofibrate
they actually purchased from Teva. Open. Br. at 13, 29-36. Teva's prices were higher than they otherwise
would have been because the challenged conduct blocked the entry of additional AB-rated generic
competitors that would have rapidly brought Teva's prices down. *See* Leitz. Decl. at 30, 37; Leitz. Dep. at
167-68, 177-78.

Leitz. Dep. at 187, 192-94.  Defendants nowhere challenge this analysis.[14]

*As to Brand-Brand overcharges*, Dr. Leitzinger also found, based on common evidence and analysis, that most direct purchasers who continue to buy the brand post-unimpeded AB-rated generic competition usually "do so because they are offered substantial discounts." Leitz. Decl. at 17; 22-24; Leitz. Dep. at 150, 174-77.  Defendants misleadingly contend that Abbott would have raised Tricor's list price post unfettered AB-rated generic entry. Dfts.' Br. at 18.  But their own expert conceded that

(Sherry Dep. at 207-209), and agreed that

**REDACTED**

*Id.* at 235-238.[15]

The plain implication of all of the common evidence is that *all* class members would have

---

[14]Defendants do not dispute that all class members would have bought at least some additional less expensive AB-rated generic in place of the brand in the but for world (and thus paid less overall for fenofibrate).
   Sherry Dep. at 78-79.  Defendants argue that some class members may not have paid overcharges on all of their branded purchases because not all branded purchases would have been substituted with fenofibrate (or any drug) in the but-for world (due to the "generic bypass"). Dfts.' Br. at 21.  But, this relates, if anything, solely to the *quantum* of damages, not the fact of injury. *Cardizem*, 200 F.R.D. at 317 (defendants' "by-pass and offsetting benefits arguments relate to the quantum of damages; not the fact of injury"); Leitz. Dep. at 124-25.  Defendants' pharmacy expert admitted
   (Deposition of Robert P. Navarro, 9/26/06 ("Navarro Dep.") at 154-55 (Goddess Reply Decl. Ex. P)), and Mr. Sherry
   *Id.* at 81; *id.* at 440:21-441:1. Further, in order not to allow the defendant to keep its ill-gotten gains, the generic "bypass" is likely legally irrelevant on the merits *See In re Relafen Antitrust Litig.* ("*Relafen II*"), 346 F. Supp. 2d 349, 369 (D. Mass. 2004) (holding "generic bypass" legally irrelevant).

[15]*See also* Leitz. Decl. at 36-37 (citing internal Abbott planning document discussing ·
                                                                ); Abbott-Tricor 307756, 876-881,
excerpt of 7/27/00 deposition of Joseph Fiske from *Terazosin* (:
                                    ) (Goddess Reply Decl. Ex. O).  Likewise,
Defendants' pharmacy expert readily conceded that
                                    . Navarro Dep. at 122:18-123:19, 124:17-126:16.

been paying less, and likely far less, for fenofibrate (in generic and/or branded forms) absent Defendants' anticompetitive scheme. Indeed, as Dr. Leitzinger has explained, given that class members are broad line resellers, with diverse customer bases, and in light of the common evidence of the dramatic market-wide effects of impeding AB-rated generic competition, it is implausible that any class member would not have paid lower prices on at least some (and likely most) of its fenofibrate purchases in the but-for world. Leitz. Decl. at 34-36; Leitz. Dep. at 187. Defendants do not argue to the contrary.[16]

In short, Defendants do not dispute that common evidence is available to show that all class members were, in fact, overcharged by the challenged conduct. And, while Defendants assert that *if* "lost profits" were the measure of damages here, there would be individual issues relating to "lost revenues" and "profitability" (Dfts.' Br. at 17-22), none of these arguments applies here, where Plaintiffs are claiming overcharges, not lost profits.

Fatal to Defendants' opposition, Mr. Sherry frankly admitted that

**REDACTED**                          .[17] Given that Plaintiffs have properly sought damages solely

---

[16]Defendants' own pharmacy ·

                          **REDACTED**

Navarro Dep. at 123:20-135:10. This is further highlighted by Mr. Sherry's own example
                          While Mr. Sherry irrelevantly analyzes

                          Sherry Dep. at 282; *see, generally, id.* at 273 -83; Ex. 15 to Sherry Dep.
(Goddess Reply Decl. Ex. R).

[17]Sherry Dep. at 50:4-20 ("Q. :

                          )" "A.                **REDACTED**

                                                            (continued...)

