**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE: TRICOR DIRECT PURCHASER ANTITRUST LITIGATION | ) ) ) ) ) ) |
| | C.A. No. 05-340 (SLR) |
| | Hon. Sue L. Robinson, U.S.D.J. |
| THIS DOCUMENT RELATES TO: ALL ACTIONS C.A. No. 05-340 (Louisiana Wholesale) C.A. No. 05-351 (Rochester Drug) C.A. No. 05-358 (Meijer, Inc., et al.) | ) ) ) ) ) ) |

### DIRECT PURCHASER CLASS PLAINTIFFS' CITATION OF SUBSEQUENT AUTHORITY IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION

In accordance with D.Del. LR 7.1.2(b), and in further support of their Motion for Class Certification (D.I. 106-109, 249-250), the Direct Purchaser Plaintiffs ("Directs") wish to inform the Court about *still another* on-point decision certifying, under Rule 23(b)(3), a nearly identical class of direct purchasers of pharmaceuticals seeking overcharge damages due to impeded generic drug competition: *In re Wellbutrin SR Direct Purchaser Antitrust Litig.*, No. 04-5525, Mem. & Order (E.D. Pa. May 2, 2008) (attached as Exhibit "A") ("*Wellbutrin*").

*Wellbutrin*, issued just after the Directs' recent Supplemental Brief (D.I. 390), brings the total number of such directly on-point decisions certifying the same direct purchaser class, claiming overcharges due to impeding generic competition, to *eight (8)*. Moreover, *Wellbutrin* is another decision that explicitly rejects the very same arguments Defendants have asserted here. In *Wellbutrin*:

      1.     the district court found that overcharges "is the proper measure of recovery in this antitrust case" (*Wellbutrin*, at 13);

      2.     The district court found that impact, defined as overcharges and measured precisely as the Directs are seeking here, could be proved on a classwide basis. The *Wellbutrin* court credited evidence and expert analysis directly analogous to that which Dr. Leitzinger relies upon here to prove impact on a classwide basis, including: (a) "actual data," (b) "literature examining the impact of generic entry into the pharmaceutical market," and (c) "analysis of public data collected on dispensation and purchases of prescription drugs" (*Wellbutrin*, at 17, 18, 19 n.20, 20 n.21);[1]

      3.     the district court rejected the defendant's argument that, because the price of branded Wellbutrin SR purportedly would not have decreased in the but-for world, the class improperly "include[d] purchases of Wellbutrin SR that would not have been converted to generic purchases" in the but-for world — the same "brand price" argument Defendants (D.I. 382 at 3-6) make here (*Wellbutrin* at 21-23);[2] and

      4.     the district court rejected (as Judge Jordan earlier did here (D.I. 107 at 21 n.22)), defendant's argument that a some absent class members may have "profited" from the suppression of generic competition, reasoning that any economic benefits a wholesaler may have derived from suppressed generic entry were "legally irrelevant" (*Wellbutrin*, at 13-14).

---

[1] The *Wellbutrin* court also found that classwide damages could be sufficiently estimated using a "yardstick approach," the very approach Dr. Leitzinger (who refers to the method as the "benchmark approach") proposes for this case. *See* Goddess Decl. (D.I. 109) Ex. B at 36-40.

[2] The *Wellbutrin* court reasoned, *inter alia*, that if it turned out there were direct purchasers who were not overcharged because they would not have bought any generic Wellbutrin SR in the but-for world, the court could "remove those members from the class." *Id.* at 23.

We invite the Court's attention to *Wellbutrin*.

Dated: May 6, 2006                          Respectfully submitted,



Jeffrey S. Goddess (Del. Bar No. 630)
ROSENTHAL, MONHAIT & GODDESS, P.A.
919 Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE 19899-1070
(302) 656-4433
jgoddess@rmgglaw.com

*Liaison Counsel for Direct Purchaser Class Plaintiffs*

Bruce E. Gerstein
Barry Taus
Adam Steinfeld
GARWIN, GERSTEIN & FISHER, L.L.P.
1501 Broadway, Suite 1416
New York, NY 10036
Tel: (212) 398-0055
Fax: (212) 764-6620

*Lead Counsel for Direct Purchaser Class Plaintiffs*

On the Brief:

Daniel Berger
Eric L. Cramer
Peter R. Kohn
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215) 875-4604

*Counsel for Direct Purchaser Class Plaintiffs*

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **In Re: WELLBUTRIN SR** : | **CIVIL ACTION** |
| **DIRECT PURCHASER** : | **NO. 04-5525** |
| **ANTITRUST LITIGATION** : | |

## MEMORANDUM AND ORDER

**Kauffman, J.**                                                    **May   2, 2008**

Now before the Court is the Direct Purchaser Plaintiffs' Motion for Class Certification.

For the reasons discussed below, the Motion will be granted.

## I. BACKGROUND

Defendant SmithKline Beecham Corporation d/b/a GlaxoSmithKline ("Defendant" or

"GSK") manufactures and sells Wellbutrin SR, a drug used to treat depression.[1]  SAJ

Distributors, Inc., Stephen L. LaFrance Holdings, Inc., Meijer, Inc., and Meijer Distribution, Inc.

(the "Named Plaintiffs") seek to represent a class of plaintiffs (the "Direct Purchaser Plaintiffs")

that purchased Wellbutrin SR directly from GSK after Wellbutrin SR was introduced in 1997.

On behalf of the Direct Purchaser Plaintiffs, it is alleged: (1) Defendant unlawfully extended its

monopoly over Wellbutrin SR by making fraudulent assertions to the United States Patent and

Trademark Office and by engaging in "sham" litigation against generic drug manufacturers

---

[1]     Wellbutrin SR is a sustained release drug using the active ingredient bupropion
hydrochloride.  Defendant markets Wellbutrin SR in 100mg, 150mg, and 200mg dosage
strengths.  The 200mg dosage strength is not at issue in this case.

-1-

seeking to market less expensive versions of the drug[2]; (2) Because the litigation delayed the

market entry of generic versions of Wellbutrin SR, the class members were forced to pay

unnecessarily high prices for the drug because no generic alternatives were available for nearly

two years after Defendant's patent monopoly would have expired[3]; and (3) Defendant filed the

baseless infringement suits against the generic manufacturers solely to preserve its monopoly

during the pendency of the infringement litigation.[4] The Named Plaintiffs have filed for

certification of the Direct Purchaser Plaintiff class.[5]

## II. LEGAL STANDARD

Before certifying a class pursuant to Federal Rule of Civil Procedure 23, the Court must

undertake a "rigorous analysis" to ensure that all requirements are met. Gen. Tel. Co. v. Falcon,

---

[2]       This Memorandum contains only an abbreviated version of the facts relevant to
the instant Motion. For a more detailed recitation of the background facts and allegations against
Defendant, see In re Wellbutrin SR Antitrust Litigation, 2006 U.S. Dist. LEXIS 9687 (E.D. Pa.
Mar. 9, 2006).

