**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE: TRICOR DIRECT PURCHASER ANTITRUST LITIGATION | ) | C.A. No. 05-340 (SLR) |
| THIS DOCUMENT RELATES TO: ALL ACTIONS<br>C.A. No. 05-340 (Louisiana Wholesale)<br>C.A. No. 05-351 (Rochester Drug)<br>C.A. No. 05-358 (Meijer, Inc., et al.) | ) | REDACTED -- PUBLIC VERSION |

**DIRECT PURCHASER CLASS PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION**

Jeffrey S. Goddess (Del. Bar No. 630)
Jessica Zeldin (Del. Bar No. 3558)
ROSENTHAL, MONHAIT & GODDESS, P.A.
919 Market Street, Suite 1401
P.O. Box 1070
Wilmington, Delaware 19899-1070
Tel: (302) 656-4433
Fax: (302) 658-7567

ADDITIONAL COUNSEL ON SIGNATURE PAGE

Dated: May 1, 2008

## TABLE OF CONTENTS

| | PAGE: |
|---|---|
| TABLE OF CITATIONS | ii |
| SUMMARY OF ARGUMENT | 1 |
| ARGUMENT | 3 |
| OVERCHARGES ARE AN APPROPRIATE MEASURE OF IMPACT AND DAMAGES HERE, AND THUS CERTIFICATION OF THE DIRECT PURCHASER CLASS IS WARRANTED | 3 |
| CONCLUSION | 10 |

## TABLE OF CITATIONS

**CASE:** **PAGE:**

*Abbott Laboratories v. Teva Pharmaceuticals*, 432 F. Supp. 2d 408 (D. Del. 2006) ........ 2

*Allied Orthopedic, Inc. v. Tyco Healthcare Group, L.P.*, 247 F.R.D. 156 (C.D. Cal. 2007) ........ 8

*America Seed Co., Inc. v. Monsanto Co.*, 238 F.R.D. 392 (D. Del. 2006), *aff'd*, 2008 WL 857532 (3d Cir. April 1, 2008) ........ 8

*Bogosian v. Gulf Oil Corp.*, 561 F.2d 434 (3d Cir. 1977) ........ 6

*In re Buspirone Patent & Antitrust Litigation*, 210 F.R.D. 43 (S.D.N.Y. 2002) ........ 2, 7, 8

*In re Cardizem CD Antitrust Litigation*, 332 F.3d 895 (6th Cir. 2003) ........ 7, 9

*In re Cardizem CD Antitrust Litigation*, 200 F.R.D. 297 (E.D. Mich. 2001) ........ 2, 6, 7, 8, 9, 10

*Clark v. Edgar*, 2007 WL 2566277 (M.D. Pa. Aug. 31, 2007) ........ 6

*Fedorczyk v. Caribbean Cruise Lines, Ltd.*, 82 F.3d 69 (3d Cir. 1996) ........ 6

*Hanover Shoe, Inc. v. United Machinery Corp.*, 392 U.S. 481 (1968) ........ 5

*Howard Hess Dental Laboratories, Inc. v. Dentsply International Inc.*, 424 F.3d 363 (3d Cir. 2005) ........ 5, 7

*In re K-Dur Antitrust Litigation*, No. 01-1652 (D.N.J. Apr. 14, 2008) ........ 1, 7, 8, 10

*Lee-Moore Oil Co. v. Union Oil Co. of Calif.*, 599 F.2d 1299 (4th Cir. 1979) ........ 6

*Louisiana Wholesale Drug Co., Inc. v. Sanofi-Aventis*, No. 07-7343 (S.D.N.Y. Apr. 10, 2008) ........ 1

*In re Lower Lake Erie Iron Ore Antitrust Litigation*,
998 F.2d 1144 (3d Cir. 1993) .......... 5

*Meijer, Inc. v. Warner Chilcott Holdings Co. III*,
246 F.R.D. 293 (D.D.C. 2007) .......... 1, 7, 8, 9

*In re New Motor Vehicles Canadian Export Antitrust Litigation*,
2008 WL 820922 (1st Cir. Mar. 28, 2008) .......... 8