-8-

in the form of overcharges, ;

**REDACTED**

.

**B.    Plaintiffs' Proposed Damages Methodology Poses No Obstacles to Class Certification**

As to proving damages, Dr. Leitzinger proposes to utilize a methodology that he has employed successfully in numerous analogous cases on behalf of nearly the same direct purchaser class, involving damages flowing from impeded generic entry. Several of these cases have now settled, in part on the strength of Dr. Leitzinger's damages computations. *See* Leitz. Decl. at 1-3, 26-31; Leitz. Dep. at 196-98; Open. Br. at 36-37.[18] Given Defendants' admissions that the very same pattern of AB-rated generic entry would have played out here absent the challenged conduct, Defendants have offered no reason why Dr. Leitzinger's damages methodology – and proposed use of possible benchmarks, including those employed in Defendants' own contemporaneous internal forecasts and projections (*see* Leitz. Decl. at 32-34) – could pose any obstacles to class certification.

**C.    Overcharge Is the Legally Applicable Measure of Injury and Damages Here**

The Third Circuit recently held that overcharges are "the standard method of measuring damages in [direct purchaser] price enhancement cases," whereas "lost profits" are "disfavored." *Howard Hess Dental Labs., Inc. v. Dentsply Int'l Inc.*, 424 F.3d 363, 374-75 (3d Cir. 2005). Likewise, following a long line of directly applicable Supreme Court and Third Circuit precedents discussed below, courts have repeatedly held that overcharges, precisely as Dr. Leitzinger has

---

[17](...continued)

.'") (emphasis added); *id.* 290:12-291:5.

[18]:

**REDACTED**

. *See* Sherry Dep. at 255-267, 264:2-7; Goddess Reply Decl. Ex. S (Rozek Study); *see also* Leitz. Decl. at 38-39 (discussing Rozek Study).

defined them here, are the appropriate measure of injury and damages in impeded generic entry cases.

Defendants lodge three objections to Plaintiffs' use of overcharges here: (*i*) antitrust damages to direct purchasers should reflect actual economic harm to the purchaser, taking "downstream" sales and profitability into account; (*ii*) though "technically" identical, brands and AB-rated generics are somehow "different products," and that "fact" purportedly makes overcharges untenable; and, (*iii*) the fenofibrate market allegedly grew more in the actual world than it would have but for the challenged conduct, and thus any damages model that proposes to measure overcharges on all units actually purchased (where not all of those units would have been purchased (in any form) in the but-for world) is purportedly improper. None of these arguments has any merit.

## 1. Direct Purchasers Are Entitled to the Full Amount of the Overcharge Regardless of What Happens "Downstream"

Direct purchasers are entitled to recover the entire amount they were overcharged, regardless of whether some or all of that overcharge was passed on down the chain of distribution, or whether the direct purchaser benefitted from the higher price. *E.g.,Bogosian*, 561 F.2d at 455-56.[19] Due to the myriad complications in tracing "downstream" effects, the Supreme Court has held that merely wading into the question of the net effects of the challenged conduct on direct purchasers (by examining their downstream sales and/or other effects of the challenged conduct) would weaken enforcement, undermining the very purposes of the antitrust laws. *Id.*[20] Consequently, what matters

---

[19]*See also Cardizem*, 200 F.R.D. at 309-17; *Relafen*, 218 F.R.D. at 343-44; *Buspirone*, 210 F.R.D. at 58-59. *See also In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144, 1168-70 (3d Cir. 1993) ("*Lower Lake Erie*").

[20]*See also* ABA Section of Antitrust Law, PROVING ANTITRUST DAMAGES: LEGAL AND ECONOIMC ISSUES 184-188 (1996) (Goddess Reply Decl. Ex. T); *Cardizem*, 200 F.R.D. at 316; *Paper Systems v. Nippon Paper Industries*, 281 F.3d 629, 633 (7th Cir. 2002).

in an overcharge case is the effect of the challenged conduct on the sale price to the direct purchaser, and questions about actual economic harm and/or other effects of the challenged conduct are completely irrelevant as a matter of law. *Hanover Shoe v. United Shoe*, 392 U.S. 481, 487-94 (1968); *Bogosian,* 561 F.2d at 455-56; Downstream Ruling, Tr. at 34-35 ("[A]ntitrust injury occurs when you overcharge . . . And it doesn't make a whit of difference what they [direct purchasers] do with that product they get from you afterwards") (Goddess Decl. Ex. E).[21]

Defendants' own economic expert undermined Defendants' "lost profits" argument, and thus effectively Defendants' opposition to the direct purchaser class, by (a)

REDACTED                    (Sherry Dep. at, *e.g.*, 388-392), yet (b)

" *Id.* at 396-97 (emphasis added).