[3]       In a related action (civil no. 04-5898), the "end-payor plaintiffs" make the same
allegations against Defendant. The end-payor plaintiffs are the persons last in the chain of
distribution and include consumers, health care benefit plans, health maintenance organizations,
health insurers, hospitals, nursing homes, and self-insured employers. The end-payor plaintiffs
have also filed a motion for class certification, which will be addressed in a separate
memorandum and order. A third action (civil no. 05-396) involves a "third-party payor" making
the same allegations against Defendant. That action has not been brought on behalf of a class.

[4]       Earlier in this litigation, Defendant moved to dismiss claims in the various
complaints. On March 9, 2006, the Court issued a Memorandum and Order dismissing without
prejudice the claims of fraudulent prosecution of a patent and the claims seeking injunctive relief
pursuant to the Clayton Antitrust Act. The Court denied Defendant's motions to dismiss in all
other respects.

[5]       As explained infra, the Named Plaintiffs are assignees of direct purchasers and
seek to represent the Direct Purchaser Plaintiff class. For the purposes of this Memorandum and
Order, the "Named Plaintiffs" shall be referred to as the "Direct Purchaser Plaintiffs," and the
Motion for Class Certification shall be referred to as the "Direct Purchaser Plaintiffs' Motion" or
the "Motion."

-2-

457 U.S. 147, 161 (1982). The Court may certify a class action only if the Direct Purchaser

Plaintiffs satisfy all four provisions of Rule 23(a) and at least one provision of Rule 23(b). See,

e.g., Amchem Prods. v. Windsor, 521 U.S. 591, 613-14 (1997). Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on
> behalf of all members only if:
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or
> defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the
> class.

To satisfy Rule 23(b)(3),[6] the Direct Purchaser Plaintiffs must demonstrate that "the questions of

law or fact common to class members predominate over any questions affecting only individual

members, and that a class action is superior to other available methods for fairly and efficiently

adjudicating the controversy."

Although the Court generally should avoid delving into the merits of the action at the

class certification stage, the Third Circuit has recognized that in some instances, a minimal

inquiry into the merits may be necessary to determine whether the Rule 23 requirements have

been met. See Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 168 (3d

Cir. 2001) ("In reviewing a motion for class certification, a preliminary inquiry into the merits is

sometimes necessary to determine whether the alleged claims can be properly resolved as a class

action."); see also In re Hydrogen Peroxide Antitrust Litig., 240 F.R.D. 163, 170 (E.D. Pa. 2007)

(explaining that although an inquiry into the merits may be necessary to certify a class, the court

must not "make judgments about whether plaintiffs have adduced enough evidence or whether

---

[6]     Because the Direct Purchaser Plaintiffs seek certification under Rule 23(b)(3), the
Court will confine its analysis to that standard and will not consider whether the proposed class
meets the requirements of Rule 23(b)(1) or (b)(2).

-3-

their evidence is more or less credible than defendants' [evidence]"). "When doubt exists

concerning certification of the class, the court should err in favor of allowing the case to proceed

as a class action." Williams v. Empire Funding Corp., 227 F.R.D. 362, 372 (E.D. Pa. 2005); see

also Eisenberg v. Gagnon, 766 F.2d 770, 785 (3d Cir. 1985).

## III. THE CLASS CERTIFICATION MOTION

The Direct Purchaser Plaintiffs allege that Defendant violated Section 2 of the Sherman

Antitrust Act, 15 U.S.C. § 2, causing them to pay inflated prices for bupropion from the time

Defendant's monopoly was extended until the time the price of bupropion reached competitive

levels.[7] They seek to certify a class defined as "all persons or entities in the United States,

excluding governmental entities, that purchased the 100mg or 150mg dosage of Wellbutrin SR

directly from GSK during the period from January 24, 2002 to June 30, 2006."[8]

### A. Rule 23(a)

#### 1. Numerosity

The Direct Purchaser Plaintiffs estimate that the class is comprised of approximately 100

direct purchasers of Wellbutrin SR dispersed throughout the United States. While "[n]o magic

number exists satisfying the numerosity requirement," Moskowitz v. Lopp, 128 F.R.D. 624, 628

---

[7]     As explained in the Consolidated Amended Class Action Complaint, generic
bupropion entered the market in January 2004. The Direct Purchaser Plaintiffs allege that the
class period begins on January 24, 2002, the date on which generic entry would have occurred
but for Defendant's allegedly anticompetitive conduct. They allege that the class period ends on
June 30, 2006, the date on which prices stabilized at competitive levels.

[8]     Defendant also manufactures Zyban, which is the chemical equivalent of
Wellbutrin SR. Defendant assigned the drug two different names for marketing purposes:
Wellbutrin SR is marketed to treat depression, whereas Zyban is marketed to aid in smoking
cessation. Although the Direct Purchaser Plaintiffs' Original Complaint and Consolidated
Amended Class Action Complaint refer to both Zyban and Wellbutrin SR, they seek class
certification only for direct purchasers of Wellbutrin SR.

(E.D. Pa. 1989), the number of class members present in this case easily satisfies the numerosity requirement. See, e.g., Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001) ("[G]enerally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."). The fact that the Direct Purchaser Plaintiffs have not specified the precise number and location of class members does not defeat a finding of numerosity. See, e.g., Hanrahan v. Britt, 174 F.R.D. 356, 362 (E.D. Pa. 1997) ("The exact number or identity of the members of the plaintiff class is not required."). Given the number of potential class members throughout the United States, the Court finds that joinder of all members is impracticable. See, e.g., Eisenberg, 766 F.2d at 785-86 ("The allegation of more than 90 geographically dispersed plaintiffs met the numerosity requirement of Fed. R. Civ. P. 23(a)(1).").

### 2. Commonality

"The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." Baby Neal for & by Kanter v. Casey, 43 F.3d 48, 56 (3d Cir. 1994) (citing In re "Agent Orange" Prod. Liab. Litig., 818 F.2d 145, 166-67 (2d Cir. 1987); Weiss v. York Hosp., 745 F.2d 786, 808 (3d Cir. 1984)). "A finding of commonality does not require that all class members share identical claims, and indeed 'factual differences among the claims of the putative class members do not defeat certification.'" In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 310 (3d Cir. 1998) (quoting Baby Neal, 43 F.3d at 56). Because only one issue must be common to the class, the burden for meeting this requirement is low. See Baby Neal, 43 F.3d at 56.