*In re Nifedipine Antitrust Litigation*,
246 F.R.D. 365 (D.D.C. 2007) .......... 1, 8

*In re Relafen Antitrust Litigation*,
218 F.R.D. 337 (D. Mass. 2003) .......... 2, 7, 8, 9, 10

*Rossi v. Standard Roofing, Inc.*,
156 F.3d 452 (3d Cir. 1998) .......... 6

*In re Warfarin Sodium Antitrust Litigation*,
214 F.3d 395 (3d Cir. 2000) .......... 7

*In re Warfarin Sodium Antitrust Litigation*,
212 F.R.D. 231 (D. Del. 2002), *aff'd*, 391 F.3d 516 (3d Cir. 2004) .......... 2

**SUMMARY OF ARGUMENT**

The Direct Purchaser Class Plaintiffs ("Directs")[1] hereby submit this Supplemental Brief in further Support of their Motion for Class Certification (D.I. 106-109, 249-250).

*First*, adding to the many other on-point decisions the Directs already cited (D.I. 107, at 2-3 & nn. 3-5), four *additional* directly analogous decisions have issued since class certification briefing closed, each of them (a) certifying, under Rule 23(b)(3), nearly identical classes of direct purchasers of pharmaceuticals, with the same class representatives, seeking overcharge damages due to impeded generic drug competition, (b) crediting the work of the same expert economist for the Directs (Jeffrey J. Leitzinger, Ph.D.), and (c) explicitly rejecting the identical arguments Defendants are asserting here. Those cases are:

- *Meijer, Inc. v. Warner Chilcott Holdings Co. III*, 246 F.R.D. 293 (D.D.C. 2007) ("*Ovcon*")
- *In re K-Dur Antitrust Litig.*, No. 01-1652, Special Master's Report and Recommendation on the Direct Purchaser Plaintiffs' Motion for Class Certification (D. N.J. Apr. 14, 2008) (Orlofsky, J. (Ret.)) ("*K-Dur*") (May 1, 2008 Declaration of Jeffrey S. Goddess, Esq. ("Goddess Supp. Decl."), Ex. A)
- *Louisiana Wholesale Drug Co., Inc. v. Sanofi-Aventis*, No. 07-7343, Order Granting Class Certification (S.D.N.Y. Apr. 10, 2008) ("*Arava*") (Goddess Supp. Decl. Ex. B)[2]
- *In re Nifedipine Antitrust Litig.*, 246 F.R.D. 365 (D.D.C. 2007) ("*Nifedipine*")

Each of the above decisions built upon the findings of three prior decisions, similarly

---

[1]The Directs have also submitted herewith a proposed Order Granting Certification of Direct Purchaser Class. The proposed Order, like the Order recently entered by Judge Baer in the *Arava* case (described below), among other things, identifies: the Class and Class Counsel; the classwide claims, issues and defenses to be resolved at trial; and the reasons set forth in the Directs' prior briefs as to why each of the classwide issues, claims and defenses (including antitrust impact) can be proven through predominantly common evidence.

[2]Defendants did not contest class certification in *Arava*, thereby implicitly conceding the propriety of class certification in antitrust cases seeking overcharges due to impeded generic competition. Moreover, before certifying the class in *Arava*, the district court performed a "rigorous analysis to determine whether each of the requirements of Fed. R. Civ. P. 23(a) and at least one of the requirements of Fed. R. Civ. P. 23(b) has, in fact, been met." *Id.* at 1 n.1.

certifying nearly the same class of direct purchasers of pharmaceuticals alleging overcharges flowing from efforts to impede generic competition:

- *In re Relafen Antitrust Litig.*, 218 F.R.D. 337 (D. Mass. 2003) ("*Relafen*")
- *In re Buspirone Patent & Antitrust Litig.*, 210 F.R.D. 43 (S.D.N.Y. 2002) ("*Bupsirone*")
- *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297 (E.D. Mich. 2001) ("*Cardizem*")

Accordingly, ***there are now seven directly analogous cases, where courts have certified nearly the exact same class, with the same class representatives, same class counsel, and nearly all with the same economist, pursuing the same theories of impact and damages, flowing from conduct alleged to have impeded generic competition.***[3] Each of these cases rejects – often, explicitly and in detail -- the *very same arguments* Defendants have asserted here.