## 2.    Defendants' Unsupported "Different Products" Argument Has Been Repeatedly Rejected

Defendants argue, without any legal support, that the overcharge cannot be measured as the difference between the price of Tricor and the far-lower price for generic fenofibrate that direct purchasers would have paid in the but-for world because brands and AB-rated generics are purportedly "different products." Yet, brands and their AB-rated generic substitutes are certified by the FDA to be the exact same product. *See Cardizem*, 200 F.R.D. at 310-11. Even if they were not, the Third Circuit has unambiguously held that overcharges can reflect a comparison of prices of

---

[21]*See also J.B.D.L. v. Wyeth-Ayerst,* 225 F.R.D. 208, 216 (S.D. Ohio 2003); *In re Visa Check,* 192 F.R.D. 68, 85 (E.D.N.Y. 2000).

*different* substitutable products or services. *See Lower Lake Erie*, 998 F.2d at 1168-70 (overcharges

recoverable based on difference in price between transportation services purchased (rail) and a

different, cheaper transport alternative illegally excluded from the market (truck)).[22]

Every court that has considered Defendants' "different products" argument has explicitly

rejected it. *See Cardizem,* 332 F.3d at 910; *Relafen*, 218 F.R.D. at 343-44; *Buspirone*, 210 F.R.D.

at 58-59. As the *Cardizem* district court explained:

> Defendants' strained attempts to distinguish the facts of this case from other price-fixing cases are to no avail. Cardizem CD and its AB-rated generics are identical in all material respects. . . . . Cardizem CD and its generic bioequivalents are two interchangeable versions (one less costly than the other) of the same drug product. Antitrust law requires only that the two products at issue be close substitutes for each other. Cardizem CD and its generic bioequivalents meet this requirement.

200 F.R.D. at 310-11.

### 3.     Defendants' Contention That the Fenofibrate Market Would Not Have Grown As Much as it Did Absent the Challenged Conduct Relates to Quantum of Overcharges, Not the Propriety of Claiming Overcharges

Defendants argue that Plaintiffs (a) "assume" that class members would have purchased the

same amount of fenofibrate in the actual and but-for worlds (Dfts.' Br. at, *e.g.*, 1-2), and (b) thus

improperly seek to compute overcharge damages on "each purchase of TriCor by members of the

class during the class period" (*id*. at 16), despite the possibility that not all fenofibrate purchases the

class actually made would have been made in the but-for world. This argument rests entirely on false

assumptions, and in any event, relates solely to the appropriate volume of class purchases to which

overcharges should apply (and thus to quantum of damages), *not* whether to compute them at all.

It thus has nothing whatsoever to do with class certification.

---

[22]*See also Lee-Moore Oil v. Union Oil*, 599 F.2d 1299, 1306 (4th Cir. 1979) (there is "no difference in principle between the *Hanover Shoe* situation" and a situation where alleged illegal conduct "has forced [the plaintiff] to purchase alternative products elsewhere at a higher price").

*First*, Defendants' argument is a strawman, attacking claims Plaintiffs do not make. Contrary to Defendants' repeated spurious assertions about the so-called "different drug effect" (Dfts.' Br. at 13-16; Sherry Rep. at ¶ 18 (Dfts.' Appx. Ex. 1)), Plaintiffs do *not* intend to measure overcharges by comparing the price of Tricor with the price of any non-fenofibrate drugs. *See* Leitz. Decl. at 36-40 (describing damages methodology). Nor does Plaintiffs' damages model "assume" that the fenofibrate market would have grown at exactly the same rate in the actual and but-for worlds, as Defendants repeatedly say. *E.g.*, Dfts.' Br. at 12-13.[23]

*Second*, Defendants' assertion that, in the but-for world, "Plaintiffs would not have purchased fenofibrate in most instances" (*id.* at 13) is a gross exaggeration. While Defendants claim that in both parties' "base case" but-for worlds,[24] Abbott likely would have reduced its promotional efforts (mainly detailing to physicians),[25] Defendants' own documents reveal that

## REDACTED
                                                                                        26

---

[23]Plaintiffs instead allow for a host of possible assumptions (and projections) about but-for market size. Leitz. Dep. at 24-26.