In the instant case, the Direct Purchaser Plaintiffs point to a series of common questions, including, inter alia: (1) whether Defendant made misrepresentations to the United States Patent and Trademark Office; (2) whether Defendant initiated sham litigation against potential generic

-5-

manufacturers; (3) whether this litigation was designed to maintain Defendant's monopoly; (4)

whether this conduct delayed entry of a generic version of Wellbutrin SR; and (5) whether this

conduct resulted in artificially high prices for the drug. The Court finds that given these

numerous common questions, the commonality requirement is satisfied. This conclusion is

consistent with the findings of other courts in cases where a drug manufacturer allegedly engaged

in anticompetitive conduct in order to prevent generic drugs from entering the market. See

Meijer, Inc. v. Warner Chilcott Holdings Co. III, 246 F.R.D. 293, 300 (D.D.C. 2007) ("Plaintiffs

correctly assert that their claims raise numerous common issues of fact and law, including . . .

whether Defendants' activities have substantially affected interstate commerce. . . whether, and

to what extent, Defendants' conduct caused direct purchasers to pay more for Ovcon 35 Products

than they would have absent Defendants' conduct; and . . . the appropriate measure of

damages."); In re Relafen Antitrust Litig., 218 F.R.D. 337, 342 (D. Mass. 2003) ("The factual

questions common to the class members' claims include whether SmithKline engaged in the

alleged anticompetitive conduct and whether and to what extent this conduct resulted in

overcharges. . . . The legal questions common to the class members' claims include whether

SmithKline's conduct violated Section 2 of the Sherman Act." (citation omitted)); In re

Buspirone Patent & Antitrust Litig., 210 F.R.D. 43, 57 (S.D.N.Y. 2002) ("There are also

numerous common questions of fact and law at issue among the members of the proposed class

concerning whether BMS engaged in the anticompetitive conduct alleged, the scope of this

conduct, and whether this conduct resulted in any overcharges in the market for buspirone.").

### 3. Typicality

"[T]ypicality entails an inquiry whether 'the named plaintiff's individual circumstances

are markedly different or . . . the legal theory upon which the claims are based differs from that

-6-

upon which the claims of other class members will perforce be based.'" Eisenberg, 766 F.2d at

786 (quoting Weiss, 745 F.2d at 809 n.36). As with the commonality requirement, "[t]he

threshold for establishing typicality is low." Zlotnick v. Tie Commc'ns, Inc., 123 F.R.D. 189,

193 (E.D. Pa. 1988). The Third Circuit has noted that "cases challenging the same unlawful

conduct which affects both the named plaintiffs and the putative class usually satisfy the

typicality requirement irrespective of the varying fact patterns underlying the individual claims."

Baby Neal, 43 F.3d at 58.

     In the instant case, the Named Plaintiffs are challenging the same alleged conduct that

affects all other members of the putative class: Defendant's alleged fraud and filing of frivolous

lawsuits in order to maintain its monopoly.[9] This conduct affected all class members in precisely

the same way, as all direct purchasers allegedly paid higher prices for bupropion because generic

manufacturers were prevented from competing with Defendant for approximately two years.

Accordingly, the Court finds that the typicality requirement is met. See, e.g., Meijer, Inc., 246

F.R.D. at 301-02 (finding that direct purchaser class representatives, including the lead plaintiffs

in the instant action, had claims typical of the class where the defendants allegedly delayed entry

of generic drugs into the market); In re Relafen, 218 F.R.D. at 343 ("Louisiana Wholesale, lead

direct purchaser plaintiff, bases its claims on the same 'core pattern of alleged anti-competitive

conduct' that gives rise to all class members' claims. Accordingly, the claims of Louisiana

Wholesale are typical of those asserted by other members of the class." (citation omitted)); In re

Buspirone, 210 F.R.D. at 57 ("Louisiana Wholesale alleges that it was injured in the same

general way and by the same general course of conduct that allegedly injured the other members

---

    [9]    Although Defendant does not argue that the typicality requirement is not met,
several of its challenges to the adequacy of representation factor also relate to typicality. To the
extent that the issues overlap, the Court will consider Defendant's arguments together in Section
III.A.4, infra.

of the class; it asserts liability based on legal theories that are common to the class; and it clearly

has adequate individual incentives to prove all of the elements of the causes of action that

individual members of the class would bring individually. Louisiana Wholesale's claims are thus

typical of most of the other members of the purported class.").

### 4. Adequacy of Representation

"The adequacy of representation inquiry has two components intended to assure that the

absentees' interests are fully pursued: it considers whether the named plaintiffs' interests are

sufficiently aligned with the absentees', and it tests the qualifications of the counsel to represent

the class." In re Gen. Motors Corp. Pick-Up Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 800 (3d

Cir. 1995) (citing Weiss, 745 F.2d at 811). With respect to the qualifications of counsel, the

Direct Purchaser Plaintiffs have selected Dianne M. Nast, RodaNast, P.C., as lead counsel. The

Direct Purchaser Plaintiffs have submitted extensive documentation reflecting the experience of

lead counsel and her co-counsel in managing class action litigation, including numerous antitrust

and pharmaceutical actions. See Decl. of Dianne M. Nast, attached to the Mot. at Ex. B;

Curriculum Vitae of Daniel E. Gustafson, attached to the Mot. at Ex. G; Curriculum Vitae of

Arnold Levin, attached to the Mot. at Ex. H; Curriculum Vitae of Michael L. Roberts, attached to

the Mot. at Ex. I. Counsel represent that they have expended time and resources researching the

history of the case, consulting with economists, and developing legal theories to support their

claims. After reviewing the documentation submitted by the Direct Purchaser Plaintiffs, the

Court concludes that class counsel are qualified to represent the class.

With respect to the interests of the Named Plaintiffs in relation to the remaining class

members, Defendant raises three challenges to the adequacy of their representation: (1) Because

the named plaintiffs are assignees rather than direct purchasers, they cannot represent a class of

-8-

direct purchasers. (2) SAJ, one of the named plaintiffs, is subject to a unique defense, rendering

it inadequate to represent the class. (3) There are significant conflicts among members of the

proposed class. In challenging the adequacy of the named plaintiffs as class representatives,

Defendant bears the burden. See, e.g., Piper v. Portnoff Law Assocs., 215 F.R.D. 495, 502 (E.D.

Pa. 2003).