***Second***, Defendants' supplemental brief merely repeats the main argument they made in opposition to class certification: that, as a legal matter, the Directs purportedly cannot pursue overcharge damages here. Defendants are forced to repeat this baseless legal argument (which, moreover, goes to the merits of the Directs' case and not class certification), because they were unable to rebut the Directs' showing that impact in the form of overcharges can be proven on a classwide basis. *See* Goddess Reply Decl. (D.I. 250), Ex. N., at 50:4-20 (Defendants' class

[3] The Directs have also cited this Court's own closely-analogous decision, upheld by the Third Circuit, in *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231 (D. Del. 2002), *aff'd*, 391 F.3d 516 (3d Cir. 2004) ("*Warfarin*"). In *Warfarin*, this Court granted certification of a class of indirect purchasers seeking overcharge damages because the lawsuit alleged that defendant's conduct (disparagement of the safety and efficacy of AB-rated generic versions of branded Coumadin) "allowed it to [1] maintain its monopoly in the warfarin sodium market, [2] discourage switching to lower-cost generic warfarin sodium, and [3] charge supracompetitive prices for Coumadin." 212 F.R.D. at 248. Here, the Directs complain of conduct causing *precisely the same injury*. Defendants here are alleged to have engaged in an overall anticompetitive scheme that allowed them to [1] maintain their monopoly in the market for Tricor and its AB-rated generic equivalents (together referred to hereinafter as "fenofibrates"), [2] discourage switching to lower-cost AB-rated generic versions of Tricor, and thereby [3] charge supracompetitive prices for fenofibrates. *Abbott Labs. v. Teva Pharms*, 432 F. Supp.2d 408, 415-18 (D. Del. 2006) (Jordan, J.).



certification economist, Mr. Sherry, acknowledging that [redacted]); *id.* at 78-79 (Mr. Sherry testifying that [redacted]; Goddess Decl. (D.I. 109) Ex. B at 9-10, 16-36 (Directs' expert, Dr. Leitzinger, shows that [redacted]. Thus, Defendants' opposition to class certification evaporates if impact and damages are measured by the alleged overcharge (and not, as Defendants wish the Directs had sought instead, "lost profits").

Accordingly, Defendants' challenge to class reduces to a single issue: whether overcharges are an appropriate measure of impact and damages in this case. And, as shown in the class briefing and below, overcharges are clearly appropriate, based on both the facts (including the explicit admissions of Defendants' own merits damages economist that overcharges are appropriate) and the law (including directly applicable Third Circuit precedent as well as all seven of the class certifications decisions in suppressed generic competition cases cited above).

## ARGUMENT: OVERCHARGES ARE AN APPROPRIATE MEASURE OF IMPACT AND DAMAGES HERE, AND THUS CERTIFICATION OF THE DIRECT PURCHASER CLASS IS WARRANTED

Defendants argue that the Directs must measure their damages as "lost profits," instead of overcharges, because in the "but for" world (*i.e.*, absent the challenged conduct): (a) the price of branded Tricor would not have gone down; and (b) total sales volume of the fenofibrate molecule

(Tricor plus AB-rated generic versions combined) purportedly would have been lower. Yet, Defendants fail to explain how or why those purported facts, even if true, would prevent overcharges from being calculated.

Moreover, as pointed out in the Directs' Class Reply brief, common evidence in the record reveals that the factual bases of Defendants' argument are not only contested (and therefore not properly resolved on a class certification motion), but are wrong, given that: (a) the average price of branded Tricor to class members would indeed have been lower (D.I. 249 at 7), and (b) total fenofibrate molecule sales would indeed have grown from the date of unimpeded generic entry forward (D.I. 249 at 12-14). But, even if, *arguendo*, Defendants' factual premises were correct, Defendants' claim that overcharges are inappropriate fails for several reasons.