[24]Defendants irrelevantly criticize Dr. Leitzinger's reasonable consideration of two alternative but-for worlds (Dfts.' Br. at 4-5), even though Dr. Leitzinger testified without contradiction that: (a) his "base case"was exactly the same as Defendants' own (Dfts.' Br. at 5), which included no Tricor reformulations and the unimpeded entry of AB-rated generic capsules (Leitz. Dep. at 66-68); and (b) his conclusions remain the same regardless of which assumed but-for scenario applied. *Id.* at 19-21.

[25]Though not at all relevant to this motion, Defendants' own internal documents expose
                                                            . Dfts.' Br. at 17. *E.g.*, Fournier-AT
134087-117 at 094 ("[
                        ι") (Goddess Reply Decl. Ex. U); Leitz. Decl. at 16 n.39 (·
                                                            ); Abbott-Tricor 5151-5215 at 5204
(ɪ                                                                    ') (Goddess Reply Decl.
Ex. V); Fiske Dep. at 302-03 (        **REDACTED**

                                                ·") (Goddess Decl. Ex. A).

26·

                                                                            (continued...)

-13-

Accordingly, the common evidence shows that class members would have bought substantial volumes of fenofibrate in the but-for world – mostly in the form of cheaper AB-rated generic fenofibrate – saving them hundreds of millions of dollars during the damages period. That form of overpayment has long been considered a recoverable overcharge. *See supra,* Parts C.1 & C.2.

    ***Third,*** Defendants' expert acknowledged


**REDACTED**

Sherry Dep. at 298-99, 388-89 (·

").[27]  But, as set forth above, the Third Circuit and numerous other courts have expressly held that overcharges are appropriate in directly analogous circumstances. Defendants' own expert

. Sherry Dep.

at 396-97.        **REDACTED**

    ***Fourth,*** Defendants' argument relates solely to the merits – specifically, to how the

---

[26](...continued)
(Sherry Dep. at 322); (b)

(*id.* at 323-24, 327-332); and, (c)    **REDACTED**    *Id.*
at 338-345. *See also* Leitz. Dep. at 46-47.

. Sherry Rep. at 8 n. 5 (Dfts.' Appx. Ex. 1).

*See also* IMPAX258165-168 at 167 (

) (Goddess Reply Decl. Ex. W).

    [27]Absent the challenged conduct, for instance, direct purchasers would have had extra money (both because they may have been buying fewer units of fenofibrate and, as with all artificial price enhancement cases, because they would have been paying less for the units that they did buy).

Dep. at, *e.g.,* 388-92.       . Sherry

**REDACTED**

overcharge is measured, and how much it will be. It is, therefore, completely irrelevant to class certification. There are two possible approaches to assessing overcharges in this context:

(a) Plaintiffs could compute damages based solely on those units of Tricor that the class actually purchased *and* would have purchased as fenofibrate (brand or AB-rated generic) in the but-for world. That is to say, if Defendants are correct that the fenofibrate market would have been smaller absent the challenged conduct, when it comes time to submit damages reports, Plaintiffs could compute overcharges capped by the supposedly *smaller* but-for volume. This approach would logically eliminate Defendants' objection entirely, because the actual and but-for volumes in the damages model would be exactly the same, and overcharges would be sought only for those actual fenofibrate purchases that would have been made in the but-for world (at lower prices).

(b) As a matter of law, to effectuate the principles behind awarding antitrust damages – including disgorging ill-gotten gains and deterring anticompetitive conduct – damages could be computed based on the total volume of Tricor actually purchased. *See Relafen II*, 346 F. Supp. 2d at 369 (overcharges should be computed on total actual volume of brand drug purchased because otherwise antitrust defendant would improperly keep ill-gotten gain).[28] Defendants themselves estimated that their scheme garnered them vast revenues (from the pockets of direct purchasers) that otherwise would not have entered their coffers. Open. Br. at 10-11. To allow Defendants to maintain the fruits of their illegal scheme would undermine the important public policy principles of deterrence and disgorgement underlying the antitrust laws,

**REDACTED**

---

[28]*See supra*, note 20; *Midwest Paper v. Continental Group*, 596 F.2d 573, 585 (3d Cir. 1979) (antitrust damages "deprive[] the violators of all the 'fruits of their illegality' and deter[] further wrongdoing"); *Loeb Indus., Inc. v. Sumitomo Corp.*, 306 F.3d 469, 484 (7th Cir. 2002) (same).