### a. Assignees

Defendant asserts that the Named Plaintiffs are not direct purchasers of Wellbutrin SR

and may not represent a class of which they are not members. This circuit has long recognized

that antitrust claims can be assigned, see, e.g., In re K-Dur Antitrust Litig., 338 F. Supp. 2d 517,

539 (D.N.J. 2004) ("[E]xpress assignments of antitrust claims from a direct purchaser to an

indirect purchaser are permissible and do not run afoul of . . . standing requirements." (citing

Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp., 995 F.2d 425, 438-39 (3d Cir.

1993))), and Defendant provides no persuasive authority for the proposition that an assignee

cannot represent a class.[10] Indeed, numerous courts have certified litigation classes in which the

named plaintiffs were operating under an assignment. See, e.g., Meijer, Inc., 246 F.R.D. at 301

("[W]hile Meijer, SAJ, and LaFrance were in fact indirect purchasers, they sue as assignees of,

and thus stand in the shoes of, direct purchaser drug wholesalers."); In re Urethane Antitrust

---

[10]      Defendant cites a number of cases to support the unremarkable proposition that a
named plaintiff must be a member of the class which it purports to represent. The only case
supporting the specific theory it articulates here—that an assignee is, by definition, unable to
represent a class—has, after Defendant filed its response to the Motion, been rejected by the
Second Circuit. In re Pub. Offering Fee Antitrust Litig., 2006 U.S. Dist. LEXIS 21076 (S.D.N.Y.
Apr. 18, 2006), rev'd sub nom. Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc., 502 F.3d
91, 103 (2d Cir. 2007) ("We conclude that Cordes and Creditors Trust, pursuing their claims and
interests as assignees of the claims brought by, and interests in this litigation of, purported
members of the class seeking to act as class representatives, are not excluded, for that reason
alone."). While the Second Circuit did not hold that an assignee will be an adequate
representative in all instances, it did reject the per se rule Defendant articulates here.

-9-

Litig., 237 F.R.D. 440, 448 (D. Kan. 2006) ("Skypark is the assignee of Burtin's 'right, title and

interest' in claims arising out of Burtin's purchases of urethane and urethane chemicals,

'specifically including antitrust claims against the vendors of urethane and urethane chemicals.'

Thus, Skypark is asserting its claims as the real party in interest as the assignee of Burtin. As

such, it is immaterial that Skypark has not produced any evidence showing that it (as opposed to

Burtin) purchased the relevant chemicals during the class period."); In re Cardizem CD Antitrust

Litig., 200 F.R.D. 297, 304-06 (E.D. Mich. 2001) (rejecting the argument that an assignee of a

direct purchaser was an inadequate class representative in an action alleging that the defendants

agreed to delay the entry of lower-priced generic drugs).[11]

### b. Unique Defense Against SAJ

Defendant next argues that SAJ Distributors, Inc.'s assignment is invalid and that,

because it lacks standing to assert claims based on the invalid assignment, it cannot serve as a

class representative.[12] Defendant further contends that because SAJ is subject to this unique

defense, SAJ may spend most of the litigation attempting to preserve its claim in the face of the

defense rather than representing the interests of the class as a whole. See Beck v. Maximus, Inc.,

457 F.3d 291, 297 (3d Cir. 2006) ("Other courts of appeals emphasize, as do we, the challenge

presented by a defense unique to a class representative—the representative's interests might not

---

[11]     While some of the above-cited cases discuss the assignee issue under the
typicality prong of the Rule 23 analysis, the point is the same: an assignee steps into the shoes of
the assignor and may assert any legal claim assigned to it. Whether framed as a question of the
typicality of the right being litigated or the adequacy of the assignee to litigate the right on behalf
of others, courts consistently have rejected the notion that an assignee is categorically inadequate
as a lead plaintiff.

[12]     Under Illinois Brick Co. v. Illinois, 431 U.S. 720 (1971), an indirect purchaser
cannot bring a damages claim under federal law based on an alleged antitrust violation.
Accordingly, if the assignment is invalid, SAJ cannot bring the current federal claim. Absent the
assignment, it is an indirect purchaser without standing to pursue the claim.

be aligned with those of the class, and the representative might devote time and effort to the

defense at the expense of issues that are common and controlling for the class.").[13] Defendant's

argument, however, is persuasive only if the challenge to SAJ's assignment threatens to consume

the litigation itself. As the Third Circuit has explained,

> A proposed class representative is neither typical nor adequate if the
> representative is subject to a unique defense that is likely to become a major focus
> of the litigation. We believe this standard strikes the proper balance between
> protecting class members from a representative who is not focused on common
> concerns of the class, and protecting a class representative from a defendant
> seeking to disqualify the representative based on a speculative defense.

Id. at 301. As numerous courts have found, the alleged invalidity of an assignment "presents a

question of law that can readily be resolved by the Court without skewing the focus of the

litigation or creating a significant danger of distracting [SAJ's] ability to pursue the interests of

the absent class members." In re Cardizem, 200 F.R.D. at 305; see also Meijer, Inc., 246 F.R.D.

at 302 (declining to reach the question of whether a named plaintiff's assignment was valid, but

noting that the question did not threaten to derail the class litigation because it could be resolved

easily by the court at a later date). Accordingly, the Court concludes that whatever the merits of

the defense, it is not an issue that will distract SAJ to the detriment of the class itself.

### c. Conflicts Among Class Members

Finally, Defendant argues that the interests of the Named Plaintiffs and other class

members are in conflict, precluding class certification.[14] Defendant explains that when a drug

---

[13]    This particular argument also relates to the "typicality" prong of the Rule 23
analysis. The Third Circuit has recognized that the "unique defense" challenge goes to both the
typicality and the adequacy prongs, and the Court will consider both aspects of the argument
here. See Beck, 457 F.3d at 296.

[14]    As a rule, "courts are generally skeptical of defenses to class certification based on
conflicts between the proposed class members." In re Bulk [Extruded] Graphite Prods. Antitrust
Litig., 2006 U.S. Dist. LEXIS 16619, at *24 (D.N.J. Apr. 4, 2006). Courts maintain this

faces no competition from generic equivalents, the three major national drug wholesalers

purchase the majority of the product for resale to other parties in the distribution chain.

However, entry of a generic drug into the market generally hurts the national wholesalers because

generic drug manufacturers often sell directly to the other parties in the distribution chain,

bypassing the national wholesalers altogether. Defendant claims that this "generic bypass"

phenomenon creates a conflict among the class members because the national wholesalers

benefit from anticompetitive activity that prevents entry of generic drugs into the market,

allowing them to retain higher sales volumes, whereas other direct purchasers are harmed by the

same anticompetitive activity in the form of higher prices.