***First***, Defendants' own damages economist (Ms. Guerin-Calvert) conceded in deposition that overcharges are, in fact, an appropriate measure of damages here:



Tr. at 431:8-432:7 (Goddess Supp. Decl. Ex. C) (emphasis added).[4] Accordingly, while the Directs vigorously contest certain assumptions utilized in Ms. Guerin-Calvert's calculations,[5] as shown by the above testimony, Defendants' own economist agrees that (a) overcharge is a proper measure of damages to the Directs, and (b) overcharges can reliably be estimated to the direct purchaser class as a whole. *See also* Goddess Decl. (D.I. 109) Ex. B at 10-11, 36-40 (opinion of Dr. Leitzinger, the Directs' expert, concerning aggregate classwide overcharges).

***Second***, as set out in the Directs' Class Reply, binding Supreme Court and Third Circuit law permit plaintiffs to pursue overcharges here. Under controlling law, overcharges (not "lost profits") are the standard – and preferred – measure of damages in direct purchaser cases.[6] Moreover, the Third Circuit in *In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144 (3d Cir. 1993), explicitly held, contrary to Defendants' implication (D.I. 382 at 4), that the measure of antitrust impact and damages can be the difference in price between two products or services (like branded

---

[4]In fact, Ms. Guerin-Calvert [redacted]. *See* Excerpt of Rpt. at Ex. A2 (Goddess Supp. Decl. Ex. D); *id.* at Apx. A, at 5-6 (Goddess Supp. Decl. Ex. E). In making those calculations, Ms. Guerin-Calver[redacted] (D.I. 382 at 4). Instead, she hersel[redacted] Rpt. at Apx. A, at 5-6; *id.* at 4 ¶ 15.

[5]The amount of Ms. Guerin-Calvert's classwide damages calculation is significantly lower than the Directs' own, largely because she assumes [redacted] While the Directs vigorously dispute that absurd (and other similar) assumptions, that dispute simply presents yet another classwide issue to be resolved and thus *supports* a finding of predominance of common issues.

[6]*See* D.I. 249 at 3 n.6, 9, 11-12 & n.22 (citing, *e.g.*, *Hanover Shoe, Inc. v. United Machinery Corp.*, 392 U.S. 481, 489 (1968) ("when a buyer shows that the price paid by him for materials purchased for use in his business is illegally high and also shows the amount of the overcharge, he has made out a prima facie case of injury and damage within the meaning of § 4"); *Howard Hess Dental Labs., Inc. v. Dentsply Int'l Inc.*, 424 F.3d 363, 374-75 (3d Cir. 2005) (overcharges are "the standard method of measuring damages in price enhancement cases" while lost profits are "disfavored") ("*Dentsply*").

Tricor in the actual world and AB-rated generic fenofibrate in the but-for world),[7] where the challenged conduct allegedly forced the plaintiffs to purchase the more expensive of the two.[8]

*Third*, the Directs are "the master[s] of [their] complaint[s]."[9] As such, the Directs "must be free to select their own damages theories as long as they are supported by a reasonable foundation." *Rossi v. Standard Roofing, Inc.*, 156 F.3d 452, 486 n.22 (3d Cir. 1998) (quotation omitted); *see also Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 455-56 (3d Cir. 1977) ("[a]s we have already indicated, plaintiffs could elect to prove damages on the basis of an illegal overcharge rather than by proving a loss of net profits as the district court thought would be required"); *Cardizem*, 200 F.R.D. at 309-17 (crediting direct purchasers' choice of overcharge damages over lost profits in impeded generic entry case). Thus, even if "lost profits" was a potential alternative to overcharges as a measure of impact and classwide damages to the Direct Purchaser Class, the Directs here – as the plaintiffs in every single one of the seven previously-certified direct purchaser classes in cases

---

[7]As the Directs have previously pointed out, they do not seek (and have never sought) overcharges measured as the difference between Tricor in the actual world and a different drug (*i.e.*, a drug other than Tricor or an AB-rated generic version of Tricor) in the but-for world. D.I. 249 at 13. Defendants' argument that such a measure of overcharges is "not possible" is, and has always been, immaterial. *See* D.I. 382 at 6 & n.12. Plaintiffs seek only overcharges (and thus damages) on those units of fenofibrate/Tricor that would have been less expensive absent Defendants' conduct.