**REDACTED**                     . Sherry Dep. at 396-97.[29]

The bottom line is that overcharges are the measure of damages here, and the undisputed common evidence shows that *all* class members overpaid on at least *some* of their fenofibrate purchases. Whether class members can recover overcharges on each of the units they actually purchased, or only some substantial fraction of those purchases, is a quantum of damages question, irrelevant to class certification. *Bogosian*, 561 F.2d at 456 ("the necessity for calculation of damages on an individual basis should not preclude class determination"); *In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 190 (D.N.J. 2003) ("Defendants' arguments miss the mark in part because they are directed to supposed difficulties in quantifying the amount of the claimants' individual damages, as opposed to the core issue of the fact of antitrust injury"); *see also* Open. Br. at 37 & n.35.

### D.    Defendants' "Mitigation" Defense is Legally Inapplicable, Relates Solely to Quantum of Damages, and Creates no Obstacles to Class Certification

Plaintiffs alleged that Defendants' scheme intentionally impeded Teva's ability to gain market traction by ensuring that Teva's fenofibrate capsules would not be AB-rated to Tricor. *Abbott Labs. v. Teva Pharms. USA, Inc.*, 432 F. Supp. 2d 408, 423 (D. Del. 2006). Indeed, Teva was forced to forego benefitting from the efficient AB-rated switching mechanism, and launch its generic capsule product as a brand (Lofibra) *because* Defendants' first "product switch" left Teva's generic capsules with no corresponding brand. Open. Br. at 7-9. Yet, Defendants assert that Plaintiffs cannot prove damages on a classwide basis because certain class members purportedly had the ability, and

---

[29]Plaintiffs could model their damages analysis on that adopted in the peer-reviewed Rozek Study (Goddess Reply Decl. Ex. S), which computed overpayments caused by an hypothesized two-year delay of AB-rated generic entry. The authors assumed that the sales volume of the drug molecule would rise substantially over the period of delay, *and* computed overpayments based on that higher actual volume. Rozek Study, at 30 (market growth from $590 to $700 million); Sherry Dep. at 255-61.

duty, to mitigate a portion of their overcharge damages by "choosing" to purchase Teva's fenofibrate products. This argument, repeated over and over in Defendants' brief (Dfts.' Br. at 2-3, 6-10, 23-24), is both wrong on the merits and irrelevant to class certification.

   *First*, the vast majority of class members are wholesalers and retail pharmacies. Neither of these drug reseller groups has the ability to influence the drugs that physicians prescribe, and thus no real ability to shift demand to a non-AB-rated product. Mr. Sherry himself testified that: (a)

REDACTED                                    ." (Sherry Dep. at 111); and (b)

                                                                                *Id.* at 111-12.

Accordingly, by ensuring Tricor would have no AB-rated generic equivalent, Defendants' scheme effectively eliminated even the possibility of class members' "mitigating" some of the anticompetitive harm by switching to Teva's products.

   *As to wholesalers*, Defendants irrelevantly reference certain marketing programs designed to promote the sales of particular AB-rated generic competitors. Dfts.' Br. at 8-10. But, Defendants not only admit                          **REDACTED**

(Sherry Rep. at ¶ 39), but also have previously (and correctly) asserted that wholesalers *cannot*, in fact, influence demand for branded drugs.[30] Defendants also admitted

                                                                      . Sherry Dep. at 125-28.

   *As to retailers*, through its 30(b)(6) witness,        **REDACTED**

                                                                      . Fiske Dep. at 48:13-50:24

---

   [30]As Abbott asserted in a motion to unseal documents in connection with this case, the proposed "direct purchaser class would include **purchasers that do not have power to influence demand (e.g., wholesalers)**[.]" *Albertson's, Inc. v. Abbott Laboratories*, No. 94-CV-3669, Memorandum in Support of Abbott Laboratories' Motion for Permission to Use Documents Covered by a Protective Order, at 2 (N.D. Ill. June 12, 2006) (Goddess Reply Decl. Ex. X).

(concurring with finding in *J.B.D.L.*, 225 F.R.D. at 215); Navarro Dep. at 196-201 (

REDACTED

").