In support of its argument, Defendant relies on Valley Drug Co. v. Geneva

Pharmaceuticals, Inc., 350 F.3d 1181 (11th Cir. 2003). In Valley Drug, the Eleventh Circuit

reversed a district court's certification of a direct purchaser class alleging antitrust injury due to

delayed generic entry, finding that potential conflicts among class members prevented

certification without further "downstream discovery." Id. at 1195. The Eleventh Circuit found

that the putative class—which included the three major national wholesalers and other direct

purchasers—likely had differing interests because the national wholesalers may have benefitted

from the alleged anticompetitive activity. See id. at 1191. The court further noted that due to the

"generic bypass" phenomenon, the national wholesalers may have been harmed economically by

generic competition. See id. ("[T]he record indicates that some of the national wholesalers are

---

skepticism because a defendant makes the "conflicts" argument in the guise of ensuring adequate
representation for the class, where in reality, the defendant seeks to avoid class certification
altogether. See, e.g., Umbriac v. Am. Snacks, Inc., 388 F. Supp. 265, 275 (E.D. Pa. 1975) ("It is
in the nature of the motion practice on class determination issues that defendants, who naturally
have no interest in the successful prosecution of the class suit against them, are called upon to
interpose arguments in opposition to class determination motions verbally grounded upon a
concern for the 'best' representation for the class while the implicit, but nonetheless real,
objective of their vigorous legal assaults is to insure 'no' representation for the class.").

further injured rather than benefitted by generic competition because the wholesalers, who play a

central role in the distribution of branded drugs, are often bypassed in the distribution chain for

many generic sales, causing them to lose sales."). Because the national wholesalers "appear to

benefit from the effects of the conduct alleged to be wrongful by the named plaintiffs," the

Eleventh Circuit found that certification of a class including the national wholesalers "would be

inappropriate" without a showing that no classwide conflict actually existed. Id.

        Defendant maintains that Valley Drug is persuasive in the instant case and that the Court

should not certify the class absent a showing that no such conflict exists. However, Defendant

does not explain clearly what conflict actually exists between the national wholesalers and the

other class members. Even assuming that the national wholesalers in this case were harmed by

the introduction of generic drugs, generic versions of Wellbutrin SR have been on the market

since 2004. Therefore, the national wholesalers are no longer reaping the alleged benefits of

delayed generic entry, and their interests are not "harmed" by recovery of any illegal overcharge

from Defendant. Indeed, any economic benefits the wholesalers experienced in the past are

legally irrelevant because the overcharge itself—not any economic effect of the overcharge—is

the proper measure of recovery in this antitrust case. As the Supreme Court has explained, a

party may recover for an antitrust overcharge whether or not the party experienced a net loss or a

net gain (i.e., by passing on the overcharge to other parties). See Illinois Brick, 431 U.S. at 724-

25; Hanover Shoe v. United Shoe Machinery Corp., 392 U.S. 481, 489 (1968) ("We hold that the

buyer is equally entitled to [overcharge] damages if he raises the price for his own product. As

long as the seller continues to charge the illegal price, he takes from the buyer more than the law

allows. At whatever price the buyer sells, the price he pays the seller remains illegally high, and

-13-

his profits would be greater were his costs lower.").[15] Regardless of whether some class

members profited from the alleged activity in this case, the controlling question is whether the

class members suffered an overcharge: if an overcharge occurred, all class members are entitled

to recover, whether or not some plaintiffs experienced a net benefit while others experienced a

net loss. Thus, the Direct Purchaser Plaintiffs, including the national wholesalers, seek exactly

the same result: they urge the Court to conclude that Defendant committed an antitrust violation,

thereby allowing all Direct Purchasers to recover the overcharges.

        Courts in this circuit and elsewhere have rejected the "conflict" rationale adopted in

Valley Drug and espoused by Defendant here. See, e.g., Meijer, Inc., 246 F.R.D. at 304

("Defendants' arguments that the [three major national wholesalers] actually benefitted from the

delayed entry of Balziva into the market due to the generic bypass phenomenon are irrelevant as

a matter of law, and cannot serve to demonstrate that a conflict exists between Plaintiffs'

interests and those of the [three national wholesalers] with respect to this litigation."); In re

Hypodermic Prod. Direct Purchaser Antitrust Litig., 2006 U.S. Dist. LEXIS 89353, at *19

(D.N.J. Sept. 6, 2007) ("For purposes of class certification, direct purchasers that have suffered

overcharges have an antitrust injury and would be entitled to recover the full amount of the

overcharge they paid; it is irrelevant if they may have also benefitted from the higher prices

because their profits were a percentage of their acquisition costs."). These cases recognize that

---

[15]       In Valley Drug, the Eleventh Circuit recognized that Hanover Shoe and Illinois
Brick "stand for the proposition that a direct purchaser who passes on overcharges to his own
customers nevertheless suffers cognizable antitrust injury and may sue to recover damages
regardless of whether he actually profited from the defendants' conduct." 350 F.3d at 1192. The
Eleventh Circuit distinguished these cases, explaining that "the question [they] address is a
distinctly separate question from the issue of whether class certification is appropriate where a
fundamental conflict exists among the named and unnamed members of a class." Id. As
explained above, however, Hanover Shoe and Illinois Brick eliminate any "fundamental conflict"
between the class members.

because all class members have the right to pursue overcharge damages, they have the same

incentive to do so, and there is no conflict among class members allegedly harmed by the same

antitrust violation.[16]  Accordingly, the Court declines to follow Valley Drug and will adhere

instead to the principles announced in Hanover Shoe and Illinois Brick.

Moreover, even if the Court were to find Valley Drug persuasive, Defendant's

speculation as to the alleged "conflict" is undermined by the fact that in this case, the national

wholesalers have represented to the Court that their interests are aligned with those of the class

members, that they support this litigation, and that they wish to participate in the litigation as part

of the class. See Aff. of Saul D. Factor, attached to the Direct Purchaser Plaintiffs' Reply at Ex.