[8]*See id.* at 1154-55, 1158 & n.5, 1159, 1167-70, 1177 (where defendant's conduct kept "low cost competitors from the market" and thus "[t]he instrument of damage to the steel companies was the absence of the lower-cost [transportation methods]," the steel companies "were awarded [overcharge] damages measured by the difference between the lower [transportation] prices that would have been charged by the excluded competitors and the higher prices actually paid [to the defendant railroads]," which measure of damages was affirmed because such damages were the type of injury the antitrust laws were intended to prevent and were "cognizable under the law"). *See also Lee-Moore Oil Co. v. Union Oil Co. of Calif.*, 599 F.2d 1299, 1305-06 (4th Cir. 1979) (difference in price between defendant's product and alternative product of another firm, if proved, is a recoverable overcharge under Section 4 of the Clayton Act).

[9]*Fedorczyk v. Caribbean Cruise Lines, Ltd.*, 82 F.3d 69, 73 (3d Cir. 1996); *see also Clark v. Edgar*, 2007 WL 2566277, *3 (M.D. Pa. Aug. 31, 2007) ("[a]s master of his Complaint, Plaintiff may pursue or omit any available cause of action he chooses") (citing *Webster v. Reproductive Health Services*, 492 U.S. 490, 492 (1989)).

alleging suppressed generic competition have done – have chosen to seek overcharges, for all the reasons the Third Circuit recently identified in *Dentsply*: overcharges are the "standard method of measuring damages in price enhancement cases"; and "[l]ost profits damages are disfavored . . . because they are more difficult to prove than overcharge damages." 424 F.3d at 374-75. Defendants cite no authority supporting their assertion that the Directs may not choose to pursue overcharges.

***Fourth***, all seven of the courts to certify direct purchaser classes in impeded generic competition cases have soundly rejected the exact arguments Defendants (who pretend their arguments are new) reassert here. In these cases, just as in this case:

- The measure of damages was ***overcharges***, measured principally, just like in this case, by the difference between (a) what the class expended in the actual world for the more-expensive branded drug, and (b) the lower amount class members would have instead expended for the less-expensive AB-rated generic drug, had competition from that generic not been suppressed (*e.g.*, *Ovcon*, 246 F.R.D. at 298, 308; *K-Dur* at 26, 29-30; *Arava* ¶¶ 3(b)-(c), 7(b)-(c); *Relafen*, 218 F.R.D. at 344, 346; *Cardizem*, 200 F.R.D. at 302, 309-17; *Buspirone*, 210 F.R.D. at 57-60).[10]

- The plaintiffs demonstrated that impact and aggregate damages could be proved on a classwide basis, and therefore that the "predominance" standard of Rule 23(b)(3) was met, through, *inter alia*, the declaration of an economic expert (Jeffery J. Leitzinger, Ph.D., in five of these cases), supported by deposition testimony of defendants' executives, documents (including projections) from the defendants' files, studies of the economic dynamics of the pharmaceutical industry, and

[10] *See also Warfarin*, 214 F.3d 395, 401 (3d Cir. 2001) (higher prices paid by purchasers of drug as a result of suppression of generic competition constitutes antitrust injury: "It is difficult to imagine a more formidable demonstration of antitrust injury"); *Cardizem*, 332 F.3d 896, 911 (6th Cir. 2003) ("[u]nlike in *Brunswick*, here there is no question that the alleged injury – paying higher prices for a product due to a lack of competition in the market – is the type of injury that can . . . flow from the anticompetitive effects of" the defendants' unlawful conduct).