Defendants try to side-step these admissions by arguing that pharmacies' ability to influence

non-AB-rated switching is enhanced where the proposed substitution is to a non-AB-rated drug with

the same chemical entity, such as between Tricor and Lofibra.[31] But, Defendants' own evidence

shows that if a drug is not AB rated, pharmacies cannot materially influence drug substitution (and

thus demand).

REDACTED

." Dfts.' Br. at 8 (emphasis added). Similarly,

' Abbott-Tricor 157647-652 at 648 (emphasis added) (Goddess

Reply Decl. Ex. Y). Thus, Defendants' "mitigation" argument relates, at most, only to a handful of

non-wholesaler, non-retail pharmacy class members – mainly mail-order pharmacies whose affiliate

pharmacy benefits managers ("PBMs") employ "formularies" to attempt to influence what physicians

prescribe.

*Second*, even if class members had the *ability* to affect non-AB-rated switching, Defendants

cannot establish, as they must for the defense to apply, that class members had the *duty* to do so. It

---

[31]Defendants' "supporting" evidence includes: (a) a supposed 1994 Walmart "policy memo" purportedly "describing [sic] policy to 'switch' single chemical entity products"(though the memo is not attached) (Dfts.' Br. at 7); and (b)                                                          Sherry Rep. ¶ 41. As to the former, Defendants offered *no evidence* that Walmart's supposed "policy" (even if it once actually existed) succeeded in inducing a single non-AB-rated substitution, or that such a "policy" survived into the class period.

Sherry Dep. at 144-54.                          **REDACTED**

is well settled that there is no duty to mitigate if it would be economically unreasonable for a plaintiff to attempt it.[32] In light of the time and expense necessary even to attempt to overcome Defendants' scheme to impair the AB-rated automatic generic substitution mechanism,[33] Defendants' expert admitted that

**REDACTED**                    . Sherry Dep. at 168:18-169:24; *see also* Leitz. Dep. at 238-39. Accordingly, Defendants' mitigation defense is inapplicable and irrelevant to class certification.

*Third*, whatever its merits, the mitigation argument relates solely to quantum of damages. Defendants do not even claim that any class member had the ability (and/or duty) to sidestep *all* overcharges by switching all of its prescriptions to Teva's products. Indeed, even direct purchaser mail order pharmacies, whose PBM affiliates have some control over demand for drugs through formularies promulgated by health plans who are the PBM's clients, could not possibly have avoided dispensing (and thus purchasing) at least some Tricor (at artificially inflated prices).[34] Moreover, and critically, Plaintiffs allege – and the common evidence shows – that by (a) impeding Teva's AB-rated generic capsule opportunity, and thereby forcing Teva to incur the additional expense of launching its fenofibrate product as brand (Lofibra), and, (b) impeding the entry of *additional* AB-rated generic capsule manufacturers (*e.g.*, Impax),[35] Defendants' anticompetitive scheme inflated

---

[32]*Malcolm v. Marathon Oil Co.*, 642 F.2d 845, 863 (5th Cir. 1981) (no duty to mitigate where unreasonable to do so because costs exceed benefits); *Litton Systems, Inc. v. American Telephone & Telegraph Co.*, 700 F.2d 785, 820 (2d Cir. 1983) (same).

[33]*E.g.*, Abbott-Tricor 296885-86 at 86                    **REDACTED**

.") (emphasis added) (Goddess Reply Decl. Ex. Z).

[34]*See* Navarro Dep. at 192-93 ('

.") ; *id.* at 162-65 ('    **REDACTED**

:).

[35]Consolidated Amended Complaint at ¶¶ 41, 92, 159; *see also* Leitz. Decl. at 30-31.

Teva's prices, and impaired the normal competitive conditions that would have brought those prices down over time.

Thus, Defendants' scheme artificially inflated *Teva's* fenofibrate prices as well as Abbott's.[36] Accordingly, Plaintiffs' common economic analysis shows that even a hypothetical class member, who somehow had the ability to overcome Defendants' anticompetitive roadblocks – and switch *all* of its customers to Teva's fenofibrate products – would nevertheless have paid overcharges on *all* of its fenofibrate purchases due to Defendants' exclusionary scheme.[37]  The mitigation defense, therefore, has no conceivable relation to common proof of impact on all of its purchases, because even a direct purchaser who could switch to Teva's products would have suffered antitrust impact due to the challenged conduct.  Given that individual issues with regard to proof of damages do not affect the propriety of class certification,[38] Defendants' "mitigation" defense – like all of Defendants' arguments – poses no obstacle to class certification.[39]

## III.    CONCLUSION

For the reasons set out in Plaintiffs' opening class papers, and set forth above, the Court should grant Plaintiffs' motion for class certification.