2; Aff. of Michael Kaufmann, attached to the Direct Purchaser Plaintiffs' Reply at Ex. 3; Aff. of

Brian Jones, attached to the Direct Purchaser Plaintiffs' Reply at Ex. 4.[17]  Accordingly, the Court

need not rely on speculation as to what conflicts may exist between the national wholesalers and

---

[16]     In a case that predates Valley Drug, the court in J.B.D.L. Corp. v. Wyeth-Ayerst
Laboratories, Inc., 225 F.R.D. 208, 216 (S.D. Ohio 2003), rejected the argument that downstream
economic effects of antitrust injury can create a fundamental class conflict.  In J.B.D.L., the
defendant argued that "there is a conflict between the class representatives and some class
members because some class members purchased large quantities of Premarin and were able to
resell it at a greater profit after price increases."  The court found this "conflict" argument
meritless because "[a]ntitrust injury is considered complete when the direct purchaser pays an
illegal overcharge and whether he was able to pass through the overcharge to indirect purchasers
is irrelevant to the inquiry."  Id.  As the court explained, "as long as the price paid by the class
members for Premarin was higher than it would have been absent the alleged anticompetitive
conduct, there is no conflict created if indeed some of the direct purchasers were able to recoup
the overcharge through price increases passed on to other purchasers."  Id.

[17]     With no comparable evidence before it, the Valley Drug court suggested that the
national wholesalers may have been reluctant to oppose the alleged anticompetitive conduct out
of economic self-interest.  See 350 F.3d at 1193 ("[T]he profits received by some class members
from selling branded Hytrin in the absence of generic competition, and the greater volume of
Hytrin sold by these parties in the absence of generic competition, may suggest a tradeoff the
national wholesalers were content to make in order to experience greater profits.").  Because the
national wholesalers have represented that they support this litigation, the Court need not engage
in the same speculation.

-15-

the remainder of the class because the national wholesalers fully support this litigation and

explain that they perceive no conflict of interest with the remainder of the class. Defendant's

challenge, therefore, is contrary to the facts of this case, and the Court concludes that the Direct

Purchasers have met their burden under Rule 23(a)(4).[18]

**B. Rule 23(b)(3)**

"To qualify for certification under Rule 23(b)(3), a class must meet two requirements

beyond the Rule 23(a) prerequisites: Common questions must 'predominate over any questions

affecting only individual members'; and class resolution must be 'superior to other available

methods for the fair and efficient adjudication of the controversy.'" Amchem, 521 U.S. at 615

(quoting Fed. R. Civ. P. 23(b)(3)). Rule 23(b)(3) provides a nonexhaustive list of factors

relevant to the superiority analysis:

> (A) the interest of members of the class in individually controlling the prosecution
> or defense of separate actions; (B) the extent and nature of any litigation
> concerning the controversy already commenced by or against members of the
> class; (C) the desirability or undesirability of concentrating the litigation of the
> claims in the particular forum; [and] (D) the difficulties likely to be encountered
> in the management of a class action.

**1. Predominance of Common Questions**

"The predominance inquiry tests whether the proposed class is sufficiently cohesive to

warrant adjudication by representation." In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of

Tallahassee Second Mortgage Loan Litig., 418 F.3d 277, 308-09 (3d Cir. 2005) (citing Amchem,

---

[18]        If, at any point during the litigation, an actual conflict between class members
does arise, the Court retains the ability to divide the class into subclasses pursuant to Federal
Rule of Civil Procedure 23(c)(5). Moreover, class members who do not wish to participate in the
class litigation may opt out of the class altogether. See Fed. R. Civ. P. 23(c)(2)(B); see also
Natchitoches Parish Hosp. Serv. Dist. v. Tyco Int'l, Ltd., 247 F.R.D. 253, 268-69 (D. Mass.
2008) ("[S]hould any fundamental conflict arise, a ready mechanism exists to protect it—the
opt-out provision. . . . Sophisticated players such as distributors and large hospitals can determine
for themselves whether a fundamental conflict exists within the class.").

521 U.S. at 623-24). "Predominance is a test readily met in certain cases alleging consumer or

securities fraud or violations of the antitrust laws." Amchem, 521 U.S. at 625. The presence of

individualized questions does not render 23(b)(3) certification inappropriate in all cases. See In

re Cmty. Bank, 418 F.3d at 306 ("The existence of an individual inquiry does not preclude class

action treatment where all class members face the necessity of proving the same fraudulent

scheme."). Further, the necessity of an individualized calculation of damages will not defeat

Rule 23(b)(3) certification if the predominance requirement otherwise is met. See id. at 305-06

("Although the calculation of individual damages is necessarily an individual inquiry, the courts

have consistently held that the necessity of this inquiry does not preclude class action treatment

where class issues predominate."); In re Chiang, 385 F.3d 256, 273 (3d Cir. 2004) ("[I]t is settled

law that the necessity for proving damages individually does not defeat class predominance or

class certification.").

         "At the class certification stage, plaintiffs need only demonstrate that they intend to use

generalized evidence which is common to the class and will predominate over individualized

issues with respect to proving impact." In re Vitamins Antitrust Litig., 209 F.R.D. 251, 266

(D.D.C. 2002). In the instant case, liability depends solely on whether Defendant's conduct

violated federal antitrust law and caused injury to the class. The Direct Purchaser Plaintiffs

maintain that the impact of Defendant's alleged conduct can be established by common proof and

methodology based on publicly available data as well as information obtained through discovery.

The Direct Purchaser Plaintiffs have retained Dr. Gary French, an economist with experience in

class action pharmaceutical litigation, who has reviewed the available data and, based on his

experience and findings in this case, concludes that "common evidence is available to show that

all class members were adversely impacted on their purchases of both Wellbutrin SR and generic

-17-

bupropion because of the delay in generic entry." Am. Aff. of Gary L. French ("French Aff.") ¶

41, attached to the Direct Purchaser Plaintiffs' Supplemental Mem. of Law at Ex. 1.[19]

Specifically, Dr. French believes that the common impact of the anticompetitive conduct can be

explained based, inter alia, on literature examining the impact of generic entry into the

pharmaceutical market and analysis of public data collected on dispensation and purchases of

prescription drugs. Id. ¶ 31.

Whether or not the Direct Purchaser Plaintiffs will be able to establish common impact,

they have presented a colorable method for doing so, thus satisfying the predominance inquiry as

to classwide impact. See, e.g., In re Nifedipine Antitrust Litig., 246 F.R.D. 365, 370 (D.D.C.