empirical data (*e.g.*, *Ovcon*, 246 F.R.D. at 308-09; *Nifedipine*, 246 F.R.D. at 370-71; *K-Dur* at 27-28;[11] *Arava* ¶ 7(b)-(c); *Relafen*, 218 F.R.D. at 344-45; *Cardizem*, 200 F.R.D. at 308, 322-25);[12] and

- The theoretical possibility that some absent class members may have "profited" from the suppression of generic competition could not defeat class certification, because in an overcharge case, economic effects beyond the initial purchase are irrelevant. *See* D.I. 107 at 21 n.22 (Judge Jordan's ruling); *see also Ovcon*, 246 F.R.D. at 303-04; *K-Dur* at 14-16; *Buspirone*, 210 F.R.D. at 58-61; *Relafen*, 218 F.R.D. at 344-45; *Cardizem*, 200 F.R.D. at 311-17.

Moreover, these decisions explicitly analyze and then reject Defendants' arguments here:

(1) **Defendants' "brand price" argument has been rejected:** Courts have repeatedly rejected the Defendants' contention that the price of the ***branded*** drug might not go down, and have instead recognized that the main impact to direct purchasers would be preventing or delaying access

[11] In *K-Dur*, as in this case, Dr. Leitzinger's opinion that evidence and methods were available to demonstrate classwide impact, relied upon governmental and academic studies relating to the effects of generic entry, defendants' internal analyses and projections, and sales data, which the decision in *K-Dur* recognized as "precisely the types of evidence that have been found sufficient to satisfy the predominance requirement with respect to proof of impact in other cases alleging delayed generic entry." *K-Dur* at 26-27 (citation omitted); *compare* D.I. 107 at 12, 29-36 (recounting the evidence underlying Dr. Leitzinger's opinion in this case). *K-Dur* recognized that it was the absence of such evidence that compelled denial of class certification in *Am. Seed Co., Inc. v. Monsanto Co.*, 238 F.R.D. 392 (D. Del. 2006), *aff'd*, 2008 WL 857532 (3d Cir. April 1, 2008). *K-Dur* at 25 n.16 (quotations omitted). Since the Directs have offered such evidence here, *Am. Seed Co.* is inapposite.

[12] Defendants' citation to two recent cases where class certification was denied, from industries different from the pharmaceutical industry is unhelpful to them. As Defendants themselves note, in *Allied Orthopedic, Inc. v. Tyco Healthcare Group, L.P.*, 247 F.R.D. 156 (C.D. Cal. 2007), the court found that "scant evidence [was] proffered by plaintiffs" that the class would have paid less in the but-for world. D.I. 382, at 9. Here, of course, ***Defendants have admitted that the common evidence shows that all class members would have paid less absent the challenged conduct.*** Goddess Reply Decl. (D.I. 250), Ex. N. at 78-79 (Mr. Sherry); *id.* Ex. P at 123:20-135:10 (Dr. Navarro). Defendants also cite *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 2008 WL 820922 (1st Cir. Mar. 28, 2008). But again, as Defendants' themselves indicate, *New Motor Vehicles* is a case, where, unlike here, "plaintiffs' expert could not account for how the market would have changed in the 'but for' world." *Id.* Here, the Directs' expert established – and Defendants' experts have admitted – that absent the challenged conduct, less expensive AB rated generic versions of Tricor would have been rapidly substituted for the brand and all class members would have paid less.

to cheaper generic versions of the branded product.[13] In *Ovcon*, for instance, the direct purchasers argued, like the Directs here, that, but for defendants' conduct, direct purchasers "would have substituted [generic Ovcon 35] for all or a portion of their purchases of branded Ovcon 35, and/or would have paid substantially less for branded Ovcon 35 because [defendant] would have lowered net Ovcon 35 prices in response to [generic] competition." *Id.* at 298; *see also id.* at 308. As Defendants do here, the *Ovcon* defendants argued that classwide impact could not be shown because the price of branded Ovcon 35 would not have declined in the but-for world. *Id.* at 310; *compare* D.I. 382 at 3-4.