---

**REDACTED**

[36]*See supra* note 13; Sherry Dep. at 201:13-23 (                              l"); *id.* at 188:8-189:19.

[37]*Visa*, 192 F.R.D. at 86 (noting that complete mitigation was impossible because every merchant would suffer some harm from challenged conduct).

[38]*E.g., Cardizem II*, 200 F.R.D. 326, 347 (E.D. Mich. 2001) (mitigation relates to quantum of damages and thus not a basis to deny class certification).

[39]Defendants' challenge to Meijer's adequacy (as one of three class representatives) based on Meijer's status as an express assignee (Dfts.' Br. at 25) is both irrelevant to class (because they do not challenge the adequacy of the other two class representatives), and without substantive merit. *See, e.g., In re Fine Paper Litig.*, 632 F.2d 1081, 1090 (3d Cir. 1980) (assignee proper class representative); *Cardizem*, 200 F.R.D. at 306 (same).  Defendants also contest the propriety of class treatment for Plaintiffs' injunctive relief claim (Dfts.' Br. at 26-27), but Plaintiffs have not moved for certification of that claim.

Dated: October 4, 2006                     Respectfully submitted,


                                           _____
                                           Jeffrey S. Goddess (Del. Bar No. 630)
                                           ROSENTHAL, MONHAIT & GODDESS, P.A.
                                           919 Market Street, Suite 1401
                                           P.O. Box 1070
                                           Wilmington, Delaware 19899-1070
                                           Tel: (302) 656-4433
                                           Fax: (302) 658-7567

                                           *Liaison Counsel for Direct Purchaser Class Plaintiffs*

                                           Bruce E. Gerstein
                                           Barry Taus
                                           Adam Steinfeld
                                           GARWIN, GERSTEIN & FISHER, L.L.P.
                                           1501 Broadway, Suite 1416
                                           New York, NY 10036
                                           Tel: (212) 398-0055
                                           Fax: (212) 764-6620

                                           *Lead Counsel for Direct Purchaser Class Plaintiffs*

On the Brief:

Daniel Berger
Eric L. Cramer
Peter R. Kohn
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215) 875-4604

*Counsel for Direct Purchaser Class Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2006 I electronically filed the foregoing document using CM/ECF, which will send notification of such filing to all registered participants, including:

Josy W. Ingersoll, Esquire
John W. Shaw, Esquire
Karen Keller, Esquire
Young Conaway Stargatt
  & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
P. O. Box 391
Wilmington, DE 19899-0391

Mary B. Graham, Esquire
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P. O. Box 1347
Wilmington, DE 19899

Frederick L. Cottrell, III, Esquire
Anne Shea Gaza, Esquire
Richards Layton & Finger
One Rodney Square
920 North King Street
Wilmington, DE 19801

Mary B. Matterer, Esquire
Morris James Hitchens & Williams LLP
222 Delaware Avenue
10th Floor
P. O. Box 2306
Wilmington, DE 19899

Pamela S. Tikellis, Esquire
Robert J. Kriner, Jr., Esquire
A. Zachary Naylor, Esquire
Chimicles & Tikellis LLP
One Rodney Square
P. O. Box 1035
Wilmington, DE 19899

Jonathan L. Parshall, Esquire
Murphy Spadaro & Landon
1011 Centre Road
Suite 210
Wilmington, DE 19801

Elizabeth M. McGeever, Esquire
Prickett Jones Elliott, P.A.
1310 King Street
P. O. Box 1328
Wilmington, DE 19899

Michael I. Silverman, Esquire
Lynn A. Iannone, Esquire
Silverman & McDonald
1010 N. Bancroft Parkway #22
Wilmington, DE 19805

Patrick Francis Morris, Esquire
Morris & Morris
1105 North Market Street
Suite 803
Wilmington, DE 19801

I hereby certify that on October 16, 2006 I sent by electronic mail the foregoing

document to the following non-registered participants:

REPRESENTING DIRECT PURCHASER CLASS
(C.A. No. 05-340):