2007) (noting that the plaintiffs' expert explained that common impact could be proved by

studies of generic entry on the pharmaceutical industry, evidence obtained from the defendants,

and publicly available sales data, and concluding that "plaintiffs have offered a sufficient

colorable method of proving class-wide impact with common evidence as to the issue of

causation"); In re Linerboard Antitrust Litig., 203 F.R.D. 197, 220 (E.D. Pa. 2001) ("For

purposes of class certification, the Court concludes that plaintiffs have presented a viable method

for proving class-wide impact. At this point of the litigation, it would be improper to make a

determination as to the likely success of using one of the identified methods."); Lumco Indus.,

Inc. v. Jeld-Wen, Inc., 171 F.R.D. 168, 173-74 (E.D. Pa. 1997) ("At this stage of litigation . . .

the Court need not concern itself with whether Plaintiffs can prove their allegations regarding

common impact; the Court need only assure itself that Plaintiffs' attempt to prove their

---

[19]     Dr. French explains that as the result of Defendant's monopoly, the entire class
was injured because class members were (a) unable to purchase lower-price generic alternatives
and/or (b) forced to pay artificially high prices for brand name Wellbutrin SR. See French Aff. ¶
40.

-18-

allegations will predominantly involve common issues of fact and law.").[20]

Dr. French also explains that damages can be estimated using two generally accepted methods. See French Aff. ¶ 43. The first method, the "before-and-after" method, compares prices during a period affected by the anticompetitive behavior with competitive prices from either before or after this period to approximate the percentage overcharge resulting from the anticompetitive conduct. Id. The second method, the "yardstick approach," identifies either another geographic market not affected by the anticompetitive conduct, or another product that is comparable to the product and market affected by the anticompetitive conduct. Id. Comparing the two price levels provides an estimate of the overcharge resulting from the anticompetitive conduct. Id.

As one district court has explained, "Antitrust plaintiffs have a limited burden with respect to showing that individual damages issues do not predominate. Plaintiffs do not need to supply a precise damage formula at the certification stage of an antitrust action. Instead, in assessing whether to certify a class, the Court's inquiry is limited to whether or not the proposed methods are so insubstantial as to amount to no method at all." In re Potash Antitrust Litig., 159 F.R.D. 682, 697 (D. Minn. 1995); see also In re Vitamins, 209 F.R.D. at 268 ("At the certification stage, the preliminary inquiry in assessing the proposed methods of proving damages in limited: The inquiry is not whether the methods are valid, but is only to assess whether the methods are available to prove damages on a class-wide basis."). Numerous courts in this

---

[20]    In a number of other delayed generic entry cases, courts have approved the use of the same types of evidence the Direct Purchaser Plaintiffs rely on here to show common impact. See, e.g., Relafen, 218 F.R.D. at 343 (finding predominance met where the direct purchasers relied on "governmental and academic studies, projections and analyses described in SmithKline's and its competitors' internal documents, and price and sales data for Relafen and its generic equivalents"); In re Cardizem, 200 F.R.D. at 308 (approving the use of generalized evidence, including academic studies, the defendants' internal sales documents, and marketplace sales data, to prove common impact).

-19-

district have found the predominance requirement met when a putative antitrust class has

proposed using the "before-and-after" and "yardstick" methodologies to estimate damages. See,

e.g., In re Linerboard, 203 F.R.D. at 218-20; In re Plastic Cutlery Antitrust Litig., 1998 U.S. Dist.

LEXIS 3628, at *22-23 (E.D. Pa. Mar. 20, 1998); Lumco Indus., 171 F.R.D. at 174. After

reviewing the Direct Purchaser Plaintiffs' proposed methodologies, the Court finds that the class

satisfies the predominance requirement of Rule 23(b)(3).[21]

### 2. Superiority

"The superiority requirement asks the court to balance, in terms of fairness and efficiency,

the merits of a class action against those of alternative available methods of adjudication." In re

Prudential, 148 F.3d at 316 (internal quotation marks omitted). In the instant case, denying

certification would require each direct purchaser to file suit individually at the expense of judicial

economy and litigation costs for each party. See, e.g., In re Nifedipine, 246 F.R.D. at 371-72

("[P]laintiffs argue that it would be inefficient to force each class member to prove the same

nucleus of operative facts in dozens of separate trials. Moreover, plaintiffs argue[] that some

claims may be so small as to make litigation unfeasible. I agree as to both."); Meijer, Inc., 246

F.R.D. at 313 ("This action involves the resolution of numerous complex issues of law and fact

common to all putative class members. As class certification provides the opportunity for an

efficient resolution of these substantial issues for the entire class in a single forum, the Court

concludes that the class action mechanism is a superior litigation approach in this case." (citation

omitted)); In re Relafen, 218 F.R.D. at 346 ("[A] class action here appears to be the superior

---

[21]       This finding of predominance is consistent with the findings of other courts in
which plaintiffs have alleged antitrust injuries resulting from the delayed entry of generic drug
competitors. See, e.g., In re Nifedipine, 246 F.R.D. at 369-71; Meijer, Inc., 246 F.R.D. at 307-
12; In re Relafen, 218 F.R.D. at 343-46; In re Buspirone, 210 F.R.D. at 58; In re Cardizem, 200
F.R.D. at 307-25.

method of resolving the direct purchaser plaintiffs' claims. Given the predominance of common

questions and evidence, it appears that resolution by class action would provide substantial

savings in time, effort, and expense."); In re Potash, 159 F.R.D. at 699 ("[T]he cost associated

with individual claims may require claimants with potentially small claim amounts to abandon

otherwise valid claims simply because pursuing those claims would not be economical. This in

turn would result in unjustly enriching the Defendants; precisely the result antitrust laws are

designed to remedy.").

        Moreover, litigating all claims together avoids the risk of inconsistent results for

Defendant and for all direct purchasers. See, e.g., Meijer, Inc., 246 F.R.D. at 313 ("The class

action mechanism not only benefits the interest of judicial economy by avoiding a significant

number of individual lawsuits, but also avoids the specter of inconsistent adjudications.");

Relafen, 218 F.R.D. at 347 ("Resolving the direct purchaser plaintiffs' claims in a single forum

limits the possibility of inconsistent rulings regarding, for example, SmithKline's liability or the

appropriate yardstick for its customers' damages. Resolution by class action would instead

promote uniform treatment of class members—similarly situated direct purchasers who allege

similar injuries resulting from the same conduct."). Accordingly, the Court concludes that the

Direct Purchaser Plaintiffs have demonstrated that the requirements of Rule 23(b)(3) have been

met.

### C. Overbreadth

        In its final challenge to class certification, Defendant argues that as defined, the class is

overbroad because it includes purchases of Wellbutrin SR that would not have been converted to

generic purchases. According to Defendant's expert, the price of Wellbutrin SR did not decrease

when lower-priced generic competitors entered the market, and therefore, there can be no

overcharge for those purchases of Wellbutrin SR that would not have been converted to generic

purchases because the price of Wellbutrin SR was not artificially high. The Direct Purchaser

Plaintiffs' expert, in contrast, contends that based on the data he has reviewed, the price of

Wellbutrin SR did decrease after generic entry, demonstrating that the price of Wellbutrin SR

was artificially high during the relevant class period. Therefore, Plaintiff's expert contends, even

purchases of Wellbutrin SR that would not have been converted to a generic equivalent were

subject to an overcharge.