The *Ovcon* court rejected the defendants' argument, recognizing that "the effect of generic entry on the price of [branded] Ovcon 35 appears to be irrelevant to Plaintiffs' ability to demonstrate proof of impact through common evidence," because plaintiffs' "overcharge analysis does not depend on a finding that brand prices decline." Instead, the *Ovcon* court observed, "[p]laintiffs pay less by substituting cheaper generic products *or* by getting a lower price on the brand, or both." *Id.* (emphasis in original); *see also id.* at 312 & n.19. Again, that is precisely Plaintiffs' theory of overcharge here. *See* D.I. 107 at 29 (citing Goddess Decl. (D.I. 109), Ex. B, at 16-17, 36-37)). *E.g., Cardizem*, 200 F.R.D. at 301-02, 308; *Relafen*, 218 F.R.D. at 343-45.

(2) **Defendants' "molecule volume decline" argument has been rejected:** The *Ovcon* defendants had also argued, as Defendants do here (D.I. 382 at 4-6), that overcharge should not be used as a measure of antitrust harm because molecule volume (brand plus AB rated generic) to class members would have declined in the but-for world. Like the *Cardizem* and *Relafen* courts had done previously, the *Ovcon* court rejected that argument, recognizing that "under [p]laintiffs' overcharge

---

[13] *E.g., Ovcon*, 246 F.R.D. at 310, 312 & n.19; *Relafen*, 218 F.R.D. at 344-45.

theory, direct purchasers suffered antitrust injury as long as they would have purchased *some* generic Ovcon earlier in the class period had it been available." *Id.* at 310 (emphasis in original).[14]

***Here, Defendants' own expert has conceded, based on common evidence, that*** [redacted] Goddess Reply Decl. (D.I. 250), Ex. N., at 78-79 (Mr. Sherry).[15] As a matter of law, so long as common evidence shows that, but-for Defendants' conduct, all class members would have substituted at least some less expensive AB rated generic fenofibrate in place of Tricor and thus paid less in the but-for world – ***which Defendants have admitted*** – Plaintiffs have satisfied the common impact requirement.

Given the above concessions, Defendants' opposition to class certification falls away. Indeed, as noted above, *Defendants' own class certification expert*, Mr. Sherry, has effectively conceded that impact and damages, measured as overcharges, can be proved here on a classwide basis. Goddess Reply Decl. (D.I. 250), Ex. N, at 50:4-20.

**CONCLUSION**

For all of the foregoing reasons, the Directs respectfully request that the Direct Purchaser Class be certified, and the attached proposed order be entered.

---

[14] *See also Relafen*, 218 F.R.D. at 344, 346 (rejecting defense argument that "economic harm," rather than overcharge, should be the measure of impact and damages, despite direct purchasers' reduced purchase volumes in the but-for world); *Cardizem*, 200 F.R.D. at 302, 309-17 (same); *K-Dur* at 28 ("[c]lass members suffered antitrust injury as long as they would have purchased *some* generic K-Dur earlier in the Class period had it been available") (emphasis in original)).

[15] Further, a second of Defendants' experts, their pharmaco-economist, also admitted tha[redacted] Goddess Reply Decl. (D.I. 250), Ex. P. at 123:20-135:10.

Dated: May 8, 2006

Respectfully submitted,

Jeffrey S. Goddess (Del. Bar No. 630)
ROSENTHAL, MONHAIT & GODDESS, P.A.
919 Market Street, Suite 1401
P.O. Box 1070
Wilmington, Delaware 19899-1070
Tel: (302) 656-4433
Fax: (302) 658-7567

*Liaison Counsel for Direct Purchaser Class Plaintiffs*

Bruce E. Gerstein
Barry Taus
Adam Steinfeld
GARWIN, GERSTEIN & FISHER, L.L.P.
1501 Broadway, Suite 1416
New York, NY 10036
Tel: (212) 398-0055
Fax: (212) 764-6620

*Lead Counsel for Direct Purchaser Class Plaintiffs*

On the Brief:

Daniel Berger
Eric L. Cramer
Peter R. Kohn
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215) 875-4604

*Counsel for Direct Purchaser Class Plaintiffs*