Bruce E. Gerstein
**bgerstein@garwingerstein.com**

Barry S. Taus
**btaus@garwingerstein.com**

Adam M. Steinfeld
**asteinfeld@garwingerstein.com**

Rimma Neman
**rneman@garwingerstein.com**

Daniel Berger
**danberger@bm.net**

Eric L. Cramer
**ecramer@bm.net**

Peter Kohn
**pkohn@bm.net**

Neill W. Clark
**nclark@bm.net**

Linda P. Nussbaum
**lnussbaum@cmht.com**

Steig D. Olson
**solson@cmht.com**

David P. Germaine
**dgermaine@vaneklaw.com**

Joseph Vanek
**jvanek@vaneklaw.com**

Stuart Des Roches
**stuart@odrlaw.com**

Andrew Kelly
**akelly@odrlaw.com**

Adelaida Ferchmin
**aferchmin@odrlaw.com**

David P. Smith
**dpsmith@psfllp.com**

Russell A. Chorush
**rchorush@hpcllp.com**

Michael F. Heim
**mheim@hpcllp.com**

REPRESENTING WALGREEN, ECKERD,
KROGER, MAXI, CVS, RITE AID
(C.A. No. 05-340):

Elizabeth M. McGeever
**emmcgeever@prickett.com**

Scott E. Perwin
**sperwin@kennynachwalter.com**

Lauren Ravkind
**lravkind@kennynachwalter.com**

Joseph T. Lukens
**jlukens@hangley.com**

REPRESENTING PACIFICARE
(C.A. No. 05-340):

Jonathan L. Parshall
**jonp@msllaw.com**

William Christopher Carmody
**bcarmody@susmangodfrey.com**

John Turner
**jturner@susmangodfrey.com**

Shawn Rabin
**srabin@susmangodfrey.com**

Justin Nelson
**jnelson@susmangodfrey.com**

Ken Zylstra
**kzylstra@sbclasslaw.com**

Lyle Stamps
**lstamps@sbclasslaw.com**

Steve Connolly
**sconnolly@sbclasslaw.com**

Casey Murphy
**cmurphy@sbclasslaw.com**

Mark Sandman
**mms@rawlingsandassociates.com**

Jeffrey Swann
**js5@rawlingsandassociates.com**

REPRESENTING IMPAX
LABORATORIES (C.A. No. 03-120)

Mary Matterer
**mmatterer@morrisjames.com**

John C. Vetter
**jvetter@kenyon.com**

Asim Bhansali
**abhansali@kvn.com**

REPRESENTING INDIRECT PARTY
PLAINTIFFS (C.A. No. 05-360):

Pamela S. Tikellis
Thomas M. Sobol
Patrick E. Cafferty
Jeffery L. Kodroff
Bernard J. Persky
Michael Gottsch
A. Zachary Naylor
Robert Davis
Brian Clobes
Michael Tarringer
Tim Fraser
David Nalven
Greg Matthews
Christopher McDonald
Kellie Safar
Ted Lieverman
Pat Howard
**tricor@chimicles.com**

Michael I. Silverman
mike@silverman-mcdonald.psemail.com

Lynn A. Iannone
lynn@silverman-mcdonald.psemail.com

Patrick Francis Morris
**pmorris@morrisandmorrislaw.com**

REPRESENTING TEVA
PHARMACEUTICALS (C.A. No. 02-1512):

Josy W. Ingersoll
Bruce M. Gagala
Karen E. Keller
Christopher T. Holding
Ken Cohen
Elaine Blais
**tricor@ycst.com**

REPRESENTING ABBOTT (ALL CASES):       Mary B. Graham
**tricor@mnat.com**

William F. Cavanaugh
**wfcavanaugh@pbwt.com**

Chad J. Peterman
**cjpeterman@pbwt.com**

REPRESENTING FOURNIER (ALL CASES):     Frederick L. Cottrell, III
Anne Shea Gaza
Steven S. Sunshine
Matthew P. Hendrickson
Bradley J. Demuth
Maggie DiMoscato
Timothy C. Bickham
**tricor@rlf.com**

*/s/ Jeffrey S. Goddess*
Jeffrey S. Goddess (Del. Bar No. 630)
Jessica Zeldin (Del. Bar No. 3558)
Rosenthal, Monhait & Goddess, P.A.
Suite 1401, 919 Market Street
P. O. Box 1070
Wilmington, DE 19899-1070
(302) 656-4433
jgoddess@rmgglaw.com
jzeldin@rmgglaw.com