This dispute is, at its core, a dispute between Plaintiff's expert and Defendant's expert.

"[A]t the certification stage, it would be both 'unwise and unfair' for the Court to decide this

'material factual dispute.'" In re Relafen, 218 F.R.D. at 344 (quoting In re Buspirone, 210

F.R.D. at 56)); see also In re Cardizem, 200 F.R.D. at 311 (explaining that when considering a

motion for class certification, "the Court should not delve into the merits of an expert's opinion

or indulge 'dueling' between opposing experts").

"Even if it could be shown that some individual class members were not injured, class

certification, nevertheless, is appropriate where the antitrust violation has caused widespread

injury to the class." In re NASDAQ Market-Makers Antitrust Litig., 169 F.R.D. 493, 523

(S.D.N.Y. 1996); see also In re Nifedipine, 246 F.R.D. at 369 ("In order to demonstrate that

common evidence exists to prove class-wide impact or injury, plaintiffs do not need to prove that

every class member was actually injured."); In re Hydrogen Peroxide, 240 F.R.D. at 173 n.14

("Defendants are correct that plaintiffs 'must establish that each class member has, in fact, been

injured by the alleged conduct.' They do not, however, have to prove it prior to class

certification. All they need demonstrate now is that antitrust impact on each member is

susceptible to proof by predominantly common evidence." (quoting Weisfeld v. Sun Chem.

-22-

Corp., 210 F.R.D. 136, 144 (D.N.J. 2002))). If, at some later stage in the proceedings, it becomes

apparent that certain Direct Purchasers were not injured (i.e., because it can be shown that they

were not overcharged for purchases of Wellbutrin SR that would not have been converted to

generic equivalents), the Court retains the authority to remove those members from the class.

See Fed. R. Civ. P. 23(c)(1)(C); In re Relafen, 218 F.R.D. at 345 (declining to resolve a dispute

as to whether prices for the branded drug increased after generic entry and explaining that "at this

early stage, the Court considered it appropriate to certify the class as currently defined while

maintaining its authority later to amend the definition to exclude members who have not suffered

injury").

## IV. CONCLUSION

For the reasons discussed above, the Court finds that the Direct Purchaser Plaintiffs have

satisfied their burden under Rule 23. Accordingly, the Court will grant the Motion. An

appropriate Order follows.

-23-

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **In Re: WELLBUTRIN SR** | : | **CIVIL ACTION** |
| **DIRECT PURCHASER** | : | **NO. 04-5525** |
| **ANTITRUST LITIGATION** | : | |

### ORDER

**AND NOW**, this    2nd    day of May, 2008, upon consideration of the Direct Purchaser

Plaintiffs' Motion for Class Certification (docket no. 8), the Direct Purchaser Plaintiffs'

Supplemental Memorandum of Law in Support of Class Certification (docket no. 58),

Defendant's Response in Opposition (docket no. 74), and the Direct Purchaser Plaintiffs' Reply

(docket no. 77), and for the reasons stated in the accompanying Memorandum, it is **ORDERED**

that the Motion is **GRANTED**. It is **FURTHER ORDERED** that:

1. The following direct purchaser litigation class is hereby certified pursuant to Federal

Rules of Civil Procedure 23(a) and 23(b)(3): "all persons or entities in the United States,

excluding governmental entities, that purchased the 100mg or 150mg dosage of

Wellbutrin SR directly from GSK during the period from January 24, 2002 to June 30,

2006."

2. The following class claims are included: Claims by direct purchasers of the 100mg or

150mg dosage strengths of Wellbutrin SR for damages under Section 2 of the Sherman

Antitrust Act. These claims are premised on Defendant's alleged defrauding of the

United States Patent and Trademark Office and attempting to enforce invalid patents

through sham litigation designed to prevent low-cost generic versions of the 100mg and

150mg dosages of Wellbutrin SR from entering the market.

-24-

3. The following class issues and defenses are included:

    a. Whether Defendant made fraudulent misrepresentations or omissions to the United States Patent and Trademark Office during the patent prosecution of the '798 patent;

    b. Whether Defendant made fraudulent misrepresentations or omissions to the United States Patent and Trademark Office during the original patent prosecution of the patent later reissued as the '994 patent;

    c. Whether Defendant made fraudulent misrepresentations or omissions to the United States Patent and Trademark Office during the prosecution of the reissue application leading to the '994 patent;

    d. Whether Defendant obtained the '798 or '994 patents because of fraudulent misrepresentations to the United States Patent and Trademark Office;

    e. Whether Defendant initiated sham litigation against potential generic manufacturers of the 100mg or 150mg dosage strengths of Wellbutrin SR;

    f. Whether Defendant's conduct constitutes a willful acquisition or maintenance of monopoly power with respect to the 100mg or 150mg dosage strengths of Wellbutrin SR;

    g. Whether Defendant's conduct caused a delay in the market entry of the 100mg or 150mg dosage strengths of generic Wellbutrin SR;

    h. Whether Defendant's conduct caused prices of the 100mg or 150mg dosage strengths of sustained-release bupropion to be at artificially high levels;

    i. Whether the conduct of Defendant injured the Plaintiffs and members of the Class;

-25-

> j. Whether there are classwide damages, and if so, the amount of such damages;
>
> k. Whether Defendant's conduct is protected under the Noerr-Pennington doctrine and/or otherwise under the United States Constitution; and
>
> l. Whether Plaintiff's claims are precluded, in whole or in part, by the Federal Food, Drug, and Cosmetic Act's Drug Price Competition and Patent Team Restoration Act of 1984 (the "Hatch-Waxman Act").

4. SAJ Distributors, Inc, Stephen L. LaFrance Holdings, Inc., Meijer, Inc., and Meijer Distribution, Inc. are appointed Class Representatives of the Direct Purchaser Class.

5. Dianne M. Nast, Esq. and RodaNast, P.C. are appointed as Lead Class Counsel for the Direct Purchaser Class.

6. Within 30 days of the date of this Order, the parties shall submit an agreed upon proposed notice program and forms of notice to class members. If the parties are unable to agree as to the proposed notice program and/or forms of notice, they shall submit separate proposals accompanied by brief memoranda setting forth their competing positions.

**BY THE COURT:**

**/s/ Bruce W. Kauffmanh**
**BRUCE W. KAUFFMAN, J.**